**MILSTEIN ADELMAN JACKSON**
**FAIRCHILD & WADE, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@majfw.com
Sara D. Avila, State Bar No. 263213
savila@majfw.com
Marc A. Castaneda, State Bar No. 299001
mcastaneda@majfw.com
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067
Tel: (310) 396-9600
Fax: (310) 396-9635

**LEONARDMEYER LLP**
Derek J. Meyer, State Bar No. 278346
rmeyer@leonardmeyerllp.com
5900 Wilshire Boulevard, Suite 500
Los Angeles, CA 90036
Tel:  (310) 220-0331

Attorneys for Plaintiffs and the Class

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY INGALLS and TONY HONG, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SPOTIFY USA, INC., a Delaware corporation; and DOES 1 – 10, inclusive,<br><br>Defendants. | Case No. 4:16-cv-3533<br><br>**CLASS ACTION COMPLAINT**<br><br>1.  VIOLATIONS OF CALIFORNIA'S AUTOMATIC RENEWAL PURCHASE LAW (BUSINESS AND PROFESSIONS CODE §§ 17600-17604); AND<br><br>2.  VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW (BUSINESS AND PROFESSIONS CODE §§ 17200-17204).<br><br>3.  DECLARATORY RELIEF: ARBITRATION CLAUSE AND CLASS ACTION WAIVER INAPPLICABLE AND/OR UNCONSCIONABLE<br><br>**JURY TRIAL DEMANDED** |

//

//

//

PLAINTIFF INGALLS and PLAINTIFF HONG ("Plaintiffs"), on behalf of themselves and all others similarly situated in the United States, file Plaintiffs' Class Action Complaint against Defendant SPOTIFY USA, INC., a Delaware Corporation ("Spotify" or "Defendant"). Plaintiffs seek to pursue their claims individually and on a class basis. Plaintiffs allege based on personal knowledge as to certain matters regarding their own experiences and upon information and belief as to all other matters, as follows:

I.      **NATURE OF THE ACTION**

1.      Spotify is an international commercial music streaming service with more than 75 million active users worldwide.

2.      During the Class Period,[1] Defendant made automatic renewal or continuous service offers (the "ARCSO Terms") to consumers in California and throughout the United States.

3.      Under the ARCSO Terms, Spotify offered consumers ("Consumers" or "Users") an advertisement-free streaming experience through the purchase of a Premium Subscription Service ("PSS"). Those purchasing PSS through spotify.com do so either by choosing (1) a 30-day free trial followed by a paid subscription ("FPSS"), or (2) a paid subscription ("PPSS"). Under PPSS, Consumers may pay an initial, reduced fee of $0.99 for three months, after which they are charged $9.99 per month or otherwise are charged $9.99 per month by Spotify from inception of the PPSS.

4.      Spotify automatically charges the credit / debit card of Consumers utilizing FPSS at the end of the free trial period, while Consumers purchasing PPSS have their credit / debit cards billed at the inception of the subscription and then automatically re-billed at the end of their membership term.

5.      In offering these ARCSO Terms, Defendant failed to comply with California's Automatic Purchase Renewal Law, Cal. Bus. & Prof. Code § 17600 *et seq.* ("APRL"), with respect to Plaintiffs and the Class by (without limitation), prior to the completion of the initial order for PSS:

>       a.      failing to present the terms thereof in a clear and conspicuous manner before the purchase and/or in visual proximity to the request for consent to the offer (violating Cal. Bus. & Prof. Code § 17602(a)(1)); and/or

---

[1] The Class Period begins June 23, 2012.

     b.     charging Consumers' credit / debit cards, or third-party account (hereinafter "Payment Method") without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms (violating Cal. Bus. & Prof. Code § 17602(a)(2)); and/or

     c.     failing to provide an acknowledgment that included its ARCSO Terms in a manner capable of being retained by the Consumer.

6.     Defendant's violations of California law are all the more troublesome given that Spotify's Terms and Conditions of Use, attached hereto as Exhibit A, contain a California choice-of-law provision, as do prior versions of its Terms and Conditions of Use as attached as Exhibit B.

7.     Plaintiffs bring this class action on behalf of themselves and those similarly situated (the "Class Members"), seeking declaratory relief, injunctive relief, equitable relief (including but not limited to restitution), damages, and reasonable attorneys' fees and costs under the APRL and California's Unfair Competition Law (Bus. & Prof. Code § 17200 *et seq.*) ("UCL") to address Defendant's unlawful, unfair, and/or fraudulent practices with respect to PSS.

## II.    **PARTIES**

8.     PLAINTIFF INGALLS is, and at all times relevant hereto was, an individual residing in Los Angeles, California. PLAINTIFF INGALLS purchased FPSS from Defendant in California on or about June 8, 2013. PLAINTIFF INGALLS was auto-renewed on July 8, 2013 in the amount of $9.99 and subsequently on a monthly basis. PLAINTIFF INGALLS has standing to pursue this action pursuant to Bus. & Prof. Code § 17200, *et seq.* PLAINTIFF INGALLS, like the Class Members, is a consumer for purposes of Bus. & Prof. Code §§ 17600-17606. PLAINTIFF INGALLS suffered injury-in-fact because he lost money or property which constituted payment for FPSS.

