1   **MILSTEIN ADELMAN JACKSON**
    **FAIRCHILD & WADE, LLP**
2   Gillian L. Wade, State Bar No. 229124
    gwade@majfw.com
3   Sara D. Avila, State Bar No. 263213
    savila@majfw.com
4   Marc A. Castaneda, State Bar No. 299001
    mcastaneda@majfw.com
5   10250 Constellation Blvd., Suite 1400
    Los Angeles, CA 90067
6   Tel: (310) 396-9600
    Fax: (310) 396-9635
7
    **LEONARDMEYER LLP**
8   Derek J. Meyer, State Bar No. 278346
    rmeyer@leonardmeyerllp.com
9   5900 Wilshire Boulevard, Suite 500
    Los Angeles, CA 90036
10  Tel:  (310) 220-0331
11  Attorneys for Plaintiffs and the Class
12
                    **UNITED STATES DISTRICT COURT**
13
                    **NORTHERN DISTRICT OF CALIFORNIA**
14
    GREGORY    INGALLS    and    TONY    HONG,    | Case No. 3:16-cv-03533-WHA
15  individually and on behalf of all others similarly
    situated,
16                                                   **FIRST AMENDED CLASS ACTION**
                    Plaintiffs,                      **COMPLAINT**
17
                    v.
18                                                   1.  VIOLATIONS OF CALIFORNIA'S.
    SPOTIFY USA, INC., a Delaware corporation;           AUTOMATIC RENEWAL PURCHASE
19  and DOES 1 – 10, inclusive,                          LAW (BUSINESS AND PROFESSIONS
                                                         CODE §§ 17600·17604); AND
20                  Defendants.
21                                                   2.  VIOLATIONS OF CALIFORNIA'S
                                                         UNFAIR COMPETITION LAW (BUSINESS
22                                                       AND PROFESSIONS CODE §§ 17200-
                                                         17204).
23
                                                     3.  DECLARATORY RELIEF: ARBITRATION
24                                                       CLAUSE AND CLASS ACTION WAIVER
                                                         INVALID, INAPPLICABLE AND/OR
25                                                       UNCONSCIONABLE
26                                                   **JURY TRIAL DEMANDED**
27  //
28  //

                    FIRST AMENDED CLASS ACTION COMPLAINT

PLAINTIFF INGALLS and PLAINTIFF HONG ("Plaintiffs"), on behalf of themselves and all others similarly situated in the United States, file Plaintiffs' First Amended Class Action Complaint ("Class Action Complaint") against Defendant SPOTIFY USA, INC., a Delaware Corporation ("Spotify" or "Defendant"). Plaintiffs seek to pursue their claims individually and on a class basis. Plaintiffs allege based on personal knowledge as to certain matters regarding their own experiences and upon information and belief as to all other matters, as follows:

## I.   NATURE OF THE ACTION

1.    Spotify is an international commercial music streaming service with more than 100 million active users worldwide and over 30 million paying subscribers worldwide.

2.    During the Class Period,[1] Defendant made automatic renewal or continuous service offers (the "ARCSO Terms") to consumers in California and throughout the United States.

3.    Under the ARCSO Terms, Spotify offered consumers ("Consumers" or "Users") an advertisement-free streaming experience through the purchase of a Premium Subscription Service ("PSS"). Those purchasing PSS through spotify.com do so either by choosing (1) a 30-day free trial followed by a paid subscription ("FPSS"), or (2) a paid subscription ("PPSS"). Under PPSS, Consumers may pay an initial, reduced fee of $0.99 for three months, after which they are charged $9.99 per month or otherwise are charged $9.99 per month by Spotify from inception of the PPSS.

4.    Spotify automatically charges the credit / debit card of Consumers utilizing FPSS at the end of the free trial period, while Consumers purchasing PPSS have their credit / debit cards billed at the inception of the subscription and then automatically re-billed at the end of their membership term and then monthly.

5.    In offering these ARCSO Terms, Defendant failed to comply with California's Automatic Purchase Renewal Law, Cal. Bus. & Prof. Code § 17600 *et seq.* ("APRL"), with respect to Plaintiffs and the Class prior to the completion of the initial order for PSS by (without limitation):

        a.    failing to present the terms thereof in a clear and conspicuous manner before the purchase and/or in visual proximity to the request for consent to the offer

---

[1] The Class Period begins June 23, 2012.

(violating Cal. Bus. & Prof. Code § 17602(a)(1)); and/or

   b.   charging Consumers' credit / debit cards, or third-party account (hereinafter "Payment Method") without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms (violating Cal. Bus. & Prof. Code § 17602(a)(2)); and/or

   c.   failing to provide an acknowledgment that included its ARCSO Terms in a manner capable of being retained by the Consumer.

6.   Defendant's violations of California law are all the more troublesome given that Spotify's Terms and Conditions of Use as unilaterally revised by Defendant on or about September 9, 2015 ("2015 Terms"), attached hereto as Exhibit A, contain a California choice-of-law provision, as do prior versions of its Terms and Conditions of Use as attached in Exhibit B, including the Terms and Conditions of Use as unilaterally revised by Defendant on or about December 18, 2012 ("2012 Terms") and March 5, 2014 ("2014 Terms").

7.   Plaintiffs bring this class action on behalf of themselves and those similarly situated (the "Class Members"), seeking declaratory relief, injunctive relief, equitable relief (including but not limited to restitution), damages, and reasonable attorneys' fees and costs under the APRL and California's Unfair Competition Law (Bus. & Prof. Code § 17200 et seq.) ("UCL") to address Defendant's unlawful, unfair, and/or fraudulent practices with respect to PSS.

## II.   PARTIES

8.   PLAINTIFF INGALLS is, and at all times relevant hereto was, an individual residing in Los Angeles, California. PLAINTIFF INGALLS purchased FPSS from Defendant in California on or about June 8, 2013. PLAINTIFF INGALLS was auto-renewed on July 8, 2013 in the amount of $9.99 and subsequently on a monthly basis. PLAINTIFF INGALLS has standing to pursue this action pursuant to Bus. & Prof. Code § 17200, et seq. PLAINTIFF INGALLS, like the Class Members, is a consumer for purposes of Bus. & Prof. Code §§ 17600-17606. PLAINTIFF INGALLS suffered injury-in-fact because he lost money or property which constituted payment for FPSS.

9.   PLAINTIFF HONG is, and at all times relevant hereto was, an individual residing in Lomita, California. PLAINTIFF HONG purchased PPSS from Defendant in California on or about

December 29, 2014 in the amount of $0.99 for a three-month period. PLAINTIFF HONG was auto-renewed on March 29, 2015 in the amount of $9.99 and subsequently on a monthly basis. PLAINTIFF HONG has standing to pursue this action pursuant to Bus. & Prof. Code § 17200, *et seq.* PLAINTIFF HONG, like the Class Members, is a consumer for purposes of Bus. & Prof. Code §§ 17600-17606. PLAINTIFF HONG suffered injury-in-fact because he lost money or property which constituted payment for PPSS.

10.     Defendant SPOTIFY USA, INC. is a corporation organized under the laws of Delaware, with its principal place of business located at 45 West 18th Street, Floor 7, New York, NY 10011. Spotify operates in California and has done business throughout California at all times during the Class Period.

11.     The true names and capacities, whether individuals, corporate, associate, their alter egos, or otherwise sued herein as DOES 1 through 10 inclusive are presently unknown to Plaintiffs who therefore sue these Defendants by fictitious names. Plaintiffs will seek leave of this Court to amend the Complaint to show their true name and capacities, when same have been ascertained. Plaintiffs are informed and believes and based thereon allege that DOES 1 through 10 were authorized to do and did business in California. Plaintiffs are further informed and believe and based thereon allege that DOES 1 through 10 were and/or are, in some manner or way, responsible for and liable to Plaintiffs for the events, happenings, and damages hereinafter set forth below.

12.     Plaintiffs are informed and believe and based thereon allege that at all times relevant herein each of the Defendants was the agent, servant, employee, subsidiary, affiliate, partner, assignee, successor-in-interest, alter ego, or other representative of each of the remaining Defendants and was acting in such capacity in doing the things herein complained of and alleged.

### III.     JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

14.     This Court has jurisdiction over Defendant because, among other things, Defendant has sufficient minimum contacts in California, or otherwise intentionally avails itself of the markets within California. At all relevant times, Defendant regularly and systematically transacted business within the State of California, and the wrongful conduct described herein reached California Consumers. Defendant derives substantial revenue from California residents.  Also during the Class Period, Defendant has made, and continues to make, ARCSOs to California Consumers.

15.     The Court further has jurisdiction over the parties and Class Members pursuant to the Terms and Conditions of Use drafted by Defendant, pursuant to which Spotify has agreed to the jurisdiction of this Court.

16.     Venue is proper in this District under 28 U.S.C. § 1391(b)(3) because the Court has personal jurisdiction over Defendant, a substantial portion of the alleged wrongdoing occurred in this District and California, and Defendant has sufficient contacts with this District and California.

## IV.     CALIFORNIA'S AUTOMATIC PURCHASE RENEWAL LAW

17.     Sections 17600-17606 of the Cal. Bus. & Prof. Code came into effect in December 2010, with the intent of ending "the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." Cal. Bus. & Prof. Code § 17600.

18.     Cal. Bus. & Prof. Code § 17601(d) defines a "consumer" as "any individual who seeks or acquires, by purchase or lease, any goods, services, money, or credit for personal, family, or household purposes."

19.     Cal. Bus. & Prof. Code § 17601(a) defines the term "Automatic Renewal" as a "plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term."

20.     Cal. Bus. & Prof. Code § 17601(b) defines the term "Automatic renewal offer terms" as "the following clear and conspicuous disclosures: (1) That the subscription or purchasing agreement will continue until the consumer cancels. (2) The description of the cancelation policy that applies to the offer. (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the

amount of the charge may change, if that is the case, and the amount to which the charge will change, if known. (4) The length of the automatic renewal term or that the service is continuous, unless the length of the tern is chosen by the consumer. (5) The minimum purchase obligation, if any."

21.   <u>Cal. Bus. & Prof. Code</u> § 17601(e) defined "Continuous service" as "a plan or arrangement in which a subscription or purchasing agreement continues until the consumer cancels the service."

22.   Pursuant to <u>Cal. Bus. & Prof. Code</u> § 17601(c), "clear and conspicuous" or "clearly and conspicuously'' means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language."

23.   Under the law, it is unlawful for any business making an automatic renewal or continuous service offer to a consumer to do any of the following:

a.   Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity . . .  to the request for consent to the offer (<u>Cal. Bus. & Prof. Code</u> § 17602(a)(1));

b.   Charge the consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms (<u>Cal. Bus. & Prof. Code</u> § 17602(a)(2)); and/or

c.   Fail to provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the offer includes a free trial, the business shall also disclose in the acknowledgment how to cancel and allow the consumer to cancel before the consumer pays for the goods or services (<u>Cal. Bus. & Prof. Code</u> § 17602(a)(3)).

24.     Further, "[a] business making automatic renewal or continuous service offers shall provide a toll-free telephone number, electronic mail address, a postal address only when the seller directly bills the consumer, or another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the acknowledgment specified in [§ 17602(a)(3)]." Cal. Bus. & Prof. Code § 17602(b).

25.     Further, "[i]n the case of a material change in the terms of the automatic renewal or continuous service offer that has been accepted by a consumer in this state, the business shall provide the consumer with a clear and conspicuous notice of the material change and provide information regarding how to cancel in a manner that is capable of being retained by the consumer." Cal. Bus. & Prof. Code § 17602(c).

26.     The disclosures in §§ 17602(a)(1)-(2) and § 17602(b) must be made "prior to the completion of the initial order for the automatic renewal or continuous service," while the disclosure in § 17602(a)(3) "may be fulfilled after completion of the initial order." Cal. Bus. & Prof. Code § 17602(d). The requirement in § 17602(c) "shall be fulfilled prior to the implementation of the material change."

## V.      FACTS

**A.      Defendant's Failure to Properly Disclose the ARCSO Terms**

27.     Upon information and belief, and as Spotify has previously alleged generally, the images attached hereto as Exhibit C (a composite of certain exhibits from a prior action against Spotify) purport to reflect the webpages (or were substantially similar in all material aspects to previous and subsequent webpages) provided to Consumers, including Plaintiffs and the Class Members, signing up for PSS.

28.     The webpages on which Consumers subscribed to PSS did not clearly and conspicuously reflect Spotify's ARCSO Terms before any Consumers' subscription or purchasing agreement was fulfilled and in visual proximity to the request for consent to Spotify's offer.

29.     None of the ARCSO Terms were presented "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to

the language."

30.     Spotify instead sought to minimize the visual presence of the ARCSO Terms through the use of small font, shaded coloration on pages already containing multiple more prominent colors reflecting total's due of $0.00 or $9.99 (or an introductory price), and/or the absence of symbols or other marks to call attention to the ARCSO Terms.

31.     Despite Spotify's purported reservation of the right to change the price of its PSS subscriptions in, for example Section 15 of the 2015 Terms and Sections 12 and 13 of the 2012 and 2014 Terms, respectively, no mention of this reservation of rights was mentioned, much less clearly and conspicuously presented, in the webpages presented to Consumers.

32.     As part of the enrollment process for PSS, Spotify did not seek Consumers' consent to the ARCSO Terms and instead requested Consumers to "Confirm Payment" or otherwise proceed without seeking explicit consent to the ARCSO Terms. On information and belief, Spotify instead had Consumers "Sign Up" to its webpage before allowing a Consumer to further explore free or premium Spotify. Spotify made no mention of any ARCSO Terms on the Sign Up page and, on information and belief, did not provide a hyperlink to its Terms and Conditions of Use near the "Sign Up" tab until late 2013.

33.     As the owner and operator of its webpage, Spotify could have disclosed the ARCSOs in a manner that clearly called attention to the language of the ARCSOs but chose not to do so. Following Consumers' enrollment in a PSS, Spotify failed to provide an acknowledgment that included its ARCSO Terms in a manner capable of being retained by the Consumer and, in the case of FPSS Consumers, further failed to disclose in the acknowledgment how to cancel and allow the Consumer to cancel before the Consumer payment for his or her PSS.

34.     Spotify also charged the consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms

**B.**     **Factual Allegations as to PLAINTIFF INGALLS**

35.     On or about June 8, 2013, PLAINTIFF INGALLS visited the spotify.com website.

36.     At that time, PLAINTIFF INGALLS joined FPSS.

37.     Prior to the initial completion of PLAINTIFF INGALLS' order for FPSS, Spotify failed to clearly and conspicuously disclose the ARCSO Terms to him in visual proximity to the request for consent to the ARCSO Terms.

38.     On or about June 8, 2013, Spotify sent PLAINTIFF INGALLS and acknowledgement, a copy of which is attached as Exhibit D, which failed to include the ARCSO Terms in a manner capable of being retained by the Consumer and further failed to disclose how to cancel and his right to cancel before the due date of his first payment for PSS.

39.     On July 8, 2013 and thereafter, Defendant subsequently charged the amount of $9.99/month to PLAINTIFF INGALLS' consumer credit or debit card with a third party for an automatic renewal or continuous service without first obtaining PLAINTIFF INGALLS' affirmative consent to the agreements containing the automatic renewal offer terms or continuous service offer terms.

**C.      Factual Allegations as to PLAINTIFF HONG**

40.     On or about December 29, 2014, PLAINTIFF HONG visited the spotify.com website.

41.     At that time, PLAINTIFF HONG joined PPSS, for an initial fee of $0.99 for three months of service.

42.     Prior to the initial completion of PLAINTIFF HONG's order for PPSS, Spotify failed to clearly and conspicuously disclose the ARCSO Terms to him in visual proximity to the request for consent to the ARCSO Terms.

43.     On or about December 29, 2014, Spotify sent PLAINTIFF HONG an acknowledgement, a copy of which is attached as Exhibit E, which failed to include the ARCSO Terms in a manner capable of being retained by the Consumer and further failed to disclose how to cancel and his right to cancel before the due date of his first payment for PSS.

44.     On March 15, 2015 and thereafter, Defendant subsequently charged the amount of $9.99/month to PLAINTIFF HONG'S consumer credit or debit card with a third party for an automatic renewal or continuous service without first obtaining PLAINTIFF HONG'S affirmative consent to the agreements containing the automatic renewal offer terms or continuous service offer terms.

# VI.   CLASS ACTION ALLEGATIONS

45.    Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated as following:

**Class**
**All natural persons in the United States who, since June 23, 2012, purchased a Premium Subscription Service through spotify.com.**

**Subclass One**
**All natural persons in the Class who purchased a Premium Subscription Service through spotify.com in connection with a free trial period.**

**Subclass Two**
**All natural persons in the Class who purchased a Premium Subscription Service through spotify.com with no free trial period.**

Collectively, the "Class." Plaintiffs reserve the right to amend these definitions.

46.    Specifically excluded from the Class and Subclasses are: (a) all judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Defendant releases of all their claims for all of their Class claims; (d) all counsel for Plaintiffs; and (e) Defendant's employees, officers, directors, agents, and representatives and their family members.

47.    The Class Members are so numerous that joinder of all members is impractically, and the disposition of their claims in a class action will benefit the parties and the Court. At this time, Plaintiffs do not know the exact size of the Class. Based on information and belief, the Class is comprised of hundreds of thousands if not millions of members so as to render joinder of all Class Members impracticable. Defendant, however, has this information readily available, as Defendant has a record of every Class Member due to their enrollment in PSS. Thus Defendant has a record of every member of the class and contact information for every member of the class, thereby also confirming direct notice can be given to every Class Member.

48.    Common questions of law and fact predominate over individual issues. There is a well-defined community of interest in the questions of law and fact affecting Members of the Class. The questions of law and fact common to the Classes predominate over questions affecting only individual

Class Members, and include, but are not limited to, the following:

a. Whether Defendant's PSS constitutes an automatic renewal and/or continuous service plan or arrangement for the purposes of Cal. Bus. & Prof. Code § 17601;

b. Whether the information presented to Plaintiffs and Class Members by Defendant prior to the initial order of PSS contained all the disclosures required by Cal. Bus. & Prof. Code § 17601(b);

c. Whether the information regarding the PSS auto-renewal provided by Defendant on its website and during the PSS purchasing process was provided in a "clear and conspicuous manner" as defined by Cal. Bus. & Prof. Code § 17601(c);

d. Whether Defendant failed to present the automatic renewal offer terms, or continuous service offer terms, in a clear and conspicuous manner before the subscription or purchasing agreement was fulfilled and in visual proximity to the request for consent to the offer, in violation of Cal. Bus. & Prof. Code § 17602(a)(l);

e. Whether Defendant charged Plaintiffs' and Class Members' Payment Methods for an automatic renewal or continuous service without first obtaining the Plaintiffs' and Class Members' affirmative consent to the automatic renewal offer terms or continuous service offer terms, in violation of Cal. Bus. & Prof. Code § 17602(a)(2);

f. Whether Defendant failed to provide Plaintiffs and Class Members with an acknowledgment that included its ARCSO Terms in a manner capable of being retained by the Consumer and/or failed to disclose in the acknowledgment how to cancel and that the Consumer could cancel before the Consumer's payment for his or her PSS, in violation of Cal. Bus. & Prof. Code § 17602(a)(3).

g. Whether Plaintiffs and Class Members are entitled to restitution in accordance with Cal. Bus. & Prof. Code §§ 17200, 17203;

h. Whether Plaintiffs and Class Members are entitled to injunctive relief under Cal. Bus. & Prof. Code § 17203;

i.    Whether Plaintiffs and Class Members are entitled to declaratory relief that, due to Defendant's initial failure to properly disclose to them that Defendant's Terms and Condition of Use purport to allow Defendant to increase the monthly charge to them, Defendant may not raise the price of PSS for enrollees without first obtaining their affirmative consent in a manner to be approved by the Court;

j.    Whether Plaintiff and Class Members are entitled to attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

49.    Plaintiffs' claims are typical of the claims of Class Members.  Plaintiffs and all members of the Class have been subjected to Defendant's common course of unlawful conduct as complained of herein, and were subjected to highly similar if not identical web pages for purposes of the material issues reference herein while signing up on spotify.com.

50.    Plaintiffs are adequate representatives of the Class because they fit within the class definition and their interests do not conflict with the interests of the members of the Class they seek to represent. Plaintiffs will prosecute this action vigorously for the benefit of the entire Class. Plaintiffs are represented by experienced and able attorneys. Plaintiffs and class counsel can and will fairly and adequately protect the interests of all the members of the Class.

51.    A class action is the superior method for the fair and just adjudication of this controversy. The expense and burden of individual suits makes it impossible and impracticable for members of the proposed Class to prosecute their claims individuals.

52.    The trial and litigation of Plaintiffs' and the proposed Class's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the Court system.

53.    Defendant has acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

54.    Unless a permanent injunction is issued, Defendant will continue to commit the violations alleged herein, and the members of the proposed Class and the general public will continue to be misled. Because of the small size of the individual Class members' claims, few, if any, will make claims.

55.     If necessary, notice of this action may be affected to the proposed class through publication, and for virtually all class members, direct notice may be achieved through contact information from customer lists, which, on information and belief, are maintained by Defendant.

## VII.     FIRST CAUSE OF ACTION

### Conduct in Violation of California's Automatic Purchase Renewal Clause

### Cal. Bus. & Prof. Code § 17600, *et seq.*

56.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 55 and 69 through 78, and incorporate the same as if set forth herein at length.

57.     This cause of action is brought pursuant to Cal. Bus. & Prof. Code § 17600, *et seq.,* by Plaintiffs on behalf of the Class and Subclasses defined above.

58.     Defendant's practice of automatically renewing Plaintiffs and the Class Members in its PSS program by charging their credit cards after a month constitutes an "automatic renewal" within the meaning of §17601(a) of the APRL.

59.     Plaintiffs and Class Members are "consumers" within the meaning of the APRL.

60.     ***First Violation.*** Defendant obtained Plaintiffs' agreement to its Terms and Conditions of Use at its initial "Sign Up" page on its website without disclosing, in a clear and conspicuous manner, the ARCSO Terms in visual proximity to the request for consent, violating §§ 17601(c) and 17602(a)(1).

61.     ***Second Violation.*** Defendant failed to disclose Spotify's ARCSO Terms in a clear and conspicuous manner on the webpages where Consumers subscribed to PSS. None of the ARCSO Terms were presented "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language" and/or were not provided in visual proximity to the request for consent to the offer, violating §§ 17601(c) and 17602(a)(1). Spotify instead sought to minimize the visual presence of the ARCSO Terms through the use of small font, shaded coloration on pages already containing multiple more prominent colors reflecting total's due of $0.00, $0.99, or $9.99, and/or the absence of symbols or other marks to call attention to the ARCSO Terms.

62.   ***Third Violation.*** Defendant failed to disclose its reservation of the right to change the price of its PSS subscriptions on the webpages where Consumers subscribed to PSS, much less in a clear and conspicuous manner and/or in visual proximity to the request for consent to the offer, violating §§ 17601(c) and 17602(a)(1).[2]

63.   ***Fourth Violation.*** As part of the enrollment process for PSS, Spotify did not seek Consumers' consent to the ARCSO Terms and instead requested Consumers to "Confirm Payment" or otherwise proceed without seeking consent to the ARCSO Terms.

64.   ***Fifth Violation.*** Following Consumers' enrollment in a PSS, Spotify failed to provide an acknowledgment that included its ARCSO Terms in a manner capable of being retained by the Consumer and, in the case of FPSS Consumers, further failed to disclose in the acknowledgment how to cancel and allow the Consumer to cancel before the Consumer payment for his or her PSS, violating § 17602(a)(3).

65.   ***Sixth Violation.*** Defendant charged the Plaintiff's credit or debit card or the Consumer's account with a third party for an automatic renewal or continuous service without first obtaining the Consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, violating § 17602(a)(2).

66.   These violations occurred uniformly against both the Plaintiffs and all the Class Members.

67.   As a result of Defendant's violations of <u>Cal. Bus. & Prof. Code</u> § 17600 *et seq.*, Defendant is subject under <u>Cal. Bus. & Prof. Code</u> § 17604 to all civil remedies that apply to a violation of Article 9, of Chapter l, of Part 3, of Division 7 of the <u>Cal. Bus. & Prof. Code</u>.

68.   Plaintiffs, on behalf of themselves and Class Members, request the relief as described herein and below.

## VIII.   <u>SECOND CAUSE OF ACTION</u>

### Unlawful Conduct in Violation of California's Unfair Competition Law

### Cal. Bus. & Prof. Code § 17200, *et seq.*

---

[2] Defendant's purported reservation of the right to change the price of its subscriptions is set forth in its Terms and Conditions of Use.

69.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 68, and incorporate the same as if set forth herein at length.

70.     This cause of action is brought pursuant to Cal. Bus. & Prof. Code § 17200 by Plaintiffs on behalf of the Class defined above.

71.     As described in Plaintiffs' First Cause of Action, Defendant's marketing and sale of its PSS program violates the APRL, which constitutes an unlawful business practice.

72.     Plaintiffs and the Class suffered a loss of money or property as a result of Defendant's unlawful acts.

73.     As a direct and proximate result of Defendant's unlawful and/or unfair business acts or practices described herein, Defendant has received, and continues to hold, unlawfully obtained property and money belonging to Plaintiffs and Class Members in the form of payments made for PSS by Plaintiffs and Class Members. Defendant has profited from its unlawful and/or unfair business acts or practices in the amount of those business expenses and interest accrued thereon.

74.     Plaintiffs and similarly-situated Class Members are entitled to restitution pursuant to Cal. Bus. & Prof. Code § 17203 for all monies paid by Class Members under the subscription agreements from December 1, 2010, to the date of such restitution at rates specified by law. Defendant should be required to disgorge all the profits and gains it has reaped and restore such profits and gains to Plaintiff and Class Members, from whom they were unlawfully taken.

75.     Plaintiffs and similarly situated Class Members are entitled to enforce all applicable penalty provisions pursuant to Cal. Bus. & Prof. Code § 17202, and to obtain injunctive relief pursuant to Cal. Bus. & Prof. Code § 17203.

76.     Specifically, Plaintiffs seek an injunction, on behalf of themselves and the Class Members, that Defendant (a) cannot charge Plaintiffs and the Class Members any amount of fee for the auto-renewal of their Subscriptions without first obtaining each such Users' affirmative consent in a form and manner as approved by this Court; and (b) Defendant cannot raise the price of its PSS without first obtaining a customer's affirmative consent in a form and manner as approved by the Court.

77.     Plaintiffs have assumed the responsibility of enforcement of the laws and public policies specified herein by suing on behalf of themselves and other similarly-situated Class Members.

Plaintiffs' success in this action will enforce important rights affecting the public interest. Plaintiffs will incur a financial burden in pursuing this action in the public interest. An award of reasonable attorneys' fees to Plaintiff is thus appropriate pursuant to California Code of Civil Procedure § 1021.5.

78.     Plaintiffs, on behalf of themselves and Class Members, request the relief as described herein and below.

## IX.     THIRD CAUSE OF ACTION

### Declaratory Relief – Arbitration Clause and Purported Class Action Waiver
### Invalid, Inapplicable and/or Unconscionable

79.     Plaintiffs repeat and reallege the allegations set forth above and incorporate the same as if set forth herein at length.

80.     The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

81.     As described above, this Court has jurisdiction over this matter, and therefore may declare the rights of Plaintiffs and the Class.

82.     The Terms and Conditions of Use drafted by Defendant do not require that Plaintiffs arbitrate the causes of action set forth in this Class Action Complaint.

83.     Plaintiffs, on behalf of themselves and Class Members, seek the following from the Court:

    a.   A declaration that Plaintiffs and Defendant have no valid arbitration agreement, and/or no valid arbitration agreement requiring the arbitration of Plaintiffs' claims, because they formed no such arbitration agreement;

    b.   A declaration that, if Plaintiff and Defendant entered an arbitration agreement, any such agreement is unconscionable and unenforceable such that it cannot and does not require Plaintiffs to arbitrate their claims or any portion thereof;

    c.   A declaration that, if Plaintiff and Defendant entered an arbitration agreement, it is inapplicable to Plaintiffs' requests for injunctive relief; and

d.   A declaration that Section 24.2 of Defendants' 2015 Terms does not bar Plaintiffs from maintaining this action as a class action in this court because it is unconscionable and unenforceable.

**(1)   No Delegation**

84.   Any questions regarding whether Plaintiffs' claims must be arbitrated are for the Court. Plaintiffs and/or Defendant did not clearly and unmistakably delegate such questions to an arbitrator and any alleged delegation clause cited by Spotify would be unconscionable.

85.   The facts in support of this conclusion include, without limitation, the following:

a.   Defendant did not expressly delegate issues of arbitrability to an arbitrator or quote within any of its Terms and Conditions of Use any rule providing for such delegation;

b.   Section 18 of the 2012 Terms and Section 19 of the 2014 Terms each stated: "you and Spotify agree to the exclusive jurisdiction of the state and federal courts in San Francisco County, California or New York, New York to resolve any dispute, claim or controversy that arises in connection with these Agreements."

c.   Defendant did not attach the arbitration rules referenced in Section 18 to the 2012 Terms or Section 19 of 2014 Terms to such Terms and Conditions of Use;

d.   Section 24.1 of the 2015 Terms expressly provides that the Parties "agree to the jurisdiction of [this Court] to resolve any dispute, claim, or controversy that arises in connection with the Agreements (and any non-contractual disputes/claims arising out of or in connection with them) (In some cases, that jurisdiction will be "exclusive", meaning that no other countries' courts can preside over the matter; have jurisdiction; in other cases, the jurisdiction is "non-exclusive", meaning that other countries' courts may have jurisdiction as well.)"  It further provides that, in the United States, jurisdiction is "exclusive" with reference to the "State and Federal Courts of San Francisco County, CA or New York, NY;"

e.   In contrast, Section 24.3 of the 2015 Terms states: "If you are located in, are based in, have offices in, or do business in a jurisdiction in which this Section 24.3 is enforceable, the following mandatory arbitration provisions apply to you," and this is followed by

Sections 24.3.1 through 24.3.7.  Thus, for purposes of any position by Defendant that Consumers agreed to delegate issues of arbitrability to an arbitrator, it would require Consumers to (1) undertake a legal analysis of whether Section 24.3 is "enforceable" in their jurisdiction, which is a complex and complicated analysis, and (2) discern that, even if so, then Defendant's explicit specification of the courts in San Francisco, California to "resolve any dispute, claim, or controversy that arises in connection with these Agreements" somehow does not allow any such court to decide whether their claims must be arbitrated; and (3) and then somehow glean such a delegation from Section 24.3;

f.  Defendant further muddied any such analysis with Section 24.3.3 of the 2015 Terms, which states:  "Either you or we may start arbitration proceedings. If you are located in, are based in, have offices in, or do business in the United States, any arbitration between you and Spotify will be finally settled under the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes of the American Arbitration Association ('AAA') then in force (the 'AAA Rules'), as modified by the Agreements."  Spotify did not attach the purported arbitration rules referenced in Section 24.3.3 to the 2015 Terms and instead refers Consumers to the AAA's website and phone number. The AAA's website, however, does not contain a set of rules or procedures titled "Commercial Dispute Resolution Procedures" as Section 24.3.3 suggests to Consumers;

g.  The AAA's Supplementary Procedures for Consumer Related Disputes ("Supplementary Procedures") were "replaced" by the AAA's Consumer Arbitration Rules effective September 1, 2014 as stated in the preamble to the AAA's Consumer Arbitration Rules. In other words, Section 24.3.3 refers to Supplementary Procedures which had been replaced one year earlier; and

h.  Notwithstanding that the Supplementary Procedures are no longer in effect, a Consumer searching for such procedures by name on the AAA's site is directed to such procedures in a PDF format.  Nothing within the PDF that the AAA currently provides of the

replaced Supplementary Procedures indicates that the Supplementary Procedures have been replaced by the Consumer Arbitration Rules. The Supplementary Procedures make no reference to the delegation of issues of arbitrability to an arbitrator and likewise refer to the "Commercial Dispute Resolution Procedures" of which there are no rules or procedures on the AAA's website with such a name.

### (2)    No Valid Agreement Requiring Arbitration

86.    Section 18 of the 2012 Terms and Section 19 of the 2014 Terms each stated: "you and Spotify agree to the exclusive jurisdiction of the state and federal courts in San Francisco County, California or New York, New York to resolve any dispute, claim or controversy that arises in connection with these Agreements."

87.    The next paragraph of such Sections stated, "If you are a United States user, the following mandatory arbitration provisions also apply to you: i. [1. in the 2014 Terms] You and Spotify agree that any dispute, claim or controversy arising out of or relating in any way to the Spotify Service or your use thereof, including our Agreements, shall be determined by mandatory binding arbitration."

88.    Thus, Sections 18 of the 2012 Terms and Section 19 of the 2014 Terms refer to the "exclusive jurisdiction" of the court to "resolve any claim, dispute or controversy" that arises in connection with these Agreement," which covers Plaintiffs' claims; and (2) employ similar language to suggest that any such any such "dispute, claim or controversy" is to be "determined by mandatory arbitration." These conflicting terms cannot be harmonized. Plaintiffs and Spotify did not enter a valid agreement to arbitrate or requiring arbitration.

89.    Alternatively, to extent there was an agreement on arbitration, it gave Plaintiffs the right to elect between invoking the "exclusive jurisdiction" of this court and commencing "mandatory arbitration."

90.    Section 2 of Defendant's 2012 and 2014 Terms each stated: "we may, in our discretion, make changes to the Spotify Service and Agreements. When we make changes to the Agreements that we consider material, we'll notify you through the Service. By continuing to use the Service after those changes are made, you are expressing and acknowledging your acceptance of the changes." This clause is unconscionable.

91.     Section 24.1 of the 2015 Terms expressly provides that the Parties "agree to the jurisdiction of [this Court] to resolve any dispute, claim, or controversy that arises in connection with the Agreements (and any non-contractual disputes/claims arising out of or in connection with them) (In some cases, that jurisdiction will be "exclusive", meaning that no other countries' courts can preside over the matter; have jurisdiction; in other cases, the jurisdiction is "non-exclusive", meaning that other countries' courts may have jurisdiction as well.)"   It further provides that, in the United States, jurisdiction is "exclusive" with reference to the "State and Federal Courts of San Francisco County, CA or New York, NY.

92.     As noted, Section 24.3 of the 2015 Terms states: "If you are located in, are based in, have offices in, or do business in a jurisdiction in which this Section 24.3 is enforceable, the following mandatory arbitration provisions apply to you," and this is followed by Sections 24.3.1 through 24.3.7.  This section is too indefinite to be enforceable as a contract term against Consumers, and is otherwise invalid.  Whether Section 24.3 is enforceable presents complex and complicated issues. Only a court may determine whether Section 24.3 is enforceable, and this issue cannot be determined by Consumers *ex ante* when they become PSS subscribers.  Defendant and Consumers by definition cannot and could not reach a meeting of the minds on whether Section 24.3 is enforceable.  At a minimum, Section 24.3 presents ambiguities regarding whether it "applies" to Consumers that must be construed against Defendant as the drafter of the section.

93.     Section 24.3.1 of the 2015 Terms provides:  "You and Spotify agree that any dispute, claim, or controversy between you and Spotify arising in connection with or relating in any way to these Agreements or to your relationship with Spotify as a user of the Service (whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and whether the claims arise during or after the termination of the Agreements) will be determined by mandatory binding individual arbitration."

94.     Defendant cannot establish a valid agreement to arbitrate through a unilateral revision to its 2012 and 2014 Terms.

95.     Alternatively, for purposes of determining whether there is valid agreement requiring arbitration of Plaintiffs' claims, under the three provisions above from the 2015 Terms there is no valid

1  agreement to arbitrate between Plaintiffs and Spotify.

2      96.     Alternatively, to extent there was an agreement on arbitration, it allowed Plaintiffs

3  to elect between invoking the "exclusive jurisdiction" of this Court and commencing an arbitration.

4      97.     Alternatively, Section 24.3 of the 2015 Terms contains a condition precedent and

5  applies only if "this Section 24.3 is enforceable." Thus, Section 24.3 does not apply if any portion of

6  Section 24.3 is unenforceable and, as shown below, portions of Section 24.3 are unconscionanble.

7  Section 24.3 is not saved by Section 21 of the 2015 Terms.  A severability clause, Section 21 provides

8  that in the event a term is unenforceable "the remaining provisions" of the Terms and Conditions of

9  Use shall be enforced to the extent permitted by law. This savings clause, however, is limited by the

10 opening phrase of Section 21, which states "[u]nless as otherwise stated in the Agreements [which

11 include the 2015 Terms]." As noted, Section 24.3 states otherwise given that it expressly conditions the

12 applicability of Section 24.3 on whether "this Section 24.3 is enforceable."

13     98.     Alternatively, assuming for the sake of argument only that there is a valid agreement

14 requiring Plaintiffs to arbitrate their claims or any portion thereof, the following items in Sections 3

15 and 4 below are pled in the alternative and demonstrate that any such agreement is unconscionable,

16 unenforceable and/or inapplicable to Plaintiffs' claims.

17              **(3)     Unconscionable and Unenforceable**

18     99.     Sections 18(i)-(iv) of the 2012 Terms, Sections 19(1)-(4) of the 2014 Terms and Section

19 24.3 of the 2015 Terms were and are procedurally and substantively unconscionable and unenforceable

20 for multiple reasons, including but not limited to the following reasons:

21          a.  Defendant is a large, sophisticated corporation.  As noted, its Terms and Conditions of

22              Use purport to invoke the AAA's Supplementary Procedures. As noted in the

23              Supplementary Procedures, the AAA "applies the Supplementary Procedures for

24              Consumer-Related Disputes to arbitration clauses in agreements between individual

25              consumers and businesses where the business has a standardized, systematic application

26              of arbitration clauses with Users and where the terms and conditions of the purchase of

27              standardized, consumable goods or services are non-negotiable or primarily non-

28              negotiable in most or all of its terms, conditions, features, or choices." In seeking to

invoke such procedures, Defendant acknowledges that the Terms and Conditions of Use were non-negotiable;

b. Defendant drafted the purported arbitration terms in complex legalese and such terms possess a Flesch Readability Ease score roughly the equivalent of, or worse than in terms of greater complexity, the score commonly ascribed to Harvard Law Review;

c. Sections 18 of the 2012 Terms and Section 19 of the 2014 Terms refer to the "exclusive jurisdiction" of the court to "resolve any claim, dispute or controversy" that arises in connection with these Agreement," which covers Plaintiffs' claims; and (2) employ similar language to suggest that any such any such "dispute, claim or controversy" is to be "determined by mandatory arbitration.  This conflict invites surprise relative to any claim by Defendant that the second clause somehow trumps the first clause providing for the "exclusive jurisdiction" of this Court;

d. Defendant did not attach the arbitration rules referenced in Sections 18 and 19 of the 2012 or 2014 Terms to such Terms;

e. Defendant buried Sections 18 and 19 in the end of the 2012 and 2014 Terms, and if a Consumer were to use the table of contents in such Terms and access those sections, the first thing a consumer would read was the paragraph referencing the "exclusive jurisdiction" of this Court;

f. Section 18(iv) of the 2012 Terms, Section 19(4) of the 2014 Terms and Section 24.3.4 of the 2015 Terms all imposed a purported one-year statute of limitations period on claims asserted in arbitration, without imposing a similar temporal reduction for the statute of limitations on claims Spotify might bring outside of arbitration, reflecting Spotify's intent to limit the protections to Consumers for purposes of the claims such as those asserted in this Complaint and to undermine the statutes cited herein;

g. Section 18(ii) of the 2012 Terms, Section 19(2) of the 2014 Terms and Section 24.3.2(4) of the 2015 Terms carve out from the alleged mandatory arbitration "intellectual property infringement claims." Such claims are more likely to be asserted by Defendant as opposed to any PSS subscriber.

h. Section 2 of Defendant's 2012 and 2014 Terms each stated: "we may, in our discretion, make changes to the Spotify Service and Agreements.  When we make changes to the Agreements that we consider material, we'll notify you through the Service.  By continuing to use the Service after those changes are made, you are expressing and acknowledging your acceptance of the changes."  This clause is unconscionable as illustrated by the additional unconscionable unilateral revisions Defendant made to the 2015 Terms on or about September 19, 2015;

i. For example, Section 24.3 of the 2015 require Users to understand whether "this Section 24.3 is enforceable" in order to understand whether they may have agreed to arbitration. Whether Section 24.3 is enforceable presents complex and complicated issues.  Only a court may determine whether Section 24.3 is enforceable. This issue cannot be determined by Consumers *ex ante* when they become PSS subscribers, resulting in unconscionable surprise if it is read to require arbitration.  In contrast, Section 24.1 clearly states that Defendant agrees to the jurisdiction of this Court "to resolve any dispute, claim, or controversy that arises in connection with the Agreements (and any non-contractual disputes/claims arising out of or in connection with them);"

j. Defendant added language in the 2015 Terms in Section 24.3.6 purporting to allow Defendant to unilaterally modify the terms of Section 24.3.  The requirements for Users to object to changes made by Defendant to Section 24.3 are more onerous in comparison to changes in other terms of the 2015 Terms.  Section 24.3.6 requires Users to send "written notice within 30 days of the change to Spotify's address for Notice" in order to allegedly avoid being bound by Spotify's unilateral changes to Section 24.3. Defendant's "address for Notice" requires the use of non-electronic submission such as mail yet the same clause contemplates Defendant sending "Notice" to Users by electronic mail.

k. In Sections 18(ii) and 19(2) of the 2012 and 2014 Terms, respectively, Defendant excluded from arbitration any claims related to allegations of theft, piracy or the unauthorized use of Spotify.  In *Bleak v. Spotify USA, Inc.*, Case No. 3:13-cv-05653, in

the United States District Court for the Northern District of California, a Consumer filed a lawsuit and asserted that her claim (which included a putative class action) fell within this exception.  Spotify subsequently amended Section 19 to remove this exception from the current listing of exceptions to arbitration under Section 24.3 found in Section 24.3.2 of the 2015 Terms.

l. Defendant also added unconscionable Section 24.3.5 to the 2015 Terms which contains prohibitions on Plaintiffs against the making of "any public announcement or public comment or originat[ing] any publicity concerning the arbitration, including, but not limited to, the fact that the parties are in dispute, the existence of the arbitration, or any decision or award of the arbitrator;" and

m. Defendant referenced the AAA's non-existent "Commercial Dispute Resolution Procedures" in Section 24.3.1 of the 2015 Terms and the replaced Supplement Procedures.

100.   These defects are indicative of an unlawful effort to impose arbitration on Consumers not as an alternative to litigation, but as an inferior forum that works to Defendant's advantage. The circumstance under which the clause is presented to Consumers is unfair and oppressive, devoid of any actual negotiation, and designed to take advantage of the unequal bargaining power between Consumers and Defendant. These unconscionable aspects render Section 24.3 wholly unenforceable.

(**4**)   **Section 24.3 Does Not Apply – Injunctive Relief**

101.   Section 24.3.2 of the 2015 Terms drafted by Defendant states that "nothing herein will be deemed to waive, preclude or otherwise limit" the right of any User or Defendant to "(3) seek injunctive relief in a court of law."

102.   Plaintiffs are seeking, among other things, injunctive relief in this case.  Section 24.3.2 expressly allows for Plaintiffs to seek such relief from this Court.

103.   Defendant has waived any argument that Plaintiffs' claims seeking injunctive relief must be arbitrated.

(**5**)   **Section 24.2 Does Not Apply – Class Action Waiver**

104.   Section 18 of the 2012 Terms and Section 19 of the 2014 Terms stated: "If you are a

United States user, the following mandatory arbitration provisions also apply to you: . . . iii. [3. in the 2014 Terms] YOU AND SPOTIFY AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A CLASS MEMBER OR IN ANY REPRESENTATIVE CAPACITY OR PROCEEDING. Further, no arbitrator shall consolidate any other person's claims with your claims, and may not otherwise preside over any form of a multi-party or class proceeding. If this specific provision is found to be unenforceable in any way, then the entirety of this arbitration section shall be null and void. The arbitrator may not award declaratory or injunctive relief. "

105.    Nothing in Section 18 or Section 19 purported to serve as a class-action waiver for claims asserted in court.

106.    In Section 24.2 of the 2015 Terms, Defendant unilaterally revised its Terms and Conditions of Use to purportedly expand the scope of its alleged class action waiver to apply to claims asserted in court in as follows:  "24.2 CLASS ACTION WAIVER . . . WHERE PERMITTED UNDER THE APPLICABLE LAW, YOU AND SPOTIFY AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE ACTION. Unless both you and Spotify agree, no arbitrator or judge may consolidate more than one person's claims or otherwise preside over any form of a representative or class proceeding."

107.    Defendant cannot bind Plaintiffs to a class action waiver applicable to claims filed in a court based on Defendant's above-referenced unilateral revision to the purported class action waiver in its 2012 and 2014 Terms.

108.    Alternatively, the Federal Arbitration Act does not preempt California law on whether an alleged class action waiver which purportedly applies to claims in court is unconscionable.

109.    Section 24.2—which does not provide an opt-out mechanism—wrongfully limits Plaintiffs' right to recover in consolidated litigation against Defendant where individual litigation would be impracticable, overly burdensome, and judicially inefficient. The clause thus has a chilling effect on consumer litigation against Defendant that effectively insulates Defendant from liability. The

circumstances under which Section 24.2 was presented was unfair and oppressive, devoid of any actual negotiation, and designed to take advantage of the unequal bargaining power between Consumers and Defendant. These unconscionable aspects render Section 24.2 wholly unenforceable under California law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the Members of the Class defined herein, pray for judgment and relief on all Counts of the Complaint, and requests the following relief:

A.     An order certifying that the action may be maintained as a class action;

B.     A declaration that the Defendant has violated Cal. Bus. & Prof. Code §§ 17200 and 17600;

C.     A declaration and order enjoining Defendant from pursuing and/or continuing the unlawful conduct complained of herein, including that (1) Defendant cannot charge Plaintiffs and the Class Members any amount of fee for the auto-renewal of their PSS without first obtaining each such Users' affirmative consent in a form and manner approved by this Court; and (2) Defendant cannot raise the price of its PSS without first obtaining a customer's affirmative consent in a form and manner approved by this Court;

D.     An order requiring Defendant to pay restitution to Plaintiffs and all Members of the Class;

E.     Pursuant to 28 U.S.C. § 2201(a), a judicial determination of the respective rights and duties of Plaintiff and Defendant with respect to the following:

a.   A declaration that Plaintiffs and Defendant have no valid arbitration agreement, and/or no valid arbitration agreement requiring the arbitration of Plaintiffs' claims, because they formed no such arbitration agreement;

b.   A declaration that, if Plaintiff and Defendant entered an arbitration agreement, any such agreement is unconscionable and unenforceable such that it cannot and does not require Plaintiffs to arbitrate their claims or any portion thereof;

c.   A declaration that, if Plaintiff and Defendant entered an arbitration agreement, it is

1    inapplicable to Plaintiffs' requests for injunctive relief; and

2        d.   Provided that the Court determines that Plaintiffs may pursue their claims, in whole or

3    in part, in this Court, a declaration that Section 24.2 of Defendants' 2015 Terms does

4    not bar Plaintiffs from maintaining this action as a class action in this Court because it is

5    unconscionable and unenforceable.

6      F.    For pre-judgment interest from the date of filing this suit;

7      G.    An award of reasonable attorneys' fees and costs pursuant to California Code of Civil

8    Procedure § 1021.5, and/or other applicable law; and

9      H.    That the Court award such other and further relief as this Court may deem appropriate.

Dated: July 21, 2016              MILSTEIN ADELMAN JACKSON
FAIRCHILD & WADE, LLP


By: */s/ Gillian L. Wade*
Gillian L. Wade
One of the Attorneys for Plaintiffs


Derek J. Meyer
LEONARDMEYER LLP
One of the Attorneys for Plaintiffs

### **JURY TRIAL DEMANDED**

Plaintiffs demand a jury trial on all triable issues.

Dated:  July 21, 2016

MILSTEIN ADELMAN JACkSON
FAIRCHILD & WADE, LLP


By:  */s/ Gillian L. Wade*
Gillian L. Wade
One of the Attorneys for Plaintiffs

Derek J. Meyer
LEONARDMEYER LLP
One of the Attorneys for Plaintiffs

FIRST AMENDED CLASS ACTION COMPLAINT