Joseph E. Addiego III (CA State Bar No. 169522)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:      (415) 276-6500
Facsimile:       (415) 276-6599
Email:            joeaddiego@dwt.com

Stephen M. Rummage (Admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
Telephone:      (206) 662-3150
Fax:              (206) 757-7700
E-mail:          steverummage@dwt.com

SCOTT R. COMMERSON (CA State Bar No. 227460)
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa St., Suite 2400
Los Angeles, California 900017
Telephone:      (213) 633-6890
Fax:              (213) 633-4290
Email:            scottcommerson@dwt.com

Attorneys for Defendant
SPOTIFY USA, INC.

# IN THE UNITED STATES DISTRICT COURT

## THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY INGALLS and TONY HONG, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SPOTIFY USA, INC., a Delaware corporation; and DOES 1 – 10, inclusive,<br><br>Defendants. | Case No. 3:16-cv-3533 WHA<br><br>**DECLARATION OF SCOTT R. COMMERSON IN SUPPORT OF DEFENDANT SPOTIFY USA INC.'S MOTION TO COMPEL ARBITRATION AND TO  STAY ACTION**<br><br>Date: September 29, 2016<br>Time: 8:00 a.m.<br>Judge: Hon. William H. Alsup<br>Courtroom 8 – 19th Floor |

DAVIS WRIGHT TREMAINE LLP

## DECLARATION OF SCOTT R. COMMERSON

I, Scott R. Commerson, declare as follows:

1.      I am a partner with the law firm of Davis Wright Tremaine, LLP, counsel of record for defendant Spotify USA Inc. ("Spotify") in this action.  I submit this declaration in support of Spotify's Motion to Compel Arbitration and to Stay Action.  I make this declaration of personal, firsthand knowledge, and if called and sworn as a witness, I could and would testify competently thereto.

2.      On November 6, 2013, plaintiff Melissa Bleak filed a putative class action against Spotify in the Northern District of California, alleging that Spotify's Premium subscription service violated California's Automatic Renewal statute and the Unfair Competition Law.  *Bleak v. Spotify USA, Inc.*, Case No. 13-5653 CRB (N.D. Cal.) ("*Bleak* case").  I am attaching as **Exhibit A** a true and correct copy of the First Amended Complaint, dated November 21, 2013, filed in that action.

3.      I am attaching as **Exhibit B** a true and correct copy of Ms. Bleak's Opposition brief dated March 10, 2014, filed in response to Spotify's Motion to Compel Arbitration and Stay Case in the *Bleak* case.

4.       I am attaching as **Exhibit C** a true and correct copy of the transcript from the April 25, 2014 hearing that Judge Breyer conducted on Spotify's Motion to Compel Arbitration and Stay Case in the *Bleak* case.

5.      I am attaching as **Exhibit D** a true and correct copy of the April 25, 2014 order issued by Judge Bryer granting Spotify's motion to compel arbitration and staying the proceedings in the *Bleak* case.

6.      I am attaching together as **Exhibit E** true and correct copies of selected pages from the American Arbitration Association's ("AAA") current Commercial Arbitration Rules and Mediation Procedures, amended and effective October 1, 2013.  The provision regarding delegation to the arbitrator is at Rule 7(a).  The Rules can be accessed at the AAA's Web site, at www.adr.org.

//

DAVIS WRIGHT TREMAINE LLP

DECLARATION OF SCOTT R. COMMERSON
Case No. 3:16-cv-3533 WHA
DWT 30218314v1 0098755-000014

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

Executed this 22nd day of August, 2016, in Los Angeles, California.

*By: /s/ Scott R. Commerson*
Scott R. Commerson

DAVIS WRIGHT TREMAINE LLP

DECLARATION OF SCOTT R. COMMERSON
Case No. 3:16-cv-3533 WHA
DWT 30218314v1 0098755-000014

# EXHIBIT A

## To Commerson Declaration

1  JULIAN HAMMOND, CA Bar No. 268489
   Hammond.julian@gmail.com
2  HammondLaw, PC
   1180 S. Beverly Drive, Suite 610
3  Los Angeles, CA  90035
   (310) 601-6766
4  (310) 295-2385 (Fax)

5  ARI CHERNIAK, CA Bar No. 290071
   ari.cherniak@gmail.com
6  HammondLaw, P.C.
   1829 Reisterstown Rd. Suite 410
7  Baltimore, MD 21208
   (443) 739-5758
8  (310) 295-2385 (Fax)

9  Attorneys for Plaintiff and Putative Class

F I L E D

San Francisco County Superior Court

NOV 2 1 2013

CLERK OF THE COURT

Deputy Clerk

10

11            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                     COUNTY OF SAN FRANCISCO

13

| | |
|---|---|
| 14  Melissa Bleak, individually and on behalf of all others similarly situated, | Case No.: CGC-13-535309 |
| 15                    Plaintiff, | CLASS ACTION |
| 16  vs. | **FIRST AMENDED COMPLAINT FOR:  (1) VIOLATION OF CALIFORNIA'S** |
| 17  Spotify USA, Inc., a Delaware Corporation | **AUTOMATIC RENEWAL LAW (CAL. BUS. PROF. CODE §§17600-17604); (2) UCL** |
| 18                    Defendant. | **VIOLATIONS (BUS. & PROF. CODE §§ 17200-17204); AND (3) INJUNCTIVE RELIEF** |
| 19 | **AND RESTITUTION (BUS. & PROF. CODE § 17535)** |
| 20 | **DEMAND FOR JURY TRIAL** |

21

22

23

24                                      BY FAX

25

26

27

28

FIRST AMENDED COMPLAINT FOR: (1) VIOLATION OF CALIFORNIA'S AUTOMATIC RENEWAL LAW (CAL. BUS. PROF.
CODE §§17600-17604); (2) UCL VIOLATIONS (BUS. & PROF. CODE §§ 17200-17204); AND (3) INJUNCTIVE RELIEF AND
RESTITUTION (BUS. & PROF. CODE § 17535) - CASE NO.: CGC-13-535309

EXHIBIT A
1 of 16

Plaintiff Melissa Bleak ("Plaintiff"), on behalf of herself and all others similarly situated, complains and alleges as follows:

## OVERVIEW OF CLAIMS

1.      This is a class action, under California Code of Civil Procedure § 382, seeking damages, restitution, injunctive and/or other equitable relief under California Business and Professions Code (hereinafter "Cal. Bus. & Prof. Code") §§17602, 17603, 17604, 17535, and 17200, et seq., on behalf of Plaintiff and all other individuals who upgraded their membership/subscription to a paid Unlimited Plan and/or the Premium plan on their desktop computers for streaming music services in California (hereinafter "Class Members") from Spotify USA, Inc. ("Spotify" or "Defendant"), a Delaware Corporation with its principal place of business in New York.  Throughout California, Defendant offered to Plaintiff and Class Members the opportunity to listen to its streaming music service with advertising. However, to listen to Defendant's services advertisement free, Plaintiff and Class Members had to upgrade their membership, and provide their credit card or debit card. However, prior to charging Plaintiff and Class Members' credit cards or debit cards, Defendant failed to first obtain the Plaintiff's and Class Members' affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms in violation of Cal. Bus. Prof. Code §17602(a) (2), and as result all goods, wares, or merchandise sent to Plaintiff and Class Members under the automatic renewal or continuous service agreement is deemed to be an unconditional gift pursuant to Cal. Bus. Code §17603. Plaintiff, on behalf of herself and Class Members, also seeks injunctive relief and/or restitution of all unjust enrichment Defendant has obtained from its failure to comply with Cal Bus. Prof. Code § 17602(a).

2.      The "Class Period" is designated as the period from December 1, 2010 through to the trial date.  Defendant's violations of California's Business and Professions Code and unfair competition laws, as described more fully below, have been ongoing since December 1, 2010, and are continuing at present.

2

EXHIBIT A
2 of 16

**JURISDICTION**

3.     This Court has jurisdiction over the claims for damages, declaratory, injunctive relief and/or restitution arising from Defendant's unlawful business practices, under California's Business & Professions Code §§ 17203, 17204, 17535, and 17603.

**VENUE**

4.     Section 19 of the Spotify Terms and Conditions of Use (the "Terms") state that any disputes are subject to the jurisdiction of the Superior Court of San Francisco County, California. Venue as to Defendant is therefore proper in the County of San Francisco.

**PARTIES**

5.     Plaintiff Melissa Bleak resides in Pasadena, California. Plaintiff Bleak upgraded her membership to a Premium membership/subscription with Spotify in California through her desktop computer in August 2013. Plaintiff Bleak signed up a one-month free trial. Following the one-month free trial, Plaintiff's credit has been charged and continues to be charged, every month, on a recurring basis.   During that time Plaintiff Bleak was subject to Defendant's unlawful policies and/or practices set forth herein. Plaintiff is a consumer as defined under Cal Bus. Prof. Code §17601 (d).

6.     Defendant Spotify USA, Inc. is a Delaware corporation with its principal place of business located at 76 9th Ave., #1110, New York, NY, 10011. The policies and practices complained of herein were formulated, implemented, and maintained, in whole or in substantial part, at that address.

7.     All of Plaintiff's claims stated herein are asserted against Defendant and any of its predecessors, successors, and/or assigns that do, or have done, business, with Class Members in California during the Class Period.

**FACTUAL BACKGROUND**

8.     Defendant operates and, at all times during the Class Period, has done business throughout California. Defendant is an on-line subscription commercial streaming service that streams

3

FIRST AMENDED COMPLAINT FOR:  (1) VIOLATION OF CALIFORNIA'S AUTOMATIC RENEWAL LAW (CAL. BUS. PROF. CODE §§17600-17604); (2) UCL VIOLATIONS (BUS. & PROF. CODE §§ 17200-17204); AND (3) INJUNCTIVE RELIEF AND RESTITUTION (BUS. & PROF. CODE § 17535) - CASE NO.: CGC-13-535309

1    music from numerous record labels to its customers over the internet. Defendant has over one million

2    paid subscribers in the USA, and has an approximate valuation of $5 billion.

3         9.      On December 1, 2010, §§ 17600-17606 of Article 9, of Chapter 1 of Part 3, of Division

4    4 of the California Business and Professions Code (hereinafter "Cal. Bus. Prof. Code") came into

5    effect. The stated intent of the Legislature of this Article, was to end the practice of ongoing charging

6    of consumer credit or debit cards or third party payment accounts without the consumers' explicit

7    consent for ongoing shipments of a product or ongoing deliveries of service: See, §17600 of the Cal.

8    Bus. Prof. Code. Through §17602 of the Cal. Bus Prof. Code it was made unlawful for any business

9    making an automatic renewal or continuous service offer to a consumer in this state to: Charge the

10    consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or

11    continuous service without first obtaining the consumer's affirmative consent to the agreement

12    containing the automatic renewal offer terms or continuous service offer terms. See, §17602(a)(2) Cal.

13    Bus. Prof. Code.  § 17603 of the Cal. Bus. Prof Code provides: "In any case in which a business sends

14    any goods, wares, merchandise, or products to a consumer, under a continuous service agreement or

15    automatic renewal of a purchase, without first obtaining the consumer's affirmative consent as

16    described in Section 17602, the goods, wares, merchandise, or products shall for all purposes be

17    deemed an unconditional gift to the consumer, who may use or dispose of the same in any manner he

18    or she sees fit without any obligation whatsoever on the consumer's part to the business, including, but

19    not limited to, bearing the cost of, or responsibility for, shipping any goods, wares, merchandise, or

20    products to the business."

21         10.     Plaintiff and all similarly situated Class Members are consumers within the meaning of

22    Cal. Bus. Prof. Code § 17601(d).

23         11.     Since at least December 1, 2010 through to the filing of this action, Defendant has

24    charged Plaintiff's and Class Members' credit, debit cards, and/or account with a third party for an

25    automatic renewal or continuous service without first obtaining the Plaintiff's and Class Members'

26

27

28

4

1   affirmative consent to the agreement containing the automatic renewal offer terms or continuous

2   service offer terms.

3       12.     During the Class Period, Defendant has offered Plaintiff and Class Members the ability

4   to listen to streaming music for free. Defendant generates advertising revenue from this service. During

5   the Class Period, Defendant has also offered Plaintiff and Class Members the ability to upgrade their

6   membership to an Unlimited or Premium Plan. The Unlimited Plan provided consumers the ability to

7   listen to Defendant' services advertisement free on their desktop and/or laptop. The Premium Plan

8   provided consumers the ability to listen to music advertisement free from multiple devices including

9   the consumer's desktop, laptop, and cellular phone. The Unlimited Plan was priced at $4.99 and the

10  Premium Plan was priced at $9.99 (the Unlimited Plan and Premium Plan is collectively referred to as

11  the "subscriptions"). Plaintiff and Class Members were offered a free one-month trial for the Premium

12  Plan.

13      13.     In order to upgrade to the Unlimited or Premium Plan, Plaintiff and Class Members

14  who used their desktop computer to upgrade clicked on either the Unlimited or Premium button.

15  Plaintiff and Class Members were then taken to a new web page entitled "You're only 90 seconds

16  away from a world of music." To proceed, Plaintiff and Class Members were then required to select

17  their preferred payment method (Visa, MasterCard, American Express, PayPal, and boku). In order to

18  proceed to the next page, Plaintiff and Class Members were then required to click on the button

19  Continue. On a subsequent webpage, in order to obtain the streaming advertisement free service,

20  Plaintiff and Class Members were then required to enter their credit card, debit card, or account

21  information into the required field, and press the button Confirm Payment.

22      **Unlimited Plan**

23

24      14.     Above the Confirm Payment button for the Unlimited Plan, Defendant made the

25  following disclosure: "You authorise Spotify to automatically bill your credit card each month, until

26  you cancel your subscription. No refunds or credits for partial monthly subscription periods. You can

27  cancel your subscription at any time by logging into your account and follow the cancellation

28

FIRST AMENDED COMPLAINT FOR: (1) VIOLATION OF CALIFORNIA'S AUTOMATIC RENEWAL LAW (CAL. BUS.
PROF. CODE §§17600-17604); (2) UCL VIOLATIONS (BUS. & PROF. CODE §§ 17200-17204); AND (3) INJUNCTIVE
RELIEF AND RESTITUTION (BUS. & PROF. CODE § 17535) - CASE NO.: CGC-13-535309

instructions" (hereinafter "Unlimited Plan notice"). Upon clicking on the Confirm Payment button for the Unlimited Plan, the Class Members credit, debit card, or account was charged (or soon thereafter). At the end of the month of service, the Plaintiff and Class Member's credit card, debit card, or account was automatically renewed for an additional month, and as such is an automatic renewal plan within the meaning Cal. Bus. Prof. Code. §1701(1). Furthermore, the streaming service continues until cancelled, and therefore is and was a continuous service plan or arrangement as defined by Cal. Bus. Prof Code § 117601(e).

15.     However, prior to charging the Class Members credit card, debit card, or account, Defendant failed to first obtain the Class Members affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms because Defendant failed to first obtain the Plaintiffs and Class Members affirmative consent to the Defendant's Terms, in that Defendant completely failed to make a reference to its Terms throughout the checkout process; prior to checkout failed to provide a link and/or a clear and conspicuous link to its Terms; failed to provide a mechanism, such as a box, in which the Class Members were required to check to state that they agree to the Defendant's Terms, and that signified Class Members' affirmative consent to the Defendant's Terms; and the only reference to the Terms was through a link on the bottom of the webpage entitled "Legal", in smaller and lighter colored font than the rest of the webpage.

**Premium Plan**

16.     During the Class Period, Plaintiff and Class Members were offered a one-month free trial to use the Premium Plan. Upon choosing the Premium Plan, Plaintiff and Class Members were subsequently taken to a new web-page in which they were required to enter the desired payment method (Visa, MasterCard, American Express, PayPal, and boku). Upon pressing the Premium button, choosing the method of payment, and pressing the Continue button, Plaintiffs and Class Members were taken to a new webpage that was entitled: "Upgrade to 30 Day Trial". Beneath that heading was the following:

Payment

6

| 30 day of recurring Spotify Premium | $0.00 |
| Sales Tax | $0.00 |
| Total | $0.00 |

17.     Underneath this were fields for the Plaintiff and Class Member to enter their credit or debit card, and the following notice: "If you do not cancel your subscription before the end of the free trial the credit card you provide will automatically be charged the Spotify Premium subscription fee of US $9.99 + $0.00 sales tax per month, until you cancel. You can cancel at any time by logging into your Spotify account and follow the cancellation instructions. No refunds or credits for partial monthly subscriptions period. For complete terms and conditions, please see our Terms of Service" (hereinafter "Premium Plan notice").  In order to start the subscription, the Plaintiff and Class Members were therefore required to enter their credit card or debit card information, and once the Plaintiff and Class Members pressed the Confirm payment button, the subscription immediately began. However, Defendant did not maintain on its website any document or link to a web page entitled "Terms of Service".

18.     However, prior to charging the Class Members credit card, debit card, or third party account, Spotify failed to first obtain the Class Members affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms because Defendant failed to first obtain the Plaintiffs and Class Members affirmative consent to the Spotify Terms, in that the Defendant failed to provide a link and/or a clear and conspicuous link to the Spotify Terms; prior to the checkout referred to a document called Terms of Service that did not exist anywhere on Defendant's website; and/or failed to provide a mechanism, such as a box, in which the Class Members were required to check to state that they agree to the Spotify Terms and Conditions and that signified Class Members' affirmative consent to the Spotify Terms and Conditions.   In fact, the only place the automatic renewal offer terms or continuous service offer terms were accessible was in the Spotify Terms through a link on the bottom of the webpage entitled "Legal", in smaller and lighter colored font than the rest of the webpage.

FIRST AMENDED COMPLAINT FOR:  (1) VIOLATION OF CALIFORNIA'S AUTOMATIC RENEWAL LAW (CAL. BUS. PROF. CODE §§17600-17604); (2) UCL VIOLATIONS (BUS. & PROF. CODE §§ 17200-17204); AND (3) INJUNCTIVE RELIEF AND RESTITUTION (BUS. & PROF. CODE § 17535) - CASE NO.:  CGC-13-535309

19.     Defendant's method of charging Plaintiff's and Class Members' credit cards, debit cards, and/or third party account on the desktop contrasts with the method Defendant employs before it charges California consumers' credit card, debit card, and/or third party account, who utilize an Application using their cellular phone to upgrade to the Unlimited Plan or Premium Plan. Prior to the Defendant charging a consumer's credit card, debit card, and/or third party account from an Application within a cell phone, Defendant requires consumers to check a box stating that he or she agrees to the Terms of Service. This methodology was not used for Plaintiff and Class Members upgrading on a desktop.

20.     As a result of the above, Defendant failed to obtain Plaintiff and Class Members' affirmative consent to the agreement containing the automatic renewal or continuous service offer terms prior to charging their credit or debit card for an automatic renewal or continuous service as required under § 17602(a) (2), and all payments made by Plaintiff and Class Member is deemed an unconditional gift pursuant to § 17603 of the Cal. Bus. Prof. Code.

**Automatic renewal offer terms or continuous offer terms not disclosed in the "Terms"**

21.     Pursuant to §17601(c), "clear and conspicuous" or "clearly and conspicuously" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language."

22.     The Terms provide in section 17, "These agreements constitute all the terms and conditions agreed upon between you and Spotify". However, within the Terms, Defendant failed to fully disclose the automatic renewal offer terms, as defined by Cal. Bus. Prof. Code § 17601(b), in so far as it failed to make the following clear and conspicuous disclosures: (1) failed to state that the subscription or purchasing agreement will continue until cancelled; and (2) failed to describe the cancellation policy that applies to the offer (hereinafter the "disclosure failures").

23.     As a result of disclosure failures described above, the Terms do not contain the automatic renewal offer terms or continuous offer terms as defined and required by Cal Bus. Prof.

FIRST AMENDED COMPLAINT FOR: (1) VIOLATION OF CALIFORNIA'S AUTOMATIC RENEWAL LAW (CAL. BUS. PROF. CODE §§17600-17604); (2) UCL VIOLATIONS (BUS. & PROF. CODE §§ 17200-17204); AND (3) INJUNCTIVE RELIEF AND RESTITUTION (BUS. & PROF. CODE § 17535) - CASE NO.: CGC-13-535309

1  Code §1601(b). As a result, and in violation of Cal. Bus. Prof. Code. § 17602 (a)(2), Defendant failed

2  and continues to fail to obtain Plaintiff and Class Members affirmative consent to the subscription

3  agreement containing the automatic renewal offer terms or continuous service offer terms prior to

4  charging the Plaintiff and Class Members credit card or debit card.

5       24.    Furthermore, after Plaintiff and Class Members placed their order, Defendant sent

6  Plaintiff and Class Members an email that failed to provide an acknowledgement to Class Members

7  that included the automatic renewal or continuous service offer terms, cancellation policy and

8  information on how to cancel in a manner that is capable of being retained by Class Members, in

9  violation of Cal. Bus. Code §17602(a) (3).

## CLASS ACTION ALLEGATIONS

11       25.    Plaintiff brings this action, on behalf of herself and all others similarly situated, as a

12  class action pursuant to Code of Civil Procedure § 382.  The Class that Plaintiff seeks to represent is

13  composed of and defined as all persons who upgraded their membership/subscription plan from a free

14  plan to a paid Unlimited Plan and/or Premium Plan subscription on their desktop computer in

15  California from Defendant since December 1, 2010.

17       26.    This action has been brought and may properly be maintained as a class action under

18  Code of Civil Procedure § 382 because there is a well-defined community of interest in the litigation,

19  the proposed class is easily ascertainable, and Plaintiff is a proper representatives of the Class:

20       a.    Numerosity: The potential members of the Class as defined are so numerous

21  and so diversely located throughout California, that joinder of all the members of the Class is

22  impracticable.  The Class Members are dispersed throughout California.  Joinder of all members of the

23  proposed class is therefore not practicable.

24       b.    Commonality: There are questions of law and fact common to the Plaintiff and

25  the Class that predominate over any questions affecting only individual members of the Class.  These

26  common questions of law and fact include, without limitation:

28

9

1          i.       Whether Defendant charged Plaintiff's and Class Members' credit or debit

2    card with a third party for an automatic renewal or continuous service without first obtaining the

3    Plaintiff's and Class Members' affirmative consent to the agreement containing the automatic renewal

4    offer terms or continuous service offer terms in violation of Cal. Bus. Code §17602(a)(2);

5          ii.      Whether Cal. Bus. Prof. Code § 17603 provides for damages and/or

6    restitution for money paid by Class Members in circumstances where the goods and services provided

7    by Defendant is deemed an unconditional gift.

8          iii.     Whether Plaintiff and Class Members are entitled to damages and/or

9    restitution under Cal. Bus. Prof Code. § 17200-17203

10          iv.      Whether Plaintiff and Class Members are entitled to injunctive relief,

11   and/or a declaration, and/or restitution under Cal. Bus. Prof Code. § 17535.

12

13          v.       The proper formula(s) for calculating damages and/or restitution owed to

14   Class Members.

15       c.       Typicality:  Plaintiff's claims are typical of the claims of the Class.  Both

16   Plaintiff and Class Members were deprived of property rightly belonging to them, arising out of and

17   caused by Defendant's common course of conduct in violation of law as alleged herein, in similar

18   ways.

19       d.       Adequacy of Representation:  Plaintiff is a member of the Class and will fairly

20   and adequately represent and protect the interests of the Class Members.  Plaintiff's interests do not

21   conflict with those of Class Members. Counsel who represent Plaintiff are competent and experienced

22   in litigating large class actions, and will devote sufficient time and resources to the case and otherwise

23   adequately represent the Class.

24

25       e.       Superiority of Class Action:  A class action is superior to other available means

26   for the fair and efficient adjudication of this controversy.  Individual joinder of all Class Members is

27   not practicable, and questions of law and fact common to the Class predominate over any questions

28

10

EXHIBIT A
10 of 16

1 │ affecting only individual members of the Class.  Plaintiff and each Class Member has suffered loss or

2 │ may suffer loss in the future by reason of Defendant's unlawful policies and/or practices of not

3 │ complying with Cal. Bus Prof. Code §§ 17600-17606.  Certification of this case as a class action will

4 │ allow those similarly situated persons to litigate their claims in the manner that is most efficient and

5 │ economical for the parties and the judicial system.  Certifying this case as a class action is superior

6 │ because it allows for efficient and full restitution to Class Members, and will thereby effectuate

7 │ California's strong public policy of protecting the California public from violations of its laws. If this

8 │ action is not certified as a Class Action, it will be impossible as a practical matter for many or most

9 │ Class Members to bring individual actions to recover monies due from Defendant, due to the relatively

10 │ small amounts of such individual recoveries relative to the costs and burdens of litigation.

### FIRST CAUSE OF ACTION

**FAILURE TO OBTAIN THE CONSUMER'S AFFIRMATIVE CONSENT BEFORE THE
SUBSCRIPTION IS FULFILLED
(CAL. BUS. PROF. CODE §§ 17602(a) (2) and 17603)**

14 │ 27.     The allegations of Paragraphs 1 through 26 are realleged and incorporated herein by

15 │ reference, and Plaintiff alleges this cause of action on behalf of herself and the above-described class

16 │ of similarly situated Class Members.

17 │ 28.     Cal. Bus. Prof. Code § 17602(a)(2) provides:

18 │ "(a) It shall be unlawful for any business making an automatic renewal or

19 │ continuous service offer to a consumer in this state to do any of the following:

20 │ (2) Charge the consumer's credit or debit card or the consumer's account

21 │ with a third party for an automatic renewal or continuous service without first

22 │ obtaining the consumer's affirmative consent to the agreement containing the

23 │ automatic renewal offer terms or continuous service offer terms.

24 │ 29.     Defendant charged the Class Members' credit or debit card or the Class Members'

25 │ account with a third party for an automatic renewal or continuous service without first obtaining the

26 │ Class Members' affirmative consent to the agreement containing the automatic renewal offer terms or

27 │ continuous service offer terms.

11

EXHIBIT A
11 of 16

1        30.    As a result of Defendant's violations of Cal. Bus. Prof. Code § 17602(a) (2), Defendant

2  is liable to provide damages and/or restitution to Plaintiffs and Class Members under Cal. Bus. Prof.

3  Code §17603.

4        31.    Plaintiff, on behalf of herself and Class Members, request relief as described below.

5  **SECOND CAUSE OF ACTION**<br>**UNFAIR COMPETITION LAW VIOLATIONS**

6  **(BUS. & PROF. CODE § 17200 et. seq.)**

7        32.    The allegations of Paragraphs 1 through 31 are realleged and incorporated herein by

8  reference, and Plaintiff alleges this cause of action on behalf of herself and the above-described class

9  of similarly situated Class Members.

10        33.    Business & Professions Code §§17200, et seq. (the "UCL") prohibits unfair competition

11  in the form of any unlawful, unfair, or fraudulent business act or practice.  Business & Professions

12  Code § 17204 allows "any person who has suffered injury in fact and has lost money or property" to

13  prosecute a civil action for violation of the UCL.  Such a person may bring such an action on behalf of

14  him or herself and others similarly situated who are affected by the unlawful, unfair, or fraudulent

15  business practice.

16        34.    Beginning at an exact date unknown to Plaintiff, but at least since December 1, 2010,

17  and continuing to the present, Defendant has committed unlawful, unfair, and/or fraudulent business

18  acts and practices as defined by the UCL, by violating Cal. Bus. Prof. Code §17602.

19

20        35.    As a direct and proximate result of Defendant's unlawful, unfair, and/or fraudulent acts

21  and practices described herein, Defendant has received and continues to hold unlawfully obtained

22  property and money belonging to Plaintiff and Class Members in the form of payments made for

23  subscription agreements by Plaintiff and Class Members. Defendant has profited from its unlawful,

24  unfair, and/or fraudulent acts and practices in the amount of those business expenses and interest

25  accrued thereon.

26        36.    Plaintiff and similarly situated Class Members are entitled to damages and/or restitution

27  pursuant to Business & Professions Code §§ 17203 and 17208 for all monies paid by Class Members

12

28

under the subscription agreements from December 1, 2010 to the date of such restitution, at rates specified by law. Defendant should be required to disgorge all the profits and gains it has reaped and restore such profits and gains to Plaintiff and Class Members, from whom they were unlawfully taken.

37. Plaintiff and similarly situated Class Members are entitled to enforce all applicable penalty provisions of the Labor Code pursuant to Business & Professions Code § 17202.

38. Plaintiff has assumed the responsibility of enforcement of the laws and public policies specified herein by suing on behalf of themselves and other similarly situated members of the public previously and presently employed by Defendant in California. Plaintiff's success in this action will enforce important rights affecting the public interest. Plaintiff will incur a financial burden in pursuing this action in the public interest. Therefore, an award of reasonable attorneys' fees to Plaintiff is appropriate pursuant to Code of Civil Procedure §1021.5.

39. Plaintiff, on behalf of herself and Class Members, request relief as described below.

**THIRD CAUSE OF ACTION**
**INJUNCTIVE RELIEF, DECLARATION, AND RESTITUTION**
**(BUS. & PROF. CODE § 17535)**

40. The allegations of Paragraphs 1 through 39 are realleged and incorporated herein by reference, and Plaintiff alleges this cause of action on behalf of herself and the above-described class of similarly situated Class Members.

41. Business & Professions Code §17535, et seq. (the "UCL") allows "any person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Such a person may bring such an action on behalf of herself and others similarly situated who are affected by the unlawful, unfair, or fraudulent business practice.

42. Beginning at an exact date unknown to Plaintiff, but at least since December 1, 2010, and continuing to the present, Defendant has committed unlawful, unfair, and/or fraudulent business acts and practices as defined by the UCL, by violating Cal. Bus. Prof. Code §17602.

13
FIRST AMENDED COMPLAINT FOR: (1) VIOLATION OF CALIFORNIA'S AUTOMATIC RENEWAL LAW (CAL. BUS. PROF. CODE §§17600-17604); (2) UCL VIOLATIONS (BUS. & PROF. CODE §§ 17200-17204); AND (3) INJUNCTIVE RELIEF AND RESTITUTION (BUS. & PROF. CODE § 17535) - CASE NO.: CGC-13-535309

EXHIBIT A
13 of 16

43.     As a direct and proximate result of Defendant's unlawful, unfair, and/or fraudulent acts and practices described herein, Defendant has received and continues to hold unlawfully obtained property and money belonging to Plaintiff and Class Members in the form of payments made for subscription agreements by Plaintiff and Class Members.  Defendant has profited from its unlawful, unfair, and/or fraudulent acts and practices in the amount of those business expenses and interest accrued thereon.

44.     Plaintiff and similarly situated Class Members are entitled to injunctive relief and/or restitution pursuant to Business & Professions Code §17535 for all monies paid by Class Members under the subscription agreements from December 1, 2010 to the date of such restitution, at rates specified by law.  Defendant should be required to disgorge all the profits and gains it has reaped and restore such profits and gains to Plaintiff and Class Members, from whom they were unlawfully taken.

45.     Plaintiff and similarly situated Class Members are entitled to enforce all applicable penalty provisions of the Labor Code pursuant to Business & Professions Code.

46.     Plaintiff has assumed the responsibility of enforcement of the laws and public policies specified herein by suing on behalf of themselves and other similarly situated members of the public previously and presently employed by Defendant in California.  Plaintiff's success in this action will enforce important rights affecting the public interest.  Plaintiff will incur a financial burden in pursuing this action in the public interest.  Therefore, an award of reasonable attorneys' fees to Plaintiff is appropriate pursuant to Code of Civil Procedure §1021.5.

47.     Plaintiff, on behalf of herself and similarly situated Class Members, request relief as described below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

A.     That the Court determine that this action may be maintained as a class action under Code of Civil Procedure §382, and define the Class as requested herein;

14

FIRST AMENDED COMPLAINT FOR:  (1) VIOLATION OF CALIFORNIA'S AUTOMATIC RENEWAL LAW (CAL. BUS. PROF. CODE §§17600-17604); (2) UCL VIOLATIONS (BUS. & PROF. CODE §§ 17200-17204); AND (3) INJUNCTIVE RELIEF AND RESTITUTION (BUS. & PROF. CODE § 17535) - CASE NO.: CGC-13-535309

1    B.    That the Court find and declare that Defendant's subscription agreement violates Cal

2    bus. Pro. Code §17602 by charging Plaintiff and Class Members credit or debit card without first

3    obtaining their affirmative consent to the agreement containing the automatic renewal offer term or

4    continuous service offer terms prior to charging their credit cards or debit cards;

5    C.    That the Court find and declare that Defendant has violated the UCL and committed

6    unfair and unlawful business practices by violating Cal. Bus. Prof Code. §17602;

7    D.    That the Court award to Plaintiff and Class Members damages and/or full restitution in

8    the amount of the subscription payments made by them pursuant to Cal. Bus. Prof. Code §17603, in an

9    amount to be proved at trial;

10   E.    That Defendant be ordered to pay damages and/or restitution to Plaintiff and the Class

11   due to Defendant's UCL violations, pursuant to Business and Professions Code §§17200-17205 in the

12   amount of their subscription agreement payments;

13   F.    That the Court find that Plaintiff and Class Members are entitled to damages, injunctive

14   relief and/or restitution pursuant to Cal. Bus. Prof. Code §17535;

16   G.    That Plaintiff and the Class be awarded reasonable attorneys' fees and costs pursuant to

17   Code of Civil Procedure §1021.5, and/or other applicable law;

18   H.    That the Court award such other and further relief as this Court may deem appropriate.

19

20

21

22

23

24

25

26

27

28

15

FIRST AMENDED COMPLAINT FOR: (1) VIOLATION OF CALIFORNIA'S AUTOMATIC RENEWAL LAW (CAL. BUS.
PROF. CODE §§17600-17604); (2) UCL VIOLATIONS (BUS. & PROF. CODE §§ 17200-17204); AND (3) INJUNCTIVE
RELIEF AND RESTITUTION (BUS. & PROF. CODE § 17535) - CASE NO.: CGC-13-535309

EXHIBIT A
15 of 16

| 1 | **DEMAND FOR JURY TRIAL** |

Plaintiff, on behalf of herself and the Class Members, hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.

Dated:  November 21, 2013

JULIAN HAMMOND, CA Bar No. 268489
Hammond.julian@gmail.com
HammondLaw, PC
1180 S. Beverly Drive, Suite 610
Los Angeles, CA  90035
(310) 601-6766
(310) 295-2385 (Fax)

ARI CHERNIAK, CA Bar No. 290071
ari.cherniak@gmail.com
HammondLaw, P.C.
1829 Reisterstown Rd. Suite 410
Baltimore, MD 21208
(443) 739-5758
(310) 295-2385 (Fax)

ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS

16

FIRST AMENDED COMPLAINT FOR:  (1) VIOLATION OF CALIFORNIA'S AUTOMATIC RENEWAL LAW (CAL. BUS. PROF. CODE §§17600-17604); (2) UCL VIOLATIONS (BUS. & PROF. CODE §§ 17200-17204); AND (3) INJUNCTIVE RELIEF AND RESTITUTION (BUS. & PROF. CODE § 17535) - CASE NO.: CGC-13-535309

EXHIBIT A
16 of 16

# EXHIBIT B
## To Commerson Declaration

1    JULIAN HAMMOND, CA Bar No. 268489
     Hammond.julian@gmail.com
2    HammondLaw, P.C.
     1180 S. Beverly Drive, Suite 610
3    Los Angeles, CA 90035
     (310) 601-6766
4    (310) 295-2385 (Fax)

5    ARI CHERNIAK, CA Bar No. 290071
     ari.cherniak@gmail.com
6    HammondLaw, P.C.
     1829 Reisterstown Rd. Suite 410
7    Baltimore, MD 21208
     (443) 739-5758
8    (310) 295-2385 (Fax)

9    Attorneys for Plaintiff and Putative Class

10

11              **UNITED STATES DISTRICT COURT**

12           **NORTHERN DISTRICT OF CALIFORNIA**

13              **SAN FRANCISCO DIVISION**

14

15    MELISSA BLEAK, individually and on    Case No.: 3:13-CV-13-5653 CRB
     behalf of all others similarly situated,
16                             **PLAINTIFF'S OPPOSITION TO**
            Plaintiff,                **DEFENDANT'S MOTION TO COMPEL**
17                             **ARBITRATION AND STAY CASE**
     vs.
18                             Date:         April 25, 2014
     SPOTIFY USA, INC., a Delaware        Time:        10:00 a.m.
19    Corporation                        Courtroom:   6 – 17th Floor
20             Defendant.

21

22

23

24

25

26

27

28

OPP. TO MOTION TO COMPEL ARBITRATION   *Bleak v. Spotify USA Inc.,* Case No. CV 13-05653 CRB

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................... 1

II.   STATEMENT OF FACTS ......................................................................................... 2

III.  ARGUMENT ............................................................................................................. 5

    A.    Plaintiff Did Not Agree to Arbitrate Her Claims Against Spotify. ......................... 5

    B.    Plaintiff's Claims Fall Within the Exception to Mandatory Arbitration. ................ 6

    C.    Spotify's Arbitration Clause is Unenforceable Because it is Illusory. .................... 8

    D.    The Arbitration Clause is Procedurally and Substantively Unconscionable, Permeated with Illegality, and Unenforceable. .................................................................................. 10

        1.    The Arbitration Clause is Procedurally Unconscionable. ...................................... 11

        2.    The Arbitration Clause is Substantively Unconscionable. ..................................... 14

            (a)    The Arbitration Clause lacks mutuality because it carves out claims from mandatory arbitration that Spotify is likely to bring. ...................................................................... 15

            (b)    The Arbitration Clause lacks mutuality because it allows Spotify to unilaterally modify the agreement. ................................................................................................................. 15

            (c)    The Arbitration Clause lacks mutuality because it prohibits the arbitrator from awarding injunctive and declaratory relief. ........................................................................ 16

            (d)    Administrative filings fees are unrecoverable and substantially more than the value of the claim, thereby effectively foreclosing Plaintiff's pursuit of the claims. ................. 17

            (e)    The Arbitration Clause's one-year statute of limitations is unconscionable. ............... 18

            (f)    The Arbitration Clause's provision limiting discovery is unconscionable. ................. 19

            (g)    Limitations on Damages and Liability are Unconscionable. ....................................... 20

        3.    The Entire Arbitration Agreement is Unenforceable Because the Unconscionable Provisions Cannot Be Severed from the Arbitration Clause. ................................................................ 21

IV.   CONCLUSION .......................................................................................................... 22

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

3

*14 Penn Plaza LLC  Penn Plaza LLC  v. Pyett,*
4    556 U. S. 247 (2009) .................................................................................... 17

5
*A & M Produce Co. v. FMC Corp.,*
    135 Cal. App. 3d 473 (1982) ................................................................. 11, 13
6

*Abramson v. Juniper Networks, Inc.,*
7    115 Cal. App. 4th 638 (2004) ..................................................................... 11

8
*Ajamian v. CantorCO2e, L.P.,*
    203 Cal. App. 4th 771 (2012) ..................................................................... 14
9

*American Express Corp. v. Italian Colors Restaurant,*
10    570 U.S. __, 133 S. Ct. 2304 (2013) ...................................................... 2. 17

11
*AT&T Mobility LLC v. Concepcion,*
    131 S. Ct. 174 (2011) ....................................................................... 5, 10, 11
12

*AT&T v. Ting,*
13    319 F.3d 1126 (9th Cir. 2003) .................................................................... 12

14
*Beynon v. Garden Grove Medical Group,*
    100 Cal. App. 3d 698 (1980) ...................................................................... 21
15

*Binder v. Aetna Life Ins. Co.,*
16    75 Cal. App. 4th 832 (1999). ........................................................................ 5

17
*Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co.,*
    6 Cal. App.4th 1266 (1992) .......................................................................... 5
18

*Bragg v. Linden Research, Inc.*
19    487 F 3.d 1447 (7th Cir. 1996) ................................................................... 13

20
*Bruni v. Didion,*
    160 Cal. App. 4th 1272 (2008) ................................................................... 13
21

*Carey v. 24 Hour Fitness, USA, Inc.,*
22    669 F.3d 202 (5th Cir. 2012) ........................................................................ 8

23
*Chavarria v. Ralphs Grocery Co.,*
    733 F.3d 916 (9th Cir. 2013) ................................................................. 11, 18
24

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.,*
25    207 F.3d 1126 (9th Cir. 2000) ...................................................................... 5

26
*Circuit City Stores, Inc. v. Adams,*
    279 F.3d 889 (9th Cir. 2002) ....................................................................... 18
27

28

*Davis v. O'Melveny & Myers,*
    485 F.3d 1066 (9th Cir. 2007) ........................................................................ 12, 16

*Doubt v. NCR Corp.,*
    2010 U.S. Dist. LEXIS 102484 (N.D. Cal. Sep. 13, 2010) ........................ 19, 22

*Dumais v. Am. Golf Corp.,*
    299 F.3d 1216 (10th Cir. 2002) ................................................................................ 9

*Ferguson v. Corinthian Colleges, Inc.,*
    733 F.3d 928 (9th Cir. 2013) ................................................................................... 16

*Ferguson v. Countrywide Credit Indus., Inc.,*
    298 F.3d 778 (9th Cir. 2002) ................................................................................... 11

*Fitz v. NCR Corp.,*
    118 Cal. App. 4th 70 (2004) .................................................................................... 14

*Floss v. Ryan's Family Steak Houses, Inc.,*
    211 F.3d 306 (6th Cir. 2000) ..................................................................................... 9

*Franco v. Athens Disposal Co.,*
    171 Cal. App. 4th 1277 (2009) ................................................................................ 22

*Gilmer v. Interstate/Johnson Lane Corp.,*
    500 U. S. 20 (1991) .................................................................................................. 17

*Green Tree Financial Corp. -Ala. v. Randolph,*
    531 U. S. 79 (2000) .................................................................................................. 18

*Grosvenor v. Owest Corp.,*
    854 F. Supp. 2d 1021 (D. Colo. Feb. 23, 2012) ........................................................ 9

*Guifu Li v. A Perfect Day Franchise, Inc.,*
    2011 U.S. Dist. LEXIS 6985 (N.D. Cal. Jan. 25, 2011) ............................................ 5

*Gutierrez v. Autowest, Inc.,*
    114 Cal. App. 4th 77 (2003) .................................................................................... 13

*Harper v. Ultimo,*
    113 Cal. App. 4th 1402 (2003) ......................................................................... 11, 14

*Harris v. Blockbuster. Inc.,*
    622 F. Supp. 2d 396 (N.D. Tex. 2009) ....................................................................... 9

*Hooters of Am., Inc. v. Phillips,*
    173 F.3d 933 (4th Cir. 1999) ..................................................................................... 9

*In re Zappos, Inc.,*
    893 F. Supp. 2d 1058 (D. Nev. 2012) ............................................................... 6, 8, 9

*Independent Ass'n of Mailbox Center Owners, Inc. v. Superior Court,*
    133 Cal. App. 4th 396 (2005). ................................................................................. 21

*Ingle v. Circuit City Stores, Inc.*,
  328 F.3d 1165 (9th Cir. 2003) .................................................................. 16

*Kinney v. United HealthCare Servs., Inc.*,
  70 Cal. App. 4th 1322 (1999) ............................................................ 11, 19

*Little v. Auto Stiegler, Inc.*,
  29 Cal. 4th 1064 (2003) ............................................................................ 12

*Martinez v. Master Protection Corp.*,
  118 Cal. App. 4th 107 (2004) .................................................................. 19

*Mercuro v. Superior Court*,
  96 Cal. App. 4th 167 (2002) ............................................................... 16, 22

*Merkin, et al. v. Vonage Am. Inc., et al.*,
  2014 U.S. Dist. LEXIS 14055 (C.D. Cal. Feb. 3, 2014) ........................ 15

*Mitsubishi Motors v. Soler Chrysler-Plymouth*,
  473 U. S. 614 (1985) ............................................................................ 2, 18

*Morris v. Redwood Empire Bancorp*,
  128 Cal. App. 4th 1305 (2005) ................................................................ 14

*Morrison v. Amwav Corp.*,
  517 F.3d 248 (5th Cir. 2008) ..................................................................... 9

*Nagrampa v. MailCoups, Inc.*,
  469 F.3d 1257 (9th Cir. 2006) ................................................................. 12

*Nyulassy v. Lockheed Martin Corp.*,
  120 Cal. App. 4th 1267 (2004) ................................................................ 13

*Ontiveros v. DHL Exp. (USA), Inc.*,
  164 Cal. App. 4th 494 (2008) .................................................................. 19

*Parada v. Super. Ct.*,
  176 Cal. App. 4th 155 (2009) ............................................................ 12, 14

*Peleg v. Nieman Marcus Group, Inc.*,
  204 Cal. App. 4th 1425 (2012) .................................................................. 8

*Penn v. Ryan's Family Steak Houses, Inc.*,
  269 F.3d 753 (7th Cir. 2001) ..................................................................... 9

*Roman v. Superior Court*,
  172 Cal. App. 4th 1462 (2009) ................................................................ 13

*Samaniego v. Empire Today LLC*,
  205 Cal. App. 4th 1138 (2012) ................................................. 11, 12, 14, 29

*Sanchez v. W. Pizza Enters., Inc.*,
  172 Cal. App. 4th 154 (2009) ............................................................ 12, 22

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) ................................................................................................ 7

*Snow v. BE & K Constr. Co.*,
  126 F. Supp. 2d 5 (D. Me. 2001) ......................................................................................... 9

*Soltani v. W. & S. Life Ins. Co.*,
  258 F.3d 1038 (9th Cir. 2001) ........................................................................................... 14

*Sonic-Calabasas A, Inc. v. Moreno*,
  57 Cal. 4th 1109 (2013) ................................................................................................ 5, 11

*Sparks v. Vista Del Mar Child & Family Services*,
  207 Cal. App. 4th 1511(2012) ................................................................................. 8, 12, 14

*Stirlen v. Supercuts, Inc.*
  51 Cal. App. 4th 1519 (1997) ........................................................................................ 16, 18

*Szetela v. Discover Bank*,
  97 Cal. App. 4th 1094 (2002) ............................................................................................ 12

*Trivedi v. Curexo Technology Corp.*,
  189 Cal. App. 4th 387 (2010) ...................................................................................... 12, 14

*Trumbull v. Century Mktg. Corp.*,
  12 F. Supp. 2d 683 (N.D. Ohio 1998) ................................................................................. 9

*ValueSelling Assocs.. LLC v. Temple.*
  2009 US Dist. LEXIS 104174 (S.D. Cal. Nov. 5, 2009) ..................................................... 7

*Wherry v. Award, Inc.*,
  192 Cal. App. 4th 1242 (2011) .......................................................................................... 19

*Zullo v. Superior Court*,
  197 Cal. App. 4th 477 (2011) ............................................................................................ 14

## **Statutes**

9 U.S.C. § 2 .......................................................................................................................... 10

Bus. & Prof. Code § 17600 ............................................................................................... 3, 6

Bus. & Prof. Code § 17602 .................................................................................................... 7

Bus. & Prof. Code §§ 17200-17204 ...................................................................................... 3

Bus. & Prof. Code §§ 17600-17604 ...................................................................................... 7

Civ. Code § 1670.5 ...................................................................................................... 11, 21

Federal Rule of Civil Procedure 54 ..................................................................................... 18

1

**Other Authorities**

2

AAA Commercial Arbitration Rules and Mediation Procedures

3
E-5 ................................................................................................................. 4

AAA Consumer-Related Disputes Supplementary Procedures

4
p. 12 ............................................................................................................. 18

5
Rule C-1 ...................................................................................................... 4

6
Rule C-5 ........................................................................................... 2, 4, 20

7
Rule C-7 .......................................................................... 4, 17, 20, 21

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    **INTRODUCTION**

Defendant Spotify USA, Inc. ("Spotify" or "Defendant") cannot prevail on its motion to compel arbitration for several reasons.  First, Spotify submits no direct evidence that Plaintiff ever agreed to the purported arbitration clause ("Arbitration Clause") contained in the Spotify Terms and Conditions of Use ("T & C")[1], nor is there any direct evidence that Plaintiff ever agreed to the T & C.  Indeed, Plaintiff did not agree to the T & C and did not assent to the Arbitration Clause.  *See* Declaration of Melissa Bleak ("Bleak Decl.") at ¶ 1-2.  Thus, there was simply no contract to arbitrate formed.

Second, Plaintiff's claims are not subject to mandatory arbitration, but may be brought in court because they are "claims related to allegations of . . . or unauthorized use of the Spotify Service," which are specifically exempted from arbitration under the T & C.

Third, even if a contract had been formed and Plaintiff's claims were subject to arbitration, the Arbitration Clause would be unenforceable as an illusory promise because Spotify expressly retained the right to modify its T & C (including the Arbitration Clause contained within them) without prior notice to the subscriber, unless Spotify itself, at its sole discretion, considered those modifications "material."  Thus, Spotify could avoid mandatory arbitration altogether by simply deleting the Arbitration Clause from the T & C, while Plaintiff could not.  Such a unilateral modification clause strips the agreement of any mutuality and renders it illusory and therefore unenforceable.

Fourth, even if the Arbitration Clause were a non-illusory contract that applied to Plaintiff's claims, it would still be unenforceable because it is permeated with an unlawful purpose, and its unconscionable provisions cannot be severed or restricted to cure the illegality.  Specifically, the Arbitration Clause (and the T & C ) invokes the Commercial Arbitration Rules ("AAA Commercial Rules") and the Supplementary Procedures for Consumer Related Disputes of the American Arbitration Association ("AAA Supplementary Consumer Rules"), but does not attach or include those

---

[1] The T & C are attached to the Declaration of Patrick Lambert.

[2] AAA Supplementary Consumer Rule C-5 provides: "Where no claims or counterclaims exceed $10,000, the dispute shall be resolved by the submission of documents. Any party, however, may ask for a hearing. [¶] The arbitrator may also decide that a hearing is necessary. [¶] The arbitrator will

rules; it requires subscribers to arbitrate all claims they are likely to bring against Spotify, but excludes claims that Spotify is most likely to bring (intellectual property claims, theft, piracy, and unauthorized use of the Spotify Service) from the arbitration requirement; it prohibits the arbitrator from awarding injunctive and declaratory relief – the very relief Plaintiff seeks here; it impermissibly shortens the time period for filing claims to one year, despite the longer limitations period that applies to Plaintiff's claims; it impermissibly limits Spotify's aggregate liability for all of Plaintiff's claims to the amount paid by Plaintiff for three months of service (i.e. $29.97); it provides for no discovery, with the claims being decided through a desk arbitration that does not allow for an exchange of documents (with the documents that the parties rely upon being sent directly to the American Arbitration Association ("AAA"), who is responsible for sending them to the arbitrator), or permit depositions;[2] and it does not allow for reallocation of the $200 mandatory administrative filing fee to Defendant, thus depriving the Plaintiff from effectively vindicating her rights (the filing fee for arbitration, which is otherwise recoverable in Court by the prevailing Plaintiff, is six times the maximum amount she can recover in arbitration). These pervasive legal defects permeate the Arbitration Clause and render it unenforceable.

Fifth, even if the arbitration agreement was not found to be unconscionable, the agreement would be found to be invalidated on public policy grounds because it "operat[es] . . . as a prospective waiver of a party's right to pursue statutory remedies." *Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U. S. 614, 637, n. 19 (1985); *see also American Express v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013). Here, because the filing fee of $200 is unrecoverable, and the maximum claimable damages are $29.97, the arbitral forum operates as a prospective waiver of a party's right to pursue statutory remedies, as the filing fees are more than six times the amount that is actually recoverable in arbitration. Accordingly, the Court should deny Spotify's motion to compel arbitration.

## II.     STATEMENT OF FACTS

---

[2] AAA Supplementary Consumer Rule C-5 provides: "Where no claims or counterclaims exceed $10,000, the dispute shall be resolved by the submission of documents. Any party, however, may ask for a hearing. [¶] The arbitrator may also decide that a hearing is necessary. [¶] The arbitrator will establish a fair process for submitting the documents. [¶] Documents must be sent to the AAA. These will be forwarded to the arbitrator."

OPP. TO MOTION TO COMPEL ARBITRATION  *Bleak v. Spotify USA Inc.,* Case No. CV 13-05653 CRB

1    Plaintiff filed this action on November 6, 2013 on behalf of herself and all other individuals

2    who purchased a subscription to Spotify's music streaming service through their desktop computers in

3    California since December 1, 2010, seeking damages, restitution, injunctive and declaratory relief for

4    Spotify's failure to obtain subscribers' affirmative consent to the automatic renewal or continuous

5    service offer terms in violation of California's Automatic Renewal Law (Bus. & Prof. Code §§ 17600-

6    17604) and the Unfair Competition Law (Bus. & Prof. Code §§ 17200-17204).[3] *See* First Amended

7    Complaint ("FAC") ¶ 18.

8    Spotify submitted no evidence that Plaintiff gave her assent to the Arbitration Clause contained

9    in the inconspicuous T & C. Rather, according to the T & C, Plaintiff entered into a binding contract

10   with Defendant, simply upon using the Spotify website. *See* Declaration of Patrick Lambert ("Lambert

11   Decl."), Doc. 19, Ex. F (T & C) § 1.[4] Spotify's T & C contained an Arbitration Clause, which

12   provides that "any dispute, claim or controversy arising out of relating in any way to the Spotify

13   Service or your use thereof . . . shall be determined by mandatory binding arbitration." *Id.* § 19, ¶ i.

14   The Arbitration Clause further provides that the arbitration will be governed by the AAA Commercial

15   and AAA Supplementary Consumer Rules, but it does not attach or even hyperlink those rules. *See id*.

16   The Arbitration Clause specifically carves out "any claims seeking to enforce, protect, or determine the

17   validity and ownership of any intellectual property rights," and "any claims related to allegations of

18   theft, piracy or unauthorized use of the Spotify Service" from mandatory arbitration and provides "that

19   these claims … shall be exclusively decided by courts…." *Id.* §19, ¶ ii. The Arbitration Clause

20   requires that subscribers proceed individually and not as part of a class or representative action or

21   consolidation, and it prohibits the arbitrator from awarding declaratory or injunctive relief. *Id.* § 19, ¶

22   iii. Spotify's T & C also limit Spotify's aggregate liability for all Plaintiff's claims to $29.97. *See Id.*

23   § 16, ¶ ii (limiting recovery to amount paid to Spotify during three months preceding the claim). In

24   this case Plaintiff's claim for restitution is from September 2013. *See* FAC ¶ 44. Lastly, the

25   Arbitration Clause provides that arbitration must be commenced "within ONE (1) YEAR after the date

26   the party asserting the claim first knows or reasonably should know of the act, omission or default

27   _____
     [3] Plaintiff filed her operative FAC on November 21, 2013.

28   [4] Exhibit F to the Lambert Declaration is hereafter referred to as "T & C."

OPP. TO MOTION TO COMPEL ARBITRATION *Bleak v. Spotify USA Inc.*, Case No. CV 13-05653 CRB

giving rise to the claim; and there shall be no right to any remedy for any claim not asserted within that time period." T & C § 19, ¶ iv.

The governing AAA Commercial Rules and the AAA Supplementary Consumer Rules, as explained above, are not contained in, attached, or hyperlinked in the T & C or the Arbitration Clause. When AAA Supplementary Consumer Rules and AAA Commercial Rules conflict, the AAA Supplementary Consumer Rules apply. *See* Declaration of Julian Hammond ("Hammond Decl."), Ex. A at 10, Rule C-1 (a). For claims under $10,000 (Plaintiff's claim for individual restitution falls under this category), the arbitration proceeds by submission of documents to the arbitrator through the AAA for a "desk arbitration." *See* Hammond Decl., Ex. A at 10, Rule C-5. A desk arbitration involves submission of documents to the AAA, which then forwards them to the arbitrator.[5] *Id.* The arbitrator is required to make his or her Award within 14 calendar days of the submission of the documents. Hammond Decl., Ex. A, Rule C-7(a).

Section 2 of the T & C allows Spotify to "in [its] discretion, make changes to the Spotify Service and Agreements," which includes the T & C and Arbitration Clause. Spotify need not notify subscribers of these changes, unless it, at its sole discretion, considers them "material." *Id*. Whether notified or not, subscribers are deemed to have accepted the changes by continuing to use the service. *Id.* As explained below, these circumstances render the Arbitration Clause unenforceable.

At the time of the filing of the Initial Complaint, Spotify offered in California an Unlimited Plan for $4.99 per month and a Premium Plan for $9.99 per month. Plaintiff's allegations include that Spotify failed to obtain her, and other similarly situated persons, affirmative consent to the agreement containing the automatic renewal offer terms and/or continuous service offer terms. One of Plaintiff's arguments as to why Defendant failed to obtain Plaintiff's, and other similarly situated Class Members', affirmative consent is that there was no reference whatsoever to the T & C on the Unlimited Plan check out page and there was only reference to "Terms of Service" (a document that

---

[5] Where the Claimant asks for a hearing (the Rules do not specify whether, upon such a request, the request shall be granted) the Expedited Procedures of the AAA Commercial Rules apply. These Rules provide for an exchange of all exhibits that the Parties intend to rely on two days prior to the hearing (scheduled 30 days after the appointment of the arbitrator), *again with no discovery whatsoever. See* Declaration of Julian Hammond ("Hammond Decl."), Ex. B, E-5.

1  did not exist anywhere on Defendant's website), on the Premium Plan check out page, and there was

2  no hyperlink to the T & C.  In addition, there was no check box, or other mechanism for Plaintiff (and

3  other similarly situated persons), to give her affirmative consent to the agreement containing the

4  automatic renewal offer terms, and continuous service offer terms.

5          Within ten days of the filing of the Initial Complaint, Spotify changed the Spotify website by

6  hyperlinking the T & C to the words "Terms of Service" (which were not previously hyperlinked).

7  Declaration of Ari Cherniak ("Cherniak Decl.") ¶ 8.  *See also* Declaration of James Whitehead

8  ("Whitehead Decl."), Doc. No. 20, Ex. 1, p. 4, fn. 3.[6]  Defendant also eliminated the Unlimited Plan.

9  Cherniak Decl. at ¶ 8.  The significance of these changes is that pursuant to the arbitration agreement,

10 there is no discovery and no exchange of documents, unless there is an oral hearing.  Rather, the

11 arbitration proceeds upon the submission of documents to the Arbitrator through the AAA. Without

12 being able to obtain the relevant discovery, as to the state of the Spotify website throughout the

13 relevant liability period, Plaintiff will not be able to prove her case.

14 **III.    ARGUMENT**

15         **A.    Plaintiff Did Not Agree to Arbitrate Her Claims Against Spotify.**

16         The Court's first step when considering a motion to compel arbitration is to determine whether

17 a valid contract exists.  *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir.

18 2000).  A party moving to compel arbitration must "prove, by a preponderance of the evidence, that

19 [the arbitration] agreement exists."  *Guifu Li v. A Perfect Day Franchise, Inc.*, 2011 U.S. Dist. LEXIS

20 6985, *12-13 (N.D. Cal. Jan. 25, 2011) (citation omitted).

21         As a general matter, an arbitration agreement is unenforceable where it is invalid under

22 ordinary state-law principles that govern the formation of contracts.  *AT&T Mobility LLC v.*

23 *Concepcion*, 131 S. Ct. 1740, 1745 (2011)  ("*Concepcion*"); *Sonic-Calabasas A, Inc. v. Moreno*, 57

24 Cal. 4th 1109, 1124-25 (2013).  Under California law, mutual manifestation of an agreement – mutual

25 assent – is required to create a binding and enforceable contract between the parties.  *See Binder v.*

26 *Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999).  Generally, "a party can be compelled to submit

---

[6] The statement in Whitehead's declaration that the hyperlink was added on November 26, 2013 is
incorrect.  *See* Cherniak Decl., ¶¶ 6-8 and Exs. B and C thereto.

a dispute to arbitration only where [s]he has agreed in writing to do so." *Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co.,* 6 Cal. App. 4th 1266, 1271 (1992) (citation omitted).

A federal district court applying analogous Nevada contract law found no agreement to arbitrate where there was no direct evidence that Plaintiffs assented to the terms of use containing an arbitration clause. In *In re Zappos, Inc.,* 893 F. Supp. 2d 1058 (D. Nev. 2012) an online retailer's terms of use hyperlink could be found on every webpage, between the middle and bottom of each page, visible if a user scrolls down, but defendant produced no direct evidence that Plaintiffs had clicked on the hyperlink. *Id.* at 1064. On these facts, the court explained that "[w]ithout direct evidence that Plaintiffs click on the Terms of Use, we cannot conclude that Plaintiffs ever viewed, let alone manifested assent to, the Terms of Use." *Id.* Thus, the court held that "[w]here, as here, there is no acceptance by Plaintiffs, no meeting of the minds, and no manifestation of assent, there is no contract . . . ." *Id.* at 1065.

The same holds true here. Spotify utterly fails to submit any direct evidence, let alone a preponderance of the evidence, showing that Plaintiff accepted the T & C containing the Arbitration Clause. Indeed, it admits that "Spotify's records do not indicate which specific buttons Ms. Bleak clicked on to reach the sign-up process." Lambert Decl. ¶ 6. Moreover, Plaintiff attests that she did not agree to the T & C, nor did she click on any link containing the T & C, let alone know that they existed and that they contained an Arbitration Clause. Declaration of Melissa Bleak ("Bleak Decl.") ¶¶ 1-2. Because there was no manifestation of assent or acceptance by Plaintiff, there is no binding Arbitration Clause under California law.

**B.**     **Plaintiff's Claims Fall Within the Exception to Mandatory Arbitration.**

Even if it is found that Plaintiff accepted the T & C, including the Arbitration Clause, Plaintiff's claims fall within the specific carve out in the Arbitration Clause of "any claims related to allegations of . . . unauthorized use of the Spotify Service."[7] T & C § 19, ¶ ii. As such, they are "NOT subject to mandatory arbitration." *Id.*

Cal. Bus. & Prof. Code § 17600 was enacted to end the practice of ongoing charging of

---

[7] Spotify Service is defined as, and includes, "Spotify service, websites, or software applications." *See* T & C § 1.

consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service. *See* FAC ¶ 9. Cal. Bus. & Prof. Code § 17602(a)(2) made unlawful for any business making an automatic renewal or continuous service offer to a consumer in this state to: "Charge the consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms."

Here, Plaintiff alleges that after she provided her credit card information to Spotify, Spotify unlawfully charged her credit card, without first obtaining her affirmative consent to the agreement containing the automatic renewal terms, in contravention of Cal. Bus. & Prof. Code § 17602 (a)(2), and has continued to do so since September 2013. *Id.* It is undisputed that Plaintiff "registered for Spotify's free service through a web browser on a personal computer," that she "provided her credit card information to Spotify during the upgrade process," and that Spotify charged $9.99 to Plaintiff's credit card. *See* Whitehead Decl., Doc. 20, ¶ 6. This was all done using the Spotify Service, as defined above, which includes "websites." As such, by charging Plaintiff's credit card in violation of the Cal. Bus. & Prof. Code § 17602 (a)(2), Defendant used its "Service" (by charging the Plaintiff's credit card) in an unauthorized manner. Plaintiffs allegations therefore fall within the exception to mandatory arbitration because they are allegations that relate to Spotify's unauthorized use of its Service. *See* Lambert Decl., Ex. F, Doc. 19-6, (T & C) §19, ¶ ii.

Any attempt to limit the scope of the exception is nullified by the fact that the exception is extremely broad, applying to "any claim" that is "related to" Spotify's unauthorized use of its systems, which would of course include unlawfully charging Plaintiff's credit card. *Id.*; *see Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 712 (9th Cir. 1999) (The term "arising in connection with" "reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract."); *see also ValueSelling Assocs., LLC v. Temple*, 2009 U.S. Dist. LEXIS 104174, * 6 (S.D. Cal. Nov. 5, 2009) ("A clause providing for the arbitration of 'any claim or controversy arising out of or relating to the agreement' has been held to be the paradigm of a broad

clause.").

**C.**     **Spotify's Arbitration Clause is Unenforceable Because it is Illusory.**

Under California law, a "'promise where the promisor retains an unlimited right to decide later the nature or extent of his or her performance'" is an "illusory" promise "that is too indefinite for legal enforcement…." *Peleg v. Nieman Marcus Group, Inc.*, 204 Cal. App. 4th 1425, 1439 (2012) (quoting 1 Williston on Contracts (4th ed. 2007) § 4:27, pp. 804-805). "An agreement to arbitrate is illusory if, as here, the [defendant] can unilaterally modify the [agreement]." *Sparks v. Vista Del Mar Child & Family Services*, 207 Cal. App. 4th 1511, 1523 (2012) ("*Sparks*"); *see also Carey v. 24 Hour Fitness*, *USA, Inc.*, 669 F.3d 202, 205-209 (5th Cir. 2012) (applying analogous Texas contract law, court found arbitration agreement in employee handbook unenforceable where company retained unilateral right to modify or terminate the arbitration provision).

In *Sparks*, defendant moved to compel arbitration on the grounds that plaintiff agreed to arbitrate any claims arising out of the termination of his employment by signing the company's employee handbook, which contained an arbitration agreement. The handbook contained a clause immediately following the arbitration provision entitled "'Amendments, Revisions and Modifications,'" which provided that the handbook "'may be amended, revised and/or modified by [defendant] at any time without notice.'" 207 Cal. App. 4th at 1516. The plaintiff signed a document acknowledging his receipt of the employee handbook, that he would be governed by its contents, and that the employer "'may change, rescind, or add to any policies, benefits or practices described in the Handbook from time to time in its sole and absolute discretion, with or without notice.'" *Id.* Based on these facts, the trial court denied defendant's petition to compel. The Court of Appeal affirmed the denial, finding that there was never an agreement to arbitrate between the parties because defendant retained the right to unilaterally modify the handbook, which rendered any agreement to arbitrate illusory and unenforceable. *Id.* at 1523.

The Court in *In re Zappos, Inc.* reached the same result where the terms of use gave Zappos the unilateral right to change its terms of use, including the arbitration clause, at any time without notice to the consumer. 893 F. Supp. 2d at 1066. The court explained, "[i]n effect, the agreement allows

OPP. TO MOTION TO COMPEL ARBITRATION  *Bleak v. Spotify USA Inc.,* Case No. CV 13-05653 CRB

1    Zappos to hold its customers and users to the promise to arbitrate while reserving its own escape

2    hatch." *Id.* "Because the Terms of Use binds consumers to arbitration while leaving Zappos free to

3    litigate or arbitrate wherever it sees fit, there exists no mutuality of obligation." *Id.* The court thus

4    found the arbitration agreement "illusory and therefore unenforceable." *Id.*

5         As pointed out in *In re Zappos*, *Inc.,* 893 F. Supp. 2d at 1065-1066, several courts have held

6    arbitration agreements unenforceable based on such unilateral modification clauses. *See,* e.g.,

7    *Morrison v. Amway Corp.*, 517 F.3d 248, 257-58 (5th Cir. 2008) (finding arbitration agreement

8    illusory and unenforceable where defendant held unilateral authority to amend or eliminate the

9    arbitration program); *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002) ("We join other

10   circuits in holding that an arbitration agreement allowing one party the unfettered right to alter the

11   arbitration agreement's existence or its scope is illusory."); *Penn v. Ryan's Family Steak Houses, Inc.*,

12   269 F.3d 753, 759-61 (7th Cir. 2001) (denying motion to compel arbitration where agreement was

13   illusory because one party had "sole, unilateral discretion to modify or amend"); *Floss v. Ryan's*

14   *Family Steak Houses, Inc.*, 211 F.3d 306, 315-316 (6th Cir. 2000) (arbitration agreement was "fatally

15   indefinite" and illusory because employer "reserved the right to alter applicable rules and procedures

16   without any obligation to notify, much less receive consent from," other parties); *Hooters of Am., Inc.*

17   *v. Phillips*, 173 F.3d 933, 939 (4th Cir. 1999) (holding that employer's ability to modify rules "in

18   whole or in part" without notice to employee renders arbitration agreement illusory); *Grosvenor v.*

19   *Qwest Corp.*, 854 F. Supp. 2d 1021, 1034 (D. Colo. Feb. 23, 2012) ("Because Qwest reserved an

20   unfettered ability to modify the existence, terms and scope of the arbitration clause, it is illusory and

21   unenforceable."); *Harris v. Blockbuster. Inc*, 622 F. Supp. 2d 396, 398-99 (N.D. Tex. 2009)

22   (arbitration clause in internet video purchase agreement illusory because defendant reserved the right

23   to alter the terms of the agreement at any time by giving notice to the consumer); *Snow v. BE & K*

24   *Constr. Co.*, 126 F. Supp. 2d 5, 14-15 (D. Me. 2001) (holding arbitration agreement illusory and

25   unenforceable because employer "reserve[d] the right to modify or discontinue [the arbitration]

26   program at any time"); *Trumbull v. Century Mktg. Corp.*, 12 F. Supp. 2d 683, 686 (N.D. Ohio 1998)

27   (finding no binding arbitration agreement where "the plaintiff would be bound by all the terms of the

28

OPP. TO MOTION TO COMPEL ARBITRATION  *Bleak v. Spotify USA Inc.,* Case No. CV 13-05653 CRB

handbook while defendant could simply revoke any term (including the arbitration clause) whenever it desired. Without mutuality of obligation, a contract cannot be enforced.").

Likewise here, the Arbitration Clause is unenforceable because it is an illusory promise. Section 2 of the T & C grants Spotify the unilateral right to modify the Arbitration Clause,[8] allowing Spotify to avoid the promise to arbitrate simply by amending the provision, while leaving Plaintiff and other subscribers bound to arbitrate their claims. Spotify reserves the right to only notify subscribers of these changes when, in its sole discretion, it considers them "material." Even then there is no time period for prior notice of such changes. Because Spotify retains the right to determine, in its own discretion, whether changes are material, it, in essence, has no obligation to notify the consumer of such changes. If Spotify does deem a modification material, it may provide notice through the website. *See* T & C § 2. In addition, section 14 of the T & C,[9] provides Spotify with the right to terminate the agreement and/or suspend access to the Service at any time, for any reason. Such unilateral modification and termination clauses render the Arbitration Clause illusory, invalid and unenforceable.

### D. The Arbitration Clause is Procedurally and Substantively Unconscionable, Permeated with Illegality, and Unenforceable.

Even if the Arbitration Clause were not invalid for being illusory and lacking mutual assent, it would be unenforceable because it is unconscionable. Under the Federal Arbitration Act ("FAA"), an arbitration agreement is valid, irrevocable and enforceable except on "such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 131 S. Ct. at 1746 (preempting state

---

[8] Section 2 states: "Occasionally, we may, in our discretion, make changes to the Spotify Service and Agreements. When we make changes to the Agreements that we consider material, we'll notify you through the Service. By continuing to use the Service after those changes are made, you are expressing and acknowledging your acceptance of the changes."

[9] Section 14 reads, in part, as follows: "Spotify may terminate the Terms or suspend your access to the Spotify Service at any time . . . If . . . Spotify terminate[s] the Terms, . . . you agree that Spotify shall have no liability or responsibility to you and Spotify will not refund any amounts that you have already paid, to the fullest extent permitted under applicable law."

1  law unconscionability rule that categorically invalidated arbitration agreements in consumer cases with

2  class action waivers).

3        Recent decisions have made clear that California's general unconscionability analysis under

4  contract law as applied to arbitration agreements is not preempted by the FAA.  *See Sonic-Calabasas*

5  *A, Inc. v. Moreno*, 57 Cal. 4th at 1124-25 (state courts may continue to enforce unconscionability rules

6  that do not "interfere[] with fundamental attributes of arbitration" post-*Concepcion* (citation omitted);

7  *Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138, 1150 (2012) ("*Samaniego*")

8  (unconscionability defense under California law survives *Concepcion*); *see also Chavarria v. Ralphs*

9  *Grocery Co.*, 733 F.3d 916, 926-27 (9th Cir. 2013) (California unconscionability rules applied to

10  invalidate arbitration agreement).

11       "Under California law, courts may refuse to enforce any contract found 'to have been

12  unconscionable *at the time it was made*,' or may 'limit the application of any unconscionable clause.'"

13  *Concepcion*, 131 S. Ct. at 1746 (citing Cal. Civ. Code § 1670.5 (a)) (emphasis added).  "A finding of

14  unconscionability requires 'a "procedural" and a "substantive" element, the former focusing on

15  "oppression" or "surprise" due to unequal bargaining power, the latter on "overly harsh" or "one-

16  sided" results.'"  *Id.* (citing *Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 114 (2000)

17  ("*Armendariz*").  Although both elements must be present before a contract provision is rendered

18  unenforceable on grounds of unconscionability, they are reviewed on a "sliding scale where the greater

19  the evidence of procedural unconscionability, the less evidence is needed of substantive

20  unconscionability," and vice-versa.  *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1406 (2003); *see also*

21  *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638, 656 (2004).

## 1.    The Arbitration Clause is Procedurally Unconscionable.

23       "Procedural unconscionability 'concerns the manner in which the contract was negotiated and

24  the circumstances of the parties at that time[,]" focusing on factors of oppression or surprise.  *Ferguson*

25  *v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 783 (9th Cir. 2002) (citing *Kinney v. United*

26  *HealthCare Servs., Inc.*, 70 Cal. App. 4th 1322, 1327-28 (1999)); *see also A & M Produce Co. v. FMC*

27  *Corp.*, 135 Cal. App. 3d 473, 486 (1982).  Oppression addresses the weaker party's absence of choice

28

and unequal bargaining power that results in "no real negotiation." *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d at 486. Surprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party. *Parada v. Super. Ct.*, 176 Cal. App. 4th 1554, 1571 (2009). Unfair surprise results when the stronger party benefits from the weaker party's lack of an informed choice. *Sanchez v. W. Pizza Enters., Inc.*, 172 Cal. App. 4th 154, 173 (2009). Unfair surprise can be evidenced by the failure to provide a copy of the arbitration rules by which the employee would be bound and strongly supports a finding of procedural unconscionability. *See Sparks*, 207 Cal. App. 4th at 1523; *Trivedi v. Curexo Technology Corp.*, 189 Cal. App. 4th 387, 393 (2010) (agreeing with "numerous" California decisions holding that "failure to provide a copy of the arbitration rules… supported a finding of procedural unconscionability").

In assessing procedural unconscionability, a court deciding the issue under California law focuses on the factors of surprise and oppression in the contracting process, including whether the contract was one drafted by the stronger party and whether the weaker party had an opportunity to negotiate. *See Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1073 (9th Cir. 2007). An agreement or any portion thereof is procedurally unconscionable if "the weaker party is presented the clause and told to 'take it or leave it' without the opportunity for meaningful negotiation[.]" *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100 (2002). Thus, a contract is procedurally unconscionable under California law if it is "a standardized contract, drafted by the party of superior bargaining strength that relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *AT&T v. Ting*, 319 F.3d 1126, 1148 (9th Cir. 2003) (citations omitted); *see also Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1071 (2003); *Samaniego*, 205 Cal. App. 4th at 1145-46; *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (quoting *Armendariz*, 24 Cal. 4th at 117).

Here, Spotify's attempt to impose mandatory arbitration on Plaintiff through the Arbitration Clause is both highly oppressive and unfairly surprising. First, the Arbitration Clause was part of a standardized contract, drafted by Spotify, who had the superior bargaining strength, that relegated the Plaintiff only the opportunity to adhere to the contract or reject it on a take it or leave it basis as a condition of use, (in fact it was imposed on all users of the website, immediately upon access), with no

opportunity to negotiate its terms. [10] Second, the element of surprise is not a necessary prerequisite for procedural unconscionability where there are indicia of oppressiveness. See *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1281 (2004). Here there are several indicia of oppressiveness.

First, the terms of the arbitration provision are buried within a lengthy and densely worded contract prepared by Spotify. See *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d at 486 ("'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms."); *see also Gutierrez v. Autowest, Inc.,* 114 Cal. App. 4th 77, 87 (2003). The arbitration provision is located on the eleventh page of a thirteen page T & C document, in the nineteenth of twenty sections. See *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1293 (2008) ("*Bruni*") ("The arbitration provisions take up roughly one full page in a 30-page booklet."); *see also Bragg v. Linden Research, Inc*. 487 F 3.d 1447, 1450 (7th Cir. 1996). The arbitration clause is hidden in single spaced text, in an inconspicuous size font and color. When Spotify sought to draw the readers' attention to important language, it did so, by using ALL CAPITAL LETTERS, as it did, for example, in § 16 of the T&C where it limited its liability. *Cf. Bruni*, 160 Cal. App. 4th at 1293 (finding a "strong showing of surprise" when the "the arbitration provisions are not distinguished from the rest of the booklet by either bolding or capitalization"). Spotify does not separately provide subscribers with the arbitration agreement, nor do subscribers separately agree to the arbitration agreement. *Cf. Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1467, 1470-1471 (2009) (finding surprise where the agreement to arbitrate was "contained in a separate paragraph initialed by [the plaintiff]").

Second, the Arbitration Clause was contained in a document referred to as "Terms and Conditions of Use," which was accessible via an inconspicuous hyperlink named "Legal." The "Legal" hyperlink was located at the very bottom of the Spotify website[11] and appeared in smaller and

---

[10] Section 1 of the T & C states: "Thanks for choosing Spotify ("Spotify", "we", "us", "our"). By using the Spotify service, websites, or software applications (together, the "Spotify Service" or "Service"), including by purchasing or receiving Codes or Limited Offers, you are entering into a binding contract with our local company in your country of residence (your "Local Country") if applicable or the company listed in this chart. Your agreement with us includes these Terms and Conditions of Use ("Terms") and our Privacy Policy (together with the Mobile Terms where applicable, the "Agreements"). If you don't agree with these Terms, then please don't use the Service."

[11] To get to the bottom of the website, a user would have to scroll down 5 full pages.

1  lighter colored font than the rest of the text on the website.  *See* Cherniak Decl. ¶ 9; *see also* Lambert

2  Decl., Ex. B (Doc. 19-2) that shows no link to the Terms and Conditions of Use.

3          Third, the Arbitration Clause provided that the arbitration will be governed by the AAA

4  Commercial Rules and AAA Supplementary Consumer Rules, but failed to attach or otherwise provide

5  them to Plaintiff (such as by providing a hyperlink), thus requiring her "to go to another source" to

6  understand the rules by which she would be bound.  The authorities are clear that this factor is

7  significant and weighs in favor of finding procedural unconscionability.  *See,* e.g., *Sparks*, 207

8  Cal.App.4th at 1523; *Samaniego*, 205 Cal.App.4th at 1146; *Ajamian v. CantorCO2e, L.P.,* 203 Cal.

9  App. 4th 771, 797 (2012); *Zullo v. Superior Court,* 197 Cal. App. 4th 477, 485-86 (2011); *Trivedi v.*

10  *Curexo Tech.*, 189 Cal. App. 4th at 393.

11

12          These factors imbue the Arbitration Clause with a high degree of procedural unconscionability.

13                    **2.        The Arbitration Clause is Substantively Unconscionable.**

14          A contract is substantively unconscionable when it is unjustifiably one-sided to such an extent

15  that it "shock[s] the conscience."  *Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1043 (9th Cir. 2001);

16  see also *Parada v. Super. Ct.*, 176 Cal. App. 4th 1573 (quoting *Morris v. Redwood Empire Bancorp*,

17  128 Cal. App. 4th 1305, 1322 (2005)).  "Substantive unconscionability focuses on overly harsh or one-

18  sided results."  *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 723 (2004)  (citation omitted).  To avoid a

19  finding of substantive unconscionability, arbitration agreements must contain at least "a modicum of

20  bilaterality."  *Armendariz*, 24 Cal. 4th at 119.

21          Because there is a high degree of procedural unconscionability here, however, only minimal

22  substantive unconscionability is required to render the Arbitration Clause unconscionable.  *See id.* at

23  114; see also *Harper v. Ultimo*, 113 Cal. App. 4th at 1406 (where there is a high level of procedural

24  unconscionability, there need not be much substantive unconscionability to find an agreement to

25  arbitrate unenforceable).  Nonetheless, as explained below, the Arbitration Clause contains a *high*

26  *degree* of substantive unconscionability, as evidenced by its overly harsh and one-sided terms.

27

28
                                                    14

1

(a)    **The Arbitration Clause lacks mutuality because it carves out claims from**

2

**mandatory arbitration that Spotify is likely to bring.**

3    First, the Arbitration Clause is substantively unconscionable because it lacks mutuality.  As

4    discussed above, the Arbitration Clause requires Plaintiff and other subscribers to arbitrate "*any*

5    dispute, claim or controversy arising out of or relating in any way to the Spotify Service or [their] use

6    thereof…."  T & C § 19, ¶ i (emphasis added).  In sharp contrast, the Arbitration Clause carves out

7    "any claims seeking to enforce, protect, or determine the validity and ownership of any intellectual

8    property rights," and "any claims related to allegations of theft, piracy or unauthorized use of the

9    Spotify Service" from mandatory arbitration and provides "that these claims … shall be exclusively

10    decided by courts…."  *Id.* § 19, ¶ ii.  These carve-outs are claims that only Spotify is likely to bring.

11    Indeed, in *Merkin, et al. v. Vonage Am. Inc., et al.,* 2014 U.S. Dist. LEXIS 14055, *30-31

12    (C.D. Cal. Feb. 3, 2014) the court found an arbitration agreement containing almost identical

13    exceptions (disputes over the validity of intellectual property rights and disputes related to allegations

14    associated with unauthorized use, theft or piracy of service) to be lacking mutuality and substantively

15    unconscionable.  Although the exceptions purported to be bilateral, they specifically excluded the type

16    of claims likely to be brought by the company and least likely to be brought by the subscriber.  As

17    explained by the California Supreme Court, "an arbitration agreement imposed in an adhesive context

18    lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all

19    claims arising out of the same transaction or occurrence or series of transactions or occurrences."

20    *Armendariz*, 24 Cal. 4th at 120.  When only the weaker party's claims are subject to arbitration, and

21    there is no reasonable justification, the agreement lacks the requisite degree of mutuality.  *Id.* at 119–

22    120.

23

(b)    **The Arbitration Clause lacks mutuality because it allows Spotify to**

24

**unilaterally modify the agreement.**

25    Second, Spotify's ability to unilaterally modify the T & C (*see* T & C § 2) and terminate the

26    agreement at any time for any reason (see *id.* § 14) and hence unilateral ability to delete the mandatory

27    arbitration requirement, also eviscerates the Arbitration Clause of mutuality and renders it

28

OPP. TO MOTION TO COMPEL ARBITRATION  *Bleak v. Spotify USA Inc.,* Case No. CV 13-05653 CRB

substantively unconscionable.  Moreover, as discussed above, notice of these changes is not required unless, Spotify, in its sole discretion, considers them "material" and even then there is no time period for prior notice of such changes.  See *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003) (holding that a unilateral modification clause, even though it provided 30 days' notice of any change, was substantially unconscionable).  Moreover, Spotify could also unilaterally and without notice modify the procedures to be followed in arbitration (since the Agreement trumps the AAA Rules) if it deems them immaterial.  Hence, Spotify is afforded the opportunity not only to unilaterally change the standards for deciding claims, but the procedures for determining them.

(c)      **The Arbitration Clause lacks mutuality because it prohibits the arbitrator from awarding injunctive and declaratory relief.**

Third, California courts consistently have found arbitration provisions unconscionable where both parties to an agreement are bound to arbitration, but the stronger party may seek "other equitable relief" through the court system.  *Davis v. O'Melveny & Myers*, 485 F.3d at 1081; *see also Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 176 (2002) ("*Mercuro*"); *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1541-42 (1997) ("*Stirlen*").

In the instant case, the Arbitration Clause's prohibition on the award of declaratory and injunctive relief is unduly harsh, one-sided, and lacks a "modicum of bilaterality."  This provision effectively precludes subscribers from bringing any claims for injunctive and declaratory relief in any forum because they are required to arbitrate all of their claims and the arbitrator is prohibited from awarding such relief.  Spotify, however, as explained above, may obtain injunctive and declaratory relief in court for the types of claims it is likely to bring – intellectual property claims and claims of theft, piracy or unauthorized use of the Spotify Service.  While the Ninth Circuit recently clarified that the California rule exempting claims for public injunctive relief from arbitration is preempted by the FAA based on recent decisions of the U.S. Supreme Court, it expressly left open the question of enforceability of an arbitration agreement where the arbitrator concludes that he or she does not have the power to award injunctive relief.  *See Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 937 (9th Cir. 2013) ("We decline to resolve in advance the question of what, if any, court remedy Plaintiffs

might be entitled to should the arbitrator determine that it lacks the authority to issue the requested injunction."). Here, the Arbitration Clause expressly prohibits the arbitrator from awarding injunctive and declaratory relief – the very relief Plaintiff seeks on behalf of herself and other Spotify subscribers (*see* FAC, Prayer for Relief ¶¶ B, C & F) – and it precludes Plaintiff from going to court to seek such relief. Under these circumstances, the Arbitration Clause's prohibition of vital relief for Plaintiff and other subscribers renders it substantively unconscionable.

Spotify may argue that the AAA Supplementary Consumer Rules provide that the arbitrator may grant any remedy, relief, or outcome the parties could have received in court. *See* Rule C-7. This argument, however, is precluded by the terms of the arbitration agreement, which provide that arbitration will be governed by the AAA Commercial Rules and AAA Supplementary Consumer Rules "as modified by these Agreements." *See* T & C §19, ¶ i (emphasis added).

> **(d)** **Administrative filings fees are unrecoverable and substantially more than the value of the claim, thereby effectively foreclosing Plaintiff's pursuit of the claims.**

Fourth, the high administrative and filing fees associated with filing an arbitration matter with the AAA pursuant to the AAA Supplementary Consumer Rules and AAA Commercial Arbitration Rules, combined with the applicable arbitration rules that do not allow the arbitrator to reallocate the filing and administrative fees (unless the arbitrator determines the claim was filed for the purposes of harassment or is patently frivolous – however, here the claims in arbitration will only be brought by the subscribers), effectively foreclose the pursuit of Plaintiff's claims. The Supreme Court's recent decision in *American Express Corp. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2310-2311 (2013) affirmed the existence of an exception to the Federal Arbitration Act, whereby the Court expressed a willingness to invalidate, on "public policy" grounds, arbitration agreements that "operat[e] . . . as a prospective waiver of a party's right to pursue statutory remedies." 473 U. S., at 637, n. 19 (emphasis added). Subsequent cases have similarly asserted the existence of an "effective vindication" exception. *See*, e.g., *14 Penn Plaza LLC v. Pyett,* 556 U. S. 247, 251-274 (2009); *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U. S. 20, 28 (1991). The exception finds its origin in the desire to prevent

"prospective waiver of a party's right to pursue statutory remedies." *Mitsubishi Motors v. Soler Chrysler-Plymouth,* 473 U. S. at 637, n. 19 (emphasis added). That would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights. And it would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable. *See Green Tree Financial Corp.-Ala. v. Randolph,* 531 U. S. 79, 90 (2000) ("It may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights"); *see also Chavarria v. Ralphs Grocery Co.,* 733 F.3d at 927 (holding that the administrative and filing costs imposed by Ralphs' arbitration policy were so high that they effectively foreclosed the pursuit of plaintiff's claim. "Ralphs has constructed an arbitration system that imposes non-recoverable costs on employees just to get in the door.")

In the present case, the filing fee pursuant to the Supplementary Consumer Rules is $200. *See* AAA Supplementary Consumer Rules, p. 12, § (i). There are also hearing fees associated with consumer arbitrations. *See id.* p. 12. An arbitrator cannot reallocate the filing or hearing fees. *See id.* This is unlike actions filed in Court, where rules of procedure provide for the prevailing party to recover his court costs, including the filing fee. *See* Federal Rule of Civil Procedure ("FRCP") 54. These rules effectively foreclose Plaintiff from pursuing her claims on an individual basis because the filing fee, which is not recoverable by a prevailing plaintiff, is more than six times the maximum possible recovery of $29.97 (*see* T & C § 16).

(e)      **The Arbitration Clause's one-year statute of limitations is unconscionable.**

Several courts have found arbitration clauses that shorten the statute of limitations for claims unconscionable. For example, the court in *Stirlen,* 51 Cal. App. 4th at 1542 found an arbitration agreement containing a one-year statute of limitations and providing that the failure to request arbitration within the prescribed period "shall constitute a complete waiver of all rights to raise any claims in any forum, arising out of any dispute described herein" to be unconscionable and unenforceable in its entirety because it shortened the limitations period normally available for plaintiff's claims. *See also Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 894-95 (9th Cir. 2002) (one-year statute of limitations in arbitration agreement unenforceable because it forced the plaintiff to

arbitrate his claims "without affording him the benefit of the full range of statutory remedies");
*Martinez v. Master Protection Corp.*, 118 Cal. App. 4th 107, 117 (2004) (holding that a shortened six-month statute of limitations in an arbitration agreement was unconscionable); *Samaniego,* 205 Cal. App. 4th at 1147 (same); *Wherry v. Award, Inc.,* 192 Cal. App. 4th 1242, 1249 (2011) (same).

Likewise here, the arbitration clause's one-year statute of limitations denies Plaintiff and other subscribers the "full range of statutory remedies" by eviscerating claims that accrued during the statutorily applicable limitations period. For example, the Unfair Competition Law, under which Plaintiff brings some of her claims, provides for a four-year statute of limitations (*see* Bus. & Prof. Code § 17208) and Plaintiff seeks relief for violations that date back to December 1, 2010, when the Automatic Renewal Law first took effect in California. *See* FAC ¶ 2.

In contrast, the shortening of the limitations period does not apply to claims that are excluded by the arbitration agreement [12] (i.e. intellectual property, theft, piracy, and unauthorized use claims likely to be brought only by Spotify). Spotify's attempt to truncate the limitations period only for the claims likely to be brought by subscribers and escape liability where it could not do so in court is unduly harsh and oppressive and renders the arbitration clause substantively unconscionable.

**(f)** **The Arbitration Clause's provision limiting discovery is unconscionable.**

Arbitration agreements that severely limit the parties' rights to discovery are substantively unconscionable. *See,* e.g., *Ontiveros v. DHL Exp. (USA), Inc.*, 164 Cal. App. 4th 494, 515 (2008) ("Ontiveros"); *Doubt v. NCR Corp.*, 2010 U.S. Dist. LEXIS 102484, *17-20 (N.D. Cal. Sep. 13, 2010) *Kinney*, 70 Cal. App. 4th at 1332. For example, the court in *Ontiveros*, 164 Cal. App. 4th at 513, found an agreement that allowed plaintiff to take the deposition of only one individual, where plaintiff's counsel legitimately estimated that at least 15 to 20 depositions were needed, substantively unconscionable. The court in *Kinney* similarly found an arbitration agreement that limited the use of interrogatories seeking identification of witnesses and limited each party to 25 document requests and two depositions substantively unconscionable. 70 Cal. App. 4th at 1332. "Given that [the defendant]

---

[12] *See* T & C § 19, ¶ iv: "Any arbitration must be commenced by filing a demand for arbitration with the AAA within ONE (1) YEAR after the date the party asserting the claim first knows or reasonably should know of the act, omission or default giving rise to the claim; and there shall be no right to any remedy for any claim not asserted within that time period."

1 is presumably in possession of the vast majority of evidence that would be relevant to … claims

2 against it, the limitations on discovery, although equally applicable to both parties, work to curtail

3 [plaintiff's] ability to substantiate any claim against [it]." *Id*.

4 Here, the arbitration clause imposes draconian discovery limitations that curtail Plaintiff's

5 ability to substantiate her statutory claims against Spotify. The AAA Supplementary Consumer Rules

6 provided for by the arbitration clause *do not allow* for any discovery (including any depositions or any

7 exchange of documents), nor does the arbitrator have power to order any discovery. *See* Hammond

8 Decl., Ex. B, AAA Commercial Rules R-22(b). Moreover, claims valued at $10,000 or less – such as

9 Plaintiff's claims – are subject to "desk" arbitration, which involves submission of documents to the

10 AAA, which then forwards them to the arbitrator.[13] *Id.,* Ex. A, AAA Supplementary Consumer Rules

11 C-5. The arbitrator is required to make his or her Award within 14 calendar days of the submission of

12 the documents. *Id.,* AAA Supplementary Consumer Rules C-7(a). Desk arbitration results in an

13 especially one-sided proceeding where, as here, Defendant possesses all the relevant documents and

14 witnesses necessary for Plaintiff to support her claims. Under the AAA Supplementary Consumer

15 Rules, Plaintiff has no right to secure access to all the documents that show the changes made to the

16 website, when they were made, how they were made, and how they were effectuated. Such restrictive

17 discovery precludes Plaintiff from obtaining sufficient information from the Company to support her

18 claims, which involve company archived documents, historical screen shots, corporate level, manager

19 level and potentially thousands of class member witnesses spanning over three years of potential

20 liability. The Arbitration Clause's failure to provide for formal discovery renders it substantively

21 unconscionable.

22 **(g)** **Limitations on Damages and Liability are Unconscionable.**

23 "The principle that an arbitration agreement may not limit statutorily imposed remedies such as

24 punitive damages and attorney fees appears to be undisputed." *Armendariz,* 24 Cal. 4th at 103.

25 Further, whether punitive or consequential damages are statutorily authorized or "otherwise allowed,"

---

26 [13] Where the Claimant asks for a hearing (the Rules do not specify whether, upon such a request, the
request shall be granted) the Expedited Procedures of the AAA Commercial Rules apply. These Rules

27 provide for an exchange of all exhibits that the Parties intend to rely on two days prior to the hearing

28 (scheduled 30 days after the appointment of the arbitrator).

arbitration provisions seeking to deprive plaintiffs of these remedies are unconscionable. *Independent Ass'n of Mailbox Center Owners, Inc. v. Superior Court*, 133 Cal. App. 4th 396, 412-13 (2005).

Here, the arbitration agreement purports to limit the damages that an arbitrator can award.[14] Specifically, § 16 of the T & C (as incorporated into the arbitration agreement) does not allow any indirect, special, incidental, punitive, exemplary or consequential damages, arising out of the use, or inability to use the Spotify Service, regardless of the legal theory and limits Spotify's aggregate liability for all claims relating to the Spotify Service to no more than the amounts paid by the subscriber during the prior three months in question. Moreover, § 14 of the T & C (as incorporated into the arbitration agreement) disclaims any liability for suspending access to or terminating a subscriber's service prior to the end of the subscription term and provides that no refund will be issued for any remaining time on the subscription. These provisions are so one-sided that it "shocks the conscience."

### 3. The Entire Arbitration Agreement is Unenforceable Because the Unconscionable Provisions Cannot Be Severed from the Arbitration Clause.

The final question is whether the presence of the unconscionable provisions warrants a refusal to enforce the entire arbitration agreement, or whether the offending provisions may be severed to avoid an illegal result. Civ. Code § 1670.5(a); *Armendariz*, 24 Cal. 4th at 121-24. "The overarching inquiry is whether "'the interests of justice ... would be furthered' by severance." *Armendariz*, 24 Cal. 4th at 124 (quoting *Beynon v. Garden Grove Medical Group*, 100 Cal. App. 3d 698, 713 (1980). "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." *Id.* at 124. "[M]ultiple defects indicate a systematic effort to impose

---

[14] The Arbitration Clause provides that the arbitration will be governed by the AAA Rules, as modified by these "Agreements." The T & C defines Agreement as including the entire T & C. The AAA Supplementary Consumer Rule C-7(c) provides that the "arbitrator may grant any remedy, relief or outcome that the parties could have received in court." Hence, since the arbitration clause provides that the AAA Rules are modified by the T & C, the arbitrator's power to award certain relief is limited by §§ 14 and 16 of the T & C.

arbitration on [a plaintiff] not simply as an alternative to litigation, but as an inferior forum that works to the [company]'s advantage." *Id.* (equating "multiple" defects with two unlawful provisions). Several courts have held an arbitration agreement unenforceable in its entirety where it contained two defects. *See id.*; *Franco v. Athens Disposal Co.*, 171 Cal. App. 4th 1277, 1303 (2009); *Sanchez*, 172 Cal. App. 4th at 181. In *Doubt v. NCR Corp.*, this Court invalidated an arbitration agreement that had two substantively unconscionable provisions, finding that "[t]o compel arbitration of Plaintiff's claims would grant an undeserved benefit to Defendant, which drafted the [agreement] as a means to compel arbitration as an inferior forum that works to its advantage." 2010 U.S. Dist. LEXIS 102484, at * 22.

Here, the Arbitration Clause is critically deficient in several ways. It unlawfully shortens the statute of limitations, carves out claims from arbitration that Spotify is more likely to bring, contains an unconscionably unilateral arbitration clause, unlawfully prohibits injunctive and declaratory relief, requires a nonrefundable filing fee that exceeds the value of Plaintiff's claims, limits Spotify's damages and liability, fails to attach the AAA Rules that it incorporates, and fails to provide sufficient discovery for Plaintiff to substantiate her claims. "Such multiple defects indicate a systematic effort to impose arbitration . . . as an inferior forum that works to the company's advantage." *Armendariz*, 24 Cal. 4th at 124; *Mercuro*, 96 Cal. App. 4th at 185. The substantively unconscionable provisions cannot be cured by striking or limiting application of identifiable provisions. Rather, the arbitration agreement is so "'permeated' by unconscionability [it] could only be saved, if at all, by a reformation beyond the court's authority." *Mercuro*, 96 Cal. App. 4th at 182; *Armendariz*, 24 Cal. 4th at 122-25. Because the Arbitration Clause in this case is permeated with illegality and unconscionability, it is unenforceable in its entirety.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Spotify's motion to compel this action to arbitration.

Dated: March 10, 2014

_____
JULIAN HAMMOND

# EXHIBIT C

## To Commerson
## Declaration

Pages 1 - 11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CHARLES R. BREYER

MELISSA BLEAK, individually and )
on behalf of all others similarly )
situated, )
                            )
           Plaintiff, )
                            )
  VS. ) No. C 13-5653 CRB
                            )
SPOTIFY USA INC., a Delaware )
corporation, )
                            ) San Francisco, California
           Defendant. ) Friday
_____) April 25, 2014

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff:**          HammondLaw, PC
                         1180 S. Beverly Drive, Suite 601
                         Los Angeles, California 90035
                 **By:  Julian Ari Hammond, Esquire**

**For Defendant:**        Davis Wright Tremaine LLP
                         1201 Third Avenue, Suite 2200
                         Seattle, Washington 98101-3045
                 **By:  Stephen Michael Rummage, Esquire**

                         Davis Wright Tremaine LLP
                         505 Montgomery Street, Suite 800
                         San Francisco, California  94111-6533
                 **By:  Joseph Edward Addiego, III, Esquire**

**Reported By:**      *Katherine Powell Sullivan, CSR #5812*
                    *Official Reporter - U.S. District Court*

1                     P R O C E E D I N G S

2   **APRIL 25, 2014**                                **10:57 A.M.**

3          **THE CLERK:**  Calling case C 13-5653, Melissa Bleak

4   versus Spotify.

5          Appearances, Counsel.

6          **MR. HAMMOND:**  Good morning, Your Honor.  Julian

7   Hammond for the plaintiffs, plaintiff Melissa Bleak.

8          **MR. RUMMAGE:**  Good morning, Your Honor.  Steve Rummage

9   appearing this morning on behalf of Spotify.  And with me is my

10  partner, Joseph Addiego, and Kevan Choset, who is the general

11  counsel of Spotify USA.

12         **THE COURT:**  Good morning.

13      So let's try to cut through some of these issues.  As

14  to -- this is a question of whether the Court should compel

15  arbitration.

16         **MR. HAMMOND:**  Correct.

17         **THE COURT:**  And a number of arguments, large number of

18  arguments are raised as to why I shouldn't.

19      And some are easier to deal with than others, but let's

20  take the one that in my view -- you know, is there an

21  arbitration agreement?  That is, have the parties agreed to

22  arbitrate whatever they agreed to arbitrate?

23      And there are objections that are raised that --

24  basically, to the point that there wasn't really an agreement

25  because of the way the terms and conditions were placed on the

1  website, and the mechanics of it all, the plaintiff didn't

2  really agree, knowingly agree to arbitration.

3      That's, in a nutshell, the first argument.  Which I

4  reject.

5      It appears to me that there were several opportunities

6  that were presented.  You know, there are a lot of ways to talk

7  about arbitration, but this way is satisfactory.

8          **MR. HAMMOND:**  And, Your Honor, we don't press that.

9          **THE COURT:**  Right.

10     Okay.  So now let's get to the -- the more interesting

11  argument and sort of where you do lose me, where I thought it

12  would be sort of an interesting argument, is the argument of

13  mutuality.

14     Is it that, you know, that you have to arbitrate

15  everything and they don't have to arbitrate anything?  I mean,

16  that's sort of the way it's argued.

17     But in this arbitration agreement what is carved out -- or

18  maybe it's carved in.  Let me just --

19          **MR. RUMMAGE:**  Carved out, Your Honor.

20          **THE COURT:**  Talked about collectability.

21          **MR. RUMMAGE:**  Oh.

22          **THE COURT:**  And that's in.

23          **MR. RUMMAGE:**  Yeah, that's not covered by the

24  carve-out.

25          **THE COURT:**  That's not covered by the carve-out.

1          **MR. RUMMAGE:**  That's correct.

2          **THE COURT:**  That is to say, that is to say, an issue

3    involving whether somebody owes somebody money for the services

4    that were rendered is arbitrable?

5          **MR. RUMMAGE:**  Correct, Your Honor.

6          **THE COURT:**  Matter of fact, in my view, it goes right

7    to the heart of the arbitration.  The purpose of an

8    arbitration, which is, most people fight about, Do I owe you

9    money or do I not owe you money?

10         And the argument that the plaintiff makes here is, I don't

11   owe you money because you set a process, a procedure of

12   automatic use of credit cards, or so forth, which is unfair,

13   unconscionable, dah dah dah dah dah.

14         And you're not saying, I didn't get the service.  You're

15   saying, I got the service but -- whether I wanted it or not is

16   another issue.  But I got the service, but I don't have to pay

17   you for that service.  And the reason I don't have to pay you

18   for that service is because you automatically collected it.

19   And I'm entitled -- I guess she's saying or he, I don't know

20   the gender.

21         **MR. HAMMOND:**  She.

22         **THE COURT:**  I'm entitled to a refund or credit, or

23   whatever it is, because this was an inappropriate collection;

24   it's not permitted for you to do that.

25         So isn't that one of the principal arguments that is being

1  made here by your client?

2          **MR. HAMMOND:**  I'd like to address a number of matters,

3  Your Honor.

4          **THE COURT:**  I think I've only raised one.

5          **MR. HAMMOND:**  Well, no, you started -- the first

6  proposition that was made was regarding refunds and is that

7  arbitrable.

8      The arbitration agreement actually says that in the event

9  that Spotify terminates -- terminates someone's service midway

10 through the month, that no refund is allowed and the person --

11 and the person does not have a claim.

12         **THE COURT:**  That's not this case.

13         **MR. HAMMOND:**  That's not this case.  But I just wanted

14 to make that point.

15         **THE COURT:**  I'm only saying a refund.  I'm only saying

16 a refund in terms of a remedial remedy.

17     If I give you money and you're not -- if I give you money

18 and you're not entitled to the money, I want it back.  Call it

19 a refund.  Call it an improper collection.  Whatever you want

20 to do.  That's what -- call it anything you want to call it.

21         **MR. HAMMOND:**  Well --

22         **THE COURT:**  And it doesn't make any difference what

23 you call it, is what I'm saying.

24         **MR. RUMMAGE:**  I think that's right, Your Honor.  And

25 it would actually cut both ways.

```
 1          THE COURT:  Well, that's my point.
 2      Now I'm going to the other side and saying, let's say you
 3  tapped into this service.  I don't know how you got it.  You
 4  got the service and you didn't pay.  You didn't pay for the
 5  service.
 6      All right.  Let's say they forgot to bill you.  And they
 7  look in their records and they say, my goodness, your client
 8  got three months and we didn't charge her.  Other defenses,
 9  putting all this aside.  So they wake up and say, all right,
10  we're going to sue you.
11      You say, Not so fast.  There's an arbitration agreement.
12  You have to go to arbitration if you think I owe you the money.
13      So in my mind it was absolutely mutual --
14          MR. RUMMAGE:  Right.
15          THE COURT:  -- on the issue of collectability.  That's
16  in.
17          MR. RUMMAGE:  I think that's right, Your Honor.
18          THE COURT:  That's in.
19      And that's why this arbitration agreement, in the Court's
20  view at this time on that issue, survives.
21      Now, you may make some other arguments.  And you do.  But
22  those arguments are all to be decided by the arbitrator, not by
23  me.
24      So I'm going to -- I'm going to compel arbitration.  I'm
25  going to stay these proceedings.  And I'm going to wish you
```

1  both luck, because that's it.

2      I'm sort of finished with this.  And that's the way I

3  think the legal framework resolves.

4      Now, I may or may not write something on this.  I don't

5  know whether I should or not.

6          MR. HAMMOND:  Your Honor --

7          THE COURT:  I can write all the arguments and so

8  forth, if that's necessary.  But is it really necessary?

9          MR. HAMMOND:  Thank you, Your Honor.

10     I believe it is.

11         THE COURT:  Okay.  Then I'll do it.  I'll do it.

12         MR. HAMMOND:  I'd like to make one point.  I disagree

13  with --

14         THE COURT:  Listen.  I've read your papers.  I know

15  exactly what your position is.  And it's set forth in great

16  detail in your papers.  So I understand that.

17     But I'm now telling -- if you want to address something

18  I've said, that's fine.

19         MR. HAMMOND:  I do want to address something you said.

20         THE COURT:  Go ahead.

21         MR. HAMMOND:  It's not a refund.

22     The allegations are that there were disclosures made that

23  were not in compliance with California law.  The failure to do

24  that led to the service being provided as a gift.  Hence, any

25  monies paid under the service is deemed to be provided back as

1   by way of restitution.  That's number one.

2       And number two, the -- the -- and this goes to the heart

3   of what we say, that why this case should not be compelled to

4   arbitration is that Spotify itself was not authorized,

5   according to law, to touch the consumer's credit card.

6       Pursuant to 176200 --

7           **THE COURT:**  No, I'm sorry.  You lose me in this

8   because you're talking about the merits.

9       It seems to me you're talking about the merits of the

10  dispute.  That is you're talking about under the law were they

11  entitled to charge this, charge that, follow this procedure,

12  follow that procedure.

13          **MR. HAMMOND:**  No.  There is a carve-out to this

14  arbitration agreement.  The carve-out to the arbitration

15  agreement is threefold:

16      One, intellectual property claims.  This is not --

17          **THE COURT:**  What?

18          **MR. HAMMOND:**  Intellectual property claims.

19          **THE COURT:**  Yeah.

20          **MR. HAMMOND:**  This is not it.

21      Number two, claims associated with theft, piracy, and

22  unauthorized use of the Spotify service and websites.  The

23  website includes the charging of the credit card.  And the

24  charging of the credit card in a situation that Spotify was not

25  allowed to do --

EXHIBIT C
8 of 11

```
 1        THE COURT:  And your problem with that argument is it
 2   proves absolutely way too much.
 3        In other words, the problem with it is almost everything
 4   would come under that because you can characterize -- you can
 5   characterize charges and services as, if you want to,
 6   unauthorized use.
 7        Every failure to pay, every violation of every agreement
 8   is, quote, unauthorized unless you have some evidence that, oh,
 9   I have a letter; they said I could do that.
10        So you prove everything.  Your interpretation of that
11   carve-out carves out the entire case.  Carves out the entire
12   business.  I mean, I understand.
13        Look, I'm not a great fan of arbitration agreements.  Be
14   that as it may, whether I'm a fan or not it doesn't make any
15   difference.  I'm a District Court Judge.
16        But here it's clear that issues of collectability, of the
17   service between the parties what should be charged, how they
18   should be charged, falls right within it.
19        MR. HAMMOND:  Sorry, I wasn't sure whether you were
20   looking at me or my friend.
21        THE COURT:  I'm looking at both of you.
22        MR. HAMMOND:  My issue is this:  It's not
23   collectability.  It's we're seeking an junction and a
24   declaration that their website be in compliance with California
25   law.
```

1      We are not allowed to bring an injunction or

2   declaration --

3          THE COURT:  Oh, no.  I thought that had to do with

4   class action, whether --

5          MR. HAMMOND:  Well, the clause that is underneath the

6   arbitration agreement says class action or multi-plaintiff

7   cases.

8      So the characterization of that subparagraph of the

9   arbitration agreement is -- is to my -- to my knowledge and to

10  my belief, contorted.  It's not just class action.

11         THE COURT:  Fine.  So this is what I'm going to do.

12  You're quite right to insist that I write something on it.  And

13  I'm going to write something on it, and I'm going to address

14  these issues.  And then if you disagree with it, as I'm quite

15  certain you will, you have whatever remedy the law provides

16  with respect to people who disagree with that.

17         MR. HAMMOND:  Very good.

18         THE COURT:  However, the order of the Court is I'm

19  compelling arbitration and I'm staying these proceedings.

20     Now, I'll give you my reasons because you're entitled to

21  my reasons.  I sort of encapsulated my reasons here, but I'm

22  going to give you more because you raised other issues.

23     I'm not saying you raise them in good faith.  And I'm not

24  saying they're frivolous.  I'm just saying that, one, I

25  disagree with your basic reading of it; and, two, I think that

1  there are issues that you have raised that an arbitrator has to

2  decide, not me.

3       That's what I'm deciding.  And I'll try to make it as

4  clear as possible.  Okay.

5            **MR. HAMMOND:**  Very good.

6            **THE COURT:**  Thank you very much.

7            **MR. RUMMAGE:**  Thank you, Your Honor.

8       (At 11:09 a.m. the proceedings were adjourned.)

9                       -   -   -   -

10

11

12            <u>**CERTIFICATE OF REPORTER**</u>

13       I certify that the foregoing is a correct transcript

14  from the record of proceedings in the above-entitled matter.

15

16  DATE:   Wednesday, May 14, 2014

17

18

19                       _Katherine Sullivan_

20       _____

21       Katherine Powell Sullivan, CSR #5812, RMR, CRR
              U.S. Court Reporter

22

23

24

25

# EXHIBIT D
## To Commerson Declaration

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MELISSA BLEAK,

             Plaintiff,

   v.

SPOTIFY USA INC.,

             Defendant.

_____/

No. C 13-05653 CRB

**ORDER COMPELLING**
**ARBITRATION AND STAYING CASE**

    For the reasons stated in open court, the Court GRANTS Defendant Spotify USA

Inc.'s Motion to Compel Arbitration (dkt. 18), COMPELS arbitration, and STAYS the case.

    **IT IS SO ORDERED.**

Dated: April 25, 2014

_____
CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2013\5653\order compelling arb.wpd

# EXHIBIT E
## To Commerson Declaration



# Commercial

## Arbitration Rules and Mediation Procedures

**Including Procedures for Large, Complex Commercial Disputes**



### AMERICAN ARBITRATION ASSOCIATION®

Available online at **adr.org/commercial**

Rules Amended and Effective October 1, 2013
Fee Schedule Amended and Effective July 1, 2016

## Regional Vice Presidents

**States: Delaware, District of Columbia, Maryland, New Jersey, Pennsylvania, Virginia**
P. Jean Baker, Esq.
Vice President
Phone: 202.223.7093
Email: BakerJ@adr.org

**States: Oklahoma, Texas**
Andrew Barton
Vice President
Phone: 210.998.5750
Email: BartonA@adr.org

**States: Alabama, Georgia**
John M. Bishop
Vice President
Phone: 404.320.5150
Email: BishopJ@adr.org

**States: City of Houston, Louisiana, Mississippi**
Ingeuneal C. Gray, Esq.
Vice President
Phone: 832.308.7893
Email: GrayI@adr.org

**States: Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, Vermont**
Karen Jalkut
Vice President
Phone: 617.695.6062
Email: JalkutK@adr.org

**States: Alaska, California, Hawaii, Oregon, Washington**
Serena K. Lee, Esq.
Vice President
Phone: 415.671.4053
Email: LeeS@adr.org

**States: Indiana, Kentucky, North Carolina, Ohio, South Carolina, Tennessee, West Virginia**
Michelle M. Skipper
Vice President
Phone: 704.643.8605
Email: SkipperM@adr.org

**States: Florida**
Rebecca Storrow, Ph.D.
Vice President
Phone: 954.372.4341
Email: StorrowR@adr.org

**States: Arizona, Colorado, Kansas, Idaho, Montana, Nebraska, Nevada, New Mexico, Utah, Wyoming**
Lance K. Tanaka
Vice President
Phone: 303.831.0824
Email: TanakaL@adr.org

**States: Arkansas, Illinois, Iowa, Michigan, Minnesota, Missouri, North Dakota, South Dakota, Wisconsin**
A. Kelly Turner, Esq.
Vice President
Phone: 312.361.1116
Email: TurnerK@adr.org

**States: New York**
Jeffrey T. Zaino, Esq.
Vice President
Phone: 212.484.3224
Email: ZainoJ@adr.org

## Case Management Vice Presidents and Assistant Vice Presidents

Jeffrey Garcia
Vice President
Phone: 559.490.1860
Email: GarciaJ@adr.org
**Administers cases in: AK, AZ, CA, HI, ID, MT, NM, NV, OR, UT, WA**

John M. Bishop
Vice President
Phone: 404.320.5150
Email: BishopJ@adr.org
**Administers cases in: AL, DC, FL, GA, IN, KY, MD, NC, OH, SC, TN, VA**

Harry Hernandez
Assistant Vice President
Phone: 972.702.8222
Email: HernandezH@adr.org
**Administers cases in: AR, CO, IA, IL, KS, LA, MN, MO, MS, ND, NE, OK, SD, TX, WI, WY**

Yvonne Baglini
Assistant Vice President
Phone: 866.293.4053
Email: BagliniY@adr.org
**Administers cases in: CT, DE, MA, ME, MI, NH, NJ, NY, PA, RI, VT, WV**

# Table of Contents

Important Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

Standard Arbitration Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Administrative Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Large, Complex Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

Commercial Arbitration Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

   R-1. Agreement of Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

   R-2. AAA and Delegation of Duties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

   R-3. National Roster of Arbitrators. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

   R-4. Filing Requirements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

   R-5. Answers and Counterclaims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

   R-6. Changes of Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

   R-7. Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

   R-8. Interpretation and Application of Rules. . . . . . . . . . . . . . . . . . . . . . .14

   R-9. Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

   R-10. Administrative Conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

   R-11. Fixing of Locale . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

   R-12. Appointment from National Roster . . . . . . . . . . . . . . . . . . . . . . . . .15

   R-13. Direct Appointment by a Party. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

   R-14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties. . . . . . .16

   R-15. Nationality of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

   R-16. Number of Arbitrators. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

   R-17. Disclosure. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

   R-18. Disqualification of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

   R-19. Communication with Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

   R-20. Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

   R-21. Preliminary Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

   R-22. Pre-Hearing Exchange and Production of Information . . . . . . . . . . . . . . . . .19

   R-23. Enforcement Powers of the Arbitrator. . . . . . . . . . . . . . . . . . . . . . . .20

   R-24. Date, Time, and Place of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . .20

   R-25. Attendance at Hearings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

   R-26. Representation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

   R-27. Oaths . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

R-28. Stenographic Record. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

R-29. Interpreters. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

R-30. Postponements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

R-31. Arbitration in the Absence of a Party or Representative . . . . . . . . . . . . . . . .22

R-32. Conduct of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

R-33. Dispositive Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

R-34. Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

R-35. Evidence by Written Statements and Post-Hearing Filing of Documents or
Other Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

R-36. Inspection or Investigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

R-37. Interim Measures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

R-38. Emergency Measures of Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

R-39. Closing of Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

R-40. Reopening of Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

R-41. Waiver of Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

R-42. Extensions of Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

R-43. Serving of Notice and Communications . . . . . . . . . . . . . . . . . . . . . . . . . . .26

R-44. Majority Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

R-45. Time of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

R-46. Form of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

R-47. Scope of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

R-48. Award Upon Settlement—Consent Award . . . . . . . . . . . . . . . . . . . . . . . . .28

R-49. Delivery of Award to Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

R-50. Modification of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

R-51. Release of Documents for Judicial Proceedings. . . . . . . . . . . . . . . . . . . . . .29

R-52. Applications to Court and Exclusion of Liability . . . . . . . . . . . . . . . . . . . . .29

R-53. Administrative Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

R-54. Expenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

R-55. Neutral Arbitrator's Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

R-56. Deposits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

R-57. Remedies for Nonpayment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

R-58. Sanctions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31

Preliminary Hearing Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

P-1. General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

P-2. Checklist . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32


Expedited Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

E-1. Limitation on Extensions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

E-2. Changes of Claim or Counterclaim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

E-3. Serving of Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

E-4. Appointment and Qualifications of Arbitrator . . . . . . . . . . . . . . . . . . . . . . 34

E-5. Exchange of Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

E-6. Proceedings on Documents and Procedures for the Resolution of Disputes
Through Document Submission . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

E-7. Date, Time, and Place of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

E-8. The Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

E-9. Time of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

E-10. Arbitrator's Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36


Procedures for Large, Complex Commercial Disputes . . . . . . . . . . . . . . . . . . . . 37

L-1. Administrative Conference . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

L-2. Arbitrators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

L-3. Management of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38


Administrative Fee Schedules (Standard and Flexible Fees) . . . . . . . . . . . . . . . . 38


Commercial Mediation Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

M-1. Agreement of Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

M-2. Initiation of Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

M-3. Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

M-4. Appointment of the Mediator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

M-5. Mediator's Impartiality and Duty to Disclose . . . . . . . . . . . . . . . . . . . . . . 40

M-6. Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

M-7. Duties and Responsibilities of the Mediator . . . . . . . . . . . . . . . . . . . . . . . 41

M-8. Responsibilities of the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

M-9. Privacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

M-10. Confidentiality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

M-11. No Stenographic Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

M-12. Termination of Mediation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

M-13. Exclusion of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

M-14. Interpretation and Application of Procedures . . . . . . . . . . . . . . . . . . . . . . . . . 43

M-15. Deposits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

M-16. Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

M-17. Cost of the Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

# Commercial Arbitration Rules and Mediation Procedures

(Including Procedures for Large, Complex Commercial Disputes)

## Important Notice

These rules and any amendment of them shall apply in the form in effect at the time the administrative filing requirements are met for a demand for arbitration or submission agreement received by the AAA®. To ensure that you have the most current information, see our web site at **www.adr.org.**

## Introduction

Each year, many millions of business transactions take place. Occasionally, disagreements develop over these business transactions. Many of these disputes are resolved by arbitration, the voluntary submission of a dispute to an impartial person or persons for final and binding determination. Arbitration has proven to be an effective way to resolve these disputes privately, promptly, and economically.

The American Arbitration Association® (AAA), a not-for-profit, public service organization, offers a broad range of dispute resolution services to business executives, attorneys, individuals, trade associations, unions, management, consumers, families, communities, and all levels of government. Services are available through AAA headquarters in New York and through offices located in major cities throughout the United States. Hearings may be held at locations convenient for the parties and are not limited to cities with AAA offices. In addition, the AAA serves as a center for education and training, issues specialized publications, and conducts research on various forms of alternative dispute resolution.

## Standard Arbitration Clause

The parties can provide for arbitration of future disputes by inserting the following clause into their contracts:

> *Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.*

Arbitration of existing disputes may be accomplished by use of the following:

> *We, the undersigned parties, hereby agree to submit to arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules the following Controversy: (describe briefly). We further agree that the above controversy be submitted to (one) (three) arbitrator(s). We further agree that we will faithfully observe this agreement and the rules, that we will abide by and perform any award rendered by the arbitrator(s), and that a judgment of any court having jurisdiction may be entered on the award.*

The services of the AAA are generally concluded with the transmittal of the award. Although there is voluntary compliance with the majority of awards, judgment on the award can be entered in a court having appropriate jurisdiction if necessary.

## Administrative Fees

The AAA charges a filing fee based on the amount of the claim or counterclaim. This fee information, which is included with these rules, allows the parties to exercise control over their administrative fees. The fees cover AAA administrative services; they do not cover arbitrator compensation or expenses, if any, reporting services, or any post-award charges incurred by the parties in enforcing the award.

## Mediation

Subject to the right of any party to opt out, in cases where a claim or counterclaim exceeds $75,000, the rules provide that the parties shall mediate their dispute upon the administration of the arbitration or at any time when the arbitration is pending. In mediation, the neutral mediator assists the parties in

reaching a settlement but does not have the authority to make a binding decision or award. Mediation is administered by the AAA in accordance with its Commercial Mediation Procedures. There is no additional filing fee where parties to a pending arbitration attempt to mediate their dispute under the AAA's auspices.

Although these rules include a mediation procedure that will apply to many cases, parties may still want to incorporate mediation into their contractual dispute settlement process. Parties can do so by inserting the following mediation clause into their contract in conjunction with a standard arbitration provision:

> *If a dispute arises out of or relates to this contract, or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation administered by the American Arbitration Association under its Commercial Mediation Procedures before resorting to arbitration, litigation, or some other dispute resolution procedure.*

If the parties want to use a mediator to resolve an existing dispute, they can enter into the following submission agreement:

> *The parties hereby submit the following dispute to mediation administered by the American Arbitration Association under its Commercial Mediation Procedures. (The clause may also provide for the qualifications of the mediator(s), method of payment, locale of meetings, and any other item of concern to the parties.)*

## Large, Complex Cases

Unless the parties agree otherwise, the procedures for Large, Complex Commercial Disputes, which appear in this pamphlet, will be applied to all cases administered by the AAA under the Commercial Arbitration Rules in which the disclosed claim or counterclaim of any party is at least $500,000 exclusive of claimed interest, arbitration fees and costs. The key features of these procedures include:

> A highly qualified, trained Roster of Neutrals;

> A mandatory preliminary hearing with the arbitrators, which may be conducted by teleconference;

> Broad arbitrator authority to order and control the exchange of information, including depositions;

> A presumption that hearings will proceed on a consecutive or block basis.

## Commercial Arbitration Rules

### R-1. Agreement of Parties*

**(a)** The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) under its Commercial Arbitration Rules or for arbitration by the AAA of a domestic commercial dispute without specifying particular rules. These rules and any amendment of them shall apply in the form in effect at the time the administrative requirements are met for a Demand for Arbitration or Submission Agreement received by the AAA. Any disputes regarding which AAA rules shall apply shall be decided by the AAA. The parties, by written agreement, may vary the procedures set forth in these rules. After appointment of the arbitrator, such modifications may be made only with the consent of the arbitrator.

**(b)** Unless the parties or the AAA determines otherwise, the Expedited Procedures shall apply in any case in which no disclosed claim or counterclaim exceeds $75,000, exclusive of interest, attorneys' fees, and arbitration fees and costs.

Parties may also agree to use these procedures in larger cases. Unless the parties agree otherwise, these procedures will not apply in cases involving more than two parties. The Expedited Procedures shall be applied as described in Sections E-1 through E-10 of these rules, in addition to any other portion of these rules that is not in conflict with the Expedited Procedures.

**(c)** Unless the parties agree otherwise, the Procedures for Large, Complex Commercial Disputes shall apply to all cases in which the disclosed claim or counterclaim of any party is at least $500,000 or more, exclusive of claimed interest, attorneys' fees, arbitration fees and costs. Parties may also agree to use the procedures in cases involving claims or counterclaims under $500,000, or in nonmonetary cases. The Procedures for Large, Complex Commercial Disputes shall be applied as described in Sections L-1 through L-3 of these rules, in addition to any other portion of these rules that is not in conflict with the Procedures for Large, Complex Commercial Disputes.

**(d)** Parties may, by agreement, apply the Expedited Procedures, the Procedures for Large, Complex Commercial Disputes, or the Procedures for the Resolution of Disputes through Document Submission (Rule E-6) to any dispute.

**(e)** All other cases shall be administered in accordance with Sections R-1 through R-58 of these rules.

---

\* *A dispute arising out of an employer promulgated plan will be administered under the AAA's Employment Arbitration Rules and Mediation Procedures.*

## R-2. AAA and Delegation of Duties

When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in the agreement of the parties and in these rules, and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices. Arbitrations administered under these rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so.

## R-3. National Roster of Arbitrators

The AAA shall establish and maintain a National Roster of Arbitrators ("National Roster") and shall appoint arbitrators as provided in these rules. The term "arbitrator" in these rules refers to the arbitration panel, constituted for a particular case, whether composed of one or more arbitrators, or to an individual arbitrator, as the context requires.

## R-4. Filing Requirements

(a) Arbitration under an arbitration provision in a contract shall be initiated by the initiating party ("claimant") filing with the AAA a Demand for Arbitration, the administrative filing fee, and a copy of the applicable arbitration agreement from the parties' contract which provides for arbitration.

(b) Arbitration pursuant to a court order shall be initiated by the initiating party filing with the AAA a Demand for Arbitration, the administrative filing fee, and a copy of any applicable arbitration agreement from the parties' contract which provides for arbitration.

   i. The filing party shall include a copy of the court order.

   ii. The filing fee must be paid before a matter is considered properly filed. If the court order directs that a specific party is responsible for the filing fee, it is the responsibility of the filing party to either make such payment to the AAA and seek reimbursement as directed in the court order or to make other such arrangements so that the filing fee is submitted to the AAA with the Demand.

   iii. The party filing the Demand with the AAA is the claimant and the opposing party is the respondent regardless of which party initiated the court action. Parties may request that the arbitrator alter the order of proceedings if necessary pursuant to R-32.

(c) It is the responsibility of the filing party to ensure that any conditions precedent to the filing of a case are met prior to filing for an arbitration, as well as any time requirements associated with the filing. Any dispute regarding whether a condition precedent has been met may be raised to the arbitrator for determination.

**(d)** Parties to any existing dispute who have not previously agreed to use these rules may commence an arbitration under these rules by filing a written submission agreement and the administrative filing fee. To the extent that the parties' submission agreement contains any variances from these rules, such variances should be clearly stated in the Submission Agreement.

**(e)** Information to be included with any arbitration filing includes:

    **i.** the name of each party;

    **ii.** the address for each party, including telephone and fax numbers and e-mail addresses;

    **iii.** if applicable, the names, addresses, telephone and fax numbers, and e-mail addresses of any known representative for each party;

    **iv.** a statement setting forth the nature of the claim including the relief sought and the amount involved; and

    **v.** the locale requested if the arbitration agreement does not specify one.

**(f)** The initiating party may file or submit a dispute to the AAA in the following manner:

    **i.** through AAA WebFile, located at **www.adr.org;** or

    **ii.** by filing the complete Demand or Submission with any AAA office, regardless of the intended locale of hearing.

**(g)** The filing party shall simultaneously provide a copy of the Demand and any supporting documents to the opposing party.

**(h)** The AAA shall provide notice to the parties (or their representatives if so named) of the receipt of a Demand or Submission when the administrative filing requirements have been satisfied. The date on which the filing requirements are satisfied shall establish the date of filing the dispute for administration. However, all disputes in connection with the AAA's determination of the date of filing may be decided by the arbitrator.

**(i)** If the filing does not satisfy the filing requirements set forth above, the AAA shall acknowledge to all named parties receipt of the incomplete filing and inform the parties of the filing deficiencies. If the deficiencies are not cured by the date specified by the AAA, the filing may be returned to the initiating party.

## R-5. Answers and Counterclaims

**(a)** A respondent may file an answering statement with the AAA within 14 calendar days after notice of the filing of the Demand is sent by the AAA. The respondent shall, at the time of any such filing, send a copy of any answering statement to the claimant and to all other parties to the arbitration. If no answering statement is filed within the stated time, the respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.

**(b)** A respondent may file a counterclaim at any time after notice of the filing of the Demand is sent by the AAA, subject to the limitations set forth in Rule R-6. The respondent shall send a copy of the counterclaim to the claimant and all other parties to the arbitration. If a counterclaim is asserted, it shall include a statement setting forth the nature of the counterclaim including the relief sought and the amount involved. The filing fee as specified in the applicable AAA Fee Schedule must be paid at the time of the filing of any counterclaim.

**(c)** If the respondent alleges that a different arbitration provision is controlling, the matter will be administered in accordance with the arbitration provision submitted by the initiating party subject to a final determination by the arbitrator.

**(d)** If the counterclaim does not meet the requirements for filing a claim and the deficiency is not cured by the date specified by the AAA, it may be returned to the filing party.

## R-6. Changes of Claim

**(a)** A party may at any time prior to the close of the hearing or by the date established by the arbitrator increase or decrease the amount of its claim or counterclaim. Written notice of the change of claim amount must be provided to the AAA and all parties. If the change of claim amount results in an increase in administrative fee, the balance of the fee is due before the change of claim amount may be accepted by the arbitrator.

**(b)** Any new or different claim or counterclaim, as opposed to an increase or decrease in the amount of a pending claim or counterclaim, shall be made in writing and filed with the AAA, and a copy shall be provided to the other party, who shall have a period of 14 calendar days from the date of such transmittal within which to file an answer to the proposed change of claim or counterclaim with the AAA. After the arbitrator is appointed, however, no new or different claim may be submitted except with the arbitrator's consent.

## R-7. Jurisdiction

**(a)** The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

**(b)** The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

**(c)** A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

### R-8. Interpretation and Application of Rules

The arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these rules, it shall be decided by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other rules shall be interpreted and applied by the AAA.

### R-9. Mediation

In all cases where a claim or counterclaim exceeds $75,000, upon the AAA's administration of the arbitration or at any time while the arbitration is pending, the parties shall mediate their dispute pursuant to the applicable provisions of the AAA's Commercial Mediation Procedures, or as otherwise agreed by the parties. Absent an agreement of the parties to the contrary, the mediation shall take place concurrently with the arbitration and shall not serve to delay the arbitration proceedings. However, any party to an arbitration may unilaterally opt out of this rule upon notification to the AAA and the other parties to the arbitration. The parties shall confirm the completion of any mediation or any decision to opt out of this rule to the AAA. Unless agreed to by all parties and the mediator, the mediator shall not be appointed as an arbitrator to the case.

### R-10. Administrative Conference

At the request of any party or upon the AAA's own initiative, the AAA may conduct an administrative conference, in person or by telephone, with the parties and/or their representatives. The conference may address such issues as arbitrator selection, mediation of the dispute, potential exchange of information, a timetable for hearings, and any other administrative matters.

### R-11. Fixing of Locale

The parties may mutually agree on the locale where the arbitration is to be held. Any disputes regarding the locale that are to be decided by the AAA must be submitted to the AAA and all other parties within 14 calendar days from the date of the AAA's initiation of the case or the date established by the AAA. Disputes regarding locale shall be determined in the following manner:

**(a)** When the parties' arbitration agreement is silent with respect to locale, and if the parties disagree as to the locale, the AAA may initially determine the place of

## Regional Vice Presidents

**States: Delaware, District of Columbia, Maryland, New Jersey, Pennsylvania, Virginia**
P. Jean Baker, Esq.
Vice President
Phone: 202.223.7093
Email: BakerJ@adr.org

**States: Oklahoma, Texas**
Andrew Barton
Vice President
Phone: 210.998.5750
Email: BartonA@adr.org

**States: Alabama, Georgia**
John M. Bishop
Vice President
Phone: 404.320.5150
Email: BishopJ@adr.org

**States: City of Houston, Louisiana, Mississippi**
Ingeuneal C. Gray, Esq.
Vice President
Phone: 832.308.7893
Email: GrayI@adr.org

**States: Connecticut, Maine, Massachusetts, New Hampshire, Rhode Island, Vermont**
Karen Jalkut
Vice President
Phone: 617.695.6062
Email: JalkutK@adr.org

**States: Alaska, California, Hawaii, Oregon, Washington**
Serena K. Lee, Esq.
Vice President
Phone: 415.671.4053
Email: LeeS@adr.org

**States: Indiana, Kentucky, North Carolina, Ohio, South Carolina, Tennessee, West Virginia**
Michelle M. Skipper
Vice President
Phone: 704.643.8605
Email: SkipperM@adr.org

**States: Florida**
Rebecca Storrow, Ph.D.
Vice President
Phone: 954.372.4341
Email: StorrowR@adr.org

**States: Arizona, Colorado, Kansas, Idaho, Montana, Nebraska, Nevada, New Mexico, Utah, Wyoming**
Lance K. Tanaka
Vice President
Phone: 303.831.0824
Email: TanakaL@adr.org

**States: Arkansas, Illinois, Iowa, Michigan, Minnesota, Missouri, North Dakota, South Dakota, Wisconsin**
A. Kelly Turner, Esq.
Vice President
Phone: 312.361.1116
Email: TurnerK@adr.org

**States: New York**
Jeffrey T. Zaino, Esq.
Vice President
Phone: 212.484.3224
Email: ZainoJ@adr.org

## Case Management Vice Presidents and Assistant Vice Presidents

Jeffrey Garcia
Vice President
Phone: 559.490.1860
Email: GarciaJ@adr.org
**Administers cases in: AK, AZ, CA, HI, ID, MT, NM, NV, OR, UT, WA**

John M. Bishop
Vice President
Phone: 404.320.5150
Email: BishopJ@adr.org
**Administers cases in: AL, DC, FL, GA, IN, KY, MD, NC, OH, SC, TN, VA**

Harry Hernandez
Assistant Vice President
Phone: 972.702.8222
Email: HernandezH@adr.org
**Administers cases in: AR, CO, IA, IL, KS, LA, MN, MO, MS, ND, NE, OK, SD, TX, WI, WY**

Yvonne Baglini
Assistant Vice President
Phone: 866.293.4053
Email: BagliniY@adr.org
**Administers cases in: CT, DE, MA, ME, MI, NH, NJ, NY, PA, RI, VT, WV**

 AMERICAN ARBITRATION ASSOCIATION®

800.778.7879 | websitemail@adr.org | adr.org

EXHIBIT E
15 of 15