JOSEPH E. ADDIEGO III (CA State Bar No. 169522)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111
Telephone:  (415) 276-6500
Facsimile:  (415) 276-6599
Email:   joeaddiego@dwt.com

STEPHEN M. RUMMAGE (Admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045
Telephone:  (206) 622-3150
Fax:   (206) 757-7700
Email:   steverummage@dwt.com

SCOTT R. COMMERSON (CA State Bar No. 227460)
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa St., Suite 2400
Los Angeles, California 900017
Telephone:  (213) 633-6890
Fax:   (213) 633-4290
Email:   scottcommerson@dwt.com

Attorneys for Defendant
SPOTIFY USA INC.

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GREGORY INGALLS and TONY HONG, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>SPOTIFY USA INC., a Delaware corporation,<br><br>　　　　　Defendant. | Case No. CV 3:16-cv-3533<br><br>**REPLY IN SUPPORT OF SPOTIFY USA INC'S MOTION TO COMPEL ARBITRATION AND STAY ACTION**<br><br>Date: September 29, 2016<br>Time: 8:00 a.m.<br>Judge: Hon. William H. Alsup<br>Courtroom 8 – 19th Floor |

**TABLE OF CONTENTS**

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | THE AAA DELEGATION IS ENFORCEABLE. | 2 |
| | A. The Venue Provision in Section 24.1 Does Not Defeat Delegation. | 2 |
| | B. The Language Regarding Enforceability Does Not Defeat Delegation. | 3 |
| | C. The T&C's Incorporation of the "AAA Rules" Was Clear and Unmistakable. | 4 |
| III. | THE ARBITRATION AGREEMENT IS VALID. | 5 |
| | A. The Presumption in Favor of Arbitrability Applies. | 5 |
| | B. The Agreement Contains a Valid Jury Waiver. | 6 |
| | C. Section 24.1 Does Not Invalidate the Arbitration Agreement. | 7 |
| | D. Limiting the Arbitration Provision to Jurisdictions Where It Is Enforceable Does Not Negate Mutual Assent. | 7 |
| IV. | SECTION 24.3 IS CONSCIONABLE. | 9 |
| | A. Section 24.3 Is Neither Oppressive nor Surprising. | 9 |
| | B. Section 24.3 Is Not Substantively Unconscionable. | 11 |
| | C. California Allows Severance of Contract Clauses in the Interest of Justice. | 13 |
| V. | CONCLUSION | 14 |

DAVIS WRIGHT TREMAINE LLP

REPLY IN SUPPORT OF SPOTIFY USA INC.'S MOTION TO COMPEL ARBITRATION AND STAY
*Ingalls v. Spotify USA Inc.*, Case No. 3:16-cv-3533
DWT 30305318v5 0098755-000014

**Cases**

*Ajamian v. CantorCO2e, L.P.*,
   203 Cal. App. 4th 771 (2003)......................................................................................................5

*AT&T Mobility LLC v. Concepcion*,
   131 S. Ct. 1740 (2011) ...........................................................................................................8, 9

*AT&T Techs., Inc. v. Communications Workers of Am.*,
   475 U.S. 643 (1986) ...................................................................................................................5

*Bosinger v. Belden CDT, Inc.*,
   358 F. App'x. 812 (9th Cir. 2009)..............................................................................................9

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015)....................................................................................................4

*Chavez v. Bank of Am.*,
   2011 WL 4712204 (N.D. Cal. Oct. 7, 2011) ............................................................................13

*Circuit City Stores, Inc. v. Ahmed*,
   283 F.3d 1198 (9th Cir. 2002)....................................................................................................8

*Cisneros v. Am. Gen. Fin. Servs., Inc.*,
   2012 WL 3025913 (N.D. Cal. July 24, 2012) ............................................................................9

*Clarium Capital Mgmt., LLC v. Choudhury*,
   2009 U.S. Dist. LEXIS 14805 (N.D. Cal. Feb. 11, 2009)..........................................................4

*Cochrane v. Open Text Corp.*,
   2015 U.S. Dist. LEXIS 78006 (N.D. Cal. June 16, 2015) .........................................................4

*DIRECTV, Inc. v. Imburgia*,
   136 S. Ct. 463 (2015) ...........................................................................................................3, 8

*Dream Theater, Inc. v. Dream Theater*,
   21 Cal. Rptr. 3d 322 (Cal. Ct. App. 2004), *as modified on denial of reh'g* (Dec. 28, 2004)........................................................................................................................................2

*E & E Co., Ltd. v. Light In Box Ltd.*,
   2015 U.S. Dist. LEXIS 128463 (N.D. Cal. Oct. 9, 2015) ..........................................................5

*Flores v. Am. Seafoods Co.*,
   335 F.3d 904 (9th Cir. 2003)......................................................................................................8

*Goldman Sachs & Co. v. City of Reno*,
   747 F.3d 733 (9th Cir. 2014)..................................................................................................5, 6

*Han v. Mobil Oil Corp.*,
   73 F.3d 872 (9th Cir. 1995).....................................................................................................13

*Hendricks v. AT&T Mobility, LLC*,
    823 F. Supp. 2d 1015 (N.D. Cal. 2011) ........................................................................................11

*Hoffman Constr. Co. v. Active Erectors & Installers, Inc.*,
    969 F.2d 796 (9th Cir. 1992)..........................................................................................................5

*Ingle v. Circuit City Stores, Inc.*,
    328 F.3d 1165 (9th Cir. 2003).....................................................................................................11

*Kilgore v. KeyBank, N.A.*,
    718 F.3d 1052 (9th Cir. 2013).....................................................................................................12

*Kimble v. Rhodes College*,
    2011 U.S. Dist. LEXIS 59628, *10-11 (N.D. Cal. June 2, 2011) ..................................................4

*Lagatree v. Luce, Forward, Hamilton & Scripps LLP*,
    74 Cal. App. 4th 1105 (1999).....................................................................................................10

*Levin v. Caviar, Inc.*,
    2016 U.S. Dist. LEXIS 8385 (N.D. Cal. Jan. 20, 2016) ...............................................................4

*Lucas v. Gund, Inc.*,
    450 F. Supp. 2d 1125 (C.D. Cal. 2006)......................................................................................10

*McIntosh v. Adventist Health/West St. Helena Hosp.*,
    2013 WL 968293 (N.D. Cal. Mar. 12, 2013) ................................................................................9

*Melez v. Kaiser Found. Hosps., Inc.*,
    2015 U.S. Dist. LEXIS 25911 (C.D. Cal. Mar. 2, 2015) ............................................................12

*Meyer v. Benko*,
    55 Cal. App. 3d 937 (1976).........................................................................................................8

*Mikhak v. Univ. of Phoenix*,
    2016 U.S. Dist. LEXIS 80705 (N.D. Cal. June 21, 2016) .........................................................12

*Mohamed v. Uber Tech.*,
    No. 15-16718, 2016 U.S. App. LEXIS 16413 (9th Cir. Sept. 7, 2016) ............................. *passim*

*Mohamed v. Uber Tech.*,
    109 F. Supp. 3d 1185 (N.D. Cal. 2015) ........................................................................................2

*Moreno v. Sanchez*,
    106 Cal. App 4th 1415 (2003)....................................................................................................13

*Peng v. First Republic Bank*,
    219 Cal. App. 4th 1462 (2013)......................................................................................1, 9, 10, 11

*Perry v. Thomas*,
    482 U.S. 483 (1987) .....................................................................................................................8

REPLY IN SUPPORT OF SPOTIFY USA INC.'S MOTION TO COMPEL ARBITRATION AND STAY ACTION
*Bleak v. Spotify USA Inc.*, Case No. CV 13-05653 CRB
DWT 30305318v5 0098755-000014

*Rent-a-Center v. Jackson*,
     561 U.S. 63 (2010) ........................................................................................................3, 8

*Ruhe v. Masimo Corp.*,
     2011 WL 4442790 (C.D. Cal. Sept. 16, 2011)..........................................................13

*Serpa v. Cal. Surety Investigations, Inc.*,
     215 Cal. App. 4th 695 (2013).......................................................................................9

*Sheirkatz Rllp v. Square, Inc.*,
     2015 U.S. Dist. LEXIS 169628 (N.D. Cal. Dec. 17, 2015) .......................................10

*Soltani v. W&S Life Ins.*,
     258 F.3d 1038 (9th Cir. 2001)....................................................................................13

*Ting v. AT&T*,
     319 F.3d 1126 (2003) .................................................................................................12

*Tompkins v. 23AndMe, Inc.*,
     -- F.3d --, 2016 U.S. App. LEXIS 15443 (9th Cir. Aug. 23, 2016) ...............11, 12, 13

*United Steelworkers of Am. V. Warrior & Gulf Navigation Co.*,
     363 U.S. 574 (1960) .....................................................................................................5

*Zenelaj v. Handybook, Inc.*
     82 F.Supp.3d 968 (N.D. Cal. 2015) .............................................................................4

**Rules**

American Arbitration Association, Consumer Arbitration Rule 12...................................5

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

## I. INTRODUCTION

Plaintiffs are longtime users of Spotify's music streaming services. They repeatedly accepted the express conditions on which Spotify offered its services—including the obligation to arbitrate this dispute. Indeed, both Ingalls and Hong admit they accepted Spotify's current Terms and Conditions of Use ("T&C"). They also concede, as they must, the T&C require individual arbitration, and they admit the arbitration provision covers their claims. Nevertheless, they resist arbitration. Their efforts to avoid the procedure to which they agreed do not withstand scrutiny.

*First*, plaintiffs argue the T&C's AAA delegation provision does not clearly and unmistakably delegate to the arbitrator the power (and duty) to resolve arbitrability issues. Earlier this month, however, the Ninth Circuit rejected plaintiffs' argument that an exclusive venue provision conflicts with a delegation of arbitrability issues, observing that parties to an arbitration may still need to file court actions to compel arbitration or to enforce an award. Further, contrary to plaintiffs' claim, courts routinely hold that the incorporation of "AAA rules," without more, suffices to delegate arbitrability. Accordingly, plaintiffs' challenges to the enforceability of the arbitration agreement must be submitted to the arbitrator.

*Second*, plaintiffs argue the Court should find the parties never agreed to arbitrate their claims because the arbitration provision was conditioned on being enforceable in the jurisdiction where the plaintiffs reside. Of course, plaintiffs do not dispute mandatory arbitration provisions *are* enforceable in California, where they both reside. Further, as they tacitly concede, they could have declined the T&C and not used the Spotify service if they did not want to be bound to arbitrate their claims. They cite no authority to support their illogical position that parties cannot agree to an *enforceable* provision subject to the provision being enforceable.

*Third*, the arbitration agreement lacks the earmarks of oppression or surprise that might make it unconscionable. Like every modern consumer contract for a widely marketed product or service, the T&C are standardized, not individually negotiated, making the arbitration provision, at most, minimally procedurally unconscionable, requiring plaintiff to make a strong showing of substantive unconscionability to make it unenforceable. Plaintiffs fall far short of this showing.

1

*Fourth*, even if the Court does find an unconscionable term on plaintiffs' laundry list, it may (and should) sever that term and send the case to arbitration consistent with the agreement.

## II.   THE AAA DELEGATION IS ENFORCEABLE.

### A.   The Venue Provision in Section 24.1 Does Not Defeat Delegation.

Plaintiffs argue the venue provision in Section 24.1 of the T&C undermines the intent to delegate validity and arbitrability determinations to the arbitrator, Opp. at 8-10, relying on Judge Chen's denial of Uber's motion to compel a putative class action to individual arbitration. *See Mohamed v. Uber Tech.'s, Inc.*, 109 F. Supp. 3d 1185 (N.D. Cal. 2015). But the Ninth Circuit reversed that decision after plaintiffs filed their opposition. *Mohamed v. Uber Tech.*, No. 15-16718, 2016 U.S. App. LEXIS 16413 (9th Cir. Sept. 7, 2016). Having previously argued *Mohamed* was on all fours with this case, plaintiffs strain in their Supplemental Brief in an attempt to distinguish it. In fact, *Mohamed* squarely rejects plaintiffs' arguments.

Section 24.1 directly parallels Uber's exclusive venue clause in *Mohamed*. *Compare* Dkt. 25-5, Ex. 18 at 16, ¶24.1 ("you and Spotify agree to the jurisdiction of the courts listed below to resolve *any dispute, claim or controversy that arises in connection with the Agreements (and any non-contractual disputes/claims arising out of or in connection with them.)*" (emphasis added)) *with* 109 F. Supp. 3d at *14 ("*any disputes, actions, claims, or causes of action arising out of or in connection with this Agreement* or the Uber Service or Software shall be subject to the exclusive jurisdiction of the state and federal courts located in the City and County of San Francisco.") (Emphasis added). Judge Chen found the language in Uber's venue provision was "inconsistent and in considerable tension with the language of the delegation clauses, which provide[d] that 'without limitation' arbitrability will be decided by an arbitrator." 109 F. Supp. 3d at 1201. Opp. at 8-10. In reversing, the Ninth Circuit held such "conflicts are artificial":

> As for the venue provision, the California Court of Appeal has observed that "[n]o matter how broad the arbitration clause, it may be necessary to file an action in court to enforce an arbitration agreement, or to obtain a judgment enforcing an arbitration award, and the parties may need to invoke the jurisdiction of a court to obtain other remedies." *Dream Theater, Inc. v. Dream Theater*, 21 Cal. Rptr. 3d 322, 328 (Cal. Ct. App. 2004), *as modified on denial of reh'g* (Dec. 28, 2004). It is apparent that the venue provision here was intended for these purposes, and to identify the venue for any other claims that were not covered by the arbitration

2

DAVIS WRIGHT TREMAINE LLP

agreement.  That does not conflict with or undermine the agreement's unambiguous statement identifying arbitrable claims and arguments.

2016 U.S. App. LEXIS 16413 at *14.  Here too, either Spotify or plaintiffs may need to bring a court action to enforce the arbitration agreement or obtain judgment enforcing an arbitration award.  Section 24.3.2 also excepts a narrow class of disputes from arbitration.  Section 24.1 identifies the forum where these actions may be brought.  Per *Mohamed*, any purported "conflict" between Section 24.1 and delegation to the arbitrator is "artificial."[1]

### B.     The Language Regarding Enforceability Does Not Defeat Delegation.

Because the T&C apply to users in dozens of countries with differing laws on arbitration, Section 24.3 provides: "If you are located in, are based in, have offices in, or do business in a jurisdiction in which this Section 24.3 is enforceable, the following mandatory arbitration provisions apply to you…"  Here, plaintiffs concede, as they must, that mandatory arbitration provisions are enforceable in California, where they both reside.  *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) (recognizing that prior California law invalidating class action waivers was reversed by *AT&T Mobility LLC v. Concepcion*, 563 U.S.333 (2011)).  Nonetheless, plaintiffs argue that "[b]y drafting Section 24.3 in this manner, Spotify has agreed the Court must first rule that Section 24.3 is enforceable before [the arbitration provision] even applies."  Opp. at 8.  Not true.  Section 24.3 nowhere states that a ***court*** must determine if the provision is enforceable, and the Supreme Court has flatly rejected plaintiffs' assumption that determinations regarding the validity of an arbitration clause are exclusively for a court.  *Rent-a-Center v. Jackson*, 561 U.S. 63, 69-70 (2010).  Instead, where, as here, an agreement delegates validity challenges by incorporating AAA rules, an arbitrator must decide whether the arbitration provision is enforceable.

There is no conflict between Section 24.3's statement that it is subject to being enforceable where the user resides, and delegating enforceability determinations to the arbitrator.

---

[1] Plaintiffs argue the Uber venue provision was "more similar" to the venue provision in a prior version of the T&C.  Supp. Br. at 3-4.  In fact, Uber's venue provision mirrors Section 24.1's "any dispute" language that plaintiffs characterize as "broad, active voice" language.  Opp. at 10, n.6.

3

**C.     The T&C's Incorporation of the "AAA Rules" Was Clear and Unmistakable.**

Plaintiffs next contend Section 24.3.3 failed to "properly incorporate the AAA Rules" because it referred to the AAA's "Commercial Dispute Resolution Procedures," rather than the "Commercial Arbitration Rules and Mediation Procedures." Plaintiffs fail to identify any other AAA rules that users might interpret would apply instead. Further, they ignore that the T&C provide the AAA's customer service telephone number, making it easy for any customer to clarify any misunderstanding as to applicable rules. Indeed, as plaintiffs acknowledge, the court in *Kimble v. Rhodes College,* 2011 U.S. Dist. LEXIS 59628, *10-11 (N.D. Cal. June 2, 2011), observed the AAA's Supplementary Procedures for Consumer Related Disputes referred to the "Commercial Dispute Resolution Procedures" and treated this as a reference to the AAA's "Commercial Rules." Opp. at 12.

In any event, the Ninth Circuit has held an agreement's incorporation of the "AAA rules"—without specifying *which* AAA rules—"constitute[d] clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Because Section 24.3.3's repeated reference to the "AAA rules" left no doubt as to the arbitral body whose rules were incorporated, the incorporation of specific AAA rules was not necessary.[2] The cases on which plaintiffs rely are inapposite because the subject agreements failed to specify the ***arbitral body*** whose rules should be applied. Opp. at 13, citing *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 791 (2003), and *E & E Co., Ltd. v. Light In Box Ltd.*, 2015 U.S. Dist. LEXIS 128463, at *22 (N.D. Cal. Oct. 9, 2015).

---

[2] *See Zenelaj v. Handybook, Inc.* 82 F.Supp.3d 968, 972 (N.D. Cal. 2015) ("[T]he overwhelming consensus of other circuits, as well as the vast majority of decisions in this district, support Defendant's claim that, in the context of this case, incorporation of the AAA Rules effectively delegates jurisdictional questions, including arbitrability and validity, to the arbitrator."); *Cochrane v. Open Text Corp.*, 2015 U.S. Dist. LEXIS 78006, *7 (N.D. Cal. June 16, 2015) (enforcing provision stating that arbitration would be conducted "pursuant to the American Arbitration Association's (the 'AAA') rules governing commercial arbitration in effect at the time of the arbitration"); *Levin v. Caviar, Inc.*, 2016 U.S. Dist. LEXIS 8385, *6, 11 (N.D. Cal. Jan. 20, 2016) (enforcing provision stating that arbitration would be held "pursuant to the applicable AAA rules"); *Clarium Capital Mgmt., LLC v. Choudhury*, 2009 U.S. Dist. LEXIS 14805, *12 (N.D. Cal. Feb. 11, 2009) (enforcing provision stating that disputes shall be "resolved through arbitration conducted in accordance with the rules of the American Arbitration Association").

4

DAVIS WRIGHT TREMAINE LLP

It makes no difference that Spotify did not argue delegation in its 2013 motion to compel arbitration in *Bleak*. Spotify's arguments in a case three years ago involving different plaintiffs and a different provision in a prior version of the T&C cannot estop it from asserting delegation here. Nor do plaintiffs claim any prejudice from Spotify's failure to argue delegation in *Bleak*. *Cf. Hoffman Constr. Co. v. Active Erectors & Installers, Inc.*, 969 F.2d 796, 798 (9th Cir. 1992) (party asserting that opposing party has waived its right to arbitrate must demonstrate prejudice "resulting from such inconsistent acts"). Plaintiffs also fail to demonstrate that the delegation clause itself is unconscionable, for the reasons discussed in Section IV.

Because the delegation to the arbitrator is clear and unmistakable, plaintiffs' challenges to validity, arbitrability, and unconscionability must all be submitted to the arbitrator and the Court's analysis should stop here. Even assuming the delegation clause is unenforceable, however, plaintiffs' challenges all fail.[3]

### III.  THE ARBITRATION AGREEMENT IS VALID.

#### A.  The Presumption in Favor of Arbitrability Applies.

Under the FAA, "where the contract contains an arbitration clause, there is a presumption of arbitrability . . . 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. V. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-85 (1960)). Plaintiffs admit they agreed to the T&C (Opp. at 3:20-21), and the T&C contain a mandatory arbitration provision. Thus, the presumption of arbitrability applies. *AT&T Techs*., 474 U.S. at 650. Their reliance on *Goldman Sachs & Co. v. City of Reno,* 747 F.3d 733 (9th Cir. 2014), is misplaced. The issue there was whether plaintiff "contracted around" FINRA's default rule allowing for arbitration of broker-

---

[3] Plaintiffs point out in their Supplemental Brief that Spotify has not submitted its consumer arbitration clause to the AAA Consumer Clause Registry. Supp. Brief at 3-4. This issue has no bearing on delegation. Plaintiffs ignore that Rule 12 of the AAA's Consumer Arbitration Rules provides that "[i[f a business does not submit its arbitration agreement for review and a consumer arbitration then is filed with the AAA, the AAA will conduct an expedited review at that time." *See* www.adr.org/rules. In accordance with those Rules, Spotify will submit its agreement for expedited review if plaintiffs file an arbitration demand.

5

DAVIS WRIGHT TREMAINE LLP

1  dealer disputes when it entered into contracts with defendant to litigate claims in Nevada federal
2  court.  *Id.* at 738.  Because the parties disputed whether any agreement to arbitrate existed, the
3  Ninth Circuit found the presumption favoring arbitrability did not apply.  *Id.*  Here, Spotify is not
4  relying on a "default" rule, but rather an express arbitration provision *in the parties' agreement*.
5  Plaintiffs' arguments that *other* provisions in the *same* agreement render the arbitration provision
6  ambiguous are subject to the FAA's presumption.

### B. The Agreement Contains a Valid Jury Waiver.

Plaintiffs argue Section 24.3 fails to set forth a waiver of the right to a jury trial in clear and unmistakable form.  Opp. at 14-15.  Their conclusory argument ignores the plain language of the T&C.  A table of contents appears at the beginning of the T&C, allowing Spotify users to see at a glance the topics addressed in the contract, and users may jump to any provision by clicking on the section headers in the table.  Dkt. #25-5, Ex. 18 at 1.[4]  Each section has a clearly marked, descriptive heading, which appear in bold and significantly larger font from the rest of the text, to draw the reader's attention.  The arbitration provision is entitled "**Choice of law, mandatory arbitration and venue**," making its importance clear to users.  *Id.* at 16, §24.3.1.  The Introduction cautions users to "**[p]lease read the Agreements carefully,"** and informs them the T&C include information about "resolution of disputed by arbitration **instead of in court,**" with a hyperlink to the arbitration provision.  *Id.* at 2, §1 (emphasis in original).  The arbitration provision reiterates that "THERE IS NO JUDGE OR JURY IN ARBITRATION…" *Id.* at 18, §24.3.1.  Nonetheless, plaintiffs claim the venue provision in Section 24.1 created ambiguity—an artificial conflict the Ninth Circuit rejected.  *See* Section II-A.  Plaintiffs also contend users could not have understood they were waiving their right to a jury because Section 24.3.1 applies only if "this Section 24.3 is enforceable."  But conditioning a clause on enforceability does not invalidate it, and plaintiffs cite nothing to suggest otherwise.  *See* Section III-D.

---

[4] Citations to pages within the exhibits attached to the Brophy Decl. (Dkt. #25-5) and the Commerson Decl. (Dkt. #25-1) refer to the pages stamped at the bottom right of the page, which are formatted as "__ of __."

DAVIS WRIGHT TREMAINE LLP

### C. Section 24.1 Does Not Invalidate the Arbitration Agreement.

Plaintiffs repeat the argument that Section 24.1's venue provision cannot be squared with the arbitration provision, and assert that, as a result, "there is no valid arbitration agreement requiring Plaintiffs to arbitrate their claims." Opp. at 17. But because an exclusive venue provision does not undermine delegation of arbitrability, *see Mohamed*, 2016 U.S. App. LEXIS at *14, it cannot invalidate the arbitration provision itself. Moreover, Judge Breyer implicitly rejected plaintiffs' argument in *Bleak* when he enforced the arbitration provision in Spotify's June 2013 T&C, which also contained an exclusive venue provision. Dkt. #25-5, at 34, §19. Plaintiffs grasp at straws to find ambiguities, contending there is a conflict between the reference to "mandatory individual binding arbitration" in Section 24.3.1 and Section 24.3.3's statement that either party "may" start arbitration proceedings in accordance with AAA Rules. Opp. at 17. Indeed, because the arbitration clause applies to both Spotify and its users, Section 24.3.3 correctly states that either party may commence proceedings.[5]

### D. Limiting the Arbitration Provision to Jurisdictions Where It Is Enforceable Does Not Negate Mutual Assent.

Next, plaintiffs argue mutual assent is lacking because the arbitration provision is conditioned on plaintiffs being located in a country where mandatory arbitration provisions are enforceable. They claim they could not knowingly agree to the provision's enforceability because they are not lawyers, and on that basis seek to toss aside the arbitration provision altogether. Opp. at 18:9-21. Of course, plaintiffs had no obligation to use Spotify. If they did not want to arbitrate, they could have declined the T&C and ceased using the service. Moreover, *prior* versions of Spotify's T&C's contained mandatory arbitration provisions, and plaintiffs—who used Spotify's services since 2011 and 2012—do not dispute accepting them. Mtn. at 4-8; Dkt. #25-5, Ex. 19 at 5, 11, 17, 23, 34, 46 (arbitration provisions in prior versions of T&C.)

---

[5] Plaintiffs concede that if the Court finds that the arbitration provision is enforceable, their claim for injunctive relief must be stayed. Opp. at 3, n.1. However, Spotify's Motion also explained that plaintiffs lack standing to seek injunctive relief. Mtn. at 18-19. Plaintiffs failed to address this argument, and therefore concede it. *See e.g.*, *Ardente, Inc. v. Shanley*, 2010 WL 546485, at *21 (N.D. Cal. Feb. 10, 2010) ("Plaintiff fails to respond to this argument and therefore concedes it through silence.")

7

1  Here, the plain language of the T&C evidences the parties' intent to submit disputes to
2  binding arbitration. Dkt. #25-5, Ex. 18 at 18 ("You and Spotify agree that any dispute, claim or
3  controversy between you and Spotify arising in connection with or relating in any to these
4  Agreements or to your relationship with Spotify as a user of the Service . . . will be determined by
5  mandatory binding individual arbitration.")  Mutual assent is determined from the reasonable
6  meaning of the words and acts of the parties, and not from their unexpressed intentions or
7  understandings.  *Meyer v. Benko*, 55 Cal. App. 3d 937, 942-43 (1976) (stating that California
8  courts apply an objective test to ascertain whether there is mutual assent.)  "[O]ne who signs a
9  contract is bound by its provisions and cannot complain of unfamiliarity with the language of the
10 instrument."  *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002).

11  Plaintiffs cite **no support** for their position that conditioning a contractual provision on
12 enforceability negates mutual assent.  They essentially ask this Court to create a special exception
13 for arbitration agreements, ignoring the FAA's "fundamental principle that arbitration is a matter
14 of contract," placing arbitration agreements "on an equal footing with other contracts" and
15 requiring courts to enforce them according to their terms.  *Rent-A-Ctr.*, 561 U.S. at 67; *see also*
16 *Perry v. Thomas*, 482 U.S. 483, 493 n. 9 (1987) (noting that the FAA pre-empts decisions that take
17 their "meaning precisely from the fact that a contract to arbitrate is at issue."); *DirecTV, Inc.*, 136
18 S.Ct. at 471 (unique interpretation of arbitration contract was invalid because it did not apply to
19 non-arbitration contracts).  Further, in construing contracts, courts "favor a construction under
20 which the agreement is legally valid over an interpretation which would require voiding the
21 agreement."  *Flores v. Am. Seafoods Co.*, 335 F.3d 904, 912 (9th Cir. 2003).

22  In fact, courts routinely enforce provisions conditioned on enforceability in arbitration
23 agreements.  For example, the Supreme Court recently enforced a provision in DIRECTV's
24 customer service agreements informing customers that if the "law of your state" makes the waiver
25 of class arbitration unenforceable, then the entire arbitration provision "is unenforceable."
26 *DIRECTV, Inc.*, 136 S. Ct. at 471 (enforcing DIRECTV's arbitration provision against California-
27 based plaintiffs because *Concepcion* overturned California's ban on class action waivers.)  And in
28 *Mohamed*, the Ninth Circuit severed an invalid PAGA waiver from the arbitration provision,

DAVIS WRIGHT TREMAINE LLP

8
REPLY IN SUPPORT OF SPOTIFY USA INC.'S MOTION TO COMPEL ARBITRATION AND STAY ACTION
*Bleak v. Spotify USA Inc.*, Case No. CV 13-05653 CRB
DWT 30305318v5 0098755-000014

based on a provision that "in the event any portion of this Arbitration Provision is deemed unenforceable, the remainder of this Arbitration Provision will be enforceable." 2016 U.S. App. LEXIS 16413, *26. If contracting parties can agree to sever an *unenforceable* provision and enforce the remainder, they can surely agree to comply with an *enforceable* provision subject to it being enforceable.[6] Finally, the arbitration provision in Spotify's June 2013 T&C that Judge Breyer previously enforced also contained several provisions conditioned on enforceability determinations.[7]

## IV.   SECTION 24.3 IS CONSCIONABLE.

"There is a strong public policy in favor of arbitration." *Serpa v. Cal. Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 701 (2013) (citing both FAA and the California Arbitration Act). "An arbitration agreement governed by the FAA is presumed to be valid and enforceable." *McIntosh v. Adventist Health/West St. Helena Hosp.*, 2013 WL 968293, at *2 (N.D. Cal. Mar. 12, 2013) (internal citation omitted.) Under California law, "a contract provision is unenforceable due to unconscionability only if it is *both* procedurally *and* substantively unconscionable." *Bosinger v. Belden CDT, Inc.*, 358 F. App'x. 812, 814 (9th Cir. 2009). California also uses a "sliding scale" so "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Cisneros v. Am. Gen. Fin. Servs., Inc.*, 2012 WL 3025913, at *4 (N.D. Cal. July 24, 2012) (citation omitted).

### A.   Section 24.3 Is Neither Oppressive nor Surprising.

*First*, plaintiffs contend oppression exists because the T&C were offered on a "take-it-or-leave it" basis. But the Supreme Court has recognized "the times in which consumer contracts were anything other than adhesive are long past." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct.

---

[6] Plaintiffs' argument also overlooks that the Class Action Waiver appears in a separate section in the T&C (24.2), which lacks the enforceability language to which they object.

[7] *E.g.,* Dkt. #25-5, Ex. 19 at 34 ("Unless otherwise required by a mandatory law of a member state of the European Union or any other jurisdiction, these agreements are subject to the law of the state of California[.]"); *id.* at 34, ¶ 19(3) ("If this provision is found to be unenforceable in any way, then the entirety of this arbitration section shall be null and void."); *id.* at 34, ¶ 19(4) ("[i]f applicable law prohibits a one-year limitations period for asserting claims, any claim must be asserted within the shortest time period permitted by applicable law.")

9
REPLY IN SUPPORT OF SPOTIFY USA INC.'S MOTION TO COMPEL ARBITRATION AND STAY ACTION
*Bleak v. Spotify USA Inc.*, Case No. CV 13-05653 CRB
DWT 30305318v5 0098755-000014

DAVIS WRIGHT TREMAINE LLP

1740, 1750 (2011).  "When, as here, there is no other indication of oppression or surprise, the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable *unless the degree of substantive unconscionability is high*.'"  *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1470 (2013) (internal citation omitted.)   Indeed, Plaintiffs fail to identify any other alleged indications of oppression.

*Second*, plaintiffs complain Spotify failed to attach the AAA arbitration rules to Section 24.3.1.  Judge Breyer rejected the same argument in *Bleak*.  Dkt. #25-1, Ex. B at 21.  "[T]he failure to attach the AAA rules, standing alone, is insufficient grounds to support a finding of procedural unconscionability."  *Peng*, 219 Cal. App. 4th at 1472; *see also Lucas v. Gund, Inc.*, 450 F. Supp. 2d 1125, 1131 (C.D. Cal. 2006).  Both *Peng* and *Lucas* cite and distinguish contrary California case law, noting those courts either specified the effect of failing to include the AAA rules was minimally problematic or objected to the omission because the failure to attach the rules hid unfair terms from the plaintiff.  *Peng*, 219 Cal. App. 4th at 1471-72 (citations omitted); *Lucas*, 450 F. Supp. 2d at 1131 (citations omitted).   Here, the AAA rules are easy to find, *Peng*, 219 Cal. App. 4th at 1470 n.5, and "generally regarded to be neutral and fair."  *Lagatree v. Luce, Forward, Hamilton & Scripps LLP*, 74 Cal. App. 4th 1105, 1126-27 (1999) (internal citation omitted.) Indeed, the AAA has been a leader in assuring fair process for consumers, adopting the Consumer Arbitration Rules and the Consumer Due Process Protocol to ensure a fair, impartial, and inexpensive process for the resolution of consumer disputes.

*Third***,** Spotify's failure to refer to the AAA Commercial Arbitration Rules by their precise title does not render the agreement procedurally unconscionable.  In addition to providing users with a hyperlink to the AAA's Web site, Spotify provided the AAA's customer service telephone number.

*Fourth,* the fact that Spotify did not include an express delegation clause does not render the agreement procedurally unconscionable.  Plaintiffs rely on *Sheirkatz Rllp v. Square, Inc.*, 2015 U.S. Dist. LEXIS 169628, *35 (N.D. Cal. Dec. 17, 2015), but the court there found the failure to include an express delegation clause only contributed to "minimal" procedural unconscionability and concluded the delegation provision was not unconscionable.

10

*Fifth*, there is nothing surprising or oppressive about conditioning a mandatory arbitration provision on being enforceable. Plaintiffs do not explain how plaintiff could be surprised by an agreement to comply with an *enforceable* arbitration provision *if* it is enforceable.

*Sixth*, there was no surprise because the T&C clearly and repeatedly advised users they were agreeing to mandatory arbitration and giving up their right to a jury. See Section III-B.

*Seventh*, the venue clause in Section 24.1 and the arbitration provision in 24.3 do not conflict, *see* Section III-C, and thus do not cause oppression or surprise.

In short, Spotify's arbitration provision is neither surprising nor oppressive. Further, the provision uses an experienced neutral to provide a fair way to resolve disputes arising from the purchase of streaming online music, an entertainment service for which consumers have a wide variety of competing options. In these circumstances, the Court should find the Spotify arbitration provision, at most, "minimally procedurally unconscionable." *Hendricks v. AT&T Mobility, LLC*, 823 F. Supp. 2d 1015, 1023 (N.D. Cal. 2011); *Peng*, 219 Cal. App. 4th at 1470.

### B.     Section 24.3 Is Not Substantively Unconscionable.

Due to the low level of procedural unconscionability, plaintiffs must show significant substantive unconscionability—i.e., the arbitration provision is so unjustifiably one-sided that it shocks the conscience—to avoid their obligation to arbitrate. *See Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1043 (9th Cir. 2001). They cannot make the required showing.

*First*, the Ninth Circuit recently rejected plaintiffs' argument that a unilateral modification clause renders an arbitration provision unconscionable, observing "California courts have held that the implied covenant of good faith and fair dealing prevents a party from exercising its rights under a unilateral modification clause in a way that would make it unconscionable." *Tompkins v. 23AndMe, Inc.*, -- F.3d --, 2016 U.S. App. LEXIS 15443, *36 (9th Cir. Aug. 23, 2016) (collecting cases; internal citations omitted.); *see Peng*, 219 Cal. App. 4th at 1473 ("unilateral modification provision is not substantively unconscionable"). The Ninth Circuit distinguished *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003), on the ground that "although we have held that a unilateral modification provision itself may be unconscionable," the Court had "not held that such a provision makes the arbitration provision or the contract as a whole unconscionable."

11

*Tompkins,* at *36-37.  Judge Breyer also rejected a similar argument by the plaintiffs in *Bleak*. Dkt. #25-1, Ex. B at 15-16.

***Second***, plaintiffs complain the protocol for objecting to any modifications Spotify makes to Section 24.3 are more onerous compared with the protocol for objecting to new versions of the T&C in general.  Requiring users to send written notice within 30 days is not onerous, much less shocking to the conscience.  In *Mohamed*, the Ninth Circuit reversed a finding that requiring drivers to send opt-outs by overnight delivery rather than email was unconscionable, even though it was "more burdensome."  2016 U.S. App. LEXIS 16413, at *19.

***Third***, plaintiffs contend the confidentiality provision is unconscionable.  The Ninth Circuit recently cautioned against invalidating arbitration clauses based on confidentiality provisions, observing "the enforceability of the confidentiality clause is a matter distinct from the enforceability of the arbitration clause in general.  Plaintiffs are free to argue during arbitration that the confidentiality clause is not enforceable."  *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1059 n.9 (9th Cir. 2013).  District courts have similarly refused to invalidate arbitration clauses based on confidentiality provisions.  *E.g.*, *Mikhak v. Univ. of Phoenix*, 2016 U.S. Dist. LEXIS 80705, *39 (N.D. Cal. June 21, 2016) (confidentiality provision did not render arbitration provision unconscionable); *Melez v. Kaiser Found. Hosps., Inc.*, 2015 U.S. Dist. LEXIS 25911, *30 (C.D. Cal. Mar. 2, 2015) (same).  Plaintiffs' reliance on *Ting v. AT&T*, 319 F.3d 1126 (2003), is misplaced.  There, the Court found that certain provisions in AT&T's contract were unconscionable, including a confidentiality provision, but did not deny a motion to compel arbitration, as plaintiffs seek to do here.  It only found that "the Legal Remedies provision of the contract [was] unenforceable as unconscionable under California law."  *Id.* at 1152.

***Fourth***, plaintiffs repeat an argument Judge Breyer rejected in *Bleak*—that the one-year limitations period renders the arbitration provision unconscionable.  Dkt. 25-1, Ex. B at 18.  The Ninth Circuit also rejected the proposition that a one-year limitation provision renders an arbitration provision unconscionable.  *Tompkins,* 2016 U.S. App. LEXIS 15443, *36.  Like the provision in *Tompkins*, Spotify's limitation provision applies to claims brought by both parties and thus is not "unfairly one-sided."  *Id.*  As the Ninth Circuit noted, California courts "'have afforded

12

contracting parties considerable freedom to modify the length of a statute of limitation.'" *Id.* at *35, quoting *Moreno v. Sanchez*, 106 Cal. App 4th 1415, 1434 (2003); *see also Han v. Mobil Oil Corp.*, 73 F.3d 872, 877 (9th Cir. 1995) ("A contractual limitation period requiring a plaintiff to commence an action within 12 months following the event giving rise to a claim is a reasonable limitation which generally manifests no undue advantage and no unfairness.")  Indeed, "the weight of California case law strongly indicates that [a] six-month limitation provision is not substantively unconscionable." *Soltani*, 258 F.3d at 1043-44 (collecting cases).  Here, discovery of the alleged injury is simple: a consumer will know within a month of registering for Spotify's Premium service whether Spotify charged his or her credit card for its music streaming services.  Plaintiffs' attempt to distinguish *Tompkins* on the ground the limitation provision was set forth outside of the arbitration clause is unavailing, Opp. at 24, n. 10, because the effect of the limitation there was the same.  Nor does Section 24.3.2's narrow excepting of certain claims from arbitration change the analysis because the exceptions provision is wholly bilateral.

**C.    California Allows Severance of Contract Clauses in the Interest of Justice.**

Finally, even if plaintiffs could show their agreement with Spotify contains an unconscionable term, the Court could sever any such term without doing violence to the agreement as a whole.  "It is not enough for a plaintiff to simply show that one provision of the agreement is substantively unconscionable, as courts routinely sever certain clauses when there are no other objectionable components to the agreement." *Ruhe v. Masimo Corp.*, 2011 WL 4442790, at *3 (C.D. Cal. Sept. 16, 2011); *see Chavez v. Bank of Am.*, 2011 WL 4712204, at *11 (N.D. Cal. Oct. 7, 2011) (severing provision of arbitration clause requiring Washington, D.C. forum).  "To prevent severance and show that the entire agreement is substantively unconscionable, a plaintiff must show that the effect of the defective clause is such that the agreement itself is 'tainted with illegality.'" *Ruhe*, 2014 WL 4442790, at *3 (quoting *Armendariz*, 24 Cal. 4th at 124).  Plaintiffs flatly fail to make this showing.

//

## V. CONCLUSION

For these reasons, Spotify respectfully requests the Court (a) compel plaintiffs to arbitrate their claims on an individual basis; (b) order plaintiffs to submit any arbitrability, unconscionability or validity challenges to the arbitrator; and (c) stay this case pending the outcome of those proceedings.

Respectfully submitted this 21st day of September 2016.

DAVIS WRIGHT TREMAINE LLP<br>
Attorneys for Defendant Spotify USA Inc.<br>
<br>
By: <i>/s/ Joseph E. Addiego III</i><br>
Stephen M. Rummage<br>
Joseph E. Addiego III<br>
Scott R. Commerson