IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY INGALLS and TONY HONG, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SPOTIFY USA, INC., a Delaware corporation, DOES 1–10, inclusive,<br><br>Defendants. | No. C 16-03533 WHA<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION** |

## INTRODUCTION

In this putative class action, plaintiffs claim that a subscription music streaming service violated a California law provision restricting automatic renewal of a subscription. Defendant, which operated that streaming service, moves to compel arbitration and to stay the case pending arbitration. For the reasons stated below defendant's motion is **DENIED**.

## STATEMENT

Plaintiff Gregory Ingalls signed up to use the free version subscription music streaming service provided by defendant Spotify, Inc., in November 2012. Spotify required subscribers to affirmatively accept an agreement titled "Terms and Conditions of Use" before using the service. Ingalls later signed up for a series of free trials of Spotify's premium service (which offered music without advertisements and included additional features). Ingalls cancelled his premium subscription in 2013, but continued to use the free service.

In September 2015, Spotify updated its Terms and Conditions and presented all users, including Ingalls, with the following notice upon accessing the service:

> **Updated terms.**  We have revised our Terms and Conditions of Use and our Privacy Policy.  By clicking "Accept" you accept and agree to these updates, so please take a few minutes to read and understand them.

Users could access the referenced agreements by clicking on the words in the notice.  In order to continue using Spotify's service, Ingalls had to affirmatively click "Accept," which he did on January 7, 2016.  Ingalls continued to use the free service.

Plaintiff Tony Hong registered for Spotify's free service in November 2011.  Like Ingalls, he was required to accept Spotifiy's Terms and Conditions when registering.  In December 2015, Hong signed up for Spotify's premium service with a three-month discount offer.  In March 2015, after the three-month discount period ended, Hong's account converted to the regular price for premium service.  Hong cancelled his subscription two days later but restarted it (at full price) in May 2015.

As stated, Spotify updated its Terms and Conditions in September 2015, and required users, including Hong, to affirmatively accept the new Terms and Conditions (or quit the service).  Users that rejected the amended Terms and Conditions could receive a refund for their monthly subscription fee pro-rated for the part of the month following the amendment, though none sought such a refund.[1]

Hong accepted the updated agreement that month by clicking the "Accept" button.  Hong continued to use his subscription until he canceled it in June 2016 — just days after filing this action.  Hong again restarted his subscription in July 2016.

Spotify's updated Terms and Conditions agreement was a lengthy document, but its table of contents included hyperlinks allowing users to navigate from section to section throughout the document.  The first section, titled "Introduction," included a bolded warning that the Terms and Conditions contained, *inter alia*, a class action waiver and an agreement to resolve disputes by arbitration.

---

[1] Counsel for Spotify represented that such a refund would be available at the hearing on this motion.  Although this appears contrary to Section 16 of the Terms and Conditions agreement, this order accepts counsel's unsworn representation purely for the sake of argument but notes that if users could not seek a refund for the balance of the month, that would heighten the procedural unconscionability of the arbitration provision.

1    Section 2 noted that Spotify could, in its discretion, make changes to the Terms and

2 Conditions agreement, but that it would provide prompt notice of material changes.

3    Section 24 of the Terms and Conditions agreement was titled "Choice of law, mandatory

4 arbitration and venue." Paragraph 24.3.1 provided:

> You and Spotify agree that any dispute, claim, or controversy between you and Spotify arising in connection with or relating in any way to these Agreements or to your relationship with Spotify as a user of the Service (whether based in contract, tort statute, fraud, misrepresentation, or any other legal theory, and whether the claims arise during or after the termination of the Agreements) will be determined by mandatory binding individual arbitration.

9 It further explained that arbitration lacked the formality of court proceedings and had no judge

10 or jury, among other limitations.

11    Paragraph 24.2 provided a class action waiver:

> WHERE PERMITTED UNDER THE APPLICABLE LAW, YOU AND SPOTIFY AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE ACTION.  Unless both you and Spotify agree, no arbitrator or judge may consolidate more than one person's claims or otherwise preside over any form of a representative or class proceeding.

17    Paragraph 24.3.3 provided that arbitration would occur before the American Arbitration

18 Association and would be resolved under the "Commercial Dispute Resolution Procedures and

19 the Supplementary Procedures for Consumer Related Disputes of the American Arbitration

20 Association ('AAA') then in force."  The arbitrator's fees would be paid pursuant to the

21 limitations on fees set forth in the AAA's consumer rules with any balance to be paid by

22 Spotify.  Paragraph 24.3.3 noted that the AAA procedures and other information about

23 arbitration could be found at adr.org or by calling the AAA's phone number (which was

24 provided in the agreement).

25    In actuality, at the time the arbitration agreement was drafted, the AAA website did *not*

26 include any document with the title "Commercial Dispute Resolution Procedures" or

27 "Supplementary Procedures for Consumer Related Disputes of the American Arbitration

28 Association" as indicated in Paragraph 24.3.3.  AAA had discontinued those publications and

had begun offering the "Consumer Arbitration Rules" in 2014.  (Section R-1(a) of the

3

1  Consumer Arbitration Rules stated that the procedures therein would apply in any arbitration
2  agreement that specified the AAA's "Supplementary Procedures for Consumer-Related
3  Disputes.") Spotify concedes this was a drafting error.
4      Plaintiffs brought this action in June 2016, claiming that Spotify failed to adequately
5  inform them that it would automatically renew their subscriptions at the full price once their
6  trial periods had ended and that Spotify failed to obtain plaintiffs' affirmative consent for that
7  renewal in violation of California law. Spotify now moves to compel arbitration pursuant to the
8  updated Terms and Conditions agreement. It contends the threshold issue of arbitration must be
9  decided by an arbitrator. Failing that, it contends the Court must order arbitration. This order
10 follows full briefing and oral argument.[2]

**ANALYSIS**

Spotify's motion to compel arbitration is governed by the Federal Arbitration Act. 9 U.S.C. 1, *et seq.* The FAA requires the resolution of two "gateway" issues: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). If a valid arbitration clause exists, arbitration is mandatory unless the party resisting arbitration can prove a defense to enforcement of the agreement, such as unconscionability. *Pinnacle Museum Tower Association v. Pinnacle Market Development (US), LLC*, 55 Cal. 4th 223 (2012).

Spotify moves to compel arbitration of this action and also moves to compel arbitration of the threshold issue of arbitrability. This order first turns to the threshold issue.

1. **DELEGATION CLAUSE.**

The determination of whether an arbitration clause is valid, applicable, and enforceable is reserved to the district court unless "the parties clearly and unmistakably provide[d] otherwise," such as by delegating the issue of arbitrability to arbitration. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986). Even if a delegation of

---

[2] The day after plaintiffs filed their opposition brief, our court of appeals decided *Mohamed v. Uber Technologies, Inc.*, No. 15-16178, __ F.3d ___, 2016 WL 4651409 (9th Cir. Sept. 7, 2016), reversing the district court's denial of the motion to compel arbitration. Because our plaintiffs had relied heavily on the district court decision, an order adjusted the briefing schedule to allow them to supplement their opposition to address *Mohamed v. Uber* before Spotify filed its reply.

*United States District Court — For the Northern District of California*

arbitrability is clear and unmistakable it may be found unenforceable if the delegation itself is unconscionable. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71–74 (2010).

Spotify contends that the parties clearly and unmistakably agreed to delegate the issue of arbitrability to an arbitrator because the Terms and Conditions agreement provided that any arbitration would be governed by the AAA's procedures.[3]

Rule 7(a) of the Commercial Arbitration Rules provided:

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

Our court of appeals has held that "incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability" based on the inclusion of the paragraph just recited. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). (*Brennan* did not specify which AAA rules it concerned, though nearly all of the AAA's rules include the above paragraph.) Nevertheless, our court of appeals has *not* determined whether incorporation of the AAA rules can be clear and unmistakable evidence of delegation of arbitrability where one party is an unsophisticated consumer. *Brennan* expressly left that question unresolved. *Id.* at 1131.

Every district court decision in our circuit to address the question since *Brennan* has held that incorporation of the AAA rules was insufficient to establish delegation in consumer contracts involving at least one unsophisticated party. *See Money Mailer, LLC v. Brewer*, No. 15-1215, 2016 WL 1393492, at *2 (W.D. Wash. Apr. 8, 2016) (Judge Rober S. Lasnik); *Galilea, LLC v. AGCS Marine Ins. Co.*, No. 15-0084, 2016 WL 1328920, at *3 (D. Mont. Apr. 5, 2016) (Judge Susan P. Waters); *Vargas v. Delivery Outsourcing, LLC*, No. 15-03408, 2016 WL 946112, at *8 (N.D. Cal. Mar. 14, 2016) (Judge Jon S. Tigar); *Aviles v. Quik Pick Express, LLC*, No. 15-5214, 2015 WL 9810998, at *6 (C.D. Cal. Dec. 3, 2015) (Judge Michael W. Fitzgerald); *Meadows v. Dickey's Barbecue Restaurants Inc.*, 144 F. Supp. 3d 1069, 1078 (N.D. Cal. 2015) (Judge Jon S. Tigar).

---

[3] The fact that Spotify's Terms and Conditions incorporated the AAA procedures under a decommissioned title further refutes Spotify's assertion that its delegation of arbitrability was clear and unmistakable.

Before *Brennan*, decisions from district courts in our circuit split on the issue. *Compare Tompkins v. 23andMe, Inc.*, No. 13-05682, 2014 WL 2903752, at *11 (N.D. Cal. June 25, 2014) (Judge Lucy H. Koh), *affirmed on other grounds* No. 14-16405, 2016 WL 4437615 (9th Cir. Aug. 23, 2016), *with Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 973 (N.D. Cal. 2015) (Judge Thelton Henderson).

Additionally, several decisions enforced delegation clauses even though the parties resisting arbitration were not corporations with extensive legal teams, but each such decision found a minimal level of sophistication, particularly in the context of commercial, rather than consumer, agreements. *See Mike Rose's Auto Body, Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 16-01864, 2016 WL 5407898, at *8 (N.D. Cal. Sept. 28, 2016) (Judge Edward M. Chen); *Capelli Enterprises, Inc. v. Fantastic Sams Salons Corp.*, No. 16-03401, 2016 WL 4492588, at *5 (N.D. Cal. Aug. 26, 2016) (Judge Edward J. Davila); *Mikhak v. University of Phoenix*, No. 16-0901, 2016 WL 3401763, at *5 (N.D. Cal. June 21, 2016) (Judge Charles R. Breyer);; *Khraibut v. Chahal*, No. 15-04463, 2016 WL 1070662, at *5 (N.D. Cal. Mar. 18, 2016) (Judge Charles R. Breyer); *Pelayo v. Platinum Limousine Services, Inc.*, No. 15-00023, 2015 WL 9581801, at *1 (D. Haw. Dec. 30, 2015) (Judge Derrick K. Watson). Those decisions do not speak to our case, which involves two consumers — a music teacher and an architect — who have not been shown to have any business or legal acumen. (It is Spotify's burden to establish that the delegation clause is enforceable.)

In the absence of binding authority and with the benefit of a consistent trend of persuasive authority, this order finds that the parties, which included two ordinary consumers who could not be expected to appreciate the significance of incorporation of the AAA rules, did *not* clearly and unmistakably intend to delegate the issue of arbitration to an arbitrator.

**2.     ARBITRATION CLAUSE.**

Spotify contends that even if the delegation clause is unenforceable, Ingalls and Hong must nevertheless arbitrate their claims. Plaintiffs do not dispute that they clicked "Accept" when presented with Spotify's updated Terms and Conditions agreement. Nor do they dispute that their claims fall within the scope of the arbitration provision in Spotify's Terms and conditions. Instead, plaintiffs contend that the arbitration clause is unenforceable.

6

1    Under the FAA, an arbitration clause in an agreement is presumptively valid "unless it
2 may be said with positive assurance that the arbitration clause is not susceptible of an
3 interpretation that covers the asserted dispute." *AT&T v. CWA*, 475 U.S. at 650. Plaintiffs
4 contend the presumption in favor of arbitrability should not apply here, citing *Goldman Sachs &
5 Co. v. City of Reno*, 747 F.3d 733 (9th Cir. 2014). There, a city contracted with an underwriter
6 for the issuance of securities. The city's financing collapsed, and it initiated arbitration
7 proceedings before the Financial Industry Regulatory Authority to resolve claims against the
8 underwriter. The underwriter contended that the city had disclaimed any right to arbitrate under
9 FINRA by agreeing to a forum-selection provision in its agreement with the underwriter.

10   The underwriter contended that pursuant to its membership in FINRA it was obligated to
11 arbitrate at any customer's request, provided the parties did not contract around that obligation.
12 The underwriter, however, further contended the forum-selection clauses had contracted around
13 any obligation to arbitrate pursuant to FINRA's default rules. Our court of appeals held that
14 because the underwriter disputed the *existence* of the obligation to arbitrate, no presumption in
15 favor of arbitrability applied. Thus, state-law principles of contract interpretation applied, and
16 the question turned to whether the written agreement was clear and unambiguous on its face.
17 *Id.* at 743. That is not our case.

18   Our plaintiffs do not dispute that they accepted Spotify's Terms and Conditions or that
19 the Terms and Conditions included an arbitration clause that, if enforceable, applies to the
20 instant claims. Instead, they argue that the arbitration clause within that agreement is not
21 enforceable. Under the FAA, that clause may only be set aside based upon "generally
22 applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC
23 v. Concepcion*, 563 U.S. 333, 339 (2011). Thus, the enforceability of the arbitration clause rests
24 on the defenses available under California contract law. *Ibid*.

25   Here, the only contract defense that plaintiffs raise is unconscionability. Under
26 California law, an arbitration clause must be both procedurally and substantively
27 unconscionable in order to be found invalid. Agreements are evaluated on a sliding scale,
28 which disregards the need to show procedural unconscionability in proportion to the harshness
of the substantive terms. *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.

7

4th 83, 114 (2000). "In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Ibid.*

### A.     Procedural Unconscionability.

Procedural unconscionability refers to oppression or unfair surprise. *Armendariz*, 24 Cal. 4th at 114. Oppression is shown by "an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001). Unfair surprise relates to "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Armendariz*, 24 Cal. 4th at 114.

Here, plaintiffs contend that Spotify's Terms and Conditions were offered subject to a high degree of procedural unconscionability.

Plaintiffs first argue that the Terms and Conditions were presented in an oppressive manner because they were offered on a take-it-or-leave-it basis. But the mere fact that a contract is one of adhesion establishes only a low degree of procedural unconscionability. *Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1470 (2013). Our plaintiffs could have ceased using Spotify's service and they could have sought a pro-rated refund for any fees paid for the monthly subscription.

Plaintiffs also contend that Spotify failed to provide our plaintiffs with the text of the AAA procedures that would apply in any arbitration to our plaintiffs because they used the wrong title for those rules. But the failure to provide the AAA procedures also establishes only minimal procedural unconscionability. *Id.* at 1472. True, Spotify did not merely fail to provide the procedures but used a title for an older, abrogated version of the AAA procedures. Although the Consumer Arbitration Rules do differ from the cited Supplementary Procedures for Consumer Related Disputes of the American Arbitration Association, our plaintiffs do not contend that any material difference was unfairly concealed. Indeed, plaintiffs do not contend that any provisions of either version of the AAA procedures were unfair, so any surprise due to Spotify's error did not hide any substantively unconscionable provisions.

While these circumstances presented some degree of procedural unfairness, they fell far short of the "high degree of procedural unconscionability" suggested by our plaintiffs. Nevertheless, this order turns to plaintiffs' substantive unconscionability arguments, which this order finds strong enough to render the arbitration agreement unenforceable in light of the degree of procedural unfairness already shown.

### B. Substantive Unconscionability.

Substantive unconscionability concerns how one-sided a bargain is. *Armendariz*, 24 Cal. 4th at 114. An arbitration clause that lacks mutuality without a reasonable justification is sufficient to find unconscionability. *Id.* at 117–18. Under California law, the presence of multiple unconscionable provisions in an arbitration clause, even if all are severable, "indicate[s] a systematic effort to impose arbitration" on the consumers, "not simply as an alternative to litigation, but as an inferior forum" that works to the advantage of the party pressing arbitration. *See Armendariz*, 24 Cal. 4th at 124–25. Saving an arbitration clause by severing each individual problematic provision would allow a company to draft a one-sided agreement and then whittle down to the least-offensive agreement when faced with litigation, rather than drafting fair agreements in the first instance. Thus, a court may refuse to enforce an arbitration agreement that is "so permeated with unconscionable clauses that we cannot remove the unconscionable taint from the agreement." *Ferguson v. Countrywide Credit Industries, Inc.*, 298 F.3d 778, 788 (9th Cir. 2002).

Three features of the arbitration agreement at issue here give rise to substantive unconscionability: (1) Spotify retained the right to unilaterally change the terms of the arbitration agreement, (2) any arbitration was required to proceed confidentially, and (3) a one-year limitations period applied to all claims brought in arbitration. Each is addressed in turn, though it is the pervasiveness of unconscionability, not any one source of it, that is fatal to Spotify's motion.[4]

---

[4] The applicable AAA Rules provided that after a consumer paid a filing fee of $200, the arbitrator's compensation would be paid by the business (Spotify) and could not be reallocated except as required by law or if the claim was filed for purposes of harassment or if it was patently frivolous.

### *(1) Unilateral Modification.*

Plaintiffs contend that the arbitration provision was substantively unconscionable because it contemplated that Spotify could make changes to the arbitration provision, which would take effect unless the user timely rejected the amendment (which resulted in termination of that user's service. Plaintiffs cite *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003), for the proposition that such unilateral authority are substantively unconscionable.

In *Tompkins v. 23andMe, Inc.*, No. 14-16405, __ F.3d __, 2016 WL 4437615 (9th Cir. Aug. 23, 2016), our court of appeals considered an arbitration agreement that included a unilateral modification provision and held that "the implied covenant of good faith and fair dealing prevents a party from exercising its rights under a unilateral modification clause in a way that would make it unconscionable." *Id.* at *12. Nevertheless, *Tompkins* acknowledged that *Ingle* held that a "unilateral modification provision itself may be unconscionable." *Ibid.* *Tompkins* then distinguished *Ingle*, holding that a unilateral modification provision set forth *separate* from the arbitration provision could not *invalidate* the arbitration agreement or the contract as a whole, because the parties are free to argue that the unilateral modification clause is unenforceable in arbitration.

Here, Section 2 of the Terms and Conditions reserved to Spotify the right to unilaterally change the agreement as a whole. Spotify offered an online contact form through which users could reject unilateral amendments (and terminate their service), but Paragraph 24.3.6 of the Terms and Conditions established a more burdensome procedure for rejecting modifications to the arbitration provision (involving written notice sent by mail), indicating Spotify's intent to specially protect its right to unilaterally modify the arbitration provision. This distinction brings our case closer to *Ingle* than to *Tompkins*.

### *(2) Confidentiality.*

Paragraph 24.3.5 of the Terms and Conditions included a confidentiality clause prohibiting both sides from making "any public pronouncement or public comment or originat[ing] any publicity concerning the arbitration." Our court of appeals has recognized that even facially-neutral confidentiality provisions can favor a company over an individual, because the various attorneys representing individual plaintiffs cannot learn from the full body of

arbitration, while the limited set of attorneys representing the company can. *Ting v. AT&T*, 319 F.3d 1126, 1151–52 (9th Cir. 2003). Spotify argues that our court of appeals has cautioned against invalidating arbitration clauses based on confidentiality provisions because "plaintiffs are free to argue during arbitration that the confidentiality clause is not enforceable." *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013). Spotify further argues that *Ting* did not invalidate an arbitration clause based on the confidentiality agreement, but rather invalidated a provision detailing the legal remedies available to the plaintiffs. True, but Spotify ignores the fact that the issue in *Ting* simply did not concern a motion to compel arbitration. Our court of appeals found that the agreement that *was* at issue in *Ting* was "so permeated with unconscionability and illegality" due to its confidentiality, fee-splitting, and class-action-waiver provisions that the agreement could not be saved or reformed. *Ting*, 319 F.3d at 1149 n.13. Spotify's attempt to distinguish *Ting* fails.

### *(3)   One-Year Limitations Period.*

Plaintiffs argue that the arbitration provision is substantively unconscionable because it applies a one-year limitations period for claims asserted in arbitration (but not for claims brought in court. Our court of appeals and the California Court of Appeal have both recognized that arbitration provisions that reduce the limitations period for a consumer's assertion of a statutory right are unconscionable when the reduction applies only to claims in arbitration. *See Martinez v. Master Protec. Corp.*, 118 Cal. App. 4th 107, 117–18 (2012); *Graham Oil Co. v. ARCO Products Co.*, 43 F.3d 1244, 1248 (9th Cir. 1994), *as amended* (Mar. 13, 1995).

Spotify notes that in *Tompkins*, our court of appeals held that a reduction of a limitations period that applies to all disputes (not just those asserted in arbitration) does not render an arbitration provision unconscionable. *Tompkins*, 2016 WL 4437615, at *12. Like our case, *Tompkins* involved claims under the California Unfair Competition Law, which includes a four-year statute of limitations (the longest limitations period applicable in either case) and reduced the limitations period to one year. Cal Bus. & Prof. Code § 17208. In *Tompkins*, however, the limitations period reduction applied to all claims regardless of the venue and thus did not affect the enforceability of the arbitration clause in particular. Not so here. Because the reduced

limitations period here is part and parcel of the arbitration provision in Spotify's Terms and Conditions, *Tompkins* is inapposite.

\*              \*              \*

Spotify cites *Bleak v. Spotify USA Inc.,* Case No. 13-5653 (N.D. Cal. Apr. 25, 2014) (Dkt. No. 37), in which a judge compelled arbitration of similar claims against Spotify pursuant to an earlier version of the Terms and Conditions. The plaintiffs therein raised many of the same substantive unconscionability issues that are the subject of the instant motion, but the written decision comprised only a single sentence adopting the reasons stated on the record at oral argument. Moreover, a review of the transcript reveals that the specific unconscionability issues were never discussed, beyond the bare conclusion that the agreement was mutual because it applied to claims relating to payment both by consumers and by Spotify (Dkt. No 40 at 5–6). Nevertheless, because this order cannot discern or engage with the reasoning in *Bleak*, it finds the holding in that decision unpersuasive.

Although, as stated, many of the substantively unconscionable provisions that form part of the arbitration provision could be severed, unconscionability so permeates the arbitration clause that it cannot be cured by severance.

## CONCLUSION

For the reasons stated above, Spotify's motion to compel arbitration is **DENIED**. A case management order will follow.

This order notes that the Terms and Conditions agreement at issue herein also included a class-action waiver separate from the arbitration agreement, which this order does not address. *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. __, 133 S. Ct. 2304, 2310 (2013).

**IT IS SO ORDERED.**

Dated:  November 14, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE