Joseph E. Addiego III (CA State Bar No. 169522)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California  94111
Telephone:     (415) 276-6500
Facsimile:      (415) 276-6599
Email:           joeaddiego@dwt.com

Stephen M. Rummage (Admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA  98101-3045
Telephone:     (206) 662-3150
Fax:             (206) 757-7700
E-mail:          steverummage@dwt.com

Scott R. Commerson (CA State Bar No. 227460)
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa St., Suite 2400
Los Angeles, California 900017
Telephone:     (213) 633-6890
Fax:             (213) 633-4290
Email:           scottcommerson@dwt.com

Attorneys for Defendant
SPOTIFY USA, INC.

DAVIS WRIGHT TREMAINE LLP

## IN THE UNITED STATES DISTRICT COURT

## THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY INGALLS and TONY HONG, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>SPOTIFY USA, INC., a Delaware corporation; and DOES 1 – 10, inclusive,<br><br>         Defendants. | Case No. 3:16-cv-3533-WHA<br><br>**CLASS ACTION COMPLAINT**<br><br>**ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>[Assigned to the Hon. William H. Alsup] |

1  Defendant Spotify USA, Inc. ("Spotify"), in response to the unverified First Amended
2  Class Action Complaint ("FAC") of plaintiffs Gregory Ingalls and Tony Hong ("Plaintiffs"),
3  admits, denies, and avers as follows:
4  With respect to the unnumbered preamble to the FAC, Spotify only admits Plaintiffs
5  purport to make certain allegations against Spotify on behalf of themselves individually and also
6  make these allegations on behalf of others they contend are "similarly situated."  Spotify is
7  without knowledge or information sufficient to form a belief as to the truth of the remaining
8  allegations in the preamble to the FAC, and on that basis denies them.

9  ## I.  NATURE OF THE ACTION

10  1.  Spotify is an international commercial music streaming service with more than 100
11  million active users worldwide and over 30 million paying subscribers worldwide.
12  **ANSWER**:  Spotify admits it offers streaming services to users in multiple countries, it has
13  more than 100 million active users worldwide, and more than 30 million of those users pay a
14  monthly fee for their Spotify subscription.   Except as expressly admitted, Spotify denies the
15  allegations in Paragraph 1 of the FAC.
16  2.  During the Class Period,[1] Defendant made automatic renewal or continuous service
17  offers (the "ARCSO Terms") to consumers in California and throughout the United States.
18  **ANSWER**:  Spotify admits it has offered certain music streaming services, and Spotify's
19  customers who have purchased those services have agreed to pay Spotify a recurring monthly fee
20  until they cancel. Except as expressly admitted, Spotify denies the allegations in Paragraph 2 of
21  the FAC.
22  3.  Under the ARCSO Terms, Spotify offered consumers ("Consumers" or "Users") an
23  advertisement-free streaming experience through the purchase of a Premium Subscription Service
24  ("PSS"). Those purchasing PSS through spotify.com do so either by choosing (1) a 30-day free
25  trial followed by a paid subscription ("FPSS"), or (2) a paid subscription ("PPSS"). Under PPSS,
26  Consumers may pay an initial, reduced fee of $0.99 for three months, after which they are charged
27  $9.99 per month or otherwise are charged $9.99 per month by Spotify from inception of the PPSS.
28

[1] The Class period begins June 23, 2012.

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:16-cv-3533 WHA
DWT 30804440v3 0098755-000014

DAVIS WRIGHT TREMAINE LLP

**ANSWER:**  Spotify admits it offers a Premium Subscription music streaming service ("Premium Subscription"), and the Premium Subscription includes an advertisement-free streaming experience among other benefits.  Spotify further admits the methods for purchasing a Premium Subscription include the following: a 30-day free trial, followed by a recurring charge of $9.99 for each additional month of service until the customer cancels the Premium Subscription; an initial, reduced fee of $0.99 for the first three months of service, followed by a recurring charge of $9.99 for each additional month of service until the customer cancels the Premium Subscription; or a charge of $9.99 for the first month of service, followed by a recurring charge of $9.99 for each additional month of service until the customer cancels the Premium Subscription. Except as expressly admitted, Spotify denies the allegations in Paragraph 3 of the FAC.

4.      Spotify automatically charges the credit / debit card of Consumers utilizing FPSS at the end of the free trial period, while Consumers purchasing PPSS have their credit / debit cards billed at the inception of the subscription and then automatically re-billed at the end of their membership term and then monthly.

**ANSWER**: Spotify admits it charges customers who purchase the 30-day free trial of the Premium Subscription and do not cancel within the trial period a recurring monthly charge, commencing on the expiration of the free trial period and continuing at monthly intervals until the Premium Subscription is cancelled; and the recurring monthly charge is billed to the payment method authorized by the customer when the customer registered for the Premium Subscription. Spotify further admits some customers purchase a Premium Subscription without a free trial or reduced initial fee, and Spotify charges those customers for the first month of service, followed by a recurring monthly charge until the customer cancels the Premium Subscription.  Except as expressly admitted, Spotify denies the allegations in Paragraph 4 of the FAC.

5.      In offering these ARCSO Terms, Defendant failed to comply with California's Automatic Purchase Renewal Law, Cal. Bus. & Prof. Code § 17600 *et seq.* ("APRL"), with respect to Plaintiffs and the Class prior to the completion of the initial order for PSS by (without limitation):

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:16-cv-3533 WHA
DWT 30804440v3 0098755-000014

DAVIS WRIGHT TREMAINE LLP

a.  failing to present the terms thereof in a clear and conspicuous manner before the purchase and/or in visual proximity to the request for consent to the offer (violating Cal. Bus. & Prof. Code § 17602(a)(1)); and/or

b.  charging Consumers' credit / debit cards, or third-party account (hereinafter "Payment Method") without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms (violating Cal. Bus. & Prof. Code § 17602(a)(2)); and/or

c.  failing to provide an acknowledgment that included its ARCSO Terms in a manner capable of being retained by the Consumer.

**ANSWER**:  Paragraph 5 of the FAC contains arguments and/or legal conclusions to which no response is required.  To the extent a response is required, however, Spotify denies the allegations.

6.  Defendant's violations of California law are all the more troublesome given that Spotify's Terms and Conditions of Use as unilaterally revised by Defendant on or about September 9, 2015 ("2015 Terms"), attached hereto as Exhibit A, contain a California choice-of-law provision, as do prior versions of its Terms and Conditions of Use as attached in Exhibit B, including the Terms and Conditions of Use as unilaterally revised by Defendant on or about December 18, 2012 ("2012 Terms") and March 5, 2014 ("2014 Terms").

**ANSWER**:  Paragraph 6 of the FAC contains arguments and/or legal conclusions to which no response is required.  To the extent a response is required, Spotify admits Spotify's Terms and Conditions of Use dated September 9, 2015 are attached as Exhibit A to the FAC, and its Terms of Conditions of Use dated March 5, 2014, and December 18, 2012, are attached in Exhibit B to the FAC.  Those documents speak for themselves.  Except as expressly admitted, Spotify denies the allegations in Paragraph 6 of the FAC.

7.  Plaintiffs bring this class action on behalf of themselves and those similarly situated (the "Class Members"), seeking declaratory relief, injunctive relief, equitable relief (including but not limited to restitution), damages, and reasonable attorneys' fees and costs under

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:16-cv-3533 WHA
DWT 30804440v3 0098755-000014

the APRL and California's Unfair Competition Law (Bus. & Prof. Code § 17200 *et seq.*) ("UCL") to address Defendant's unlawful, unfair, and/or fraudulent practices with respect to PSS.

**ANSWER**: Spotify only admits Plaintiffs purport to make certain allegations against Spotify on behalf of themselves individually and on behalf of others they contend are "similarly situated," and they purport to seek declaratory relief, injunctive relief, equitable relief (including but not limited to restitution), damages, and reasonable attorneys' fees and costs under California's Automatic Purchase Renewal Law ("APRL") and California's Unfair Competition Law (Bus. & Prof. Code § 17200 *et seq.*) ("UCL").   Except as expressly admitted, Spotify denies the remaining allegations in Paragraph 7 of the FAC.

## II.   PARTIES

8.   PLAINTIFF INGALLS is, and at all times relevant hereto was, an individual residing in Los Angeles, California.  PLAINTIFF INGALLS purchased FPSS from Defendant in California on or about June 8, 2013. PLAINTIFF INGALLS was auto-renewed on July 8, 2013 in the amount of $9.99 and subsequently on a monthly basis. PLAINTIFF INGALLS has standing to pursue this action pursuant to Bus. & Prof. Code § 17200, *et seq*. PLAINTIFF INGALLS, like the Class Members, is a consumer for purposes of Bus. & Prof. Code §§ 17600-17606. PLAINTIFF INGALLS suffered injury-in-fact because he lost money or property which constituted payment for FPSS.

**ANSWER**:  Spotify admits its records reflect that on or about June 8, 2013, an individual named Gregory Ingalls purchased a 30-day free trial period of Spotify's Premium Subscription followed by a paid subscription; Mr. Ingalls' account was charged on July 8, 2013 in the amount of $9.99; and Spotify charged Mr. Ingalls' account $9.99 on a monthly basis until he cancelled his account on or about September 17, 2013.  Spotify lacks sufficient information to admit or deny whether Mr. Ingalls is a resident of Los Angeles, California, and on that basis denies it.  The remaining allegations of Paragraph 8 of the FAC contain argument and/or legal conclusions to which no response is required.  To the extent a response is required, however, Spotify lacks

DAVIS WRIGHT TREMAINE LLP

sufficient information to admit or deny the remaining allegations in Paragraph 8 of the FAC, and on that basis denies them.

9.　　PLAINTIFF HONG is, and at all times relevant hereto was, an individual residing in Lomita, California. PLAINTIFF HONG purchased PPSS from Defendant in California on or about December 29, 2014 in the amount of $0.99 for a three-month period. PLAINTIFF HONG was auto-renewed on March 29, 2015 in the amount of $9.99 and subsequently on a monthly basis. PLAINTIFF HONG has standing to pursue this action pursuant to Bus. & Prof. Code § 17200, *et seq*. PLAINTIFF HONG, like the Class Members, is a consumer for purposes of Bus. & Prof. Code §§ 17600-17606. PLAINTIFF HONG suffered injury-in-fact because he lost money or property which constituted payment for PPSS.

**ANSWER**:  Spotify lacks sufficient information to admit or deny whether Mr. Hong is a resident of Lomita, California, and on that basis denies it.  Spotify admits that on or about December 29, 2014, Tony Hong purchased a 3-months-for-$0.99 Premium Subscription, and that Mr. Hong's account was charged $9.99 on March 29, 2015.  The allegations in the last three sentences of Paragraph 9 of the FAC contain argument and/or legal conclusions to which no response is required.  To the extent a response is required, however, Spotify lacks sufficient information to admit or deny those allegations, and on that basis denies them.   Except as expressly admitted, Spotify denies the allegations of Paragraph 9 of the FAC.

10.　　Defendant SPOTIFY USA, INC. is a corporation organized under the laws of Delaware, with its principal place of business located at 45 West 18th Street, Floor 7, New York, NY 10011. Spotify operates in California and has done business throughout California at all times during the Class Period.

**ANSWER**:  Spotify admits the allegations in the first sentence of paragraph 10 of the FAC, and further admits that Spotify has had an office in California since 2011.  The remaining allegations contain legal arguments and/or conclusions, to which no response is required.  To the extent a response is required, however, Spotify denies the allegations.

11.　　The true names and capacities, whether individuals, corporate, associate, their alter egos, or otherwise sued herein as DOES 1 through 10 inclusive are presently unknown to

5

Plaintiffs who therefore sue these Defendants by fictitious names. Plaintiffs will seek leave of this Court to amend the Complaint to show their true name and capacities, when same have been ascertained. Plaintiffs are informed and believes and based thereon allege that DOES 1 through 10 were authorized to do and did business in California. Plaintiffs are further informed and believe and based thereon allege that DOES 1 through 10 were and/or are, in some manner or way, responsible for and liable to Plaintiffs for the events, happenings, and damages hereinafter set forth below.

**ANSWER**:  Paragraph 11 of the FAC contains argument and/or legal conclusions to which no response is required.  To the extent a response is required, however, Spotify denies each and every allegation in Paragraph 11.

12.     Plaintiffs are informed and believe and based thereon allege that at all times relevant herein each of the Defendants was the agent, servant, employee, subsidiary, affiliate, partner, assignee, successor-in-interest, alter ego, or other representative of each of the remaining Defendants and was acting in such capacity in doing the things herein complained of and alleged.

**ANSWER**:  Paragraph 12 of the FAC contains argument and/or legal conclusions to which no response is required.  To the extent a response is required, however, Spotify denies each and every allegation in Paragraph 12.

### III.     JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed the sum value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

**ANSWER**:  Paragraph 13 of the FAC contains argument and/or legal conclusions to which no response is required.  To the extent a response is required, however, Spotify admits that jurisdiction exists under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

14.     This Court has jurisdiction over Defendant because, among other things, Defendant has sufficient minimum contacts in California, or otherwise intentionally avails itself of the

6

DAVIS WRIGHT TREMAINE LLP

markets within California. At all relevant times, Defendant regularly and systematically transacted business within the State of California, and the wrongful conduct described herein reached California Consumers. Defendant derives substantial revenue from California residents. Also during the Class Period, Defendant has made, and continues to make, ARCSOs to California Consumers.

**ANSWER**:  Paragraph 14 of the FAC contains argument and/or legal conclusions to which no response is required.  To the extent a response is required, however, Spotify admits it is subject to personal jurisdiction in the state of California and denies the remainder of the allegations in Paragraph 14 of the FAC.

15.     The Court further has jurisdiction over the parties and Class Members pursuant to the Terms and Conditions of Use drafted by Defendant, pursuant to which Spotify has agreed to the jurisdiction of this Court.

**ANSWER**:  Paragraph 15 of the FAC contains argument and/or legal conclusions to which no response is required.  To the extent a response is required, however, Spotify admits the venue provision in the Terms and Conditions of Use speak for themselves, but denies the Court has jurisdiction because Plaintiffs' claims are subject to mandatory individual arbitration.  Except as expressly admitted, Spotify denies the allegations in Paragraph 15 of the FAC.

16.     Venue is proper in this District under 28 U.S.C. § 1391(b)(3) because the Court has personal jurisdiction over Defendant, a substantial portion of the alleged wrongdoing occurred in this District and California, and Defendant has sufficient contacts with this District and California.

**ANSWER**:  Paragraph 16 of the FAC contains argument and/or legal conclusions to which no response is required.  To the extent a response is required, however, Spotify admits it is subject to personal jurisdiction in California, but denies jurisdiction and venue in this Court are proper because the action is subject to mandatory individual arbitration.  Except as expressly admitted, Spotify denies the allegations in Paragraph 16 of the FAC.

**IV.     CALIFORNIA'S AUTOMATIC PURCHASE RENEWAL LAW**

17.     Sections 17600-17606 of the <u>Cal. Bus. & Prof. Code</u> came into effect in December 2010, with the intent of ending "the practice of ongoing charging of consumer credit or debit cards

7

DAVIS WRIGHT TREMAINE LLP

or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." <u>Cal. Bus. & Prof. Code</u> § 17600.

**ANSWER:** Paragraph 17 of the FAC contains argument and/or legal conclusions to which no response is required. To the extent a response is required, however, Spotify responds that the statute speaks for itself.

18. <u>Cal. Bus. & Prof. Code</u> § 17601(d) defines a "consumer" as "any individual who seeks or acquires, by purchase or lease, any goods, services, money, or credit for personal, family, or household purposes."

**ANSWER:** Paragraph 18 of the FAC contains argument and/or legal conclusions to which no response is required. To the extent a response is required, however, Spotify responds that the statute speaks for itself.

19. <u>Cal. Bus. & Prof. Code</u> § 17601(a) defines the term "Automatic Renewal" as a "plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term."

**ANSWER:** Paragraph 19 of the FAC contains argument and/or legal conclusions to which no response is required. To the extent a response is required, however, Spotify responds that the statute speaks for itself.

20. <u>Cal. Bus. & Prof. Code</u> § 17601(b) defines the term "Automatic renewal offer terms" as "the following clear and conspicuous disclosures: (1) That the subscription or purchasing agreement will continue until the consumer cancels. (2) The description of the cancelation policy that applies to the offer. (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known. (4) The length of the automatic renewal term or that the service is continuous, unless the length of the tern is chosen by the consumer. (5) The minimum purchase obligation, if any."

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:16-cv-3533 WHA
DWT 30804440v3 0098755-000014

**ANSWER:**  Paragraph 20 of the FAC contains argument and/or legal conclusions to which no response is required.  To the extent a response is required, however, Spotify responds that the statute speaks for itself.

21.     <u>Cal. Bus. & Prof. Code</u> § 17601(e) defined "Continuous service" as "a plan or arrangement in which a subscription or purchasing agreement continues until the consumer cancels the service."

**ANSWER:**  Paragraph 21 of the FAC contains argument and/or legal conclusions to which no response is required.  To the extent a response is required, however, Spotify responds that the statute speaks for itself.

22.     Pursuant to <u>Cal. Bus. & Prof. Code</u> § 17601(c), "clear and conspicuous" or "clearly and conspicuously" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language."

**ANSWER:**  Paragraph 22 of the FAC contains argument and/or legal conclusions to which no response is required.  To the extent a response is required, however, Spotify responds that the statute speaks for itself.

23.     Under the law, it is unlawful for any business making an automatic renewal or continuous service offer to a consumer to do any of the following:

        a.     Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity . . . to the request for consent to the offer (<u>Cal. Bus. & Prof. Code</u> § 17602(a)(1));

        b.     Charge the consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms (<u>Cal. Bus. & Prof. Code</u> § 17602(a)(2)); and/or

9

DAVIS WRIGHT TREMAINE LLP

      c.      Fail to provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the offer includes a free trial, the business shall also disclose in the acknowledgment how to cancel and allow the consumer to cancel before the consumer pays for the goods or services (Cal. Bus. & Prof. Code § 17602(a)(3)).

**ANSWER:**  Paragraph 23 of the FAC contains argument and/or legal conclusions to which no response is required.  To the extent a response is required, however, Spotify responds that the statute speaks for itself.

24.      Further, "[a] business making automatic renewal or continuous service offers shall provide a toll-free telephone number, electronic mail address, a postal address only when the seller directly bills the consumer, or another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the acknowledgment specified in [§ 17602(a)(3)]." Cal. Bus. & Prof. Code § 17602(b).

**ANSWER:**  Paragraph 24 of the FAC contains argument and/or legal conclusions to which no response is required.  To the extent a response is required, however, Spotify responds that the statute speaks for itself.

25.      Further, "[i]n the case of a material change in the terms of the automatic renewal or continuous service offer that has been accepted by a consumer in this state, the business shall provide the consumer with a clear and conspicuous notice of the material change and provide information regarding how to cancel in a manner that is capable of being retained by the consumer." Cal. Bus. & Prof. Code § 17602(c).

**ANSWER:**  Paragraph 25 of the FAC contains argument and/or legal conclusions to which no response is required.  To the extent a response is required, however, Spotify responds that the statute speaks for itself.

26.      The disclosures in §§ 17602(a)(1)-(2) and § 17602(b) must be made "prior to the completion of the initial order for the automatic renewal or continuous service," while the

disclosure in § 17602(a)(3) "may be fulfilled after completion of the initial order." <u>Cal. Bus. & Prof. Code</u> § 17602(d). The requirement in § 17602(c) "shall be fulfilled prior to the implementation of the material change."

**ANSWER:**  Paragraph 26 of the FAC contains argument and/or legal conclusions to which no response is required.  To the extent a response is required, however, Spotify responds that the statute speaks for itself.

**V.      FACTS**

**A.      Defendant's Failure to Properly Disclose the ARCSO Terms**

27.      Upon information and belief, and as Spotify has previously alleged generally, the images attached hereto as Exhibit C (a composite of certain exhibits from a prior action against Spotify) purport to reflect the webpages (or were substantially similar in all material aspects to previous and subsequent webpages) provided to Consumers, including Plaintiffs and the Class Members, signing up for PSS.

**ANSWER:** Spotify admits that the images attached to Exhibit C were submitted by Spotify in connection with a prior action, and reflect webpages provided to customers who registered for Spotify Premium at some time.  Except as expressly admitted, Spotify denies the allegations in Paragraph 27 of the FAC, and specifically denies that those webpages would have been seen by all putative Class Members in that form.

28.      The webpages on which Consumers subscribed to PSS did not clearly and conspicuously reflect Spotify's ARCSO Terms before any Consumers' subscription or purchasing agreement was fulfilled and in visual proximity to the request for consent to Spotify's offer.

**ANSWER:** Spotify denies the allegations in Paragraph 28 of the FAC.

29.      None of the ARCSO Terms were presented "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language."

**ANSWER:**  Spotify denies the allegations in Paragraph 29 of the FAC.

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:16-cv-3533 WHA
DWT 30804440v3 0098755-000014

DAVIS WRIGHT TREMAINE LLP

30.     Spotify instead sought to minimize the visual presence of the ARCSO Terms through the use of small font, shaded coloration on pages already containing multiple more prominent colors reflecting total's due of $0.00 or $9.99 (or an introductory price), and/or the absence of symbols or other marks to call attention to the ARCSO Terms.

**ANSWER:**  Spotify denies the allegations in Paragraph 30 of the FAC.

31.     Despite Spotify's purported reservation of the right to change the price of its PSS subscriptions in, for example Section 15 of the 2015 Terms and Sections 12 and 13 of the 2012 and 2014 Terms, respectively, no mention of this reservation of rights was mentioned, much less clearly and conspicuously presented, in the webpages presented to Consumers.

**ANSWER:** Spotify admits that the 2012 Terms and Conditions of Use, 2014 Terms and Conditions of Use, and 2015 Terms and Conditions of Use, all exist and speak for themselves. Spotify further states that its webpages presented to customers speak for themselves.  The remaining allegations of Paragraph 31 contain arguments or legal conclusions, to which no response is required.  To the extent a response is required, however, Spotify denies the remaining allegations.   Except as expressly admitted, Spotify denies the allegations of Paragraph 31 of the FAC.

32.     As part of the enrollment process for PSS, Spotify did not seek Consumers' consent to the ARCSO Terms and instead requested Consumers to "Confirm Payment" or otherwise proceed without seeking explicit consent to the ARCSO Terms. On information and belief, Spotify instead had Consumers "Sign Up" to its webpage before allowing a Consumer to further explore free or premium Spotify. Spotify made no mention of any ARCSO Terms on the Sign Up page and, on information and belief, did not provide a hyperlink to its Terms and Conditions of Use near the "Sign Up" tab until late 2013.

**ANSWER:** Spotify responds that the allegations of Paragraph 32 contain arguments and/or legal conclusions, to which no response is required.  To the extent a response is required, however, Spotify denies the allegations in Paragraph 32 of the FAC.

33.     As the owner and operator of its webpage, Spotify could have disclosed the ARCSOs in a manner that clearly called attention to the language of the ARCSOs but chose not to

do so. Following Consumers' enrollment in a PSS, Spotify failed to provide an acknowledgment that included its ARCSO Terms in a manner capable of being retained by the Consumer and, in the case of FPSS Consumers, further failed to disclose in the acknowledgment how to cancel and allow the Consumer to cancel before the Consumer payment for his or her PSS.

**ANSWER:** Spotify denies the allegations in Paragraph 33 of the FAC.

34.     Spotify also charged the consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms

**ANSWER:**  Spotify responds that the allegations of Paragraph 34 contain arguments and/or legal conclusions, to which no response is required.  To the extent a response is required, however, Spotify denies the allegations in Paragraph 34 of the FAC.

**B.     Factual Allegations as to PLAINTIFF INGALLS**

35.     On or about June 8, 2013, PLAINTIFF INGALLS visited the spotify.com website.

**ANSWER:**  Spotify's records reflect Mr. Ingalls subscribed to Spotify's Premium Subscription service through a 30-day free trial on or about June 8, 2013.  Spotify lacks sufficient information to admit or deny the remaining allegations of Paragraph 35 of the FAC, and on that basis denies them.

36.     At that time, PLAINTIFF INGALLS joined FPSS.

**ANSWER:**  Spotify's records reflect Mr. Ingalls subscribed to Spotify's Premium Subscription service through a 30-day free trial on or about June 8, 2013.  Spotify lacks sufficient information to admit or deny the remaining allegations of Paragraph 35 of the FAC, and on that basis denies them.

37.     Prior to the initial completion of PLAINTIFF INGALLS' order for FPSS, Spotify failed to clearly and conspicuously disclose the ARCSO Terms to him in visual proximity to the request for consent to the ARCSO Terms.

**ANSWER:**  Spotify denies the allegations in Paragraph 37 of the FAC.

DAVIS WRIGHT TREMAINE LLP

1      38.    On or about June 8, 2013, Spotify sent PLAINTIFF INGALLS and

2  acknowledgement, a copy of which is attached as Exhibit D, which failed to include the ARCSO

3  Terms in a manner capable of being retained by the Consumer and further failed to disclose how

4  to cancel and his right to cancel before the due date of his first payment for PSS.

5      **ANSWER:**  Spotify denies the allegations of Paragraph 38, except admits that Exhibit D is

6  a copy of the receipt that was e-mailed to Mr. Ingalls on or about June 8, 2013, and that the

7  document speaks for itself.

8      39.    On July 8, 2013 and thereafter, Defendant subsequently charged the amount of

9  $9.99/month to PLAINTIFF INGALLS' consumer credit or debit card with a third party for an

10  automatic renewal or continuous service without first obtaining PLAINTIFF INGALLS'

11  affirmative consent to the agreements containing the automatic renewal offer terms or continuous

12  service offer terms.

13      **ANSWER:**  Spotify denies the allegations of Paragraph 39, except it admits that it charged

14  Mr. Ingalls' account for $9.99 on July 8, 2013, August 8, 2013 and September 8, 2013.

15  **C.**    **Factual Allegations as to PLAINTIFF HONG**

16      40.    On or about December 29, 2014, PLAINTIFF HONG visited the spotify.com

17  website.

18      **ANSWER:** Spotify admits its records reflect that Mr. Hong signed up for a Premium

19  Subscription on or about December 29, 2014.  Except as expressly admitted, Spotify lacks

20  sufficient information to admit or deny the allegations in Paragraph 40, and on that basis denies

21  them.

22      41.    At that time, PLAINTIFF HONG joined PPSS, for an initial fee of $0.99 for three

23  months of service.

24      **ANSWER:** Spotify admits its records reflect that Mr. Hong signed up for a Premium

25  Subscription on or about December 29, 2014, and on that date his account was charged an initial

26  fee of $0.99 for three months of service.  Except as expressly admitted, Spotify denies the

27  allegations of Paragraph 41.

28

DAVIS WRIGHT TREMAINE LLP

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:16-cv-3533 WHA
DWT 30804440v3 0098755-000014

42.   Prior to the initial completion of PLAINTIFF HONG's order for PPSS, Spotify failed to clearly and conspicuously disclose the ARCSO Terms to him in visual proximity to the request for consent to the ARCSO Terms.

**ANSWER:** Spotify denies the allegations of Paragraph 42 of the FAC.

43.   On or about December 29, 2014, Spotify sent PLAINTIFF HONG an acknowledgement, a copy of which is attached as Exhibit E, which failed to include the ARCSO Terms in a manner capable of being retained by the Consumer and further failed to disclose how to cancel and his right to cancel before the due date of his first payment for PSS.

**ANSWER:**  Spotify denies the allegations of Paragraph 43 of the FAC, except admits Exhibit E is a copy of the receipt that was e-mailed to Mr. Hong on or about December 29, 2014, and that the document speaks for itself.

44.   On March 15, 2015 and thereafter, Defendant subsequently charged the amount of $9.99/month to PLAINTIFF HONG'S consumer credit or debit card with a third party for an automatic renewal or continuous service without first obtaining PLAINTIFF HONG'S affirmative consent to the agreements containing the automatic renewal offer terms or continuous service offer terms.

**ANSWER:**  Spotify denies the allegations of Paragraph 44 of the FAC.

## VI.   CLASS ACTION ALLEGATIONS

45.   Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated as following:

**Class**
**All natural persons in the United States who, since June 23, 2012, purchased a Premium Subscription Service through spotify.com.**

**Subclass One**
**All natural persons in the Class who purchased a Premium Subscription Service through spotify.com in connection with a free trial period.**

**Subclass Two**
**All natural persons in the Class who purchased a Premium Subscription Service through spotify.com with no free trial period.**

Collectively, the "Class." Plaintiffs reserve the right to amend these definitions.

15

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:16-cv-3533 WHA
DWT 30804440v3 0098755-000014

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

**ANSWER:** Spotify admits Plaintiffs purport to bring this lawsuit on a class basis on behalf of the purported classes described in Paragraph 45 of the FAC, but denies this action meets class certification requirements.  Except as expressly admitted, Spotify denies the allegations in Paragraph 45 of the FAC.

46.     Specifically excluded from the Class and Subclasses are: (a) all judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Defendant releases of all their claims for all of their Class claims; (d) all counsel for Plaintiffs; and (e) Defendant's employees, officers, directors, agents, and representatives and their family members.

**ANSWER:** Spotify admits that Plaintiffs purport to exclude from the class certain individuals described in Paragraph 46 of the FAC, but denies this action meets class certification requirements.  Except as expressly admitted, Spotify denies the allegations in Paragraph 46 of the FAC.

47.     The Class Members are so numerous that joinder of all members is impracticably, and the disposition of their claims in a class action will benefit the parties and the Court. At this time, Plaintiffs do not know the exact size of the Class. Based on information and belief, the Class is comprised of hundreds of thousands if not millions of members so as to render joinder of all Class Members impracticable. Defendant, however, has this information readily available, as Defendant has a record of every Class Member due to their enrollment in PSS. Thus Defendant has a record of every member of the class and contact information for every member of the class, thereby also confirming direct notice can be given to every Class Member.

**ANSWER:** Spotify admits it has records of certain Spotify users who purchased Premium Subscriptions, but denies this action meets class certification requirements.  The remaining allegations contain arguments and/or legal conclusions to which no response is required.  To the extent a response is required, however, Spotify lacks sufficient information to admit or deny the allegations and on that basis denies them.

48.     Common questions of law and fact predominate over individual issues. There is a well-defined community of interest in the questions of law and fact affecting Members of the

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:16-cv-3533 WHA
DWT 30804440v3 0098755-000014

DAVIS WRIGHT TREMAINE LLP

Class. The questions of law and fact common to the Classes predominate over questions affecting only individual Class Members, and include, but are not limited to, the following:

a. Whether Defendant's PSS constitutes an automatic renewal and/or continuous service plan or arrangement for the purposes of Cal. Bus. & Prof. Code § 17601;

b. Whether the information presented to Plaintiffs and Class Members by Defendant prior to the initial order of PSS contained all the disclosures required by Cal. Bus. & Prof. Code § 17601(b);

c. Whether the information regarding the PSS auto-renewal provided by Defendant on its website and during the PSS purchasing process was provided in a "clear and conspicuous manner" as defined by Cal. Bus. & Prof. Code § 17601(c);

d. Whether Defendant failed to present the automatic renewal offer terms, or continuous service offer terms, in a clear and conspicuous manner before the subscription or purchasing agreement was fulfilled and in visual proximity to the request for consent to the offer, in violation of Cal. Bus. & Prof. Code § 17602(a)(l);

e. Whether Defendant charged Plaintiffs' and Class Members' Payment Methods for an automatic renewal or continuous service without first obtaining the Plaintiffs' and Class Members' affirmative consent to the automatic renewal offer terms or continuous service offer terms, in violation of Cal. Bus. & Prof. Code § 17602(a)(2);

f. Whether Defendant failed to provide Plaintiffs and Class Members with an acknowledgment that included its ARCSO Terms in a manner capable of being retained by the Consumer and/or failed to disclose in the acknowledgment how to cancel and that the Consumer could cancel before the Consumer's payment for his or her PSS, in violation of Cal. Bus. & Prof. Code § 17602(a)(3).

17

g.      Whether Plaintiffs and Class Members are entitled to restitution in

accordance with <u>Cal. Bus. & Prof. Code</u> §§ 17200, 17203;

h.      Whether Plaintiffs and Class Members are entitled to injunctive relief under

<u>Cal. Bus. & Prof. Code</u> § 17203;

i.      Whether Plaintiffs and Class Members are entitled to declaratory relief that,

due to Defendant's initial failure to properly disclose to them that

Defendant's Terms and Condition of Use purport to allow Defendant to

increase the monthly charge to them, Defendant may not raise the price of

PSS for enrollees without first obtaining their affirmative consent in a

manner to be approved by the Court;

j.      Whether Plaintiff and Class Members are entitled to attorneys' fees and

costs under California Code of Civil Procedure § 1021.5.

**ANSWER:** Spotify denies the allegations in Paragraph 48 of the FAC, and denies this action meets class certification requirements.

49.      Plaintiffs' claims are typical of the claims of Class Members. Plaintiffs and all members of the Class have been subjected to Defendant's common course of unlawful conduct as complained of herein, and were subjected to highly similar if not identical web pages for purposes of the material issues reference herein while signing up on spotify.com.

**ANSWER:** Spotify denies the allegations in Paragraph 49 of the FAC, and denies this action meets class certification requirements.

50.      Plaintiffs are adequate representatives of the Class because they fit within the class definition and their interests do not conflict with the interests of the members of the Class they seek to represent. Plaintiffs will prosecute this action vigorously for the benefit of the entire Class. Plaintiffs are represented by experienced and able attorneys. Plaintiffs and class counsel can and will fairly and adequately protect the interests of all the members of the Class.

**ANSWER:** Spotify denies the allegations in Paragraph 50 of the FAC, and denies this action meets class certification requirements.

DAVIS WRIGHT TREMAINE LLP

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:16-cv-3533 WHA
DWT 30804440v3 0098755-000014

51.     A class action is the superior method for the fair and just adjudication of this controversy. The expense and burden of individual suits makes it impossible and impracticable for members of the proposed Class to prosecute their claims individuals.

**ANSWER:**  Spotify denies the allegations in Paragraph 51 of the FAC, and denies this action meets class certification requirements.

52.     The trial and litigation of Plaintiffs' and the proposed Class's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the Court system.

**ANSWER:**  Spotify denies the allegations in Paragraph 52 of the FAC, and denies this action meets class certification requirements.

53.     Defendant has acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

**ANSWER:**  Spotify denies the allegations in Paragraph 53 of the FAC, and denies this action meets class certification requirements.

54.     Unless a permanent injunction is issued, Defendant will continue to commit the violations alleged herein, and the members of the proposed Class and the general public will continue to be misled. Because of the small size of the individual Class members' claims, few, if any, will make claims.

**ANSWER:**  Spotify denies the allegations in Paragraph 54 of the FAC, and denies this action meets class certification requirements.

55.     If necessary, notice of this action may be affected to the proposed class through publication, and for virtually all class members, direct notice may be achieved through contact information from customer lists, which, on information and belief, are maintained by Defendant.

**ANSWER:**  Spotify denies the allegations in Paragraph 55 of the FAC, and denies this action meets class certification requirements.

**FIRST CAUSE OF ACTION**

(**Conduct in Violation of California's Automatic Purchase Renewal Clause**

**Cal. Bus. & Prof. Code §17600, et seq.**)

56.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 55 and 69 through 78, and incorporate the same as if set forth herein at length.

**ANSWER:**  Spotify incorporates its responses to the allegation in paragraphs 1 through 55 and 69 through 78, as if fully stated herein.

57.     This cause of action is brought pursuant to Cal. Bus. & Prof. Code § 17600, *et seq.*, by Plaintiffs on behalf of the Class and Subclasses defined above.

**ANSWER:** Spotify responds that Paragraph 57 contains arguments and/or legal conclusions, to which no response is required.  To the extent a response is required, however, Spotify responds that it lacks sufficient information to admit or deny the allegations, and on that basis denies them.

58.     Defendant's practice of automatically renewing Plaintiffs and the Class Members in its PSS program by charging their credit cards after a month constitutes an "automatic renewal" within the meaning of §17601(a) of the APRL.

**ANSWER:** Paragraph 58 of the FAC contains arguments and/or legal conclusions to which no response is required.   To the extent a response is required, however, Spotify responds that the APRL speaks for itself.

59.     Plaintiffs and Class Members are "consumers" within the meaning of the APRL.

**ANSWER:**  Spotify lacks sufficient information to admit or deny the allegations in Paragraph 59, and on that basis denies them.

60.     ***First Violation.*** Defendant obtained Plaintiffs' agreement to its Terms and Conditions of Use at its initial "Sign Up" page on its website without disclosing, in a clear and conspicuous manner, the ARCSO Terms in visual proximity to the request for consent, violating §§ 17601(c) and 17602(a)(1).

**ANSWER:** Spotify denies the allegations in Paragraph 60 of the FAC.

DAVIS WRIGHT TREMAINE LLP

61.    **Second Violation.** Defendant failed to disclose Spotify's ARCSO Terms in a clear and conspicuous manner on the webpages where Consumers subscribed to PSS. None of the ARCSO Terms were presented "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language" and/or were not provided in visual proximity to the request for consent to the offer, violating §§ 17601(c) and 17602(a)(1). Spotify instead sought to minimize the visual presence of the ARCSO Terms through the use of small font, shaded coloration on pages already containing multiple more prominent colors reflecting total's due of $0.00, $0.99, or $9.99, and/or the absence of symbols or other marks to call attention to the ARCSO Terms.

**ANSWER:**  Spotify denies the allegations in Paragraph 61 of the FAC.

62.    **Third Violation.** Defendant failed to disclose its reservation of the right to change the price of its PSS subscriptions on the webpages where Consumers subscribed to PSS, much less in a clear and conspicuous manner and/or in visual proximity to the request for consent to the offer, violating §§ 17601(c) and 17602(a)(1).[2]

**ANSWER:**  Spotify denies the allegations in Paragraph 62 of the FAC, except admits that the Terms and Conditions of Use exists and further responds that it speaks for itself.

63.    **Fourth Violation.** As part of the enrollment process for PSS, Spotify did not seek Consumers' consent to the ARCSO Terms and instead requested Consumers to "Confirm Payment" or otherwise proceed without seeking consent to the ARCSO Terms.

**ANSWER:**  Spotify denies the allegations in Paragraph 63 of the FAC.

64.    **Fifth Violation.** Following Consumers' enrollment in a PSS, Spotify failed to provide an acknowledgment that included its ARCSO Terms in a manner capable of being retained by the Consumer and, in the case of FPSS Consumers, further failed to disclose in the acknowledgment how to cancel and allow the Consumer to cancel before the Consumer payment for his or her PSS, violating § 17602(a)(3).

---

[2] Defendant's purported reservation of the right to change the price of its subscriptions is set forth in its Terms and Conditions of Use.

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:16-cv-3533 WHA
DWT 30804440v3 0098755-000014

1   **ANSWER:** Spotify denies the allegations in Paragraph 64 of the FAC.

2   65.   ***Sixth Violation.*** Defendant charged the Plaintiff's credit or debit card or the

3   Consumer's account with a third party for an automatic renewal or continuous service without first

4   obtaining the Consumer's affirmative consent to the agreement containing the automatic renewal

5   offer terms or continuous service offer terms, violating § 17602(a)(2).

6   **ANSWER:** Spotify denies the allegations in Paragraph 65 of the FAC.

7   66.   These violations occurred uniformly against both the Plaintiffs and all the Class

8   Members.

9   **ANSWER:** Spotify denies the allegations in Paragraph 66 of the FAC.

10   67.   As a result of Defendant's violations of <u>Cal. Bus. & Prof. Code</u> § 17600 *et seq.*,

11   Defendant is subject under <u>Cal. Bus. & Prof. Code</u> § 17604 to all civil remedies that apply to a

12   violation of Article 9, of Chapter l, of Part 3, of Division 7 of the <u>Cal. Bus. & Prof. Code</u>.

13   **ANSWER:** Spotify denies the allegations of Paragraph 67 of the FAC.

14   68.   Plaintiffs, on behalf of themselves and Class Members, request the relief as

15   described herein and below.

16   **ANSWER:** Paragraph 68 of the FAC contains argument and/or legal conclusions to which

17   no response is required.  To the extent a response is required, Spotify denies the allegations.

18   **SECOND CAUSE OF ACTION**

19   **(<u>Unlawful Conduct in Violation of California's Unfair Competition Law</u>**

20   **<u>Cal Bus. & Prof. Code § 17200, *et seq.*</u>)**

21   69.   Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 68,

22   and incorporate the same as if set forth herein at length.

23   **ANSWER:** Spotify incorporates its responses to the allegations in paragraphs 1 through 68

24   as if fully stated herein.

25   70.   This cause of action is brought pursuant to <u>Cal. Bus. & Prof. Code</u> § 17200 by

26   Plaintiffs on behalf of the Class defined above.

27   71.   **ANSWER:**  The allegations in Paragraph 70 contain arguments and/or legal

28   conclusions, to which no response is required.  To the extent a response is required, however,

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:16-cv-3533 WHA
DWT 30804440v3 0098755-000014

DAVIS WRIGHT TREMAINE LLP

Spotify responds that it lacks sufficient information to admit or deny the allegations of Paragraph 70, and on that basis denies them.   As described in Plaintiffs' First Cause of Action, Defendant's marketing and sale of its PSS program violates the APRL, which constitutes an unlawful business practice.

**ANSWER:** Spotify denies the allegations of Paragraph 71 of the FAC.

72.   Plaintiffs and the Class suffered a loss of money or property as a result of Defendant's unlawful acts.

**ANSWER:**  Spotify denies the allegations of Paragraph 72 of the FAC.

73.   As a direct and proximate result of Defendant's unlawful and/or unfair business acts or practices described herein, Defendant has received, and continues to hold, unlawfully obtained property and money belonging to Plaintiffs and Class Members in the form of payments made for PSS by Plaintiffs and Class Members. Defendant has profited from its unlawful and/or unfair business acts or practices in the amount of those business expenses and interest accrued thereon.

**ANSWER:**  Spotify denies the allegations of Paragraph 73 of the FAC.

74.   Plaintiffs and similarly-situated Class Members are entitled to restitution pursuant to Cal. Bus. & Prof. Code § 17203 for all monies paid by Class Members under the subscription agreements from December 1, 2010, to the date of such restitution at rates specified by law. Defendant should be required to disgorge all the profits and gains it has reaped and restore such profits and gains to Plaintiff and Class Members, from whom they were unlawfully taken.

**ANSWER:**  Spotify denies the allegations of Paragraph 74 of the FAC.

75.   Plaintiffs and similarly situated Class Members are entitled to enforce all applicable penalty provisions pursuant to Cal. Bus. & Prof. Code § 17202, and to obtain injunctive relief pursuant to Cal. Bus. & Prof. Code § 17203.

**ANSWER:**  Spotify denies the allegations of Paragraph 75 of the FAC.

76.   Specifically, Plaintiffs seek an injunction, on behalf of themselves and the Class Members, that Defendant (a) cannot charge Plaintiffs and the Class Members any amount of fee for the auto-renewal of their Subscriptions without first obtaining each such Users' affirmative

DAVIS WRIGHT TREMAINE LLP

1    consent in a form and manner as approved by this Court; and (b) Defendant cannot raise the price

2    of its PSS without first obtaining a customer's affirmative consent in a form and manner as

3    approved by the Court.

4    **ANSWER:**  Paragraph 76 of the FAC contains arguments and/or legal conclusions to

5    which no response is required.  To the extent a response is required, however, Spotify lacks

6    sufficient information to admit or deny the allegations of Paragraph 76 of the FAC, and on that

7    basis denies them.  Spotify further denies that Plaintiffs are entitled to any relief on any theory.

8    77.    Plaintiffs have assumed the responsibility of enforcement of the laws and public

9    policies specified herein by suing on behalf of themselves and other similarly-situated Class

10   Members. Plaintiffs' success in this action will enforce important rights affecting the public

11   interest. Plaintiffs will incur a financial burden in pursuing this action in the public interest. An

12   award of reasonable attorneys' fees to Plaintiff is thus appropriate pursuant to California Code of

13   Civil Procedure § 1021.5.

14   **ANSWER:** Spotify denies the allegations in Paragraph 77 of the FAC.

15   78.    Plaintiffs, on behalf of themselves and Class Members, request the relief as

16   described herein and below.

17   **ANSWER:** Spotify admits that Plaintiffs seek the relief as set forth in Paragraph 78, but

18   denies Plaintiffs are entitled to any relief on any theory.

19   **THIRD CAUSE OF ACTION**

20   **(Declaratory Relief – Arbitration Clause and Purported Class Action Waiver**

21   **Invalid, Inapplicable and/or Unconscionable)**

22   79.    Plaintiffs repeat and reallege the allegations set forth above and incorporate the

23   same as if set forth herein at length.

24   **ANSWER:** Per the parties' stipulation and the Court's Order dated November 28, 2016

25   (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

26   80.    The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that in "a case of

27   actual controversy within its jurisdiction . . . any court of the United States . . . may declare the

28

DAVIS WRIGHT TREMAINE LLP

24

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:16-cv-3533 WHA
DWT 30804440v3 0098755-000014

1 | rights and other legal relations of any interested party seeking such declaration, whether or not

2 | further relief is or could be sought." 28 U.S.C. § 2201(a).

3 |     **ANSWER:**  Per the parties' stipulation and the Court's Order dated November 28, 2016

4 | (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

5 |     81.    As described above, this Court has jurisdiction over this matter, and therefore may

6 | declare the rights of Plaintiffs and the Class.

7 |     **ANSWER:**  Per the parties' stipulation and the Court's Order dated November 28, 2016

8 | (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

9 |     82.    The Terms and Conditions of Use drafted by Defendant do not require that

10 | Plaintiffs arbitrate the causes of action set forth in this Class Action Complaint.

11 |     **ANSWER:**  Per the parties' stipulation and the Court's Order dated November 28, 2016

12 | (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

13 |     83.    Plaintiffs, on behalf of themselves and Class Members, seek the following from the

14 | Court:

15 |     a.    A declaration that Plaintiffs and Defendant have no valid arbitration

16 | agreement, and/or no valid arbitration agreement requiring the arbitration of

17 | Plaintiffs' claims, because they formed no such arbitration agreement;

18 |     b.    A declaration that, if Plaintiff and Defendant entered an arbitration

19 | agreement, any such agreement is unconscionable and unenforceable such

20 | that it cannot and does not require Plaintiffs to arbitrate their claims or any

21 | portion thereof;

22 |     c.    A declaration that, if Plaintiff and Defendant entered an arbitration

23 | agreement, it is inapplicable to Plaintiffs' requests for injunctive relief; and

24 |     d.    A declaration that Section 24.2 of Defendants' 2015 Terms does not bar

25 | Plaintiffs from maintaining this action as a class action in this court because

26 | it is unconscionable and unenforceable.

27 |     **ANSWER:**  Per the parties' stipulation and the Court's Order dated November 28, 2016

28 | (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

DAVIS WRIGHT TREMAINE LLP

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:16-cv-3533 WHA
DWT 30804440v3 0098755-000014

**1.     No Delegation**

84.     Any questions regarding whether Plaintiffs' claims must be arbitrated are for the Court. Plaintiffs and/or Defendant did not clearly and unmistakably delegate such questions to an arbitrator and any alleged delegation clause cited by Spotify would be unconscionable.

**ANSWER:**  Per the parties' stipulation and the Court's Order dated November 28, 2016 (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

85.     The facts in support of this conclusion include, without limitation, the following:

a.     Defendant did not expressly delegate issues of arbitrability to an arbitrator or quote within any of its Terms and Conditions of Use any rule providing for such delegation;

b.     Section 18 of the 2012 Terms and Section 19 of the 2014 Terms each stated: "you and Spotify agree to the exclusive jurisdiction of the state and federal courts in San Francisco County, California or New York, New York to resolve any dispute, claim or controversy that arises in connection with these Agreements."

c.     Defendant did not attach the arbitration rules referenced in Section 18 to the 2012 Terms or Section 19 of 2014 Terms to such Terms and Conditions of Use;

d.     Section 24.1 of the 2015 Terms expressly provides that the Parties "agree to the jurisdiction of [this Court] to resolve any dispute, claim, or controversy that arises in connection with the Agreements (and any non-contractual disputes/claims arising out of or in connection with them) (In some cases, that jurisdiction will be "exclusive", meaning that no other countries' courts can preside over the matter; have jurisdiction; in other cases, the jurisdiction is "non-exclusive", meaning that other countries' courts may have jurisdiction as well.)" It further provides that, in the United States, jurisdiction is "exclusive" with reference to the "State and Federal Courts of San Francisco County, CA or New York, NY;"

DAVIS WRIGHT TREMAINE LLP

e.   In contrast, Section 24.3 of the 2015 Terms states: "If you are located in, are based in, have offices in, or do business in a jurisdiction in which this Section 24.3 is enforceable, the following mandatory arbitration provisions apply to you," and this is followed by Sections 24.3.1 through 24.3.7. Thus, for purposes of any position by Defendant that Consumers agreed to delegate issues of arbitrability to an arbitrator, it would require Consumers to (1) undertake a legal analysis of whether Section 24.3 is "enforceable" in their jurisdiction, which is a complex and complicated analysis, and (2) discern that, even if so, then Defendant's explicit specification of the courts in San Francisco, California to "resolve any dispute, claim, or controversy that arises in connection with these Agreements" somehow does not allow any such court to decide whether their claims must be arbitrated; and (3) and then somehow glean such a delegation from Section 24.3;

f.   Defendant further muddied any such analysis with Section 24.3.3 of the 2015 Terms, which states: "Either you or we may start arbitration proceedings. If you are located in, are based in, have offices in, or do business in the United States, any arbitration between you and Spotify will be finally settled under the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes of the American Arbitration Association ('AAA') then in force (the 'AAA Rules'), as modified by the Agreements." Spotify did not attach the purported arbitration rules referenced in Section 24.3.3 to the 2015 Terms and instead refers Consumers to the AAA's website and phone number. The AAA's website, however, does not contain a set of rules or procedures titled "Commercial Dispute Resolution Procedures" as Section 24.3.3 suggests to Consumers;

g.   The AAA's Supplementary Procedures for Consumer Related Disputes ("Supplementary Procedures") were "replaced" by the AAA's Consumer

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:16-cv-3533 WHA
DWT 30804440v3 0098755-000014

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

Arbitration Rules effective September 1, 2014 as stated in the preamble to the AAA's Consumer Arbitration Rules. In other words, Section 24.3.3 refers to Supplementary Procedures which had been replaced one year earlier; and

h.   Notwithstanding that the Supplementary Procedures are no longer in effect, a Consumer searching for such procedures by name on the AAA's site is directed to such procedures in a PDF format. Nothing within the PDF that the AAA currently provides of the replaced Supplementary Procedures indicates that the Supplementary Procedures have been replaced by the Consumer Arbitration Rules. The Supplementary Procedures make no reference to the delegation of issues of arbitrability to an arbitrator and likewise refer to the "Commercial Dispute Resolution Procedures" of which there are no rules or procedures on the AAA's website with such a name.

**ANSWER:**  Per the parties' stipulation and the Court's Order dated November 28, 2016 (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

### 2.   No Valid Agreement Requiring Arbitration

86.   Section 18 of the 2012 Terms and Section 19 of the 2014 Terms each stated: "you and Spotify agree to the exclusive jurisdiction of the state and federal courts in San Francisco County, California or New York, New York to resolve any dispute, claim or controversy that arises in connection with these Agreements."

**ANSWER:**  Per the parties' stipulation and the Court's Order dated November 28, 2016 (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

87.   The next paragraph of such Sections stated, "If you are a United States user, the following mandatory arbitration provisions also apply to you: i. [1. in the 2014 Terms] You and Spotify agree that any dispute, claim or controversy arising out of or relating in any way to the Spotify Service or your use thereof, including our Agreements, shall be determined by mandatory binding arbitration."

**ANSWER:**  Per the parties' stipulation and the Court's Order dated November 28, 2016 (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

88.      Thus, Sections 18 of the 2012 Terms and Section 19 of the 2014 Terms refer to the "exclusive jurisdiction" of the court to "resolve any claim, dispute or controversy" that arises in connection with these Agreement," which covers Plaintiffs' claims; and (2) employ similar language to suggest that any such any such "dispute, claim or controversy" is to be "determined by mandatory arbitration." These conflicting terms cannot be harmonized. Plaintiffs and Spotify did not enter a valid agreement to arbitrate or requiring arbitration.

**ANSWER:**  Per the parties' stipulation and the Court's Order dated November 28, 2016 (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

89.      Alternatively, to extent there was an agreement on arbitration, it gave Plaintiffs the right to elect between invoking the "exclusive jurisdiction" of this court and commencing "mandatory arbitration."

**ANSWER:**  Per the parties' stipulation and the Court's Order dated November 28, 2016 (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

90.      Section 2 of Defendant's 2012 and 2014 Terms each stated: "we may, in our discretion, make changes to the Spotify Service and Agreements. When we make changes to the Agreements that we consider material, we'll notify you through the Service. By continuing to use the Service after those changes are made, you are expressing and acknowledging your acceptance of the changes." This clause is unconscionable.

**ANSWER:**  Per the parties' stipulation and the Court's Order dated November 28, 2016 (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

91.      Section 24.1 of the 2015 Terms expressly provides that the Parties "agree to the jurisdiction of [this Court] to resolve any dispute, claim, or controversy that arises in connection with the Agreements (and any non-contractual disputes/claims arising out of or in connection with them) (In some cases, that jurisdiction will be "exclusive", meaning that no other countries' courts can preside over the matter; have jurisdiction; in other cases, the jurisdiction is "non-exclusive", meaning that other countries' courts may have jurisdiction as well.)" It further provides that, in the

29

United States, jurisdiction is "exclusive" with reference to the "State and Federal Courts of San Francisco County, CA or New York, NY.

**ANSWER:** Per the parties' stipulation and the Court's Order dated November 28, 2016 (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

92.     As noted, Section 24.3 of the 2015 Terms states: "If you are located in, are based in, have offices in, or do business in a jurisdiction in which this Section 24.3 is enforceable, the following mandatory arbitration provisions apply to you," and this is followed by Sections 24.3.1 through 24.3.7. This section is too indefinite to be enforceable as a contract term against Consumers, and is otherwise invalid. Whether Section 24.3 is enforceable presents complex and complicated issues. Only a court may determine whether Section 24.3 is enforceable, and this issue cannot be determined by Consumers *ex ante* when they become PSS subscribers. Defendant and Consumers by definition cannot and could not reach a meeting of the minds on whether Section 24.3 is enforceable. At a minimum, Section 24.3 presents ambiguities regarding whether it "applies" to Consumers that must be construed against Defendant as the drafter of the section.

**ANSWER:** Per the parties' stipulation and the Court's Order dated November 28, 2016 (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

93.     Section 24.3.1 of the 2015 Terms provides: "You and Spotify agree that any dispute, claim, or controversy between you and Spotify arising in connection with or relating in any way to these Agreements or to your relationship with Spotify as a user of the Service (whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and whether the claims arise during or after the termination of the Agreements) will be determined by mandatory binding individual arbitration."

**ANSWER:** Per the parties' stipulation and the Court's Order dated November 28, 2016 (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

94.     Defendant cannot establish a valid agreement to arbitrate through a unilateral revision to its 2012 and 2014 Terms.

**ANSWER:** Per the parties' stipulation and the Court's Order dated November 28, 2016 (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

DAVIS WRIGHT TREMAINE LLP

95.     Alternatively, for purposes of determining whether there is valid agreement requiring arbitration of Plaintiffs' claims, under the three provisions above from the 2015 Terms there is no valid agreement to arbitrate between Plaintiffs and Spotify.

**ANSWER:**  Per the parties' stipulation and the Court's Order dated November 28, 2016 (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

96.     Alternatively, to extent there was an agreement on arbitration, it allowed Plaintiffs to elect between invoking the "exclusive jurisdiction" of this Court and commencing an arbitration.

**ANSWER:**  Per the parties' stipulation and the Court's Order dated November 28, 2016 (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

97.     Alternatively, Section 24.3 of the 2015 Terms contains a condition precedent and applies only if "this Section 24.3 is enforceable." Thus, Section 24.3 does not apply if any portion of Section 24.3 is unenforceable and, as shown below, portions of Section 24.3 are unconscionanble. Section 24.3 is not saved by Section 21 of the 2015 Terms. A severability clause, Section 21 provides that in the event a term is unenforceable "the remaining provisions" of the Terms and Conditions of Use shall be enforced to the extent permitted by law. This savings clause, however, is limited by the opening phrase of Section 21, which states "[u]nless as otherwise stated in the Agreements [which include the 2015 Terms]." As noted, Section 24.3 states otherwise given that it expressly conditions the applicability of Section 24.3 on whether "this Section 24.3 is enforceable."

**ANSWER:**  Per the parties' stipulation and the Court's Order dated November 28, 2016 (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

98.     Alternatively, assuming for the sake of argument only that there is a valid agreement requiring Plaintiffs to arbitrate their claims or any portion thereof, the following items in Sections 3 and 4 below are pled in the alternative and demonstrate that any such agreement is unconscionable, unenforceable and/or inapplicable to Plaintiffs' claims.

**ANSWER:**  Per the parties' stipulation and the Court's Order dated November 28, 2016 (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

DAVIS WRIGHT TREMAINE LLP

**3.      Unconscionable and Unenforceable**

99.      Sections 18(i)-(iv) of the 2012 Terms, Sections 19(1)-(4) of the 2014 Terms and Section 24.3 of the 2015 Terms were and are procedurally and substantively unconscionable and unenforceable for multiple reasons, including but not limited to the following reasons:

      a.      Defendant is a large, sophisticated corporation. As noted, its Terms and Conditions of Use purport to invoke the AAA's Supplementary Procedures. As noted in the Supplementary Procedures, the AAA "applies the Supplementary Procedures for Consumer-Related Disputes to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with Users and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices." In seeking to invoke such procedures, Defendant acknowledges that the Terms and Conditions of Use were non-negotiable;

      b.      Defendant drafted the purported arbitration terms in complex legalese and such terms possess a Flesch Readability Ease score roughly the equivalent of, or worse than in terms of greater complexity, the score commonly ascribed to Harvard Law Review;

      c.      Sections 18 of the 2012 Terms and Section 19 of the 2014 Terms refer to the "exclusive jurisdiction" of the court to "resolve any claim, dispute or controversy" that arises in connection with these Agreement," which covers Plaintiffs' claims; and (2) employ similar language to suggest that any such any such "dispute, claim or controversy" is to be "determined by mandatory arbitration. This conflict invites surprise relative to any claim by Defendant that the second clause somehow trumps the first clause providing for the "exclusive jurisdiction" of this Court;

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:16-cv-3533 WHA
DWT 30804440v3 0098755-000014

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

d.   Defendant did not attach the arbitration rules referenced in Sections 18 and 19 of the 2012 or 2014 Terms to such Terms;

e.   Defendant buried Sections 18 and 19 in the end of the 2012 and 2014 Terms, and if a Consumer were to use the table of contents in such Terms and access those sections, the first thing a consumer would read was the paragraph referencing the "exclusive jurisdiction" of this Court;

f.   Section 18(iv) of the 2012 Terms, Section 19(4) of the 2014 Terms and Section 24.3.4 of the 2015 Terms all imposed a purported one-year statute of limitations period on claims asserted in arbitration, without imposing a similar temporal reduction for the statute of limitations on claims Spotify might bring outside of arbitration, reflecting Spotify's intent to limit the protections to Consumers for purposes of the claims such as those asserted in this Complaint and to undermine the statutes cited herein;

g.   Section 18(ii) of the 2012 Terms, Section 19(2) of the 2014 Terms and Section 24.3.2(4) of the 2015 Terms carve out from the alleged mandatory arbitration "intellectual property infringement claims." Such claims are more likely to be asserted by Defendant as opposed to any PSS subscriber.

h.   Section 2 of Defendant's 2012 and 2014 Terms each stated: "we may, in our discretion, make changes to the Spotify Service and Agreements. When we make changes to the Agreements that we consider material, we'll notify you through the Service. By continuing to use the Service after those changes are made, you are expressing and acknowledging your acceptance of the changes." This clause is unconscionable as illustrated by the additional unconscionable unilateral revisions Defendant made to the 2015 Terms on or about September 19, 2015;

i.   For example, Section 24.3 of the 2015 require Users to understand whether "this Section 24.3 is enforceable" in order to understand whether they may have agreed to arbitration. Whether Section 24.3 is enforceable presents

33

complex and complicated issues. Only a court may determine whether Section 24.3 is enforceable. This issue cannot be determined by Consumers *ex ante* when they become PSS subscribers, resulting in unconscionable surprise if it is read to require arbitration. In contrast, Section 24.1 clearly states that Defendant agrees to the jurisdiction of this Court "to resolve any dispute, claim, or controversy that arises in connection with the Agreements (and any non-contractual disputes/claims arising out of or in connection with them);"

j.  Defendant added language in the 2015 Terms in Section 24.3.6 purporting to allow Defendant to unilaterally modify the terms of Section 24.3. The requirements for Users to object to changes made by Defendant to Section 24.3 are more onerous in comparison to changes in other terms of the 2015 Terms. Section 24.3.6 requires Users to send "written notice within 30 days of the change to Spotify's address for Notice" in order to allegedly avoid being bound by Spotify's unilateral changes to Section 24.3. Defendant's "address for Notice" requires the use of non-electronic submission such as mail yet the same clause contemplates Defendant sending "Notice" to Users by electronic mail.

k.  In Sections 18(ii) and 19(2) of the 2012 and 2014 Terms, respectively, Defendant excluded from arbitration any claims related to allegations of theft, piracy or the unauthorized use of Spotify. In *Bleak v. Spotify USA, Inc.*, Case No. 3:13-cv-05653, in the United States District Court for the Northern District of California, a Consumer filed a lawsuit and asserted that her claim (which included a putative class action) fell within this exception. Spotify subsequently amended Section 19 to remove this exception from the current listing of exceptions to arbitration under Section 24.3 found in Section 24.3.2 of the 2015 Terms.

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:16-cv-3533 WHA
DWT 30804440v3 0098755-000014

l.     Defendant also added unconscionable Section 24.3.5 to the 2015 Terms which contains prohibitions on Plaintiffs against the making of "any public announcement or public comment or originat[ing] any publicity concerning the arbitration, including, but not limited to, the fact that the parties are in dispute, the existence of the arbitration, or any decision or award of the arbitrator;" and

m.     Defendant referenced the AAA's non-existent "Commercial Dispute Resolution Procedures" in Section 24.3.1 of the 2015 Terms and the replaced Supplement Procedures.

**ANSWER:**  Per the parties' stipulation and the Court's Order dated November 28, 2016 (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

100.     These defects are indicative of an unlawful effort to impose arbitration on Consumers not as an alternative to litigation, but as an inferior forum that works to Defendant's advantage. The circumstance under which the clause is presented to Consumers is unfair and oppressive, devoid of any actual negotiation, and designed to take advantage of the unequal bargaining power between Consumers and Defendant. These unconscionable aspects render Section 24.3 wholly unenforceable.

**ANSWER:**  Per the parties' stipulation and the Court's Order dated November 28, 2016 (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

### 4.     Section 24.3 Does Not Apply – Injunctive Relief

101.     Section 24.3.2 of the 2015 Terms drafted by Defendant states that "nothing herein will be deemed to waive, preclude or otherwise limit" the right of any User or Defendant to "(3) seek injunctive relief in a court of law."

**ANSWER:**  Per the parties' stipulation and the Court's Order dated November 28, 2016 (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

102.     Plaintiffs are seeking, among other things, injunctive relief in this case. Section 24.3.2 expressly allows for Plaintiffs to seek such relief from this Court.

DAVIS WRIGHT TREMAINE LLP

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:16-cv-3533 WHA
DWT 30804440v3 0098755-000014

1    **ANSWER:**  Per the parties' stipulation and the Court's Order dated November 28, 2016

2    (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

3            103.    Defendant has waived any argument that Plaintiffs' claims seeking injunctive relief

4    must be arbitrated.

5            **ANSWER:**  Per the parties' stipulation and the Court's Order dated November 28, 2016

6    (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

7            **5.      Section 24.2 Does Not Apply – Class Action Waiver**

8            104.    Section 18 of the 2012 Terms and Section 19 of the 2014 Terms stated: "If you are

9    a United States user, the following mandatory arbitration provisions also apply to you: . . . iii. [3.

10   in the 2014 Terms] YOU AND SPOTIFY AGREE THAT EACH MAY BRING CLAIMS

11   AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS

12   A CLASS MEMBER OR IN ANY REPRESENTATIVE CAPACITY OR PROCEEDING.

13   Further, no arbitrator shall consolidate any other person's claims with your claims, and may not

14   otherwise preside over any form of a multi-party or class proceeding. If this specific provision is

15   found to be unenforceable in any way, then the entirety of this arbitration section shall be null and

16   void. The arbitrator may not award declaratory or injunctive relief. "

17           **ANSWER:**  Per the parties' stipulation and the Court's Order dated November 28, 2016

18   (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

19           105.    Nothing in Section 18 or Section 19 purported to serve as a class-action waiver for

20   claims asserted in court.

21           **ANSWER:**  Per the parties' stipulation and the Court's Order dated November 28, 2016

22   (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

23           106.    In Section 24.2 of the 2015 Terms, Defendant unilaterally revised its Terms and

24   Conditions of Use to purportedly expand the scope of its alleged class action waiver to apply to

25   claims asserted in court in as follows: "24.2 CLASS ACTION WAIVER . . . WHERE

26   PERMITTED UNDER THE APPLICABLE LAW, YOU AND SPOTIFY AGREE THAT EACH

27   MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL

28   CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED

DAVIS WRIGHT TREMAINE LLP

CLASS OR REPRESENTATIVE ACTION. Unless both you and Spotify agree, no arbitrator or judge may consolidate more than one person's claims or otherwise preside over any form of a representative or class proceeding."

**ANSWER:** Per the parties' stipulation and the Court's Order dated November 28, 2016 (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

107.   Defendant cannot bind Plaintiffs to a class action waiver applicable to claims filed in a court based on Defendant's above-referenced unilateral revision to the purported class action waiver in its 2012 and 2014 Terms.

**ANSWER:** Per the parties' stipulation and the Court's Order dated November 28, 2016 (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

108.   Alternatively, the Federal Arbitration Act does not preempt California law on whether an alleged class action waiver which purportedly applies to claims in court is unconscionable.

**ANSWER:** Per the parties' stipulation and the Court's Order dated November 28, 2016 (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

109.   Section 24.2—which does not provide an opt-out mechanism—wrongfully limits Plaintiffs' right to recover in consolidated litigation against Defendant where individual litigation would be impracticable, overly burdensome, and judicially inefficient. The clause thus has a chilling effect on consumer litigation against Defendant that effectively insulates Defendant from liability. The circumstances under which Section 24.2 was presented was unfair and oppressive, devoid of any actual negotiation, and designed to take advantage of the unequal bargaining power between Consumers and Defendant. These unconscionable aspects render Section 24.2 wholly unenforceable under California law.

**ANSWER:** Per the parties' stipulation and the Court's Order dated November 28, 2016 (Dkt. #43), no response to allegations pertaining to Plaintiffs' Third Cause of Action is required.

**AFFIRMATIVE DEFENSES**

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:16-cv-3533 WHA
DWT 30804440v3 0098755-000014

DAVIS WRIGHT TREMAINE LLP

Spotify sets forth below its affirmative defenses.  By setting forth these affirmative defenses, Spotify does not assume any burden of proof as to any fact, issue, or other element of any cause of action that properly belongs to Plaintiffs.  Spotify reserves the right to amend or supplement its affirmative defenses.

**FIRST AFFIRMATIVE DEFENSE**

1.     The FAC fails to state any claims upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

2.     Plaintiffs' claims are subject to mandatory individual arbitration.

**THIRD AFFIRMATIVE DEFENSE**

3.     Plaintiffs and/or others alleged to be members of the putative class lack standing to assert the claims stated in the FAC and to seek some or all of the relief requested.

**FOURTH AFFIRMATIVE DEFENSE**

4.     The relief requested in the FAC is barred, in whole or in part, by the applicable Terms and Conditions of Use.

**FIFTH AFFIRMATIVE DEFENSE**

5.     The claims of Plaintiffs and/or others alleged to be members of the putative class fail because Plaintiffs or others alleged to be members of the putative class did not take reasonable steps to mitigate their alleged damages, if any, and their recovery must be barred or diminished accordingly.

**SIXTH AFFIRMATIVE DEFENSE**

6.     The relief requested in the FAC is barred, in whole or in part, because Plaintiffs and/or others alleged to be members of the putative class have sustained no cognizable injury or damages.

**SEVENTH AFFIRMATIVE DEFENSE**

7.     The claims of Plaintiffs and/or others alleged to be members of the putative class are barred, in whole or in part, by the doctrines of laches, waiver, and/or estoppel.

DAVIS WRIGHT TREMAINE LLP

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:16-cv-3533 WHA
DWT 30804440v3 0098755-000014

DAVIS WRIGHT TREMAINE LLP

**EIGHTH AFFIRMATIVE DEFENSE**

8.      The claims of Plaintiffs and/or others alleged to be members of the putative class are barred, in whole or in part, because actions taken by Spotify, if any, were not injurious to the public, were motivated by legitimate business concerns, and were reasonable in relation to the development and preservation of its business interests.

**NINTH AFFIRMATIVE DEFENSE**

9.      The claims of Plaintiffs and/or others alleged to be members of the putative class are barred, in whole or in part, by the exclusion in the applicable agreements of any liability for lost profits or indirect, incidental, special, punitive, or consequential damages, and by the limitation in the applicable agreements to the remedies contained in those agreements.

**TENTH AFFIRMATIVE DEFENSE**

10.     The claims of Plaintiffs and/or others alleged to be members of the putative class are barred, in whole or in part, by the doctrine of accord and satisfaction.

**ELEVENTH AFFIRMATIVE DEFENSE**

11.     The claims of Plaintiffs and/or others alleged to be members of the putative class are barred, in whole or part, by the ratification of, acquiescence in, or consent to Spotify's alleged conduct.

**TWELFTH AFFIRMATIVE DEFENSE**

12.     The claims of some of those alleged to be absent members of the putative class are barred by the applicable statute of limitations.

**THIRTEENTH AFFIRMATIVE DEFENSE**

13.     The claims of Plaintiffs and/or others alleged to be putative class members were caused by the fault of another, including Plaintiffs and/or others alleged to be putative class members.

**FOURTEENTH AFFIRMATIVE DEFENSE**

14.     The claims of Plaintiffs and/or others alleged to be putative class members are barred, in whole or in part, by the voluntary payments doctrine.

DAVIS WRIGHT TREMAINE LLP

### FIFTEENTH AFFIRMATIVE DEFENSE

15.     In addition to the other reasons that no class can be certified in this case, no nationwide class can be established because California's Unfair Competition Law and Automatic Purchase Renewal Law do not have extraterritorial application to users who purchased and used Spotify Premium in other states.

### SIXTEENTH AFFIRMATIVE DEFENSE

16.     Awarding Plaintiffs and/or others alleged to be members of the putative class the relief sought in the FAC would violate Spotify's and many of the putative class members' rights to due process of law under the United States Constitution.  *See, e.g., Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985).

### SEVENTEENTH AFFIRMATIVE DEFENSE

17.     Awarding Plaintiff and/or others alleged to be members of the putative class the relief sought in the FAC would violate Spotify's rights to due process of law under the United States Constitution.  *See, e.g., BMW v. Gore*, 517 U.S. 559 (1996).

### EIGHTEENTH AFFIRMATIVE DEFENSE

18.     Plaintiffs' claims and those of putative class members are barred because they waived their right to participate in a class or representative action.

### NINETEENTH AFFIRMATIVE DEFENSE

19.     Spotify is entitled to an offset against any damages or refund that it may owe, in the amount of the value of the services that Plaintiffs or class members received.

### TWENTIETH AFFIRMATIVE DEFENSE

20.     The class action allegations pled in the First Amended Complaint are barred because Plaintiffs' claims are not typical of claims by the putative class or subclasses, and/or are subject to unique defenses by Spotify.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

21.     The class action allegations pled in the First Amended Complaint barred because facts unique to each class member predominate over facts common to the entire class or subclass.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

22.     Spotify has insufficient knowledge or information upon which to form a belief as to whether other additional affirmative defenses may be available.  For that reason, Spotify reserves the right to assert additional affirmative defenses in the event discovery indicates that such defenses would be appropriate.

**PRAYER FOR RELIEF**

WHEREFORE, Spotify requests that the Court dismiss Plaintiffs' claims, enter judgment in Spotify's favor and against Plaintiffs on their FAC, and award costs of suit and such other relief as this Court deems just and proper, including:

i.      Ordering plaintiffs to individually arbitrate their claims;

ii.     Denial of class certification;

iii.    Dismissal of Plaintiffs' claims with prejudice;

iv.     Denial of all relief requested by Plaintiffs;

v.      Costs incurred in defending this action; and

vi.     All further relief to which Spotify may be entitled at law or in equity.

DATED: December 12, 2016                Respectfully submitted,

                                        DAVIS WRIGHT TREMAINE LLP
                                        Joseph E. Addiego, III
                                        Stephen M. Rummage
                                        Scott R. Commerson


                                        By:   s/Joseph E. Addiego III
                                              Joseph E. Addiego III

                                        Attorneys for Defendant
                                        SPOTIFY USA, INC.

DAVIS WRIGHT TREMAINE LLP

ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:16-cv-3533 WHA
DWT 30804440v3 0098755-000014