**MILSTEIN**
**JACKSON**
**FAIRCHILD**
**& WADE**

10250 Constellation Boulevard
Fourteenth Floor
Los Angeles, CA 90067
T: (310) 396-9600 F: (310) 396-9635
www.mjfwlaw.com

April 28, 2017

**VIA ECF**
Hon. William Alsup
San Francisco Courthouse
Courtroom 8 - 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *Ingalls, et. al. v. Spotify USA*, Case No. 3:16-cv-03533-WHA

Dear Judge Alsup:

Pursuant to this Court's July 11, 2016 Order, Plaintiffs move to compel the production of documents by Spotify regarding the topics set forth below (responsive to RFPD Nos. 23, 25, 26, 28-36, 45, 46). The parties met-and-conferred but were unable to resolve their disputes.

Before turning to specific disputes, the Court must be informed that Spotify has adopted an extreme 'relevancy' argument as a pretext to preclude its meaningful participation in the discovery process. Because this case is about disclosures, Spotify argues, the 'who, what, where, when, why, and how' of those disclosures—other than the disclosures themselves—fall outside the scope of Rule 26(b).

This untenable legal position has manifested itself in extraordinary ways. This case is about harm done to Plaintiffs and the Class by Spotify's automatic-renewal practices—practices which Plaintiffs allege violate California's Automatic Purchase Renewal Law, Cal. Bus. & Prof. C. §§ 17600, *et seq*. Despite this, Spotify (aside from two email chains) refuses to produce documents regarding the policy, practices, procedures, development, or implementation of its auto-renewal practice, as well as documents relating to its efforts to comply with the APRL.

Spotify even objects to document requests regarding Spotify's own affirmative defenses.[1] Though Spotify's Answer pleads consent and the 'voluntary payment doctrine' as two such defenses (D.E. 49 at 39), it will not produce any documents regarding whether consumers were confused by or complained about the policy. In another affirmative defense, Spotify contends its actions "were motivated by legitimate business concerns, and were reasonable in relation to the development and preservation of its business interests." *Id.* But in response to discovery requests, Spotify insists its motivations behind and development of its auto-renew practice is non-discoverable.

Spotify will no doubt dispute this characterization of its conduct, but Plaintiffs need only summarize Defendant's document production to prove their point. In response to discovery requests served over three months ago, Spotify has produced exactly 169 pages of documents. Of these 169 pages, 104 pages are publicly available terms and conditions and screenshots from Spotify's website. The other documents comprise a summary of changes to the website, a corporate organization chart, payment records for the named Plaintiffs, and a mere two email chains regarding consumer disclosures.

---

[1] Plaintiffs do not believe Spotify's affirmative defenses have any merit, but are nevertheless entitled to take discovery regarding issues raised by Spotify.

To date, Spotify has produced only two emails or communications, less than five internal documents (not created for litigation), no financial information regarding its auto-renew revenue, no communications with any customers, no documents regarding complaints, and no information as to the number of class members or persons auto-renewed, to name but a few deficiencies.

This troublesome behavior is compounded by Spotify's delay tactics. Plaintiffs served discovery on January 17, 2017. Spotify requested an extension of time to respond and Plaintiffs agreed. Spotify served its responses and objections via regular U.S. Mail on March 2, 2017. Plaintiffs sent a meet and confer letter regarding Spotify's deficient discovery responses on March 21, 2017 (Ex. B). Spotify waited until March 31 to produce documents. Following two lengthy telephonic meet-and-confers about Plaintiffs' March 21 letter, Spotify responded in writing on April 21, 2017 (Ex. A). Spotify produced additional documents (16 pages comprising two email chains and attachments) at 5:40 p.m. on April 28. Such dilatory tactics appear aimed at postponing this Court's resolution of numerous discovery disputes.

Spotify's general conduct aside, Plaintiffs now turn to the individual discovery requests that are the subject of their request for relief.

### 1. Customer communications and complaints regarding automatic renewals

Plaintiffs seek communications between Spotify and its customers discussing the automatic renewal offer terms, including customer complaints and inquiries regarding automatic renewal of customer subscriptions. Def.'s RFPD Responses, filed concurrently herewith, at RFPD 26. Defendant objects based on relevancy and disproportionality. Ex. A, at 3.[2]

Plaintiffs allege, *inter alia*, that the automatic purchase renewal terms were not disclosed in a clear and conspicuous manner. Plaintiffs' First Amended Complaint, D.E. 17 at 12-13. Complaints and inquires reflecting objections customer confusion as to Defendant's automatic purchase renewal policies is relevant to Plaintiffs' claims. Customer complaints, and Defendant's handling thereof, are also relevant to Defendant's affirmative defenses of consent, voluntary payment, and 'legitimate business concerns'.

Spotify is an extremely large company, and new reports reflect a company valuation in excess of $8 billion. It has millions of subscribers in the United States. Given Defendant's resources and the size of the instant case, Defendant's disproportionality arguments are unavailing. For example, it asks consumers why they are unsubscribing and retains their answers. If the question is worth asking there is presumably an effort to track the reasons. It should not be difficult to identify complaints or cancellations relating to the its automatic renewal offer terms. Further, many companies seek to avoid credit card chargebacks, and there is presumably a function within Spotify in which requests for refunds and the reasons for the requests are tracked. Otherwise put, if an officer of the company asked whether consumers had complained about its automatic purchase renewal terms and the frequency of such complaints and the amounts of refunds, there must be records within the company that can be accessed to ascertain these facts.

---

[2] Defendant often claims that the discovery Plaintiffs seek is disproportional to the needs of the case. *See generally*, Responses to RFPDs, filed concurrently herewith.

**2.     Documents regarding the development of Defendant's automatic renewal policy**

Plaintiffs request the production of internal communications and documents related to the development of Defendant's automatic renewal policy, including Defendant's decision to utilize automatic renewals. RFPDs 23, 25. As noted above, Defendant's relevancy and disproportionality objections are meritless. Ex. A, at 3. Documents pertaining to the development of the specific policy challenged by Plaintiffs is obviously relevant, and further pertains to Defendant's 'legitimate business concerns' affirmative defense.

**3.     Documents regarding sales and the number of auto-renewed customers**

Plaintiffs seek information regarding sales and the number of subscribers and auto-renewal instances during the Class Period. RFPDs 28-36. Plaintiffs also request documents regarding its pricing, revenue, and profit generated by Defendant with respect to the premium subscription service at issue. RFPDs 45-46. Discovery requests regarding the potential size of the class and amount at issue are highly relevant.

Defendant responds that such information is disproportionate because Defendant "is not contesting ascertainability or numerosity." Ex. A at 3.  It is implausible for Defendant to contend that it cannot ascertain the numbers of users or auto-renewal instances without great burden. Spotify was previously sued (and defended by the same lawyers) on similar claims in *Bleak v, Spotify USA Inc.*, No. 13-5653 (N.D. Cal.). There, in support of its December 2013 removal papers asserting CAFA jurisdiction, Spotify provided the Declaration of Goran Sander to support its position that more than $5 million was it issue. Mr. Sander identified the exact databases he used to calculate the number of users in 2013 by geography on a monthly and annual basis and calculated to the total amounts. Sander Decl., *Bleak*, No. 13-5653, at D.E. 2 (Dec. 6, 2013)

Further, Defendant argues that the information sought is irrelevant in that the UCL does not provide for damages. *Id.* at 4. The number of subscribers and auto-renewal instances are of course germane to Plaintiffs' calculation of restitution. The same is true regarding the amount of money Defendant received through its auto-renewal practice. It is also relevant to Defendant's Nineteenth Affirmative Defense, which asserts "Spotify is entitled to an offset against any damages or refund that it may owe, in the amount of the value of services that Plaintiffs or class members received." Def. Answer (D.E. 49) at 40.

With respect to Spotify's financial information as sought in RFPDs 45-46, if Spotify has any intent to argue or suggest in any way that it would be inequitable to certify a class or require significant restitution because of the magnitude of the financial impact of such events on Spotify, the information Plaintiffs seek is plainly relevant to such an inquiry.

**4.     Discovery requests relating to a national (versus California-only) class**

Spotify in many instances refuses to respond to discovery requests pertaining to Plaintiffs' pursuit of a national class, arguing that discovery should be limited to California. Def.'s RFPD Responses at RFPDs 28-36, 45-46; *see also* Ex. A at 4. Pursuant to this Court's April 28th Order (D.E. 68), Plaintiffs will respond to Spotify's Motion for Protective Order by May 1.

Respectfully Submitted,

**MILSTEIN JACKSON FAIRCHILD
& WADE, LLP**

 */s/ Sara D. Avila*
Sara D. Avila
Gillian L. Wade
Marc A. Castaneda
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067

Derek J. Meyer
**LEONARDMEYER LLP**
5900 Wilshire Boulevard, Suite 500
Los Angeles, CA 90036

M. Ryan Casey
**THE CASEY LAW FIRM, LLC**
20 NE Thompson Street
Portland, OR 97212

Counsel for Plaintiffs



Suite 2400
865 South Figueroa Street
Los Angeles, CA  90017-2566

**Scott R. Commerson**
213.633.6890 tel
213.633.4290 fax

ScottCommerson@dwt.com

April 21, 2017

<u>**VIA EMAIL AND U.S. MAIL**</u>

Gillian L. Wade
Sara D. Avila
Marc A. Castaneda
Milstein Adelman Jackson Fairchild & Wade, LLP
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067

Derek J. Meyer,
John Killacky
LeonardMeyer LLP
5900 Wilshire Boulevard, Suite 500
Los Angeles, CA 90036
Tel: (310) 220-0331

   Re: *Ingalls v. Spotify USA Inc.,*
     Case No. 3:16-cv-03533-WHA (DMR)

Dear Counsel:

   This letter is sent in response to Plaintiffs' March 21, 2017 meet and confer letter regarding Spotify USA Inc.'s Responses to Plaintiffs' First Special Interrogatories and Requests for Production, and to memorialize the two meet and confer calls the parties held on March 29, 2017, and April 13, 2017.  We believe the below resolves any disagreement and allows the parties to avoid burdening the Court with unnecessary motion practice.

<h2 style="text-align:center">I.   PRELIMINARY ISSUES</h2>

   Plaintiffs have objected to Spotify's use of general objections.  However, as explained during the meet and confer process, Spotify is not relying on the general objections, but rather, in response to each interrogatory and request for production, Spotify has stated the particular objections that apply.  Further, in response to Plaintiffs' request for production, Spotify stated whether it limited its search or whether documents were being withheld on the basis of an objection.  Accordingly, Spotify has met the requirements set forth by the Federal Rules of Civil Procedure in responding to Plaintiffs' discovery requests.

4834-9295-5207v.2 0098755-000014

Anchorage  New York  Seattle
Bellevue  Portland  Shanghai
Los Angeles  San Francisco  Washington, D.C.



www.dwt.com

EXHIBIT A

Milstein Adelman Jackson Fairchild & Wade, LLP
LeonardMeyer LLP
April 21, 2017
Page 2

Further, while Spotify objected to interrogatories and requests for production on the basis of attorney-client privilege and work-product doctrine to preserve the objection, no information or documents have been withheld on the basis of this objection at this time.

## II.      SPOTIFY'S RESPONSES TO PLAINTIFFS' INTERROGATORIES (SET ONE).

Spotify has agreed to supplement its responses to Interrogatories Nos. 2, 6, 9, 10 and 15. Spotify will serve supplemental responses next week.

Interrogatory No. 7: Plaintiffs have agreed to limit this interrogatory to request only the names of the people with primary responsibility in designing the layout and/or content of the portions of www.spotify.com in which Spotify disclosed the automatic renewal terms to subscribers. Spotify agrees to supplement its response with non-privileged information, subject to this limitation.

Interrogatory No. 8: Plaintiffs have agreed to limit this interrogatory to request only the names of the people with a primary role in Spotify's efforts to comply with California's Automatic Purchase Renewal Law ("APRL"), Cal. Bus. & Prof. Code Sec. 17600, *et seq.* Spotify agrees to supplement its response with non-privileged information, subject to this limitation.

Interrogatory No. 11:  This interrogatory seeks expert testimony.  Spotify agrees to supplement its response at the close of expert discovery.

Interrogatory No. 16:  Spotify has responded based on the information it has at this time, but agrees to supplement its response at the close of discovery.

## III.      SPOTIFY'S RESPONSES TO PLAINTIFFS' REQUESTS FOR PRODUCTION (SET ONE).

Requests for Production Nos. 3 and 16:  Mr. John Brophy is no longer a Spotify employee.  As a result, Spotify cannot determine the documents, if any, Mr. Brophy accessed but did not rely on when preparing his declaration.  Further, Spotify has agreed that it will no longer rely on Mr. Brophy's declaration for litigation in the trial court.[1]

Request for Production No. 7: Spotify has produced copies of the Terms and Conditions from the relevant time period.

---

[1] However, as I stated, the declaration will remain part of the record on the appeal to the Ninth Circuit of the Court's denial of Spotify's motion to compel arbitration.

4834-9295-5207v.2 0098755-000014

EXHIBIT A

Milstein Adelman Jackson Fairchild & Wade, LLP
LeonardMeyer LLP
April 21, 2017
Page 3

Requests for Production Nos. 11-12: Spotify has produced documents responsive to these requests.

Requests for Production Nos. 22-25: Spotify agrees to produce non-privileged, responsive documents during the Class Period in response to RFP Nos. 22 and 24.  To be clear, Spotify is not relying on advice of counsel to demonstrate its good faith.  Accordingly, communications with inside and outside counsel are not relevant to this request, and will not be produced or logged.

Requests No. 23 and 25 seek information pertaining to Spotify's initial decision to offer the Premium service via an automatically renewing subscription.   Plaintiffs represented during the meet and confer that these requests also bear upon the question of Spotify's good faith, but this misconstrues the statute.  The issue is not whether Spotify offered its services via an automatically renewing subscription—there is no dispute that it did.  Rather, the good faith inquiry centers on whether Spotify complied with the APRL in offering such services during the Class Period.  *See* Sec.17604(b) ("[i]f a business complies with the [APRL] in good faith, it shall not be subject to civil remedies.")  Thus, Spotify's long-ago decision to offer Premium services via an automatically renewing subscription is not relevant to any issue in the case, and discovery regarding that decision would be disproportionate to the needs of the case.  Furthermore, Spotify's decision to offer services on automatically renewing terms preceded the beginning of the Class Period, and thus any responsive documents would fall outside the time limitation that Plaintiffs have agreed to for other discovery requests.

Request for Production No. 26: this request is grossly overbroad, irrelevant, and disproportionate.  Every transaction in which a customer purchased Spotify Premium during the Class Period would be responsive to this request.  Further, Spotify has produced the text and format of its communications with customers in documentation reflecting the historical purchase path for Spotify Premium.

Request for Production No. 27: Spotify has produced SPTFY-Inglls-000120-153 responsive to this request.

Requests for Production Nos. 28-39: These overbroad requests are disproportionate to the needs of the case because Spotify is not contesting ascertainability or numerosity.[2] Notwithstanding Spotify's objections, Spotify will produce available information concerning Premium account sign-up and retention data in California during the Class Period.

---

[2] During the meet and confer, Plaintiffs indicated they would withdraw their requests seeking the names or any identifying information of putative class members at this time.

Milstein Adelman Jackson Fairchild & Wade, LLP
LeonardMeyer LLP
April 21, 2017
Page 4

Request for Production No. 42: As discussed, there are currently no applicable insurance coverage documents, but if Spotify's insurance coverage status changes in the future, it will produce any responsive documents.

Requests for Production Nos. 45-48: The information requested is not relevant because Plaintiffs cannot recover damages under the UCL, only restitution.  The requests are also disproportionate to the needs of the case, particularly prior to a decision on class certification. Further, the requests are overbroad because they seek information pertaining to sales to customers outside of California.  Plaintiffs cannot assert claims on behalf of users outside of California because the two California consumer protection statutes Plaintiffs invoke—the UCL, and B&P Code § 17602—govern only claims by California residents.  *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011); *Noll v. eBay*, 2013 U.S. Dist. LEXIS 76323, at *19 (N.D. Cal. 2013) ("the Legislature employed specific language in Section 17602 limiting recovery under Section 17600 et seq. to California consumers.")

Requests for Production Nos. 49-50: Plaintiffs have agreed to limit these requests to the settlement agreement in *Bleak v. Spotify USA, Inc.,* Case No. 3:13-cv-05653.  As I mentioned, the agreement is confidential and requires notification to plaintiff's counsel in the *Bleak* action before it can be released.  We also continue to believe that the agreement bears no relevance to this action.  However, Spotify has reached out to *Bleak*'s counsel to ascertain what information may be provided.

Request for Production No. 51: Spotify has produced documents responsive to this request.

Request for Production No. 56: The price for Spotify's basic Premium Subscription Service has remained $9.99 during the Class Period; accordingly, no documents responsive to this request exist.

Request for Production No. 57: This request seeks expert testimony.  Spotify agrees to supplement its response at the close of expert discovery.

//

//

EXHIBIT A

Milstein Adelman Jackson Fairchild & Wade, LLP
LeonardMeyer LLP
April 21, 2017
Page 5


      This letter is sent without waiver of any of Spotify's rights or remedies.

Very truly yours,

Davis Wright Tremaine LLP


*s/Scott R. Commerson*

Scott R. Commerson

cc:    Diana Palacios
       Joseph E. Addiego III

EXHIBIT A

**MILSTEIN**
**JACKSON**
**FAIRCHILD**
**& WADE**

10250 Constellation Boulevard
Fourteenth Floor
Los Angeles, CA 90067
T: (310) 396-9600 F: (310) 396-9635
www.mjfwlaw.com

March 21, 2017

<u>**VIA EMAIL AND U.S. MAIL**</u>

Joseph E. Addiego III
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111
Email: joeaddiego@dwt.com

Scott R. Commerson
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa St., Suite 2400
Los Angeles, California 90017
Email: scottcommerson@dwt.com

Dear Joe and Scott:

I am writing in regards to Defendant's March 3, 2017 Responses to Plaintiffs' First Special Interrogatories and Requests for the Production of Documents, and am requesting your availability to meet and confer regarding same. As a courtesy, a description of the issues Plaintiffs seek to address is provided below.

**I.      <u>Issues Affecting *Both* Sets of Discovery Responses</u>**

   **A.      Incorporation of General Objections**

Defendant improperly incorporates general boilerplate objections into each and every discovery response, regardless of whether they are applicable in that instance. "This practice obscures the extent to which [a party] is withholding information and does not satisfy the requirement[s]" under the Federal Rules. *Io Group, Inc. v. Veoh Networks, Inc.*, No. 06-3926, 2007 WL 1113800, at *1 (N.D. Cal. Apr. 13, 2007); *see also Lofton v. Verizon Wireless LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015).

Defendant must remove its general boilerplate objections and update its discovery responses to specify which objections apply to each response. This includes Defendant's objections to Plaintiffs' definitions.[1] Further, for every objection, Defendant must indicate whether information and/or documentation was withheld on the basis of that objection.[2]

---

[1] For example, Defendant objects to Plaintiffs' definition of "YOU" as including "persons or entities not under its direct control, such as persons or entities who were previously, but are no longer, associated with Spotify." Defendant must provide responsive documents under its possession, custody, or control, which may include information and documents possessed by

EXHIBIT B

March 21, 2017
Page 2 of 8

### B. Bifurcation

Defendant objects to Plaintiffs' requests on the basis that discovery ought to be bifurcated and the requests "seek information not relevant either to class certification issues or to Plaintiffs' individual claims." No bifurcation of discovery has occurred in this case; nor has Defendant moved the court for an order establishing same. In fact, to the contrary, at the September 29, 2016 hearing in the matter, Judge Alsup said that this matter was *not* bifurcated. Transcr. at 47:12. Accordingly, this objection is improper and must be removed.[3]

### C. Blanket Relevancy Objections

Blanket relevancy objections are not a basis upon which to withhold responsive information and/or documents. If Defendant is withholding and/or limiting its responses on the basis of relevance, it must at least define what it contends the relevant scope to be and respond to Plaintiffs' requests accordingly.[4]

### D. Boilerplate "Vagueness" and "Unlimited as to Time" Objections

In addition to specific objections with respect to the purported vagueness of certain terms, Defendant's responses contain numerous objections that a request is simply vague and unlimited as to time. Boilerplate, non-specific vagueness requests are improper. If Defendant is uncertain as to the time frame encompassed by Plaintiffs' requests, it should provide responsive information at least with respect to the time period it states is proper. In the meantime, the proper time frame at a minimum is from June 2012 to the present.

---

entities not under its direct control or previously associated with Defendant. Plaintiffs are unable to ascertain whether responsive information or documentation was withheld on this basis.

[2] For example, Plaintiffs cannot ascertain whether Defendant is withholding responsive information and/or documents based on Defendant's "third party privacy rights," "trade secrets," or "information in Plaintiffs' possession or otherwise available" objections. Given Plaintiffs' agreement to enter into a protective order, coupled with the size of this case, such objections are improper.

[3] In addition to the general objections, Defendant invokes this objection in its responses to the Requests for the Production of Documents by arguing the sought documents are not "need[ed] to resolve class certification issues." These objections should likewise be removed, and Defendant's responses should be supplemented accordingly.

[4] It is not a legal objection for Defendant to merely state, as it did in numerous interrogatory responses, that it "agrees to meet and confer with Plaintiffs' counsel regarding the relevance and scope of [the] interrogatory." *See, e.g., Benyamini v. Blackburn*, No. 13-205, 2014 WL 4795187, at *2 (E.D. Cal. Sept. 25, 2014) ("blanket relevancy objections do not meet Rule 33's specificity requirement").

EXHIBIT B

March 21, 2017
Page 3 of 8

### E.     Disproportionality and Burden Objections

Defendant's proportionality objections are baseless and should be removed. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Each one of Rule 26(b)(1)'s factors weighs against Defendant's assertion of disproportionality. This is a class action likely involving millions of class members against a sophisticated corporate entity with an estimated valuation in the billions of dollars.   The discovery requests (as noted below) are relevant to class certification, the merits of the case (and defenses thereto), and the calculation of restitutionary amounts. Defendant's disproportionality objections should be removed.

Similarly, even though the information and documents requested by Plaintiffs are undoubtedly available through an electronic search of Defendant's files, Defendant makes several objections as to a response being "burdensome" or relating to documents that are "impracticable to access." No showing has been made in this regard and we would like to depose the person who is making this determination.  Please give us his/her name. In any event, this is unlikely the case and as noted above, Defendant cannot meet its burden with respect to proportionality. Accordingly, these boilerplate objections should be removed, and Defendant's responses should be supplemented accordingly.

### F.     Failure to Designate Privilege and/or Provide Sufficient Information

When invoking privilege, Defendant does not designate which privilege or rule protecting disclosure on which it is relying. Rather, Defendant references "the attorney-client privilege, the work-product doctrine, the joint-defense privilege, or any other applicable privilege, doctrine, or immunity." Plaintiffs have no basis on which to evaluate Defendant's claim of privilege. Defendant must identify which privilege it is applying in each instance.

Further, "[a] party asserting the attorney-client privilege must identify specific communications and the basis for each claim of privilege [and] to assert the work product doctrine, a party must establish that the information or documents it seeks to withhold were prepared in anticipation of litigation." *Rogers v. Giurbino*, 288 F.R.D. 469, 487 (S.D. Cal. 2012) (compelling interrogatory responses) (citations omitted). Here, Defendant has failed to provide this information. Nor has Defendant provided a privilege log, where applicable. *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1147 (9th Cir. 2005) (failure to provide privilege log may result in waiver of privilege).

EXHIBIT B

March 21, 2017
Page 4 of 8

II.    **Defendant's Responses to Plaintiffs' First Special Interrogatories**

    A.    **Interrogatory No. 1**

Defendant objects to Interrogatory No. 1 on the basis of privilege. However, Interrogatory No. 1 does not seek the substance of attorney-client communications, but rather the identity of those persons answering interrogatories. Accordingly, this objection should be removed and Defendant must supplement its response.

    B.    **Relevancy and Scope Objections (Interrogatory Nos. 6, 7, 9)**

A number of interrogatory responses provide little or no information, along with a statement that Defendant will "meet and confer with Plaintiffs' counsel regarding the relevance and scope[.]"[5] This is plainly nonresponsive. Please provide what Defendant contends is the proper relevance and scope and supplement your response accordingly.

Further, Defendant's relevancy objections appear to be the basis for withholding information in response to Interrogatory Nos. 6, 7, and 9.  This information, which relates to the design and layout of Defendant's website, along with promotions aimed at inducing potential customers, are clearly relevant and/or likely to lead to the discovery of admissible evidence. Defendant has asserted time and time again that it complied with the APRL in good faith, and that the disclosures provided to its customers via its website were sufficient. This information is therefore relevant to both the merits of the case and Defendant's purported good faith defense.

    C.    **Interrogatory No. 8**

Defendant's response to Interrogatory No. 8 is inadequate and/or nonresponsive. Defendant's efforts to comply with the APRL is not limited to the wording of its disclosures, but also how and why the content and format of those particular disclosures were selected. It is Defendant, after all, that is asserting a good faith defense. Further, the interrogatory seeks information regarding all *persons* involved in such compliance efforts, which Defendant neither provides nor promises to provide with the production of business records. Defendant must supplement its response to this interrogatory.

    D.    **Failure to Timely Respond (Interrogatory Nos. 10, 15)**

Defendant failed to timely provide *any information whatsoever* in its response to Interrogatory Nos. 10 and 15. Rather, Defendant promises that it "is investigating" the matter and "will update" its response. Defendant must timely respond to Plaintiffs' interrogatory requests with the information that is available, and supplement its responses in the future. If Defendant has no facts or theories which support, for example, its tenth affirmative defense (Interrogatory No. 15), then it should state so.

---

[5] *See, e.g.,* Interrogatory Nos. 6, 7, 9.

EXHIBIT B

### E.     Interrogatory No. 11

Defendant's nineteenth affirmative defense proclaims that it is "entitled to an offset against any damages or refund that it may owe, in the amount of the value of the services that Plaintiffs or class members received." The burden as to the amount of Defendant's alleged offset lies with Defendant under its affirmative defense. Accordingly, Defendant must supplement this interrogatory with the amount of the offset and the information used in calculating same.

### F.     Interrogatory No. 16

Interrogatory No. 16 asks for Defendant's basis for its twentieth affirmative defense that "Plaintiffs' claims are not typical of claims by the putative class or subclasses, and/or are subject to unique defenses by Spotify." Defendant provides no information as to typicality in its response, and merely states its reasons why Plaintiffs should not recover on the merits. Defendant should supplement its response to state those facts supporting its twentieth affirmative defense.

## III.    Defendant's Responses to Plaintiffs' First Requests for the Production of Documents

### A.     Improper Vagueness Objections as to Certain Terms (RFPD Nos. 3, 7, 11, 12)

In addition to boilerplate non-specific vagueness objections, Defendant objects to various terms as vague and ambiguous. These include terms widely understood in the English language, such as "accessed," "contend," "purport," and "visual characteristics." Defendant is undoubtedly capable of understanding these terms, and should remove its objections and supplement its responses accordingly.

### B.     Personal Privacy Rights Objections (RFPD Nos. 5, 50)

Defendant has not articulated any "personal privacy right" that is a basis for withholding the production of documents. In any event, Plaintiffs have agreed to enter into a protective order. Accordingly, Defendants should remove this objection and produce responsive documents subject to a protective order. Until a protective order is entered, Plaintiffs will agree to treat produced documents as confidential.

### C.     Requests Regarding Defendant's Website, Disclosures, and/or Development Thereof (RFPD Nos. 11, 12, 16, 17, 49)

A number of Plaintiffs' discovery requests deal with the webpages and/or disclosures presented to consumers before, during, or after the process leading to APRL charges. Such requests include the webpages, drafts thereof, and process by which Spotify selected certain disclosures.   These requests are plainly relevant to the merits of Plaintiffs' case, as well as Defendant's asserted good faith defense. However, in response thereto, Defendant improperly limits the scope of its production to printouts of the terms and conditions (or certain websites).

EXHIBIT B

March 21, 2017
Page 6 of 8

Defendant is improperly limiting the scope of production, and should remove such limitation and supplement its responses accordingly.

> **D.      Requests Regarding the Identity, Number, and Usage Data of Class Members (California and Nationwide) (RFPD Nos. 13-15, 28-39, 43)**

A number of Plaintiffs' document requests regard the identity and number of class members. Defendant objects to a number of these requests as irrelevant and/or premature as the Court has not yet certified a class.

The number of putative class members in a nationwide class is obviously relevant not only for class certification purposes but for the calculation of restitutionary amounts. Accordingly, Defendant should supplement its responses and provide responsive documents.

With respect to the *identity* of class members, pertinent *dates* affecting same, and usage data, Plaintiffs are amenable at this stage to limiting production to documents sufficient to show what responsive information Defendant has in its possession with respect to how many class members, and Defendant's ability to access such information. Alternatively, Defendant may stipulate that certain contact information for class remembers is retained by Defendant.

> **E.      Requests Seeking Defendant's Policies, Procedures, and/or Practices with Respect to the APRs, Premium Subscription Service, etc. (RFPD Nos. 20-21)**

Several requests seek documents constituting, describing and/or summarizing Defendant's policies, procedures, and practices in various areas germane to this action. Defendant in turn objects that policies and procedures – a term widely understood in the business world – is vague or "unintelligible."

Obviously, Policy and Procedure Manuals (or similar documents) are relevant to this litigation, both with respect to the merits of Plaintiffs' case and Defendant's purported good-faith defense. Defendant should accordingly supplement its responses and provide responsive documents.

> **F.      Requests Regarding Defendant's Attempted APRL Compliance and/or Decisions Leading to the APR Policy (RFPD Nos. 22-27)**

A number of Plaintiffs' discovery requests deal with Defendant's attempts to comply with the APRL and/or Defendant's decisions as to why and how the APR would be applied against consumers. This information is plainly relevant not only to the merits of Plaintiffs' case but to Defendant's purported good-faith defense. In response to these requests, Defendant either withholds production on vagueness and burden grounds and/or arbitrarily limits the scope of production to the content of Spotify's website disclosures. Defendant is improperly limiting the scope of production, and should remove such limitation and supplement its responses accordingly.

EXHIBIT B

March 21, 2017
Page 7 of 8

### G.    RFPD No. 42

Defendant responds that it is "presently unaware of documents" responsive to Plaintiffs' request for "insurance policies…which could be used to satisfy any claim in this action." Defendant must be aware if it submitted a potential claim for review to its insurer. Please confirm whether or not this is the case. If so, the underlying insurance policy and associated documents would be responsive to this request.

### H.    RFPD No. 44

Defendant is withholding production comprising how its documents and electronic systems are organized. Such information is clearly relevant and moreover necessary for e-discovery practice.

### I.    Requests Regarding Revenue, Profit, and Pricing (RFPD Nos. 45, 46, 56, 57)

A number of Plaintiffs' requests deal with the revenue, profit, and/or pricing generated by Defendant with respect to the premium subscription service at issue in this case. Such information is relevant to Plaintiffs' calculation of restitutionary amounts under the UCL, as well as Defendant's alleged affirmative defense seeking an offset.[6] Accordingly, Defendant's refusal to provide responsive documents is improper.

### J.    Requests Regarding Defendant's Compensation of Artists and/or Music Labels (RFPD Nos. 47-48)

Similarly, Plaintiffs' discovery requests with respect to Defendant's compensation of artists and/or music labels may also be relevant to Plaintiffs' calculation of restitution under the UCL.

### K.    RFPD No. 50

Defendant refuses to provide documents pertaining to the *Bleak* lawsuit not available on the Court's ECF system. Given the *Bleak* suit similarly involved APRL claims, these documents are relevant to the merits of Plaintiffs' case and Defendant's purported good faith defense.

### L.    RFPD No. 51

In response to a request seeking the identity of persons and organizational structure possessing knowledge relevant to this action, Defendant has limited the scope of production to "documents sufficient to show the organization of its Payments Group." This does not fully respond to Plaintiffs' request. Plaintiffs' understanding of Defendant's corporate structure,

---

[6] RFPD No. 57 specifically seeks documents pertaining to Defendant's nineteenth affirmative defense (relating to an offset).

EXHIBIT B

March 21, 2017
Page 8 of 8

limited to those sections containing persons with relevant knowledge, is plainly relevant to this action and will assist in streamlining future discovery requests.

Please advise of your availability at the end of this week to discuss the aforementioned issues.

**MILSTEIN JACKSON
FAIRCHILD & WADE, LLP**

Gillian L. Wade
Sara D. Avila
Marc A. Castaneda

CC: Rick Meyer and John Killacky (via email only)

EXHIBIT B