**MILSTEIN
JACKSON
FAIRCHILD
& WADE**

10250 Constellation Boulevard
Fourteenth Floor
Los Angeles, CA 90067
T: (310) 396-9600 F: (310) 396-9635
www.mjfwlaw.com

May 1, 2017

**VIA ECF**

Re: *Ingalls, et. al. v. Spotify USA*, Case No. 3:16-cv-03533-WHA

Dear Judge Alsup:

Per this Court's April 28, 2017 Order (D.E. 68), Plaintiffs respond to Defendant Spotify USA, Inc.'s ("Spotify") April 26, 2017 discovery letter (D.E. 66).

1.       **Choice-of-Law Analysis for Absent Class Members is Premature.**

Courts routinely reject efforts to strike class allegations or limit putative nationwide class actions before the class certification stage. That is because choice-of-law analysis is a fact-based inquiry, requiring the development of a factual record. *See, e.g., In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012) (declining to strike allegations of national class, noting that choice-of-law should be decided at class certification stage); *see also Mullins v. Premier Nutrition Corp.,* No. 13-01271, 2016 WL 3440600, at *2 (N.D. Cal. June 20, 2016) ("district courts routinely require fact–and case-specific analysis to determine whether to apply California law to absent class members in other jurisdictions"); *Gold v. Lumber Liquidators, Inc.*, No. 14-05373, 2015 WL 7888906, at *5 (N.D. Cal. Nov. 30, 2015) (declining to dismiss national class allegation at motion to dismiss stage); V*alencia v. Volkswagen Group of Am. Inc.*, No. 15-887, 2015 WL 4760707, at *1 (N.D. Cal. Aug. 11, 2015) (choice-of-law analysis is "a deeply factual inquiry [that] is more appropriately addressed at the class certification stage, which was, incidentally, the posture of the *Mazza* action when it was appealed to the Ninth Circuit").

Spotify must provide information relating to Plaintiffs' national class allegations, so that this Court may engage in the "deeply factual [choice-of-law] inquiry" at the class certification stage. Such information is clearly discoverable based on the nationwide class allegations alleged in the operative complaint. *See* D.E. 49 (First Amended Complaint) at ¶ 45.

2.       **No Good Cause Exists to Protect Spotify From Inquiry Into Information Concerning Spotify's Non-California Consumers.**

Spotify does attempt to argue good cause exists "to protect [it] from annoyance, embarrassment, oppression, or undue expense[.]" Fed. R. Civ. P. 26(c).  Spotify has never argued that retrieving the data about its consumers on a national level is expensive or that it does not have the resources to procure this information. In fact, Spotify routinely touts the magnitude of its Premium Subscriber base and current boasts 50 million paid subscribers worldwide on its website. *See https://press.spotify.com/us/about/.*

Moreover, Spotify can readily retrieve the number of U.S. Premium Subscriptions purchased, automatically-renewed and cancelled since June 2012. In fact, Spotify has used such information in at least one other case in this District, in the context of CAFA removal. *See* D.E. 69 at 3

(citing the Declaration of Goran Sander, which identified the exact databases he used to calculate the number of users in 2013 by geography on a monthly and annual basis).

3.      **Spotify Has Stonewalled Discovery Related to its Decision-Making Process and Other Issues Pertinent to a Choice-of-Law Analysis.**

There is no dispute that Spotify's Terms and Conditions ("T&C") contain a California choice of law provision and forum-selection clause. Additionally, "'[i]n determining whether the UCL ... appl[ies] to non-California residents, courts consider where the defendant does business, whether the defendant's principal offices are located in California, where class members are located,[1] and the location from which [the relevant] decisions were made.'" *Warner v. Tinder Inc.,* 105 F. Supp. 3d 1083, 1096 (C.D. Cal. 2015) (quoting *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 917 (C.D. Cal. 2011).[2] Spotify has refused to respond to discovery on these issues, which include "the location from which [the relevant] decisions were made."

Specifically, Spotify's statement "plaintiffs *do not* and *cannot* allege the supposedly deficient disclosures emanated from California" is inapposite and underscores the relevance of Plaintiffs' served discovery. (D.E. 66 at 3) (emphasis added). With respect to the "*do not*", as noted above, choice-of-law analysis is inappropriate in a motion to dismiss context. Further, the FAC *does* allege: Spotify operates in California; derives substantial revenue in California; and employs T&C utilizing California's laws and federal courts.  D.E. 17 at ¶¶ 6, 10, 15, 16. Spotify also has employees and office locations in San Francisco and Los Angeles.[3]

Spotify's statement that Plaintiffs "*cannot*" allege where disclosures emanated from simply highlights the relevance of Plaintiffs' discovery requests. Spotify even attempts, in the context of a letter brief, to enter facts in the record with no evidentiary support, asserting that "members of Spotify's Payments team—who manage the purchase flow and disclosures for Spotify's Premium Service—are primarily located in New York and Stockholm."  (D.E. 66 at 3). Spotify cannot refuse to provide discovery on issues germane to choice-of-law analysis and attempt to create a record by way of unsubstantiated assertions in a legal brief.

4.      **Spotify's Argument that its Own Choice-of-Law Provision is Contrary to California Law Does Not Insulate Spotify From Disclosing Basic Nationwide Subscriber Data.**

A national class is consistent with Spotify's choice-of-law provision, which states that "the Agreements (and any non-contractual disputes / claims arising out of or in connection with them)

---

[1] It is not only possible, but likely that the percentage of Spotify's US customers is even higher than the percentage of California's share of the national population. This is also relevant to the *Toyota* inquiry.

[2] Spotify's relies on two distinguishable cases: *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011) and *15 Ice Cream Distribs. of Evansville, LLC v. Dreyer's Grand Ice Cream Inc.*, 2010 U.S. Dist. LEXIS 99930, at *8 (N.D. Cal. Sept. 10, 2010). Both were decided after a full-blown choice-of-law analysis. The *Sullivan* court limited its ruling to "the circumstances of [that] case," which were based on stipulated facts. In *15 Ice Cream*, a UCL action based on antitrust laws, the Ninth Circuit affirmed the opinion on other grounds, never reaching the issue of extraterritorial application of California law.

[3] *See* http://www.sfchronicle.com/business/bottomline/article/Spotify-moving-into-Warfield-building-4555216.php#src=fb (Spotify moving its N. California offices to three floors of the Warfield building).

are subject to the laws of [California]." T&C 24.1 (avail. at D.E. 17-1 at 18-19). Under California law, "[a] valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement' between the parties encompasses all causes of action arising from or related to that agreement[.]" *Nedlloyd Lines B.V. v. Super. Ct.*, 834 P.2d 1148, 1155 (Cal. 1992).

The law is far from "settled" on whether a choice-of-law provision can "supersede the UCL's presumption against extraterritoriality[.]" In support of its argument, Spotify cites just two non-binding, distinguishable District Court opinions in employment cases. *See* D.E. 66 at 3 (citing *O'Connor v. Uber Tech.'s*, 58 F. Supp. 3d 989, 1004 (N.D. Cal. Sept. 4, 2014) and *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1065 (N.D. Cal. Aug. 7, 2014)). Since then, at least one other court in this District has found that the UCL may be predicated on a California statute where the parties entered into a valid choice-of-law provision. See *Bohannon v. Facebook, Inc*., 82 F. Supp. 3d 1115 at 1123 (March 10, 2015) (certifying national class of Facebook users in action alleging violation of California's Family Code after supplemental briefing on a choice-of-law analysis).[4]

Like Facebook, Spotify here "selected California law to apply to interactions between itself and its users" and clearly intended California law to control. *Id*. at 1121-23.[5] Spotify, like Facebook, also "fails to articulate how application of California law would run contrary to [other] states' fundamental public policies, how any of those states have a materially greater interest than California in determination of this suit, or how those state laws would govern the dispute absent the parties' choice of California law." *Id*. Similarly, in *Cotter*, one of the reasons the Court declined to apply California's Labor Code to non-California Lyft drivers was the fact that at least two other states have laws more "worker protective" than California. *Cotter* at 1061.

5.    **Spotify Should be Compelled to Produce Documents and Information Concerning U.S. Customers Before the Rule 30(b)(6) Deposition.**

On April 28, 2017, Plaintiffs submitted their own discovery letter to Your Honor regarding Spotify's deficient discovery responses (D.E. 69). That letter raised issues directly related to the protective order Spotify seeks for its 30(b)(6) deposition: Spotify's refusal to provide documents and information related to the number of Spotify Premium Subscriptions were purchased, automatically-renewed and cancelled in the U.S. during the Class Period. *See* ECF 69-2 at 23-24 (Pl. RFPD Nos. 31-34).[6] If Spotify's request for a protective order is denied, Plaintiffs respectfully ask the Court to require Spotify to provide this data before the 30(b)(6) deposition.

Spotify's Motion should be denied in its entirety.

---

    [4] While Facebook is a California company, this does not mandate a different outcome here, as it was considered in the context of whether California has a substantial relationship to the parties' transaction.
    [5] Spotify's passing citations to *Mazza v. American Honda Motor Co*., 666 F. 3d 581, 590 (9th Cir. 2012) is unhelpful for these same reasons, as Spotify makes no attempt to identify which jurisdictions have purportedly "materially different consumer protection laws."
    [6] The meet-and-confer process has already resulted in Plaintiffs limiting the scope of a number of documents requests, such as those asking for certain financial data.

Respectfully Submitted,

**MILSTEIN JACKSON
FAIRCHILD & WADE, LLP**

 */s/ Sara D. Avila*
Sara D. Avila
Gillian L. Wade
Marc A. Castaneda
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067

Derek J. Meyer
**LEONARDMEYER LLP**
5900 Wilshire Boulevard, Suite 500
Los Angeles, CA 90036

M. Ryan Casey
**THE CASEY LAW FIRM, LLC**
20 NE Thompson Street
Portland, OR 97212

Counsel for Plaintiffs


cc:     Defendant's counsel