

Suite 800
505 Montgomery Street
San Francisco, CA  94111-6533

**Joseph E. Addiego III**
(415) 276-6515 tel
(415) 276-6599 fax

joeaddiego@dwt.com

May 2, 2017

**VIA ECF**

Re:     *Ingalls, et al. v. Spotify USA*, Case No. 3:16-cv-03533-WHA

Dear Judge Alsup:

Per the Court's May 1, 2017 Order, defendant Spotify USA Inc. ("Spotify") provides this response to plaintiffs Gregory Ingalls and Tony Hong discovery letter brief.  Dkt. Nos. 69, 70.

This is a putative class action in which Plaintiffs allege Spotify's disclosures to customers in connection with the purchase of Spotify's Premium music service violated California's Automatic Purchase Renewal Law, Cal. B&P Code § 17602 ("APRL").[1]  The scope of the APRL is limited and primarily requires the autorenew terms be disclosed clearly and conspicuously.

**Plaintiffs Failed To Meet and Confer Regarding Their "Disputes."**   Spotify is concerned Plaintiffs' letter covers issues that were *not* a focus of the parties' two lengthy meet-and-confer calls and makes assertions that have never been discussed, while at the same time misrepresenting the substantial information Spotify has agreed to produce following those discussions.  And when Spotify attempted to resolve Plaintiffs' premature disputes by proposing a meet and confer call on May 2, mere minutes before that call, Plaintiff sent a letter containing *additional* detailed demands never before raised in prior meet and confers and not included in Plaintiffs' discovery filings.  Spotify is working diligently to consider and respond to these new demands but requests additional time prior to any hearing.

**Plaintiffs Mischaracterize Spotify's Production**.  Plaintiffs also inaccurately dismiss Spotify's substantial production efforts, alleging that Defendants have produced only a "summary of changes to the Web site."  To the contrary, Spotify has gone to great lengths to compile and produced documents comprehensively reflecting all changes to Spotify's customer purchase pages and email receipts during the Class Period.  Of course, the Web site's content is precisely what the APRL covers, and these documents comprise the core of the relevant discovery in this matter.  Plaintiffs' contention Spotify failed to produce documents relating to the "development" of Spotify's automatic purchase renewal policy ignores this information altogether.[2]

While Defendants believe Plaintiffs' complaints are premature and inaccurate, Defendants nevertheless respond to each in full as follows:

---

[1] Plaintiffs also allege the supposed APRL violation as the predicate for a claim under California's Unfair Competition Law, Cal. B&P Code § 17200 ("UCL").

[2] Plaintiffs' characterization of Spotify's production of highly relevant documents is questionable considering Plaintiffs' refusal to identify any objective deficiencies in Spotify's disclosures.

Anchorage | New York | Seattle
Bellevue | Portland | Shanghai
Los Angeles | San Francisco | Washington, D.C.

www.dwt.com

May 2, 2017
Page 2

1.   **Customer communications and complaints regarding automatic renewals.**

Request No. 26 demands *all communications* with customers discussing "the automatic renewal offer terms and/or any automatic payment for the Premium Subscription Service" during the Class Period.  Because Spotify discloses its automatic renewal terms with every purchase, this overbroad request covers *every* purchase by *every* Spotify Premium Customer.  Spotify has already provided exemplars of the Web pages and emails customers who signed up for Spotify Premium would have seen during the Class Period.  Spotify has diligently attempted to understand and narrow this request and already agreed to produce certain refund data. Spotify represented in written and telephonic meet and confers on May 1 and 2, respectively, it would expand its search for additional responsive documents.

Plaintiffs also assert in conclusory fashion their request "include[s] but [is] not limited to customer complaints and inquiries."  But, Plaintiffs never focused on this specific issue until very recent meet and confer.  And, as Spotify has explained, customer complaints and inquiries are not organized in an easily recoverable or accessible fashion.  Plaintiffs state without any basis that Spotify "asks customers why they are unsubscribing and retains their answers."  In fact, while Spotify may have requested this information from its users upon cancellation, Spotify did not start tracking and aggregating such information until *last month*—which plaintiffs would have known had they raised this issue during the meet-and confer.[3]

2.   **Documents regarding the "development" of Spotify's automatic renewal policy.**

Contrary to plaintiffs' assertion, Spotify already produced documents showing the development of its automatic renewal policy.  Specifically, Spotify provided detailed information showing the historic changes to the text and format of its Web site and email disclosures across the Class Period, including regarding the automatic renewal term of a Spotify Premium subscription.  Additionally, Spotify has searched for and produced non-privileged email communications responsive to Requests No. 22 and 24.  While Spotify continues to search for documents in response to Plaintiff's letter, those documents are the only responsive non-privileged documents Spotify has identified to date.  Spotify's counsel also has repeatedly explained to plaintiffs that Spotify is not relying on advice of counsel to show good faith, Spotify is not waiving attorney-client privilege, and privileged communications with counsel regarding the legal disclosures will not be produced.

Further, Requests No. 23 and 25 seek information pertaining to Spotify's *initial* decision to offer Spotify Premium via an automatically renewing subscription.  This information is not relevant, and discovery regarding that decision would be disproportionate to the needs of the case.  As Spotify explained during meet and confer, there is no dispute Spotify has offered its services via automatically renewing subscription since before the beginning of the Class Period.  Rather, the good faith inquiry centers on whether Spotify complied with the APRL in offering such services *during* the Class Period. *See* Sec.17604(b) ("[i]f a business complies with the [APRL] in good

---

[3] To the extent Spotify must produce any customer communications or complaints from California consumers regarding the automatic renewals, any customer-identifying information must be redacted.  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351-54 (1978).

faith, it shall not be subject to civil remedies.")  Indeed, any responsive documents would fall outside the time limitation to which Plaintiffs have agreed for other discovery requests.

3. **Documents regarding sales and the number of auto-renewed customers.**

In its meet and confer letter dated April 21, 2017, Spotify agreed to produce available information concerning Premium account sign-up and retention data in California during the Class Period responsive to Requests Nos. 28-39.  Spotify has diligently searched for this information and produced it on May 1, 2017.  As a result, Plaintiffs' discovery dispute as to these requests is moot.

For Requests Nos. 45-46, plaintiffs seek all financial statements related to Spotify's revenue and expenses related to Spotify Premium. This information is irrelevant and disproportionate, particularly considering the limited remedies available in this case.  As discussed above, Plaintiffs allege two claims under the UCL and APRL. Accordingly, Plaintiffs would only be entitled to, *at most*, restitution and injunctive relief.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144 (2003) ("U]nder the UCL, '[p]revailing plaintiffs are generally limited to injunctive relief and restitution.'")  Plaintiffs implicitly acknowledge this in their letter brief by now claiming the information requested is relevant to Plaintiffs' request for restitution. (Dkt. No. 69, at 3).  However, Plaintiffs' request for "revenue" information goes far beyond information relevant to their restitution claim  Dkt. No. 69-1.  Furthermore, Spotify has stipulated it will not contest numerosity.  Nevertheless, in the spirit of compromise Spotify will produce certain revenue data to the extent it is available regarding Spotify Premium Subscribers in California during the class period.

Finally, Plaintiffs inappropriately seek information regarding sales to customers outside of California, even though the ARPL and UCL govern only claims by California residents.  In addition to the reasons stated in Spotify's letter brief (Dkt. No. 66), Plaintiffs are not entitled to information regarding non-California residents because: (1) Plaintiffs' response letter (Dkt. 71) ignores the express language of the ARPL that limits its application only to customers "in this state"; (2) categories 6 and 7 of their deposition notice request a deponent to testify regarding the number of subscriptions purchased/renewed/canceled/refunded, and the "details surrounding the number of customers who re-subscribed after cancellation", neither of which speak to whether Spotify's conduct emanated from California (*see Gross v. Symantec Corp*, 2012 U.S. Dist. LEXIS 107356, *27-28 (N.D. Cal. 2012)); and (3) *Bohannon v. Facebook*, 82 F. Supp. 3d 1115 (N.D. Cal. 2015) is inapposite as it did not involve an ARPL or a UCL claim. Spotify offered to produce discovery regarding non-California Premium subscribers in the event the Court certifies a nationwide class, but Plaintiffs refused to so stipulate.

Respectfully submitted,

*/s/ Joseph E. Addiego III*

Joseph E. Addiego III
Counsel for Defendant Spotify USA Inc.