9.     PLAINTIFF HONG is, and at all times relevant hereto was, an individual residing in Lomita, California. PLAINTIFF HONG purchased PPSS from Defendant in California on or about December 29, 2014 in the amount of $0.99 for a three-month period. PLAINTIFF HONG was auto-renewed on March 29, 2015 in the amount of $9.99 and subsequently on a monthly basis.  PLAINTIFF HONG has standing to pursue this action pursuant to Bus. & Prof. Code § 17200, *et seq.* PLAINTIFF HONG, like the Class Members, is a consumer for purposes of Bus. & Prof. Code §§ 17600-17606.

PLAINTIFF HONG suffered injury-in-fact because he lost money or property which constituted payment for PPSS.

10.     Defendant SPOTIFY USA, INC. is a corporation organized under the laws of Delaware, with its principal place of business located at 45 West 18th Street, Floor 7, New York, NY 10011. Spotify operates in California and has done business throughout California at all times during the Class Period. Also during the Class Period, Defendant made, and continues to make, ARCSOs to California Consumers.

11.     The true names and capacities, whether individuals, corporate, associate, their alter egos, or otherwise sued herein as DOES 1 through 10 inclusive are presently unknown to Plaintiffs who therefore sue these Defendants by fictitious names. Plaintiffs will seek leave of this Court to amend the Complaint to show their true name and capacities, when same have been ascertained. Plaintiffs are informed and believes and based thereon allege that DOES 1 through 10 were authorized to do and did business in California. Plaintiffs are further informed and believe and based thereon allege that DOES 1 through 10 were and/or are, in some manner or way, responsible for and liable to Plaintiffs for the events, happenings, and damages hereinafter set forth below.

12.     Plaintiffs are informed and believe and based thereon allege that at all times relevant herein each of the Defendants was the agent, servant, employee, subsidiary, affiliate, partner, assignee, successor-in-interest, alter ego, or other representative of each of the remaining Defendants and was acting in such capacity in doing the things herein complained of and alleged.

## III.    <u>JURISDICTION AND VENUE</u>

13.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

14.     This Court has jurisdiction over Defendant because Defendant has sufficient minimum contacts in California, or otherwise intentionally avails itself of the markets within California. At all relevant times, Defendant regularly and systematically transacted business within the State of

California, and the wrongful conduct described herein reached California Consumers. Defendant derives substantial revenue from California residents.

15.    The Court further has jurisdiction over the parties and Class Members pursuant to the Terms and Conditions of Use drafted by Defendant, pursuant to which Spotify agrees to the jurisdiction of the State and Federal Courts of San Francisco County, California and New York New York "to resolve any dispute, claim, or controversy that arises in connection with the Agreements [it enters with Users] (and any non-contractual disputes/claims arising out of or in connection with them)." Exhibit A, at Section 24.1.

16.    Venue is proper in this District under 28 U.S.C. § 1391(b)(3) because the Court has personal jurisdiction over Defendant, a substantial portion of the alleged wrongdoing occurred in this District and California, Defendant has sufficient contacts with this District and California.

## IV.    CALIFORNIA'S AUTOMATIC PURCHASE RENEWAL LAW

17.    Sections 17600-17606 of the Cal. Bus. & Prof. Code came into effect in December 2010, with the intent of ending "the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." Cal. Bus. & Prof. Code § 17600.

18.    Cal. Bus. & Prof. Code § 17601(d) defines a "consumer" as "any individual who seeks or acquires, by purchase or lease, any goods, services, money, or credit for personal, family, or household purposes."

19.    Cal. Bus. & Prof. Code § 17601(a) defines the term "Automatic Renewal" as a "plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term."

20.    Cal. Bus. & Prof. Code § 17601(b) defines the term "Automatic renewal offer terms" as "the following clear and conspicuous disclosures: (1) That the subscription or purchasing agreement will continue until the consumer cancels. (2) The description of the cancelation policy that applies to the offer. (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change,

if known. (4) The length of the automatic renewal term or that the service is continuous, unless the length of the tern is chosen by the consumer. (5) The minimum purchase obligation, if any."

21.     Cal. Bus. & Prof. Code § 17601(e) defined "Continuous service" as "a plan or arrangement in which a subscription or purchasing agreement continues until the consumer cancels the service."

22.     Pursuant to Cal. Bus. & Prof. Code § 17601(c), "clear and conspicuous" or "clearly and conspicuously'' means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language."

23.     Under the law, it is unlawful for any business making an automatic renewal or continuous service offer to a consumer in this state to do any of the following:

    a. Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity . . . to the request for consent to the offer (Cal. Bus. & Prof. Code § 17602(a)(1));

    b. Charge the consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms (Cal. Bus. & Prof. Code § 17602(a)(2)); and/or

    c. Fail to provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the offer includes a free trial, the business shall also disclose in the acknowledgment how to cancel and allow the consumer to cancel before the consumer pays for the goods or services (Cal. Bus. & Prof. Code § 17602(a)(3)).

24.     Further, "[a] business making automatic renewal or continuous service offers shall provide a toll-free telephone number, electronic mail address, a postal address only when the seller directly bills the consumer, or another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the acknowledgment specified in [§ 17602(a)(3)]." Cal. Bus. & Prof. Code § 17602(b).

25.     Further, "[i]n the case of a material change in the terms of the automatic renewal or continuous service offer that has been accepted by a consumer in this state, the business shall provide the consumer with a clear and conspicuous notice of the material change and provide information regarding how to cancel in a manner that is capable of being retained by the consumer." Cal. Bus. & Prof. Code § 17602(c).

26.     The disclosures in §§ 17602(a)(1)-(2) and § 17602(b) must be made "prior to the completion of the initial order for the automatic renewal or continuous service," while the disclosure in § 17602(a)(3) "may be fulfilled after completion of the initial order." Cal. Bus. & Prof. Code § 17602(d). The requirement in § 17602(c) "shall be fulfilled prior to the implementation of the material change."

## V.     FACTS

### A.     Defendant's Failure to Properly Disclose the ARCSO Terms

27.     Upon information and belief, and as Spotify has previously alleged, the images attached hereto as Exhibit C (a composite exhibit from a prior action against Spotify) represented the webpages (or were substantially similar in all material aspects to previous and subsequent webpages) provided to Consumers, including Plaintiffs and the Class Members, signing up for PSS.

28.     The webpages on which Consumers subscribed to PSS did not clearly and conspicuously reflect Spotify's ARCSO Terms before any Consumers' subscription or purchasing agreement was fulfilled and in visual proximity to the request for consent to Spotify's offer.

29.     None of the ARCSO Terms were presented "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language."

30.     Spotify instead sought to minimize the visual presence of the ARCSO Terms through the use of small font, shaded coloration on pages already containing multiple more prominent colors reflecting total's due of $0.00 or $9.99 (or an introductory price), and/or the absence of symbols or other marks to call attention to the ARCSO Terms.

31.     Despite Spotify's reservation of the right to change the price of its PSS subscriptions in its Terms and Conditions of Use, no mention of this reservation of rights was mentioned, much less clearly and conspicuously presented, in the webpages presented to Consumers.  Exhibit A, Section 15; Exhibit B, Section 9.

32.     As part of the enrollment process for PSS, Spotify did not seek Consumers' consent to the ARCSO Terms and instead requested Consumers to "Confirm Payment" or otherwise proceed without seeking explicit consent to the ARCSO Terms. On information and belief, Spotify instead had Consumers "Sign Up" to its webpage before allowing a Consumer to further explore free or premium Spotify. Spotify made no mention of any ARCSO Terms on the Sign Up page and, on information and belief, did not provide a hyperlink to its Terms and Conditions of Use near the "Sign Up" tab until late 2013.

33.     As the owner and operator of its webpage, Spotify could have disclosed the ARCSOs in a manner that clearly called attention to the language of the ARCSOs but chose not to do so. Following Consumers' enrollment in a PSS, Spotify failed to provide an acknowledgment that included its ARCSO Terms in a manner capable of being retained by the Consumer and, in the case of FPSS Consumers, further failed to disclose in the acknowledgment how to cancel and allow the Consumer to cancel before the Consumer payment for his or her PSS.

34.     Spotify also charged the consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms

**B.     Factual Allegations as to PLAINTIFF INGALLS**

35.     On or about June 8, 2013, PLAINTIFF INGALLS visited the spotify.com website.

36.     At that time, PLAINTIFF INGALLS joined FPSS.

37.     Prior to the initial completion of PLAINTIFF INGALLS' order for FPSS, Spotify failed to clearly and conspicuously disclose the ARCSO Terms to him in visual proximity to the request for consent to the ARCSO Terms.

38.     On or about June 8, 2013, Spotify sent PLAINTIFF INGALLS and acknowledgement, a copy of which is attached as Exhibit D, which failed to include the ARCSO Terms in a manner capable of being retained by the Consumer and further failed to disclose how to cancel and his right to cancel before the due date of his first payment for PSS.

39.     On July 8, 2013 and thereafter, Defendant subsequently charged the amount of $9.99/month to PLAINTIFF INGALLS' consumer credit or debit card with a third party for an automatic renewal or continuous service without first obtaining PLAINTIFF INGALLS' affirmative consent to the agreements containing the automatic renewal offer terms or continuous service offer terms.

**C.     Factual Allegations as to PLAINTIFF HONG**

40.     On or about December 29, 2014, PLAINTIFF HONG visited the spotify.com website.

41.     At that time, PLAINTIFF HONG joined PPSS, for an initial fee of $0.99 for three months of service.

42.     Prior to the initial completion of PLAINTIFF HONG's order for PPSS, Spotify failed to clearly and conspicuously disclose the ARCSO Terms to him in visual proximity to the request for consent to the ARCSO Terms.

43.     On or about December 29, 2014, Spotify sent PLAINTIFF HONG an acknowledgement, a copy of which is attached as Exhibit E, which failed to include the ARCSO Terms in a manner capable of being retained by the Consumer and further failed to disclose how to cancel and his right to cancel before the due date of his first payment for PSS.

44.     On March 15, 2015 and thereafter, Defendant subsequently charged the amount of $9.99/month to PLAINTIFF HONG'S consumer credit or debit card with a third party for an automatic renewal or continuous service without first obtaining PLAINTIFF HONG'S affirmative consent to the agreements containing the automatic renewal offer terms or continuous service offer terms.

**D.     Arbitration of Plaintiffs' Claims is Not Required**

**(1)     No Delegation**

45.     The Terms and Conditions of Use drafted by Defendant do not require that Plaintiffs arbitrate the causes of action set forth in this Class Action Complaint.

46.     Rather, Section 24.1 of the Terms and Conditions of Use drafted by Defendant expressly provides that the Parties "agree to the jurisdiction of [this Court] to resolve any dispute, claim, or controversy that arises in connection with the Agreements (and any non-contractual disputes/claims arising out of or in connection with them).  Plaintiffs' claims fall within the scope of Section 24.1.

47.     Any contention by Defendant that Plaintiff's claims must be arbitrated must be resolved by the Court.  Indeed, given Section 24.1, the Terms and Conditions of Use do not clearly and unmistakably delegate any such arbitrability dispute to an arbitrator.

**(2)     Section 24.3 Does Not Apply – Injunctive Relief**

48.     Section 24.3 of the Terms and Conditions of Use drafted by Defendant is captioned "ARBITRATION."  Clause 24.3.2 under Section 24.3 is titled "Exceptions." It states that "nothing herein will be deemed to waive, preclude or otherwise limit" the right of any User or Defendant to "(3) seek injunctive relief in a court of law."

49.     Plaintiffs are seeking, among other things, injunctive relief in this case.  Clause 24.3.2 expressly allows for Plaintiffs to seek such relief in a court of law.

50.     Section 24.2 of Spotify's Terms and Conditions of Use sets forth a purported class action waiver clause.  Section 24.2 is unconscionable under California law.  The Federal Arbitration Act does not preempt California law on this subject given the exception to arbitration found in Clause 24.3.2 noted above for purposes of Plaintiffs' requests for injunctive relief.

**(3)     Section 24.3 Does Not Apply – Non-Injunctive Relief**

51.     Section 24.3 states that "[i]f you are located in . . . a jurisdiction in which this Section 24.3 is enforceable, the following mandatory arbitration provisions apply to you:" This is followed by Clauses 24.3.1 through 24.3.7 of Section 24.3.

52.     Defendant is a large, sophisticated corporation. Its Terms and Conditions of Use purport to invoke the Supplementary Procedures for Consumer Related Disputes ("Supplementary

Procedures") of the American Arbitration Association ("AAA"). As noted in the Supplementary Procedures, the AAA "applies the Supplementary Procedures for Consumer-Related Disputes to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with Users and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices." In seeking to invoke such procedures, Defendant acknowledges that the Terms and Conditions of Use were non-negotiable.

53.     Section 24.3 contains a condition precedent and applies only if "this Section 24.3 is enforceable." Thus, Section 24.3 does not apply if any portion of Section 24.3 is unenforceable.

54.     Section 23.4, which includes Clauses 24.3.1 through 24.3.7, contains unenforceable terms. For example, Clause 23.3.5 contains an unconscionable and unenforceable clause mandating confidentiality, including purported prohibitions on Users such as Plaintiffs against the making of "any public announcement or public comment or originat[ing] any publicity concerning the arbitration, including, but not limited to, the fact that the parties are in dispute, the existence of the arbitration, or any decision or award of the arbitrator."

55.     By its express terms, Section 24.3 is therefore not applicable to the portions of Plaintiffs' claims seeking non-injunctive relief.

56.     Section 24.3 is not saved by Section 21 of the Terms and Conditions of Use. A severability clause, Section 21 provides that in the event a term is unenforceable "the remaining provisions" of the Terms and Conditions of Use shall be enforced to the extent permitted by law. This savings clause, however, is limited by the opening phrase of Section 21, which states "[u]nless as otherwise stated in the Agreements [which include the Terms and Conditions of Use]." As noted, Section 24.3 states otherwise given that it expressly conditions the applicability of Section 24.3 on whether "this Section 24.3 is enforceable."

57.     Section 24.2 of Spotify's Terms and Conditions of Use sets forth a purported class action waiver clause.  Section 24.2 is unconscionable under California law.  The Federal Arbitration

Act does not preempt California law on this subject given that Section 24.3 does not apply to Plaintiffs' claims, regardless of whether such claims seek injunctive or non-injunctive relief.

**(4)    Section 24.3 is Unconscionable and Unenforceable**

58.    In addition and/or alternatively, Section 24.3 and the clauses thereunder are procedurally and substantively unconscionable and unenforceable. Plaintiffs provide a non-exhaustive list of such instances below, in addition to the unconscionable confidentiality clause noted above.

59.    Section 24.1 of the Terms and Conditions of Use plainly states that Defendant agrees to the jurisdiction of this Court "to resolve any dispute, claim, or controversy that arises in connection with the Agreements (and any non-contractual disputes/claims arising out of or in connection with them)." The causes of actions set forth in this Class Action Complaint fall squarely within this Section 24.1 calling on the Court "to resolve" such causes of action.

60.    Conversely, Section 24.3 requires Users to understand whether "this Section 24.3 is enforceable" in order to understand whether they may have agreed to arbitration. In addition to conflicting with Section 24.1, the principles of law associated with determining whether Section 24.3 is "enforceable" are complex and complicated.

61.    Further compounding the procedural and substantive unconscionability of Section 24.3, the section is drafted in complex legalese. Section 24.3 possesses a Flesch Readability Ease score roughly the equivalent of, or worse than in terms of greater complexity, the score commonly ascribed to Harvard Law Review.

62.    The Terms and Conditions of Use also purport to allow Defendant to unilaterally modify the terms of Section 24.3.

63.    In addition, Defendant has imposed more onerous requirements for its Users' objections to changes made by Spotify to Section 24.3 compared to changes in other terms of the Terms and Conditions of Use. If Defendant imposes new terms not involving Section 24.3 and a User does not wish to continue using the Service under the revised version of the Terms and Conditions of Use, Section 2 of the Terms and Conditions of Use contain a hyperlink to Defendant's Customer Service contact form on which a User may cancel his or her Service with a click of the mouse with no

CLASS ACTION COMPLAINT

explanation required for the cancellation. Defendant imposes no deadline by which a User must object to any such change in terms.

64.     In contract, for unilateral changes to Section 24.3 by Defendant, Clause 24.3.6 states that a User must send "written notice within 30 days of the change to Spotify's address for Notice" in order to allegedly avoid being bound by such changes. Defendant's "address for Notice" requires the User to use non-electronic means of submission such as mail instead of offering a hyperlink or email address for Users to provide notice of their objection of any unilateral revisions to Section 24.3 by Defendant.   Yet the same clause contemplates Defendant sending "Notice" to Users by electronic mail.

65.     Clause 24.3.2(4) also carves out from the alleged mandatory arbitration "intellectual property infringement claims." Such claims are more likely to be asserted by Defendant as opposed to any PSS subscriber.  Conversely, in a prior version of its arbitration clause found in Section 19 of Exhibit B, Defendant excluded from arbitration claims related to allegations of theft, piracy or the unauthorized use of Spotify.  In 2014, a Consumer filed a lawsuit and asserted that his claim (which included a putative class action) fell within this exception.  Spotify subsequently amended its arbitration clause to remove this exception, reflecting its intention to preserve its ability to bring claims it was likely to bring while simultaneously seeking to eliminate a prior exception available to its Consumers.

66.     Defendant also purports to impose a one-year statute of limitations period on claims asserted in arbitration, without imposing a similar temporal reduction on claims Spotify might bring outside of arbitration. This goes beyond a lack of symmetry. Among other things, this also reflects Spotify's intent to limit the protections to Consumers for purposes of the claims such as those asserted in this Complaint and to undermine the statutes cited herein.

67.     Assuming the Court agrees on that Section 24.3 is unconscionable and unenforceable, the Federal Arbitration Act does not preempt California law regarding the unconscionability of Section 24.2.

## VI.     CLASS ACTION ALLEGATIONS

68.     Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated as following:

**Class**
**All natural persons in the United States who, since June 23, 2012, purchased a Premium Subscription Service through spotify.com.**

**Subclass One**
**All natural persons in the Class who purchased a Premium Subscription Service through spotify.com in connection with a free trial period.**

**Subclass Two**
**All natural persons in the Class who purchased a Premium Subscription Service through spotify.com with no free trial period.**

Collectively, the "Class." Plaintiffs reserve the right to amend these definitions.

69.     Specifically excluded from the Class and Subclasses are: (a) all state court judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Defendant releases of all their claims for all of their Class claims; and (d) Defendant's employees, officers, directors, agents, and representatives and their family members.

70.     The Class Members are so numerous that joinder of all members is impractically, and the disposition of their claims in a class action will benefit the parties and the Court. At this time, Plaintiffs do not know the exact size of the Class. Based on information and belief, the Class is comprised of hundreds of thousands if not millions of members so as to render joinder of all Class Members impracticable. Defendant, however, has this information readily available, as Defendant has a record of every Class Member due to their enrollment in PSS. Thus Defendant has a record of every member of the class and contact information for every member of the class, thereby also confirming direct notice can be given to every Class Member.

71.     Common questions of law and fact predominate over individual issues. There is a well-defined community of interest in the questions of law and fact affecting Members of the Class. The questions of law and fact common to the Classes predominate over questions affecting only individual Class Members, and include, but are not limited to, the following:

        a.     Whether Defendant's PSS constitutes an automatic renewal and/or continuous service plan or arrangement for the purposes of <u>Cal. Bus. & Prof. Code</u> § 17601;

b.  Whether the information presented to Plaintiffs and Class Members by PSS prior to the initial order of PSS contained all the disclosures required by <u>Cal. Bus. & Prof. Code</u> § 17601(b);

c.  Whether the information regarding the PSS auto-renewal provided by Defendant on its website and during the PSS purchasing process was provided in a "clear and conspicuous manner" as defined by <u>Cal. Bus. & Prof. Code</u> § 17601(c);

d.  Whether Defendant failed to present the automatic renewal offer terms, or continuous service offer terms, in a clear and conspicuous manner before the subscription or purchasing agreement was fulfilled and in visual proximity to the request for consent to the offer, in violation of <u>Cal. Bus. & Prof. Code</u> § 17602(a)(l);

e.  Whether Defendant charged Plaintiffs' and Class Members' Payment Methods for an automatic renewal or continuous service without first obtaining the Plaintiffs' and Class Members' affirmative consent to the automatic renewal offer terms or continuous service offer terms, in violation of <u>Cal. Bus. & Prof. Code</u> § 17602(a)(2);

f.  Whether Defendant failed to provide Plaintiffs and Class Members with an acknowledgment that included its ARCSO Terms in a manner capable of being retained by the Consumer and/or failed to disclose in the acknowledgment how to cancel and that the Consumer could cancel before the Consumer's payment for his or her PSS, in violation of <u>Cal. Bus. & Prof. Code</u> § 17602(a)(3).

g.  Whether Plaintiffs and Class Members are entitled to restitution in accordance with <u>Cal. Bus. & Prof. Code</u> §§ 17200, 17203;

h.  Whether Plaintiffs and Class Members are entitled to injunctive relief under <u>Cal. Bus. & Prof. Code</u> § 17203;

i.  Whether Plaintiffs' and Class Members' claims for injunctive relief are excluded from Section 24.3, the purported arbitration clause contained in Defendant's Terms and Conditions of Use, and if so whether the purported class action

waiver contained is Section 24.2 is unconscionable and unenforceable under California law relative to the requests herein for injunctive relief;

j.     Whether Section 24.3 is inapplicable to Plaintiffs' and Class Members' claims and, if so, whether the purported class action waiver contained in Section 24.2 is unconscionable and unenforceable under California law;

k.     Whether Plaintiffs and Class Members are entitled to declaratory relief that Section 24.3 is unconscionable and unenforceable and, if so, whether the purported class action waiver contained in Section 24.2 is unconscionable and unenforceable under California law;

l.     Whether Plaintiffs and Class Members are entitled to declaratory relief that Defendant may not raise the price of PSS for enrollees without first obtaining their affirmative consent (and/or making the required disclosures);

m.     Whether Plaintiff and Class Members are entitled to attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

72.     Plaintiffs' claims are typical of the claims of Class Members. Plaintiffs and all members of the Class have been subjected to Defendant's common course of unlawful conduct as complained of herein, and were subjected to identical web pages while signing up on spotify.com.

73.     Plaintiffs are adequate representatives of the Class because they fit within the class definition and their interests do not conflict with the interests of the members of the Class they seek to represent. Plaintiffs will prosecute this action vigorously for the benefit of the entire Class. Plaintiffs are represented by experienced and able attorneys. Plaintiffs and class counsel can and will fairly and adequately protect the interests of all the members of the Class.

74.     A class action is the superior method for the fair and just adjudication of this controversy. The expense and burden of individual suits makes it impossible and impracticable for members of the proposed Class to prosecute their claims individuals.

75.     The trial and litigation of Plaintiffs' and the proposed Class's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the Court system.

76.     Defendant has acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

77.     Unless a permanent injunction is issued, Defendant will continue to commit the violations alleged herein, and the members of the proposed Class and the general public will continue to be misled. Because of the small size of the individual Class members' claims, few, if any, will make claims.

78.     If necessary, notice of this action may be affected to the proposed class through publication, and for virtually all class members, direct notice may be achieved through contact information from customer lists, which, on information and belief, are maintained by Defendant.

## VII.     FIRST CAUSE OF ACTION

### Conduct in Violation of California's Automatic Purchase Renewal Clause

### Cal. Bus. & Prof. Code § 17600, *et seq.*

79.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 44 and 68 through 78, and incorporate the same as if set forth herein at length.

80.     This cause of action is brought pursuant to Cal. Bus. & Prof. Code § 17600, *et seq.,* by Plaintiffs on behalf of the Class and Subclasses defined above.

81.     Defendant's practice of automatically renewing Plaintiffs and the Class Members in its PSS program by charging their credit cards after a month constitutes an "automatic renewal" within the meaning of §17601(a) of the APRL.

82.     Plaintiffs and Class Members are "consumers" within the meaning of the APRL.

83.     ***First Violation.*** Defendant obtained Plaintiffs' agreement to its Terms and Conditions of Use at its initial "Sign Up" page on its website without disclosing, in a clear and conspicuous manner, the ARCSO Terms in visual proximity to the request for consent, violating §§ 17601(c) and 17602(a)(1).

84.     ***Second Violation.*** Defendant failed to disclose Spotify's ARCSO Terms in a clear and conspicuous manner on the webpages where Consumers subscribed to PSS. None of the ARCSO Terms were presented "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols

or other marks, in a manner that clearly calls attention to the language" and/or were not provided in visual proximity to the request for consent to the offer, violating §§ 17601(c) and 17602(a)(1). Spotify instead sought to minimize the visual presence of the ARCSO Terms through the use of small font, shaded coloration on pages already containing multiple more prominent colors reflecting total's due of $0.00, $0.99, or $9.99, and/or the absence of symbols or other marks to call attention to the ARCSO Terms.

85.    **Third Violation.** Defendant failed to disclose its reservation of the right to change the price of its PSS subscriptions on the webpages where Consumers subscribed to PSS, much less in a clear and conspicuous manner and/or in visual proximity to the request for consent to the offer, violating §§ 17601(c) and 17602(a)(1).[2]

86.    **Fourth Violation.**  As part of the enrollment process for PSS, Spotify did not seek Consumers' consent to the ARCSO Terms and instead requested Consumers to "Confirm Payment" or otherwise proceed without seeking consent to the ARCSO Terms.

87.    **Fifth Violation.**  Following Consumers' enrollment in a PSS, Spotify failed to provide an acknowledgment that included its ARCSO Terms in a manner capable of being retained by the Consumer and, in the case of FPSS Consumers, further failed to disclose in the acknowledgment how to cancel and allow the Consumer to cancel before the Consumer payment for his or her PSS, violating § 17602(a)(3).

88.    **Sixth Violation.** Defendant charged the Plaintiff's credit or debit card or the Consumer's account with a third party for an automatic renewal or continuous service without first obtaining the Consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, violating § 17602(a)(2).

89.    These violations occurred uniformly against both the Plaintiffs and all the Class Members.

---

[2] Defendant's reservation of the right to change the price of its subscriptions is set forth in the Terms and Conditions of Use.

90.     As a result of Defendant's violations of Cal. Bus. & Prof. Code § 17600 *et seq.*, Defendant is subject under Cal. Bus. & Prof. Code § 17604 to all civil remedies that apply to a violation of Article 9, of Chapter l, of Part 3, of Division 7 of the Cal. Bus. & Prof. Code.

91.     Plaintiffs, on behalf of themselves and Class Members, request the relief as described herein and below.

## VIII.   SECOND CAUSE OF ACTION

### Unlawful Conduct in Violation of California's Unfair Competition Law

### Cal. Bus. & Prof. Code § 17200, *et seq.*

92.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 44 and 68 through 91, and incorporate the same as if set forth herein at length.

93.     This cause of action is brought pursuant to Cal. Bus. & Prof. Code § 17200 by Plaintiffs on behalf of the Class defined above.

94.     As described in Plaintiffs' First Cause of Action, Defendant's marketing and sale of its PSS program violates the APRL, which constitutes an unlawful business practice.

95.     Plaintiffs and the Class suffered a loss of money or property as a result of Defendant's unlawful acts.

96.     As a direct and proximate result of Defendant's unlawful and/or unfair business acts or practices described herein, Defendant has received, and continues to hold, unlawfully obtained property and money belonging to Plaintiffs and Class Members in the form of payments made for PSS by Plaintiffs and Class Members. Defendant has profited from its unlawful and/or unfair business acts or practices in the amount of those business expenses and interest accrued thereon.

97.     Plaintiffs and similarly-situated Class Members are entitled to restitution pursuant to Cal. Bus. & Prof. Code § 17203 for all monies paid by Class Members under the subscription agreements from December 1, 2010, to the date of such restitution at rates specified by law. Defendant should be required to disgorge all the profits and gains it has reaped and restore such profits and gains to Plaintiff and Class Members, from whom they were unlawfully taken.

98.     Plaintiffs and similarly situated Class Members are entitled to enforce all applicable penalty provisions pursuant to Cal. Bus. & Prof. Code § 17202, and to obtain injunctive relief pursuant to Cal. Bus. & Prof. Code § 17203.

99.     Specifically, Plaintiffs seek an injunction, on behalf of themselves and the Class Members, that Defendant (a) cannot charge Plaintiffs and the Class Members any amount of fee for the auto-renewal of their Subscriptions without first obtaining each such Users' affirmative consent in a form and manner consistent with the disclosures required under the APRL as approved by this Court; and (b) Defendant cannot raise the price of its PSS without first obtaining a customer's affirmative consent (and/or must make the disclosures required under the APRL) as approved by the Court.

100.     Plaintiffs have assumed the responsibility of enforcement of the laws and public policies specified herein by suing on behalf of themselves and other similarly-situated Class Members. Plaintiffs' success in this action will enforce important rights affecting the public interest. Plaintiffs will incur a financial burden in pursuing this action in the public interest. An award of reasonable attorneys' fees to Plaintiff is thus appropriate pursuant to California Code of Civil Procedure § 1021.5.

101.     Plaintiffs, on behalf of themselves and Class Members, request the relief as described herein and below.

## IX.     THIRD CAUSE OF ACTION

### Declaratory Relief – Arbitration Clause and Class Action Waiver

### Inapplicable and/or Unconscionable

102.     Plaintiffs repeat and reallege the allegations set forth above and incorporate the same as if set forth herein at length.

103.     The allegations in paragraphs 45 through 67 above most specifically address this Count.

104.     The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

105.     As described above, this Court has jurisdiction over this matter, and therefore may declare the rights of Plaintiffs and the Class.

106.   Plaintiffs, on behalf of themselves and Class Members, seek an order from the Court declaring that Sections 24.3 is inapplicable to Plaintiffs' claims and/or unconscionable and unenforceable.

107.   Section 24.3 and the corresponding clauses thereunder are procedurally and substantively unconscionable for the following reasons:

a.   The Terms and Conditions of Use were non-negotiable and drafted in complex legalese;

b.   The Terms and Conditions of Use require Users to understand whether "this Section 24.3 is enforceable" in order to understand whether they may have agreed to arbitration whereas in comparison Section 24.1 clearly states that Defendant agrees to the jurisdiction of this Court "to resolve any dispute, claim, or controversy that arises in connection with the Agreements (and any non-contractual disputes/claims arising out of or in connection with them);"

c.   The Terms and Conditions of Use purport to allow Defendant to unilaterally modify the terms of Section 24.3;

d.   The requirements for Users to object to changes made by Defendant to Section 24.3 are more onerous in comparison to changes in other terms of the Terms and Conditions of Use.

e.   Clause 24.3.6 requires Users to send "written notice within 30 days of the change to Spotify's address for Notice" in order to allegedly avoid being bound by Spotify's unilateral changes to Section 24.3. Defendant's "address for Notice" requires the use of non-electronic submission such as mail yet the same clause contemplates Defendant sending "Notice" to Users by electronic mail.

f.   Clause 24.3.2(4) carves out from the alleged mandatory arbitration "intellectual property infringement claims." Such claims are more likely to be asserted by Defendant as opposed to any PSS subscriber.  Conversely, in a prior version of its arbitration clause found in Section 19 of Exhibit B, Defendant excluded from arbitration claims related to allegations of theft, piracy or the unauthorized use of Spotify.  In 2014, a Consumer filed a lawsuit and asserted that his claim (which included a putative class action) fell

within this exception.  Spotify subsequently amended its arbitration clause to remove this exception.

g. Clause 24.3.4 imposes a one-year statute of limitations period on claims asserted in arbitration, without imposing a similar temporal reduction on claims Spotify might bring outside of arbitration, reflecting Spotify's intent to limit the protections to Consumers for purposes of the claims such as those asserted in this Complaint and to undermine the statutes cited herein;

h. Clause 24.3.5 contains prohibitions on Plaintiffs against the making of "any public announcement or public comment or originat[ing] any publicity concerning the arbitration, including, but not limited to, the fact that the parties are in dispute, the existence of the arbitration, or any decision or award of the arbitrator"; and

108.    The defects of Section 24.3, as set forth above, are indicative of an unlawful effort to impose arbitration on Consumers not as an alternative to litigation, but as an inferior forum that works to Defendant's advantage. The circumstance under which the clause is presented to Consumers is unfair and oppressive, devoid of any actual negotiation, and designed to take advantage of the unequal bargaining power between Consumers and Defendant. These unconscionable aspects render Section 24.3 wholly unenforceable.

109.    In the event that the Court determines that Plaintiff's claims are not required to be arbitrated  - whether for purposes of Plaintiffs' requests for injunctive, non-injunctive relief, or both - Plaintiffs seek an order from the Court declaring that Section 24.2 is unconscionable and unenforceable under California law.

110.    Section 24.2 of the Terms and Conditions of Use drafted by Defendant contains a purported class action waiver. Section 24.2—which does not provide an opt out mechanism—wrongfully limits Plaintiffs' right to recover in consolidated litigation against Defendant where individual litigation would be impracticable, overly burdensome, and judicially inefficient. The clause thus has a chilling effect on consumer litigation against Defendant that effectively insulates Defendant from liability. The circumstances under which Section 24.2 is presented to Consumers is unfair and oppressive, devoid of any actual negotiation, and designed to take advantage of the unequal bargaining

power between Consumers and Defendant. These unconscionable aspects render Section 24.2 wholly unenforceable.

111.    Further, Section 24.2 is inconsistent with Section 24.1, which plainly states Defendant agrees to the jurisdiction of this Court "to resolve any dispute, claim, or controversy that arises in connection with the Agreements (and any non-contractual disputes/claims arising out of or in connection with them)."

112.    Plaintiff requests a judicial determination of the respective rights and duties of Plaintiff and Defendant with respect to Sections 24.1 and 24.3 and a declaration that Section 24.3 is inapplicable to Plaintiffs' claims and/or unconscionable and unenforceable pursuant to 28 U.S.C. § 2201(a).

113.    If so, Plaintiff further request a judicial determination of the respective rights and duties of Plaintiff and Defendant with respect to Section 24.2 and a declaration that Section 24.2 is inapplicable to Plaintiffs' claims and/or unconscionable and unenforceable pursuant to 28 U.S.C. § 2201(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the Members of the Class defined herein, pray for judgment and relief on all Counts of the Complaint, and requests the following relief:

A.    An order certifying that the action may be maintained as a class action;

B.    A declaration that the Defendant has violated Cal. Bus. & Prof. Code §§ 17200 and 17600;

C.    An order enjoining Defendant from pursuing and/or continuing the unlawful conduct complained of herein, including that (1) Defendant cannot charge Plaintiffs and the Class Members any amount of fee for the auto-renewal of their Subscriptions without first obtaining each such Users' affirmative consent in a form and manner consistent with the disclosures required under the APRL as approved by this Court; and (2) Defendant cannot raise the price of its PSS without first obtaining a customer's affirmative consent in a form and manner consistent with the disclosures required under the APRL as approved by this Court;

1    D.    An order requiring Defendant to pay restitution to Plaintiffs and all Members of the

2    Class;

3    E.    A judicial determination of the respective rights and duties of Plaintiff and Defendant

4    with respect to Section 24.3 of the Terms and Conditions of Use and a declaration that Section 24.3 is

5    inapplicable to Plaintiffs' claims and/or unconscionable and unenforceable pursuant to 28 U.S.C. §

6    2201(a);

7    F.    If so, a judicial determination of the respective rights and duties of Plaintiff and

8    Defendant with respect to Section 24.2 of the Terms and Conditions of Use and a declaration that

9    Sections 24.2 is inapplicable to Plaintiffs' claims and/or unconscionable and unenforceable under

10   California law pursuant to 28 U.S.C. § 2201(a);

11   G.    For pre-judgment interest from the date of filing this suit;

12   H.    An award of reasonable attorneys' fees and costs pursuant to California Code of Civil

13   Procedure § 1021.5, and/or other applicable law; and

14   I.    That the Court award such other and further relief as this Court may deem appropriate.

15

16   Dated:  June 23, 2016                MILSTEIN ADELMAN JACkSON
                                          FAIRCHILD & WADE, LLP
17

18                                        By: _/s/ Gillian L. Wade_____
                                          Gillian L. Wade
19                                        One of the Attorneys for Plaintiffs

20

21                                        Derek J. Meyer
                                          LEONARDMEYER LLP
22                                        One of the Attorneys for Plaintiffs

23

24

25

26

27

28

1

## **JURY TRIAL DEMANDED**

2

    Plaintiffs demand a jury trial on all triable issues.

3
Dated:  June 23, 2016             MILSTEIN ADELMAN JACkSON
                                 FAIRCHILD & WADE, LLP

4

5
                                By:  */s/ Gillian L. Wade*

6
                                Gillian L. Wade
                                One of the Attorneys for Plaintiffs

7

8
                                Derek J. Meyer
                                LEONARDMEYER LLP
                                One of the Attorneys for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT