1

**MILSTEIN JACKSON**
**FAIRCHILD & WADE, LLP**

2

Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com

3

Sara D. Avila, State Bar No. 263213
savila@mjfwlaw.com

4

Marc A. Castaneda, State Bar No. 299001
mcastaneda@mjfwlaw.com

5

10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067

6

Tel: (310) 396-9600
Fax: (310) 396-9635

7

8

**LEONARDMEYER LLP**
Derek J. Meyer, State Bar No. 278346

9

rmeyer@leonardmeyerllp.com
5900 Wilshire Boulevard, Suite 500

10

Los Angeles, CA 90036
Tel: (310) 220-0331

11

**THE CASEY LAW FIRM, LLC**
M. Ryan Casey, *pro hac vice*

12

ryan@rcaseylaw.com
20 NE Thompson Street

13

Portland, OR 97212
Tel: (503) 928-7611

14

15

Attorneys for Plaintiff and the Class

16

**UNITED STATES DISTRICT COURT**

17

**NORTHERN DISTRICT OF CALIFORNIA**

18

GREGORY   INGALLS   and   TONY   HONG,
individually and on behalf of all others similarly

19

situated,

| | |
|---|---|
| Case No. CV 3:16-cv-3533 |

20

Plaintiffs,

21

v.

22

SPOTIFY USA, INC., a Delaware corporation;
and DOES 1 – 10, inclusive,

23

24

Defendants.

**PLAINTIFF'S NOTICE OF MOTION AND**
**MOTION FOR CLASS CERTIFICATION**

Hearing Date:    June 29, 2017
Hearing Time:    8:00 a.m.
Courtroom:    Courtroom 8- 19th Floor

**REDACTED VERSION**

25

//

26

//

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on June 29, 2017 at 8:00 a.m., or on such date as may be specified by the Court, in the Courtroom of the Honorable William Alsup, United States District Court for the Northern District of California, San Francisco Courthouse, Courtroom 8 - 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Gregory Ingalls ("Plaintiff"), through his undersigned counsel, will and hereby does respectfully moves for class certification. Plaintiff seeks to certify the following Class:

> All natural persons in California who, since June 23, 2012, signed up for Spotify Premium on spotify.com through either a '3 months for a reduced price' or '30-day free trial' offer, selected a credit or debit card payment method, and whose credit or debit card was subsequently charged $9.99 after the expiration of the offer term.

Plaintiff further seeks to certify the following Sub-Class:

> All natural persons in California who, since June 23, 2012, signed up for Spotify Premium on spotify.com through either a '3 months for a reduced price' or '30-day free trial' offer, selected a credit or debit card payment method, and whose credit or debit card was subsequently charged $9.99 at least twice after the expiration of the offer term, who subsequently cancelled their subscription.

(Collectively, the "Class" or "Classes.") Excluded from the Classes are: (a) all judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Defendant releases of all their claims for all of their Class claims; (d) all counsel for Plaintiff; and (e) Defendant's employees, officers, directors, agents, and representatives and their family members.[1]

---

[1] The proposed Class excludes individuals who signed up for Spotify Premium through a non-credit/debit card payment provider (such as PayPal or Boku). Plaintiff Tony Hong used PayPal to

Continued on the next page

1
2

This motion is brought pursuant to Fed. R. Civ. P. 23(a), (b)(3) and, in the alternative, Rules 23 (a) and 23(b)(2) on grounds that class certification is proper.

3
4
5
6
7
8
9
10

*First*, each of the four requirements under Rule 23(a) are met. The evidence demonstrates there are more than ███████ potential class members, thus Rule 23(a)(1)'s numerosity requirement is satisfied. *See* Joint Declaration of Plaintiff's Counsel in Support of Plaintiff's Motion for Class Certification ("Joint Decl."), filed concurrently herewith. Additionally, although not a requirement under Rule 23, the Class is "ascertainable" in that there is an administratively feasible way to identify members of the Class using Defendant Spotify USA, Inc.'s ("Spotify" or "Defendant") own subscriber data sources and records and additional billing information is available from its payment processor. Spotify has also represented that it will not contest numerosity or ascertainability.

11
12
13
14
15
16
17
18

Rule 23(a)(2)'s commonality requirement is readily satisfied because the class members' claims depend upon a common contention which is capable of class-wide resolution. Namely, whether Spotify violated certain provisions of California's Automatic Purchase Renewal Law ("APRL"), Cal. Bus. & Prof. C. §§ 17600, *et seq.* need only be determined once as to Plaintiff and members of the Class. Likewise, whether Spotify violated the "unlawful" prong of California's Unfair Competition law ("UCL"), Cal. Bus. & Prof. C. §§ 17200, *et seq.* is a common contention capable of class-wide resolution. Proof of the elements of the APRL and UCL is necessarily common because it will focus upon Spotify's uniform omission of required information.

19
20
21
22

Further, Plaintiff's claims are typical of the claims of members of the proposed Class—all arise from the same injury, same conduct and the same standardized disclosures by Defendant: Spotify's uniform omission of certain information in violation of the APRL (and by extension, the UCL). Accordingly, Plaintiff satisfies Rule 23(a)(3).

23
24
25

Finally, the adequacy of representation requirement is also satisfied. Plaintiff and his counsel do not have conflicts of interest with any members of the proposed Class. Plaintiff and his counsel will continue to prosecute the action vigorously on behalf of the Class. Proposed Class Counsel—Gillian L.

26

---

Continued from the previous page

27
28

signup for Spotify Premium and is not a member of the proposed Class and thus does not seek to be appointed a Class Representative.

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Wade, Sara D. Avila and Marc A. Castaneda from the law firm Milstein Jackson Fairchild & Wade LLP, Derek J. Meyer of LeonardMeyer LLP and M. Ryan Casey of The Casey Law Firm LLC—also satisfy Fed. R. Civ. P. Rule 23(g).

*Second*, class certification is proper under Fed. R. Civ. P. Rule 23(b)(3). Regarding both causes of action alleged in the First Amended Complaint, common issues predominate over any individual questions. Moreover, under the circumstances, a class action is the superior method of adjudication.

*Third*, in the alternative, Plaintiff seeks certification under Fed. R. Civ. P. Rule 23(b)(2). Spotify has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

Accordingly, Plaintiff respectfully moves for an order: (1) allowing this action to be maintained as a class action pursuant to Rule 23(a); (2) certifying a class under Rule 23(a) and Rule 23(b)(3), or, in the alternative under Rule 23(a) and Rule 23(b)(2); (3) appointing Plaintiff Gregory Ingalls as the Class Representative; (4) appointing Plaintiff's counsel—Gillian L. Wade, Sara D. Avila, Marc A. Castaneda, Derek J. Meyer and M. Ryan Casey—as Class Counsel.

This Motion is based on this Notice of Motion, the concurrently-filed Memorandum of Points and Authorities in support of this motion; the concurrently-filed Joint Declaration of Plaintiff's Counsel in support of this motion; Plaintiff's anticipated Reply to any Opposition filed by Defendant and all of the pleadings and papers on file in this action, and as such other and further evidence as may be presented to the Court at the time of the hearing.

Dated: May 25, 2017

MILSTEIN JACKSON
FAIRCHILD & WADE, LLP


By:  */s/ Gillian L. Wade*              
Gillian L. Wade

Derek J. Meyer
LEONARDMEYER LLP

M. Ryan Casey
THE CASEY LAW FIRM, LLC

*Counsel for Plaintiff Gregory Ingalls*

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

# **TABLE OF CONTENTS**

I.   Issue to be Decided .................................................................................................... 1

II.  Introduction ............................................................................................................... 1

III. Relevant Factual Background ..................................................................................... 1

    A.   California's Legal Requirements for Automatic Purchase Renewals ....................... 1

    B.   Spotify's Premium Music Streaming Subscription .................................................. 2

    C.   Defendant's Mechanism for Providing Pre-Purchase AROT Disclosures to Class
        Members is Identical during the Class Period ......................................................... 3

    D.   Defendant's Process for Providing Post-Purchase AROT Disclosures to Class
        Members is Identical during the Class Period ......................................................... 5

    E.   Spotify's APRL and UCL Violations are Class-wide and Subject to Common
        Proof ...................................................................................................................... 5

        1.   Failure to Obtain Affirmative Consent to the Subscription Agreement ............ 5

        2.   Failure to *Clearly and Conspicuously* Disclose that the Recurring Charge
            Would be *Automatically Charged to One's Credit Card* .................................. 7

        3.   Failure to Disclose Spotify May Change the Amount of the Recurring
            Charge ............................................................................................................ 8

        4.   Failure to Provide an Acknowledgment Containing the Cancellation Policy ... 8

    F.   The Typical Experience of Proposed Class Representative Gregory Ingalls ............ 9

    G.   Spotify's Retention of and/or Access to Customer Information ............................. 10

    H.   Plaintiff Seeks Restitution and Injunctive Relief .................................................. 11

IV.  Class Certification is Proper ..................................................................................... 12

    A.   Proposed Class Definition ..................................................................................... 12

    B.   Legal Standard ...................................................................................................... 12

    C.   Class Certification is Appropriate Under Rule 23(a) ............................................ 13

        1.   There is No Dispute that the Proposed Class is Numerous and
            Ascertainable .................................................................................................. 5

**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

2.  Plaintiff's Claims Present Common Issues of Law and Fact .......................... 14

3.  Plaintiff's Claims are Typical of those of the Classes .................................... 16

    a.  Neither Plaintiff Nor His Counsel Have Any Conflict of Interest with the Proposed Classes ................................................................................. 17

    b.  Plaintiff and His Counsel will Vigorously Prosecute this Action ........... 18

        i.  Mr. Ingalls is an Adequate Class Representative ............................ 18

        ii.  Proposed Class Counsel are Qualified, Experienced and Have the Resources to Vigorously Prosecute this Action .............................. 18

D.  Class Certification is Appropriate Under Rule 23(b)(3) ......................................... 19

    1.  Common Issues of Law or Fact Predominate ................................................... 19

        a.  Spotify's APRL Violations are Uniform for all Class Members ............. 19

        b.  Spotify's APRL Violations Constitute Per Se Violations of the UCL .... 19

        c.  Relief Can be Determined on a Class-Wide Basis .................................. 20

            i.  Injunctive Relief Will be the Same for the Whole Class ................. 20

            ii.  Restitution Can be Calculated on a Class-Wide Basis .................... 21

    2.  Class Treatment is Superior to the Other Adjudication Methods .................... 22

    3.  Plaintiff's Proposed Trial Plan ....................................................................... 24

E.  Alternatively, Class Certification is Appropriate Under Rule 23(b)(2) ................. 25

V.  Conclusion ................................................................................................................... 25

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abdullah v. U.S. Sec. Ass., Inc.*
731 F.3d 952 (9th Cir. 2013) ................................................................ 12

*Amchem Prods., Inc. v. Windsor*
521 U.S. 591 (1997) ............................................................................ 19

*Amgen Inc. v. Conn. Ret. & Plans & Tr. Funds*
133 S. Ct. 1184 (2013) ................................................................... 13, 19

*Arrendondo v. Delano Farms Co.*
2011 U.S. Dist. LEXIS 44134 (E.D. Cal. Apr. 18, 2011) ...................... 13

*Astiana v. Kashi Co.*
291 F.R.D. 493 (C.D. Cal. Jul. 30, 2013) ............................................. 22

*Blackie v. Barrack*
524 F.2d 891 (9th Cir. 1975) ................................................................ 13

*Briseno v. ConAgra Foods, Inc.*
844 F.3d 112 (9th Cir. 2017) .......................................................... 14, 23

*Bruno v. Quten Research Inst., LLC*
280 F.R.D. 524 (C.D. Cal. Nov. 14, 2011) ........................................... 10

*Carnegie v. Household Int'l., Inc.*
376 F.3d 656 (7th Cir. 2004) ................................................................ 23

*Chavez v. Blue Sky Natural Beverage Co.*
268 F.R.D. 365 (N.D. Cal. 2010) ......................................................... 21

*Comcast Corp. v. Behrend*
133 S. Ct. 1426 (2013) ......................................................................... 21

*Danjaq LLC v. Sony Corp.*
263 F. 3d 942 (9th Cir. 2001) ............................................................... 24

*Ellis v. Costco Wholesale Corp.*
657 F.3d 970 (9th Cir. 2011) ................................................................ 14

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998) ................................................... 14, 16, 19

*Hartless v. Clorox Co.*
2007 U.S. Dist. LEXIS 81686 (S.D. Cal. Nov. 2, 2007) ....................... 20

*Hauk v. JP Morgan Chase Bank U.S.*
   552 F.3d 1114 (9th Cir. 2009) ................................................................................. 20

*In re Graphics Processing Units Litig.*
   253 F.R.D. 478 (N.D. Cal. 2008) ............................................................................ 17

*Kissel v. Code 42 Software, Inc.*
   2016 WL 7647691 (C.D. Cal. Apr. 14, 2016) ................................................... 2, 11

*Kumar v. Salov N. Am. Corp.*
   2016 U.S. Dist. LEXIS 92374 (N.D. Cal. Jul. 15, 2016) ........................................ 17

*Lee v. Pep Boys-Manny Moe & Jack*
   2015 U.S. Dist. LEXIS 171912 (N.D. Cal. Dec. 23, 2015).................................... 13

*Lerwill v. Inflight Motion Pictures, Inc.*
   582 F.2d 507 (9th Cir. 1978) ................................................................................. 17

*Lozano v. AT & T Wireless Services, Inc.*
   504 F.3d 718 (9th Cir. 2007) ................................................................................. 16

*Mazza v. Am. Honda Motor Co., Inc.*
   666 F.3d 581 (9th Cir. 2012) ................................................................................. 12

*Mendez v. C-Two Grp., Inc.*
   2015 U.S. Dist. LEXIS 165780 (N.D. Cal. Dec. 10, 2015).................................... 17

*Mullins v. Premier Nutrition Corp.* (N.D. Cal. Apr. 15, 2016)
   2016 WL 1535057 .................................................................................................. 21

*Okura & Co. (America), Inc. v. Careau Group*
   783 F. Supp. 482 (C.D. Cal. 1991) ....................................................................... 24

*Pulaski & Middleman, LLC v. Google, Inc.*
   802 F. 3d 979 (9th Cir. 2015) ................................................................................ 21

*Rannis v. Recchia*
   380 F. App'x 646 (9th Cir. 2010) .......................................................................... 13

*Rodriguez v. Hayes*
   591 F.3d 1105 (9th Cir. 2010) ....................................................................14, 16, 25

*Spann v. J.C. Penney Corp.* (C.D. Cal. March 23, 2015)
   2015 U.S. Dist. LEXIS 42545 ............................................................................... 20

*Staton v. Boeing Co.* (9th Cir. 2003)
   327 F.3d 938 ......................................................................................................... 13

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

*Stearns v. Ticketmaster Corp.*
    655 F.3d 1013 (9th Cir. 2011) ............................................................... 10

*Tetsuo Akaosugi v. Benihana Nat'l Corp.*
    2012 U.S. Dist. LEXIS 65825 (N.D. Cal. May 10, 2012) ........................ 18

*United Steel, Paper & Forestry, Rubber, Manufacturing Energy, Allied Industrial & Service Workers Int'l Union v. ConocoPhillips Co.*
    593 F.3d 802, 809 (9th Cir. 2010) ......................................................... 13

*Valentino v. Carter-Wallace*
    97 F.3d 1227 (9th Cir. 1996) ................................................................. 23

*Wal-Mart Stores, Inc. v. Dukes*
    564 U.S. 338 (2011) ............................................................................... 14

*Walters v. Reno*
    145 F.3d 1032 (9th Cir. 1998) ............................................................... 25

*Westways World Travel, Inc. v. AMR Corp.*
    218 F.R.D. 223 (C.D. Cal. July 9, 2003) ............................................... 13

*Yahoo Mail Litig.*
    308 F. R. D. 577 (N.D. Cal. 2015) ......................................................... 25

*Zeisel v. Diamond Foods, Inc.*
    2011 U.S. Dist. LEXIS 60608 (N.D. Cal. June 8, 2011) ........................ 17

*Zinser v. Accufix Research Inst., Inc.*
    253 F.3d 1180 (9th Cir. 2001) ............................................................... 23


## STATE CASES

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*
    20 Cal. 4th 163 (1999) ........................................................................... 19

*Colgan v. Leatherman Tool Grp., Inc.*
    135 Cal. App. 4th 663 (2006) ................................................................ 21

*Cortez v. Purolator Air Filtration Prods. Co.*
    23 Cal. 4th 163 (2000) ........................................................................... 22

*Hewlett v. Squaw Valley Ski Corp.*
    54 Cal. App. 4th 499 (1997) .................................................................. 20

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

*Hodge v. Sup. Ct.*
    145 Cal.4th 278 (2006) ........................................................................................ 24

*In re Vioxx Class Cases*
    180 Cal. App. 4th 116 (2009) ............................................................................. 20

*Kasky v. Nike, Inc.*
    27 Cal. 4th 939 (2002) ........................................................................................ 20

**<u>FEDERAL STATUTES</u>**

Fed. R. Civ. P. Rule 23 ............................................................................................. *passim*

**<u>STATE STATUTES</u>**

Cal. Bus. & Prof. C. §§ 17200 ......................................................................................... 1

Cal. Bus. & Prof. C. § 17203 .................................................................................. 20, 21

Cal. Bus. & Prof. C. §§ 17600 .............................................................................. 1, 2, 7

Cal. Bus. & Prof. C. § 17601 .................................................................................. *passim*

Cal. Bus. & Prof. C. § 17602 .................................................................................. *passim*

Cal. Bus. & Prof. C. § 17604 .................................................................................. 20, 24

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.      Issue to be Decided**

Whether Plaintiff Gregory Ingalls' ("Plaintiff") claims satisfy the requirements for class certification under Fed. R. Civ. P. Rule 23(a) and (b)(3), or, in the alternative, Rule 23(b)(2).

**II.     Introduction**

The question presented at class certification is not whether Defendant Spotify USA, Inc. failed to properly disclose the terms of its automatic-renewal policy for its Premium music streaming subscription (which it did fail to do). The question is whether Mr. Ingalls can present his case on a class-wide basis using common evidence that will elicit common answers. He can. The case can essentially be resolved by considering whether Spotify's relevant pre-purchase and post-purchase disclosures satisfied California's Automatic Renewal Policy Law, Cal. Bus. & Prof. C. §§ 17600, *et seq*. (APRL). This can be answered "yes" by the evaluation of common evidence, including Spotify's uniform process for providing its auto-renew disclosures, Spotify's internal documents and user data and testimony from Plaintiff and Spotify's company witnesses. Plaintiff's claim that Spotify's APRL violations are per se violations of the "unlawful" prong of California's Unfair Competition Law, Cal. Bus. & Prof. C. §§ 17200, *et seq*. ( "UCL") can likewise be decided once as to Plaintiff and the Class.

If the trier of fact—here the Court, as the claims are equitable and will be tried to the bench—determines Spotify violated the APRL and/or UCL, it can then easily determine the measure of restitution and/or issue an injunction. Plaintiff's restitution model is consistent with his theory of liability: refund those monies to which Spotify had no right due to its APRL violations (i.e. the first $9.99 monthly subscription charge and, additionally, a portion of the monthly subscription charge for those who cancelled the service). Given the subscription price was $9.99/month for all Class Members during the entire Class Period, restitution is capable of measurement on a class-wide basis.

Accordingly, based on the following, Plaintiff respectfully requests an order certifying this action under Fed. R. Civ. P. Rules 23(a) and (b)(3), or, in the alternative, under Rules 23(a) and (b)(2).

**III.    Relevant Factual Background**

**A.      California's Legal Requirements for Automatic Purchase Renewals**

The APRL was passed with the intent of ending, *inter alia*, "the practice of ongoing charging of

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." Cal. Bus. & Prof. C. § 17600. The APRL sought to prevent "certain businesses, especially those offering…potentially continuous services [from luring] consumers into signing up for 'automatic renewals' without the consumer's full knowledge or consent…by requiring clear disclosures and affirmative acts of consumer consent." Joint Declaration of Plaintiff's Counsel ("Joint Decl."), ¶ 2, Ex. A [Aug. 20, 2009 Senate Bill Analysis][2] at 2. As noted by the legislature, the then "'[c]urrent consumer protection statutes [d]o not address automatic renewal clauses or provisions in subscriptions or purchasing agreements…' The A[P]RL was therefore 'intended to close this gap in the law.'" *Kissel v. Code 42 Software, Inc.*, No. 15-1936, 2016 WL 7647691, at *5 (C.D. Cal. Apr. 14, 2016) (quoting legislative history).

The APRL provides clear and distinct requirements with respect to the 'what,[3] when,[4] where,[5] and how'[6] of both pre-purchase and post-purchase disclosures. Further, the law forbids businesses to charge a consumer's credit card "without first obtaining the consumer's affirmative consent" to the agreement containing the required disclosures. Cal. Bus. & Prof. C. § 17602(a)(2).

**B.     Spotify's Premium Music Streaming Subscription**

Spotify is an online music streaming service that allows its users ("consumers" or "users") to stream music, and its 2015 reported revenues exceeded $2.1 billion (the 2016 revenues have not been

---

[2] Subsequent references to exhibits the Joint Declaration will simply cite the exhibit letter.

[3] Businesses must disclose, *inter alia*, the following "automatic renewal offer terms" (hereafter, "AROTs"): that subscriptions will continue until the consumer cancels, a description of the cancellation policy, the recurring charges that will be automatically charged to a payment method, the amount the charge may change, the length of the automatic renewal term, and the minimum purchase obligation. Cal. Bus. & Prof. C. § 17601(b). Post-purchase disclosures must *additionally* include the full cancellation policy, information on how to cancel, and a method for cancellation (telephone, e-mail, postal address, or another timely and easy-to-use method). *Id.* at §§ 17602(a)(3) and 17602(b).

[4] The disclosures must be made "before the subscription or purchasing agreement is fulfilled" and additionally as part of a post-purchase "acknowledgment." *Id.* at §§ 17602(a)(1) and 17602(a)(3).

[5] The required disclosures must be made "in visual proximity…to the request for consent to the offer." Cal. Bus. & Prof. C. § 17602(a)(1).

[6] Disclosures must be "clear and conspicuous," which is defined as "larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." *Id.* at § 17601(c).

publicly reported). As of December 2016, Spotify had over ▮▮▮▮ paid subscribers in California. Joint Decl., ¶ 3, Ex. B [Defendant's Document Production], at SPTFY-Inglls-000339-340.

In addition to a free version, Spotify offers a paid premium subscription service ("Spotify Premium" or "SP").[7] For $9.99 / month, Spotify Premium offers additional functionality such as no advertising interruption or the ability to stream music offline. Joint Decl., ¶ 4, Ex. C [Def.'s Amended Responses to Plaintiffs' Interrogatories], at 12-13. During the Class Period, approximately ▮▮▮▮ individuals in California signed up for Spotify Premium. Of those, approximately ▮▮▮▮ had their payment method charged automatically at least once at the end of the initial subscription term. Further, of those that were charged at least twice, ▮▮▮▮▮▮ ended up cancelling their subscription. Joint Decl., ¶¶ 5, 6, Ex. D [Def.'s Spreadsheet, *as modified by Plaintiff's counsel*, SPTFY-Inglls-035295], Ex. E [May 5, 2017 30(b)(6) Deposition of James Whitehead], at 26:23-29:22, 31:23-35:11, 52:11-54:21, 59:23-62:17.

## C.   Defendant's Mechanism for Providing Pre-Purchase AROT Disclosures to Class Members is Identical during the Class Period

During the Class Period, Defendant utilized a sign-up webpage where the "payment details collection" occurred for all Class Members. Regardless of what webpages preceded this page, all Class Members purchasing Spotify Premium did so on this separate sign-up page. Thereat, Class members entered their credit / debit card information and clicked on a button (either "Confirm Payment," "Start Premium," or "Start My Spotify Premium," depending on the date). According to Spotify, the clicking of this button is the "decision point" where Class Members consented to the subscription and automatic charging of their credit cards. Ex. E at 83:21-84:15, 87:22-88:3, 96:20-97:10, 101:18-104:11, 142:10-12, 142:23-143:4. Thus, it is axiomatic that the purported disclosures on this sign-up / decision-point page are the only disclosures Class Members would have seen that occurred "in visual proximity…to the request for consent to the offer." Cal. Bus. & Prof. C. § 17602(a)(1).[8] This is true for all Class

---

[7] Spotify also offers "Premium for Family" ($14.99 / month) and "Premium for Students" ($4.99 / month), but they are not at issue in this litigation. Ex. B at SPTFY-Inglls-000023, 30.

[8] Spotify testified that is has "consistently provided the disclosure [regarding the automatic charging of credit cards] on the payment details selection page [which] has been the focus of the legal disclosure." Ex. E at 99:15-23.

1    Members throughout the entire Class Period. This page, therefore, is where any purported APRL

2    required pre-purchase disclosures must have occurred.

3         There were three designs of this sign-up / decision point page throughout the Class Period: the

4    ████ Period (6-23-2012 to 3-25-2014), ████ Period (3-26-2014 to 4-3-2015),[9] and ████ Period

5    (4-4-2015 through present). Joint Decl., ¶ 8, Ex. G [Spotify Payment Flow Document, SPTFY-Inglls-

6    000120-153], at SPTFY-Inglls-000123, 130, 133, and 137; Ex. E at 90:13-92:16. Exemplars of these

7    webpages are provided for the Court's reference. Joint Decl., ¶ 9, Ex. H [Exemplars of Different

8    Signup Pages]). Within each time period, the purported AROT disclosures on the sign-up or decision-

9    point page contained "subtle differences" due to the offer to which a consumer was responding (*e.g.*,

10   30-day free trial)[10] or minor website edits made by Spotify's programmers. *See, e.g,* Ex. G at 123-127,

11   130-134, 137-140 (providing various language strings); Ex. E at 108:12-17. As described in Section

12   III(E)(2), *infra*, consistent across each design was Defendant's practice of using "fine print" disclosures

13   located above a "decision point" (a button on which to click). Spotify even agrees that despite the

14   subtle differences, all Class Members would have a similar understanding or level of knowledge with

15   respect to their credit card being charged automatically. Ex. E at 109:4-24.

16        Importantly, constant across every variation of the sign-up page was what Spotify *failed to*

17   *include*: (a) any request for consent to the subscription agreement; (b) a clear and conspicuous

18   disclosure that payment cards would be charged automatically; and (c) any disclosure that the amount

19   of the recurring charge many change. Thus, any variation between the pages is materially inapposite.[11]

20       [9] Spotify testified that the ████ Period webpages located at SPTFY-Inglls-000130-133 were unique
21   to Paypal purchasers, it has subsequently disclosed that credit / debit card (purchasers) would have
     been presented with the same webpage. Ex. E at 91:16-25, 102:15-103:18; Joint Decl., ¶ 7, Ex. F at 6
22   (May 16, 2017 email from S. Commerson) (stating Mr. Whitehead confirmed the text of the checkout
     pages' disclosures for credit card payments during the ████ period were identical to the text of the
23   disclosures for PayPal payments reflected at SPTFY-Inglls-000131-32 and 133-134)

     [10] Defendant testified that those purchasing Spotify Premium through a non-credit/debit card
24   payment provider (such as Paypal or Boku) would be routed to another page hosted by that provider.
     Ex. E at 102:21-103:6, 108:12-17. Here, those using such payment methods are excluded from
25   Plaintiff's proposed class definition, *infra.*

26       [11] Even if the Court analyzes the different "language string edits" provided in Defendant's
     "Payment Flows" document (Ex. G), it will find they are few in number and substantially identical.
27   Many language strings edits never actually made it on the website, and Defendant identified those
     whose website publication was "highly unlikely". Ex. E at 77:17-24, 115:12-116:8, 175:5-185:22. A
28   number of others (if published at all) were only on the website for three days or less, and thus affected
     Continued on the next page

**D.      Defendant's Process for Providing Post-Purchase AROT Disclosures to Class Members is Identical during the Class Period**

Defendant's process for providing *post*-purchase disclosures was identical throughout the Class Period. After clicking the "decision point" button, Class Members were all routed to a "confirmation" page. Ex. G at SPTFY-Inglls-000128 (████ Period), 138 (████ Period), 141 (██████ Period); Ex. E at 91:14-15, 92:2-3, 92:12-13, 100:13-16, 195:2-4. Shortly thereafter, Class Members were sent an email receipt. Ex. G at SPTFY-Inglls 000142-153; Ex. E at 87:10-18, 193:22-194:10, 195:5-7. Other than the confirmation page and email, there are no other communications as part of the post-purchase process.[12] Ex. E at 195:2-9. As noted below, there is one critical omission that occurred with respect to every confirmation page and email receipt affecting Class Members.

**E.      Spotify's APRL and UCL Violations are Class-wide and Subject to Common Proof**

Plaintiff Ingalls seeks redress for class-wide APRL and UCL violations, and can prove his case with common proof. For each and every Class Member, there are provisions of the APRL which Spotify not only violated, but violated in the same manner, for the same reasons, and to the same extent. Spotify uniformly violated certain APRL pre-purchase requirements regarding consent, form, and content. Spotify also uniformly violated the APRL's post-purchase "acknowledgment" requirement by failing to provide the cancellation policy as well as a description of one key part of that policy. Spotify's APRL violations constitute predicate violations of the UCL.

**1.      Failure to Obtain Affirmative Consent to the Subscription Agreement**

Class-wide proof will show that Defendant failed to obtain *consent* to the subscription agreement. The APRL requires businesses to obtain "the consumer's affirmative consent to the agreement containing the automatic renewal offer terms[.]" <u>Cal. Bus. & Prof. C.</u> § 17602(a)(2). Here, Spotify points to its "decision point" buttons as the origin of such consent, but these simply prompt

---

Continued from the previous page

only a *de minimus* number of Class Members. After discounting these, as well as language strings that were duplicative or affected non-class members, only five versions of the pre-signup AROT disclosures remain. Plaintiff has provided a refined document, removing these language strings, for the Court's convenience. *See generally*, Joint Decl. Ex. I [Signup Page Disclosures demonstrative].

[12] Following the initial trial or offer period, Spotify continues to charge the user's credit card at monthly intervals until the customer cancels. Before each charge, Spotify does not request the user's consent. Def.'s Answer to First Am. Compl., D.E. 49 ("Def. Answer"), at 3.

users to "Confirm Payment" or "Start Premium." Whether Spotify's uniform failure throughout the Class Period to specifically ask users to "agree" to the subscription agreement is an APRL violation is a question that can be resolved on a class-wide basis.

Notably, when presented with a different company's webpage that appeared to have an "I agree" checkbox and *then* a "decision point" ("Start Membership") button, Spotify conceded that no such check box existed on the U.S. payment page. Ex. E at 141:25—144:4. *In the United States*, Spotify does not employ, for example, an input where users must mark a checkbox to confirm their acceptance to particular terms and conditions. Ex. E at 147:5-7. [13] As Spotify testified:

Q. Back to your software, accept button example –

A. Mm-hmm.

Q. -- have you ever seen a software application where instead of saying accept, it might say I have read the above terms and conditions?

A. I have.

Q. Has Spotify ever considered using language such as that in their payment details confirmation page?

A. Language that's similar to that, yes, I believe we have.

Q. You've considered it or used it?

A. I believe we have used something similar to it *outside of the US*.

Q. And why was it used outside of the U.S. as opposed to the United States?

A. I can't speak to the specific motivation of why it was there. It was part of the product development process.

Ex. E at 131:11-132:7 (emphasis added).

Incredibly, Spotify then admitted that "in certain [non-U.S.] jurisdictions, we…have added a check box and prevented the user from clicking the continue button unless they have selected the checkmarks." *Id.* at 132:16-19. Spotify explained the distinction by noting that the ▮▮▮▮▮▮▮

---

[13] Spotify in turn argues that a "check box" would not necessarily increase the likelihood that consumers read certain terms and conditions. Ex. E at 147:8-148:18. This "defense" would apply to all Class Members, providing yet another example of how this question is susceptible to class-wide proof (both for *and* against liability).

██████████████████████████████████████████"; but also knew of no instances

where the U.S. website was updated in response to the passage of California's APRL. *Id.* at 133:5-16.[14]

Spotify even testified that class-wide it took *no steps* to ensure that users have confirmed that they have

read and understood the fine print on the signup page. Ex. E at 130:6-21.

### 2. Failure to *Clearly and Conspicuously* Disclose that the Recurring Charge Would be *Automatically Charged to One's Credit Card*

Spotify also uniformly violated the APRL, on a class-wide basis, with respect to the *form* of a

key pre-signup disclosure. Businesses are required to disclose, in a clear and conspicuous manner

before and in visual proximity to the request for consent, "the recurring charges that will be charged to

the consumer's credit or debit card…as part of the automatic renewal plan." [.] Cal. Bus. & Prof. C.

§§ 17601(a)(3), 17602(a)(1). "Clear and conspicuous" means "in a manner that clearly calls attention

to the language." *Id.* at § 17601(c). Each version of the signup page fails the "clear and conspicuous"

requirement with respect to this disclosure.

While each version of the sign-up page headlines the amount charged for a recurring

subscription, the only references that the monthly subscription charge will be satisfied via an automatic

debit to the payment card (as opposed to a request for payment)[15] occurs in the fine print located

directly below the credit card information entry field and directly above the "decision point" button.

*See* Ex. H. The required disclosure appears nowhere else on the signup page. *Id.* In each version, Class

Members are prompted to enter their payment information *before* reaching the actual disclosure. *Id.*

The disclosure in each version is further followed by a "decision point" button that is emphasized by

---

[14] Merits discovery is ongoing. Spotify has, for example, ████████████████████████████
████████████████████████████. Ex. E at 158:15-18. Though this information
was responsive to Plaintiff's discovery requests, it was not provided and Plaintiff learned of its
existence during the 30(b)(6) deposition. Defendant agreed to provide this information, but has not
done so as of the date of this filing. Joint Decl., ¶ 19.

[15] "Charge" is defined, *inter alia*, as "to impose or ask as a price or fee" or "to defer payment for (a
purchase) until a bill is rendered by the creditor." Charge: *Dictionary.com Unabridged*. Random
House, Inc. http://www.dictionary.com/ browse/charge (accessed: May 22, 2017). The distinction
between a recurring *request* for payment versus an *automatic debit* to one's payment card is not a mere
syntax technicality, but rather goes to the heart of the APRL. The APRL does not target the practice of
automatically charging consumers for subscriptions, but rather "the practice of *ongoing charging of
consumer credit or debit cards*…without the consumers' explicit consent[.]" Cal. Bus. & Prof. C. §
17600.

larger text and a different color. *Id.* Plaintiff argues these aspects of the signup page, which existed for every Class Member, evidences a failure of the 'clear and conspicuous' requirement.[16]

Given that the form of the disclosure was materially identical for each Class Member, whether it is considered "clear and conspicuous" is a question susceptible to class-wide proof.[17]

### 3.   Failure to Disclose Spotify May Change the Amount of the Recurring Charge

In addition to consent and form, Spotify further violated the APRL with respect to missing *content* on every version of its sign-up page. The APRL requires businesses to disclose, before and in visual proximity to the request for consent, that "the amount of the [recurring] charge may change, if that is the case[.]" Cal. Bus. & Prof. C. §§ 17601(a)(3), 17602(a)(1). Here, every version of Spotify's Terms and Conditions (which are provided elsewhere on Spotify's website), authorize Spotify to change the amount charged.[18] And yet, Spotify failed to disclose this information in each and every sign-up page provided to Class Members throughout the entirety of the class period. *See* Ex. I, *ibid.* Whether Spotify's failure to provide this information in visual proximity to the request for consent is a question common to the entire Class, subject to class-wide proof.

### 4.   Failure to Provide an Acknowledgment Containing the Cancellation Policy

Spotify also uniformly violated the APRL with respect to the content of its *post-purchase* disclosures (namely, its cancellation policy). The APRL requires businesses "to provide an acknowledgment that includes the…cancellation policy…in a manner that is capable of being retained by the consumer."[19] Cal. Bus. & Prof. C. §§ 17601(b)(2) 17602(a)(2).[20] Importantly here (especially

---

[16] Defendant responds that "we typically try and offset the decision point and the accompanying text from the rest of the material, which very often is a description of the service that you would get[.]" Ex. E at 148:25-149:5. As this testimony illustrates, both class-wide proof in favor of and against liability can be offered by the parties, further warranting class certification.

[17] Though the merits of this question are not relevant to class certification, Plaintiff notes that the "decision point" button is more "clear and conspicuous" than the disclosures themselves. The webpage is aimed at drawing the user's attention immediately to clicking the decision point button after entering his or her credit card.

[18] *See* D.E. 17-1 at page 14 (9/9/15 T&C, § 15); D.E. 17-2 at page 16 (10/17/12 T&C, §12), page 25 (10/18/12 T&C, § 12), page 36 (6/20/13 T&C, §13), page 51 (3/5/14 T&C, §13).

[19] It is clear from a reading of the statute that the legislature stressed the importance of consumers having a copy of the cancellation policy *after* they subscribed, even if its description was provided before the transaction.

for the Sub-Class), the cancellation policy provides that in the event a monthly subscription is canceled, users will *not* receive any refund for the remainder of the month. *See supra*, fn. 20. With respect to the post-purchase confirmation page and email receipts, which were the only post-purchase acknowledgments sent to Class Members, Defendant testified that every confirmation page and email during the Class Period failed to provide this information. Ex. E at 192:9-194:19. Further, the entire cancellation policy is never provided to Class Members, other than a simple link to Terms & Conditions wherein the cancellation policy is buried in fine print. Ex. G at SPTFY-Inglls-000128-130, 135-136, 141-153; *See also* D.E. 17-1 (page 14 of the 9/9/15 T&C). Thus, whether Spotify failed to comply with the APRL's "acknowledgment" requirement is a question susceptible to class-wide proof. As with every other alleged APRL violation, liability turns on Spotify's uniform failure to act.

**F.      The Typical Experience of Proposed Class Representative Gregory Ingalls[21]**

The experience of proposed Class Representative Gregory Ingalls typifies the experience and APRL claims of other Class (and Sub-Class) Members. Plaintiff signed up for Spotify Premium via spotify.com on June 8, 2013. Like other Class Members, he was presented with a signup page containing a "decision point" button (here, "Confirm Payment"), a post-purchase confirmation page, and an email receipt. *See* Aug. 22, 2016 Declaration of James Whitehead, D.E. 25-2 ("Whitehead Decl.") at ¶¶ 7-8; *see also* Ingalls' signup page (D.E. 25-3 at 6), confirmation page (D.E. 25-3 at 8), and e-mail receipt (D.E. 25-3 at 10); Ex. K (Ingalls' email receipt).

Mr. Ingalls' sign-up page failed to contain any mechanism by which Mr. Ingalls consented to any agreement. Rather, he filled out his credit card information and clicked the "decision point" button. Further, the disclosure that the recurring subscription fee would be charged automatically to his credit card occurred just once on the sign-up page. It was placed within the fine print nestled between the credit card information entry field and the "decision point" button (which, in Mr. Ingalls' case, read

---

Continued from the previous page

[20]  The APRL distinguishes between "a description of the cancellation policy" which must be provided before the request for consent and the ***entire*** "cancellation policy" that may be provided either before or after the request for consent. *Id*. at §§ 17601(b)(2), 17602(a)(3), 17602(d)(1).

[21]  Plaintiff Tony Hong, who utilized Paypal to purchase Spotify Premium, is not a member of the revised definition of the proposed Class and thus does not seek to be appointed class representative.

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

1    "Confirm Payment"). The "decision point" button, in a larger font and different color than the

2    disclosures, draws a user's attention away from the disclosures. D.E. 25-3 at 6.

3           Following his clicking of the "decision point" button, Mr. Ingalls was routed to a confirmation

4    page and received an email receipt. These were the only post-purchase acknowledgments he received.

5    Neither the confirmation page nor the email receipt provided Defendant's entire cancellation policy.

6    Nor did either provide any notice that a customer would receive no refund for the remainder of any

7    month following cancellation. D.E. 25-3 at 8; Ex. K (Ingalls' e-mail receipt).

8           Mr. Ingalls' credit card was subsequently automatically charged $9.99, without his prior

9    consent, on 7/8/2013, 8/8/2013, and 9/8/2013. Ex. B at SPTFY-Inglls-000004; Joint Decl., Ex. J

10   [Deposition of Gregory Ingalls] at 67:14-21. Mr. Ingalls cancelled his subscription on September 17,

11   2013, after realizing he had been charged for Spotify Premium. Ex. B at SPTFY-Inglls-000004; Ex. J.

12   at 67:12-21. Though there were 20 days left in his subscription term, Mr. Ingalls received no refund for

13   that portion of the term (which would have totaled $6.60).[22] Def. Answer at 5. This fact pattern is the

14   same for Class Members and Sub-Class Members.[23]

15          **G.      Spotify's Retention of and/or Access to Customer Information**

16          Putative class members may be easily identified and contacted. Spotify maintains a "█████

17   ████" system which contains "a lot of information that can be reviewed for a given individual user."

18   This includes: (1) the date they signed up for a free-trial, (2) the date they provided Spotify with a

19   payment method, (3) they date their payment method was subsequently charged for a subscription, (4)

20   whether the paid subscription was for Spotify Premium, (5) the amount charged, (6) the dates and

21   _____

22          [22] Spotify Premium costs $9.99 for 30 days, which is approximately $0.33 per day.

23          [23] The Court need not analyze unnamed class members' standing. *Bruno v. Quten Research Inst.,*
     *LLC,* 280 F.R.D. 524, 532-33 (C.D. Cal. Nov. 14, 2011) (citing *Stearns v. Ticketmaster Corp.,* 655

24   F.3d 1013 (9th Cir. 2011) (holding only the class representative need establish standing to sue).
     However, there is more than enough factual support for Mr. Ingalls' standing: He testified he

25   did not know he would be charged or automatically renewed into SP at $9.99 at the end of his trial
     period. *See* Ex. J at 53:24-54:1 (Ingalls told referring attorney Spotify charged him for SP without his

26   knowing), 78:13-15 (Ingalls thought he would be "notified that the trial was over and then given an
     option to pay" for the full-priced SP subscription), 72:7-9 (Ingalls wanted to try SP "when it was a free

27   trial only"). In fact, Mr. Ingalls believes he stopped using the free trial after two weeks and thus did
     not even want SP beyond the free trial period. *Id.* at 131:22-24. Ingalls cancelled SP on 9/17/13, upon
     realizing he had been charged for SP three times. Ex. B at SPTFY-Inglls-000004; Ex. J at 67:12-21.

28

amounts of each subsequent charge, (7) the payment method (e.g., credit card vs. Paypal), Ex. E at

19:14-20:17, 127:9-24; *see also* Ex. B at 4-5 (information retained for Plaintiffs Ingalls and Hong,

respectively). As noted in the declaration of James Whitehead:

> I have reviewed records relating to Spotify subscribers Gregory Ingalls and Tony Hong. These records resulted from queries to Spotify ███████████████████████, which contain data regarding individual Spotify users, on which Spotify relies in the day to day conduct of its business.

Whitehead Decl., ¶ 5.

Spotify also has a "██████████████████" which stores metadata related to each order

including, *inter alia*, the zip code used during the payment process (for the purpose of computing sales

tax). "Each payment is connected to an invoice [and] [e]ach invoice is ultimately connected to a user."

Further, Spotify can identify the credit or debit card payment processor, the primary for Class Members

being ████, that would have additional billing information related to Spotify Premium transactions.

Ex. E at 15:20-16:17, 17:4-5, 38:17-40:2, 44:9-15, 126:14-127:8, 128:14-129:18.

Spotify retains e-mail addresses for customers, and, depending on their sign-up method, their

first and last names. Spotify communicates with its customers via e-mail. Ex. E at 18:14-21, 125:25-

126:13. Further, Spotify would be able to pull Class Members' information, as it did for Plaintiffs

Ingalls and Hong. *See* Whitehead Decl., ¶ 5; Ex. B at SPTFY-Inglls-00004-5.

## H.    Plaintiff Seeks Restitution and Injunctive Relief

Due to these violations, Plaintiff Ingalls, on behalf of himself and the Class, seeks certification

of two causes of action against Spotify. Count I alleges Spotify violated and continues to violate the

APRL in the ways described above. *See also* Pls.' First Amended Compl., D.E. 17 ("FAC") at ¶¶ 56-

68. Count II alleges Spotify violated and continues to violate the UCL through its unlawful practice of

auto-renewing consumers without providing the required disclosures. *Id.* at ¶¶ 69-78. Plaintiff seeks

injunctive relief and restitution under both Counts I[24] and II.

---

[24] *See Kissel*, 2016 WL 7647691, at *6, 7 (stating "injunctive relief and restitution are civil remedies that apply to a violation of the A[P]RL" and "the statutory text of the A[P]RL clearly evinces an intent to provide a private right of action").

1

**IV.   Class Certification is Proper**

2

**A.   Proposed Class Definition**

3

Plaintiff seeks to certify the following Class:

4

> All natural persons in California who, since June 23, 2012, signed up for
> Spotify Premium on spotify.com through either a '3 months for a reduced

5

> price' or '30-day free trial' offer,[25] selected a credit or debit card payment
> method, and whose credit or debit card was subsequently charged $9.99 at

6

> least once after the expiration of the offer term.

7

Plaintiff further seeks to certify the following Sub-Class:

8

> All natural persons in California who, since June 23, 2012, signed up for

9

> Spotify Premium on spotify.com through either a '3 months for a reduced
> price' or '30-day free trial' offer, selected a credit or debit card payment

10

> method, and whose credit or debit card was subsequently charged $9.99 at
> least twice after the expiration of the offer term, who subsequently
> cancelled their subscription.

11

The Class and Sub-Class are collectively referred to as the "Class" or "Classes." Excluded from the

12

Classes are: (a) all judges who preside over this case and their spouses; (b) all persons who elect to

13

exclude themselves from the Class; (c) all persons who have previously executed and delivered to

14

Defendant releases of all their claims for all of their Class claims; (d) all counsel for Plaintiff; and (e)

15

Defendant's employees, officers, directors, agents, and representatives and their family members.

16

**B.   Legal Standard**

17

"Before certifying a class, the trial court must conduct a rigorous analysis to determine whether

18

the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda Motor Co.,*

19

*Inc.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotations omitted). Class certification is appropriate

20

when a plaintiff proves all of Rule 23(a)'s pre-requisites: numerosity, commonality, typicality and

21

adequacy—and at least one of Rule 23(b)(2)'s requirements have been met. *Abdullah v. U.S. Sec. Ass.,*

22

*Inc.*, 731 F.3d 952, 956-57 (9th Cir. 2013). Plaintiff seeks certification under Rule 23(b)(3), which

23

permits class actions where "questions of law or fact common to class members predominate over any

24

questions affecting only individual members, and that a class action is superior to other available

25

methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. Rule 23(b)(3).

26

---

27

[25] Spotify refers to these as offers as "█████████" and "█████████," respectively. *See generally*, Ex. D.

28

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Merits may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. *Amgen Inc. v. Conn. Ret. & Plans & Tr. Funds*, 133 S. Ct. 1184, 1195, 185 L. Ed. 2d 308 (2013); *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003) ("Although some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper to advance a decision on the merits to the class certification stage."). "Neither the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies Rule 23." *United Steel, Paper & Forestry, Rubber, Manufacturing Energy, Allied Industrial & Service Workers Int'l Union v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010) (brackets omitted) (quoting *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975)).

### C. Class Certification is Appropriate Under Rule 23(a)

#### 1. There is No Dispute that the Proposed Class is Numerous and Ascertainable

By agreement of the parties, "Spotify is not contesting ascertainability or numerosity." Ex. F at page 3 (Apr. 21, 2017 Letter from S. Commerson). This agreement aside, there is ample evidence that these requirements[26] are met here.

The numerosity requirement of Rule 23(a)(1) is satisfied when "joinder of all members is impracticable." The Rules does not establish a precise numerical threshold, but courts generally find the numerosity requirement is satisfied when a class includes at least forty members. *Rannis v. Recchia*, 380 F. App'x 646, 650-51 (9th Cir. 2010). Plaintiffs are not required to quantify with precision the number of class members. *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223,

---

[26] While ascertainability is not typically analyzed in the context of Rule 23(a)'s numerosity requirement, it is included here since both requirements are not contested by Defendant. *See, e.g., Lee v. Pep Boys-Manny Moe & Jack,* No. 12-5064, 2015 U.S. Dist. LEXIS 171912, at *49 (N.D. Cal. Dec. 23, 2015) (finding numerosity and ascertainability satisfied where the defendant did not contest such and database administrator's testimony confirmed that class of 189,269 Californians "was sufficiently high to make joining all members impracticable and is easily ascertainable, given the number was based on [the defendant's] own records."); *Arrendondo v. Delano Farms Co.,* No. 09-1247, 2011 U.S. Dist. LEXIS 44134, at *18 (E.D. Cal. Apr. 18, 2011) (finding numerosity requirement met where plaintiff alleged potential class size of 14,000 and defendant did not dispute numerosity).

233-34 (C.D. Cal. July 9, 2003). As noted above, based on Spotify's data there are approximately ████ ████ individuals in the Class. Joinder is impracticable.

The Ninth Circuit has held Rule 23 does not require a standalone "administrative feasibility" analysis, reasoning that the interests that motivated other Circuits to employ one "are addressed already by a specific, enumerated mechanism: the manageability criterion of the superiority requirement." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017). Nevertheless, Spotify is not contesting ascertainability (and, by extension, manageability). Ex. F at page 3. As noted in Section III(G), *supra*, Spotify retains significant information regarding its subscribers such that it can confirm one's membership in the Class. Spotify retains email addresses and additional billing information is available from its payment processer, ████. Accordingly, the Classes are clearly defined and members of the Class and Sub-Class can be easily identified.

### 2.   Plaintiff's Claims Present Common Issues of Law and Fact

A class has sufficient commonality under Rule 23(a)(2) if "there are questions of law or fact common to the class." Rule 23(a)(2) does not require each member in a class to have identical factual and legal issues surrounding their claim. To establish commonality, the claims must depend upon a "common contention" that is "capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Commonality has "'been construed permissively' and '[a]ll questions of fact and law need not be common to satisfy the rule.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (alteration in original) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)); see also *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (noting that "common" does not mean "complete congruence"). For purposes of Rule 23(a)(2), even a single common question of law or fact will do. *Wal-Mart*, 131 S. Ct. at 2551.

Here, the commonality requirement is satisfied. Plaintiff alleges Spotify violated both the pre- and post-purchase provisions of the APRL with reference to four particular requirements. As described in greater detail above, these are Defendant's failure to: (1) disclose that the amount of the recurring charge may change, (2) clearly and conspicuously disclose that customers' payment cards will be automatically charged, (3) obtain Class Members' affirmative consent to the AROTs, and (4)  provide a

post-purchase acknowledgment containing (a) the full cancellation policy and (b) a description of the cancellation policy precluding partial monthly refunds.

Plaintiff has demonstrated that these *omissions* (which are by their very nature uniform) occurred on a class-wide basis by analyzing the signup page and post-purchase confirmation page and email receipts. With respect to Nos. 3 and 4, Spotify even testified that it failed, on a class-wide basis, to take any steps ensuring that users read and agreed to the AROTs and likewise failed to provide the cancellation information in the post-purchase acknowledgment. Proof of the elements of the UCL and APRL is necessarily common because it will focus upon Spotify's uniform omission of required information. Common legal and factual questions applicable to the Class as a whole include:

    a.   Whether Spotify's Premium Subscription Service constitutes an automatic renewal and/or continuous service plan or arrangement under <u>Cal. Bus. & Prof. C.</u> §§ 17601(a) or 17601(e);

    b.   Whether Spotify's failure to include a mechanism to confirm Class Members' consent to an agreement constitutes a failure to obtain affirmative consent in violation of <u>Cal. Bus. & Prof. C.</u> § 17602(a)(2);

    c.   Whether Spotify's standard method of disclosing the automatic charging of payment cards (*i.e.,* fine print nestled between credit card entry details and a large, differently colored "decision point" button) is "clear and conspicuous" under <u>Cal. Bus. & Prof. C.</u> §§ 17601(c);

    d.   If so, whether Spotify's failure to disclose the automatic charging of credit cards in a "clear and conspicuous" manner constitutes a violation of <u>Cal. Bus. & Prof. C.</u> §§ 17601(b)(3) and 17602(a)(1);

    e.   Whether Spotify's failure to disclose on the signup page (the only page in visual proximity to the request for consent) that the amount of the recurring charge may change constitutes a violation of <u>Cal. Bus. & Prof. C.</u> §§ 17601(b)(3) and 17602(a)(1);

    f.   Whether Spotify's failure to provide a post-purchase acknowledgment containing the entire cancellation policy constitutes a violation of <u>Cal. Bus. & Prof. C.</u> § 17602(a)(3); and

    g.   Whether Spotify's failure to provide a post-purchase acknowledgment disclosing its policy of not refunded partial months following cancellation constitutes a violation of <u>Cal. Bus. & Prof. C.</u> §§17601(a)(2) and 17602(a)(3).

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

h.   Whether Spotify's APRL violations constitute unlawful business practices under the UCL;

i.   Whether the Class and/or the Sub-Class are entitled to restitution and, if so, the measurement.

j.   Whether the Court should enter an order enjoining Spotify from continuing to use the inadequate disclosures.

As noted above, Spotify admitted its practices with respect to many of these questions occurred class-wide. In any event, proof relating to these questions will necessarily require the same evidence for Plaintiff and absent Class Members, and resolution of these issues will generate common answers.

### 3.   Plaintiff's Claims are Typical of those of the Classes

The class representative's claims or defenses must be "typical of the claim or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id*. (quoting *Hanon*, 976 F.2d at 508). "Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (quoting *Hanlon*, 150 F.3d at 1020). "In determining whether typicality is met, the focus should be 'on the defendants' conduct and plaintiff's legal theory,' not the injury caused to the plaintiff." *Lozano v. AT & T Wireless Services, Inc.*, 504 F.3d 718, 734 (9th Cir. 2007) (quotations removed).

This requirement is met here. Plaintiff's claims and legal arguments are typical and co-extensive of the putative classes because they arise from the same practice and course of conduct: Spotify's uniform omission of certain information in violation of the APRL (and by extension the UCL). Further, Plaintiff seeks the same relief that is available to the putative classes: restitution of $9.99 for the Class (the subscription amount first charged to a customer's credit card following Spotify's failure to provide the required pre-purchase information) and $0.33/day the remainder of the month following the date of cancellation for members of the Sub-Class.

### 4.   Plaintiff and his Counsel Will Adequately Represent the Classes

"The final hurdle interposed by Rule 23(a) is that 'the representative parties will fairly and adequately protect the interests of the class.'" *Hanlon* 150 F. 3d at 1020 (quoting Fed. R. Civ. P.

23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon,* 150 F.3d at 1020.

### a.   Neither Plaintiff Nor His Counsel Have Any Conflict of Interest with the Proposed Classes

A class representative may not have interests antagonistic to the remainder of the Class. *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978) (class representative not antagonistic where defendant claimed "the bulk of the class members favored a waiver of overtime provisions and would not support a suit to enforce the contract terms"). Mr. Ingalls' interests are fully aligned with those of the Classes in determining whether Spotify violated the APRL and the UCL, as (a) his credit card was automatically charged $9.99 for Spotify Premium and (b) he was charged for the remainder of the month after he cancelled, and (c) he seeks remedies equally applicable and beneficial to both Classes. Ex. J. at 39:21-24 ("I am claiming that Spotify automatically put me into a subscription without clearly letting me know"); 41:17-22 (testifying he has been "financially" harmed by Spotify); 61:2-7 ("I hope to recover the money I spent unwillingly and the money of everyone in the class"). Mr. Ingalls has no conflicts with other class members. *Id.* at 62:20-63:20 (testifying he is not hoping to receive a "fee as a class representative," and is not driven by "the amount of a fee payment" he could receive as a class representative).[27] Likewise, Plaintiff's counsel do not have any conflicts of interest with any class members. Joint Decl., at ¶ 13.

---

[27] The Court should reject any argument by Spotify that Mr. Ingalls is inadequate because he was referred to his lawyers by his girlfriend, Lauren Hamblin, when he told her of his problems with Spotify. Ms. Hamblin is an associate practicing construction defect law at one of the three law firms representing him in this case. She is not Mr. Ingalls' lawyer in this case, has no financial interest in the litigation, and has never sought to be appointed class counsel in any case. Joint Decl., ¶ 32. Moreover, Mr. Ingalls testified he did not discuss attorneys' fees, the progress of his case or his deposition testimony with Ms. Hamblin. Ex. J at 54:19-55:16; 63:17-20. *See, e.g., In re Graphics Processing Units Litig.,* 253 F.R.D. 478, 498 (N.D. Cal. 2008) (finding referral by brother-in-law to class counsel insufficient grounds to deem class representative adequate given referring attorney's attenuated role in the suit); *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 U.S. Dist. LEXIS 92374, at *8 (N.D. Cal. Jul. 15, 2016) (rejecting argument that class representative is inadequate because she is friends with class counsel, stating: "Any suggestion of a conflict here is undermined by the fact that [the attorney] is not a partner and is only one of several attorneys, from two firms, litigating this case"); *Mendez v. C-Two Grp., Inc.,* No. 13-5914, 2015 U.S. Dist. LEXIS 165780, at *17 (N.D. Cal. Dec. 10, 2015) (same); *Zeisel v. Diamond Foods, Inc.,* No. 10-1192, 2011 U.S. Dist. LEXIS 60608, at *29 (N.D. Cal. June 8, 2011) (same).

**b.**      **Plaintiff and His Counsel will Vigorously Prosecute this Action**

**i.**      **Mr. Ingalls is an Adequate Class Representative**

The general rule is that an adequate class representative need only have personal experience with the claims of the lawsuit and a general familiarity with the facts, but not necessarily a clear recollection of all facts relevant to their claims. *See, e.g., Tetsuo Akaosugi v. Benihana Nat'l Corp.,* No. 11-1272, 2012 U.S. Dist. LEXIS 65825, at *9 (N.D. Cal. May 10, 2012) ("It is enough that the representative understand the gravamen of the claim"). Here, Mr. Ingalls has personal experience with his role as a class representative, the claims in this case and is familiar with the underlying facts. Ex. J at 39:21-24 (testifying he was automatically charged $9.99/month after his free Spotify Premium subscription expired); 146:2-147:2 (testifying he believes Spotify "failed to disclose how the free trial would complete" and that had such information been "presented in a more direct fashion" he would have seen the auto-renew disclosure).

Mr. Ingalls has actively participated in this lawsuit, including sitting for a deposition and spending approximately ten hours communicating with his lawyers, searching for documents and responding to discovery. *Id.* at 45:2-7. Mr. Ingalls is able and willing to serve as class representative, and will continue to vigorously pursue his claims on behalf of the Class. Ex. J at 45:7-10 (**Q:** "How much time do you expect to devote in the future to this case?" **A:** "However long it takes."); 62:20-63:20 (testifying he wants to be a class representative in this case and understanding he has an obligation to represent the class).

**ii.**      **Proposed Class Counsel are Qualified, Experienced and Have the Resources to Vigorously Prosecute this Action**

In determining if proposed Class Counsel is adequate, courts must also consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). As set forth in the Joint Declaration, Derek Meyer of LeonardMeyer, LLP Gillian L. Wade, Sara D. Avila and Marc A. Castaneda of Milstein Jackson Fairchild & Wade, LLP, and Ryan Casey of the Casey Law Firm ("proposed Class Counsel"), have

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

significant experience prosecuting or defending large consumer class actions, complex litigation and the types of claims asserted in the instant matter. Joint Decl., ¶¶ 24-48. They have also demonstrated a willingness and ability to prosecute this action vigorously and to dedicate the resources and expertise necessary to represent a class and successfully manage a class action to its conclusion. *Id*. at ¶¶ 14-24.

### D.   Class Certification is Appropriate Under Rule 23(b)(3)

Rule 23(b)(3) requires that "questions of law or fact common to the Class Members predominate over any questions affecting only individual members" and "a class action is superior to any other available methods for fairly and efficiently adjudicating the controversy." Fed. R. 23(b)(3). Rule 23(b)(3) simply calls for "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen,* 133 S. Ct. at 1191.

#### 1.   Common Issues of Law or Fact Predominate

Rule 23(b)(3) requires plaintiffs to establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry focuses on "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon v. Chrysler Corp*., 150 F. 3d 1011, 1022 (9th Cir. 1998) (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997)).

##### a.   Spotify's APRL Violations are Uniform for all Class Members

The APRL violations at issue here all involve class-wide omissions of APRL-required information (or, in the case of one violation, the uniform style of a particular disclosure). *See* Sections II(E) and III(D)(2), *supra*. The same mechanism through which disclosures were provided (a signup page followed by a confirmation page and e-mail receipt) was employed for all Class Members. *See* Sections III(C)-(D), *supra*. Spotify even admitted that the post-purchase omissions applied to all Sub-Class Members. Thus, all of Plaintiff's four alleged APRL violations are subject to class-wide proof.

##### b.   Spotify's APRL Violations Constitute *Per Se* Violations of the UCL

An unlawful business practice under the UCL is "anything that can be properly called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 180 (1999) (internal citations omitted). By proscribing "any

unlawful" business practice, the UCL borrows violations of other laws and treats them as unlawful competition that the UCL makes independently actionable. Any violation of any other law satisfies the "unlawful" prong and thus may be treated as unfair competition under the UCL. *Hauk v. JP Morgan Chase Bank U.S.,* 552 F.3d 1114, 1122 (9th Cir. 2009) ("California's UCL has a broad scope that allows for violations of other laws to be treated as unfair competition that is independently actionable") (citing *Kasky v. Nike, Inc.,* 27 Cal. 4th 939, 949 (2002)); *see also Hartless v. Clorox Co.,* No. 06-2705, 2007 U.S. Dist. LEXIS 81686, at *9 (S.D. Cal. Nov. 2, 2007) ("The unlawful practices prohibited by the UCL are any practices forbidden by law, be it civil or criminal, state or municipal, federal, statutory, regulatory or court-made"). Here, common evidence will prove Spotify violated the APRL. Once Plaintiff proves Spotify's APRL violations, Plaintiff has also proven Spotify violated the UCL.

### c.    Relief Can be Determined on a Class-Wide Basis

Plaintiff seeks restitution and injunctive relief under the UCL and APRL. "Through the UCL a plaintiff may obtain restitution and/or injunctive relief against unfair or unlawful practices in order to protect the public and restore to the parties in interest money or property taken by means of unfair competition." *In re Vioxx Class Cases,* 180 Cal. App. 4th 116, 130 (2009).  The APRL likewise permits restitionary relief. *See* Cal. Bus. & Prof. C. § 17604.

### i.    Injunctive Relief Will be the Same for the Whole Class

The Court has the power to make any order or judgment that "may be necessary to prevent the use of employment by any person of any practice which constitutes unfair competition" or "may be necessary to restore to any person in interest any money or property…which may have been acquired by means of such unfair competition.") *Spann v. J.C. Penney Corp.*, No. 12-0215, 2015 U.S. Dist. LEXIS 42545, at * 9 (C.D. Cal. March 23, 2015) (quoting Cal. Bus. & Prof. C. § 17203). "Injunctive relief 'may be as wide and diversified as the means employed in perpetration of the wrongdoing." *Hewlett v. Squaw Valley Ski Corp.,* 54 Cal. App. 4th 499, 540 (1997) (internal quotation omitted).

Here, Plaintiff seeks an order enjoining Spotify from omitting certain information from its pre- and post-purchase disclosure pages and a "decision point" mechanism that fails to obtain Class Members' affirmative consent to the AROT provisions. The injunctive relief Plaintiff seeks would benefit not only Plaintiff but the entire Class and the general public. Accordingly, common issues

1    predominate as to Plaintiff's request for injunctive relief.

2                    ii.        **Restitution Can be Calculated on a Class-Wide Basis**

3           Trial courts have the power to grant restitution to private litigants asserting claims under the

4    UCL and the APRL. *Spann*, 2015 U.S. Dist. LEXIS 42545, at * 9 (citing *Colgan v. Leatherman Tool*

5    *Grp., Inc*., 135 Cal. App. 4th 663, 694-96 (2006)). "Courts are specifically authorized to make 'such

6    orders or judgments… as may be necessary to restore any person…any money or property…which

7    may have been acquired by means of such unfair competition.'" *Id*. (quoting <u>Cal. Bus. & Prof. C</u>. §

8    17203); <u>Cal. Bus. & Pro. C</u>. § 17604 ("all available civil remedies that apply to a violation of this

9    article may be employed"). "A court need not make individual determinations regarding entitlement to

10   restitution. Instead, restitution is available on a class-wide basis once the class representative makes the

11   threshold showing of liability under the Unfair Competition Law[.]" *Pulaski & Middleman, LLC v.*

12   *Google, Inc.,* 802 F. 3d 979, 986 (9th Cir. 2015). Of course, the measure of restitution "must be of a

13   measurable amount to restore to the plaintiff what has been acquired by violation of the statutes, and

14   that measureable amount must be supported by evidence." *Spann*, at *9 (quoting *Colgan,* 135 Cal. App.

15   4th 663).

16          At class certification, the plaintiff must show that "damages are *capable* of measurement on a

17   class-wide basis." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013) (emphasis added). To this

18   end, the "[d]amages calculations need not be exact, but at the class-certification stage (as at trial), any

19   model supporting a plaintiff's damages case must be consistent with its liability case…" *Id. See also*

20   *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) ("At class

21   certification, plaintiff must present a likely method for determining class damages, though it is not

22   necessary to show that this method will work with certainty at this time") (internal quotations omitted)*.*

23   "Although *Comcast* requires putative class members to show 'that their damages stemmed from the

24   defendant's action that created the legal liability, 'damages calculations alone cannot defeat

25   certification.'" *Mullins v. Premier Nutrition Corp*., No. 13-1271, 2016 WL 1535057, at *6 (N.D. Cal.

26   Apr. 15, 2016) (quoting *Pulaski,* 802 F.3d at 986). Thus, the remedies sought must match the theory of

27   impact that is presented and accepted for resolution on a class-wide basis. *Comcast*, 133 S. Ct. at 1433.

28          Here, Plaintiff's restitution model is consistent with the UCL and APRL. This is not a 'benefit-

1    of-the-bargain' case where Spotify is entitled to an offset based on the value of goods or services

2    received. First, restitution does not require an offset where doing so is inequitable. *Cortez v. Purolator*

3    *Air Filtration Prods. Co.,* 23 Cal. 4th 163, 168 (2000) ("equitable considerations may guide the court

4    in fashioning the appropriate remedy in a UCL action."). Second, Spotify is not accused of

5    misrepresenting the value of its service; rather, it is accused of collecting money from Plaintiff and the

6    Class that it had no legal right to take (and, in the case of the Sub-Class, retain after cancellation).

7         Regarding *Comcast*, Plaintiff's restitutionary model is perfectly consistent with his theory of

8    liability: refund those monies which Defendant had no right (due to its violations of the APRL) to take

9    or retain. Further, given the uniform amount of the subscription charge, Plaintiff satisfies *Comcast's*

10   requirement that restitution is *capable* of measurement on a class-wide basis. The total amount of

11   restitution can be determined in the aggregate using Spotify's own records reflecting the number of

12   Class Members who were automatically charged for full-price Spotify Premium and did not receive a

13   refund. This calculation can be done using simple math, by simply multiplying that number by $9.99

14   for all Class Members. Sub-Class Members would receive additional restitution, which can easily be

15   calculated by multiplying the number of days left in Sub-Class Members' 30-day subscription terms

16   after they cancelled by 33 cents.[28]

17               **2.      Class Treatment is Superior to the Other Adjudication Methods**

18         Rule 23(b)(3) requires a class action to be superior to all other methods of dispute resolution.

19   Relevant factors include "(A) the Class Members' interests in individually controlling the prosecution

20   or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy

21   already begun by or against Class Members; (C) the desirability or undesirability of concentrating the

22   litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action."

23

---

24      [28] Notably, the Court is not constrained by Plaintiff's restitutionary model, and need not even agree
with Plaintiff's calculations to grant certification. Courts have wide latitude in fashioning

25   restitutionary relief that will serve the purposes of restitution—"to prevent, deter, and compensate for
unfair business practices." *Cortez*, 23 Cal. 4th at 168. *See also Astiana v. Kashi Co.*, 291 F.R.D. 493,

26   506 (C.D. Cal. Jul. 30, 2013) (courts awarding restitution under the UCL have "very broad discretion
to determine an appropriate remedy as long as it is supported by evidence and is consistent with the

27   purpose of restoring the plaintiff the amount that the defendant wrongfully acquired.") That is
especially true where, as here, the merits and calculation of restitution will occur during a bench trial.

28

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

1    Fed. R. Civ. P. 23(b)(3).

2        *First*, Class Members have no incentive to control separate actions because they all have

3    common claims and interests. The work of Plaintiff and his counsel will benefit the entire Class.

4    Moreover, while Class Members' aggregate damages are large, individual damages are less than $20.

5    This amount is simply too insignificant to make the claim worth pursuing for any claimant or attorney,

6    particularly given the enormous expense associated with litigating the question of whether Spotify

7    violated the APRL and UCL. *See Briseno v. ConAgra Foods, Inc.,* 844 F.3d at 1129 ("benefits of the

8    class action mechanism are best realized in cases like this, where the likely recovery is too small to

9    incentivize individual lawsuits, and the realistic alternative to class litigation will be no adjudication at

10   all") (citing *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1190-91 (9th Cir. 2001)). *See also*

11   *Carnegie v. Household Int'l., Inc.,* 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a

12   class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic

13   sues for $30"), *cert. denied,* 543 U.S. 1051, 125 S. Ct. 877, 160 L. Ed. 2d 772 (2005). Indeed, Spotify

14   already conceded that Class Members can be identified in an administratively feasible manner (Ex. F),

15   thus effectively agreeing that a class case is manageable under *Briseno.*

16       *Second*, Plaintiff is not aware of any other class actions currently pending against Defendant on

17   behalf of any segment of the Class. *Third*, since Plaintiff brings his claims under California law

18   pursuant to the T&C's forum selection clause, concentration of the litigation in this forum is

19   appropriate. Moreover, the Mr. Ingalls and Class Members are located in California. *Fourth*,

20   prosecuting Class Members' claims in a single action creates far fewer management problems (if any)

21   than the alternative: prosecuting hundreds of thousands of separate lawsuits. A class action may be a

22   superior device to adjudicate claims "[w]here class wide litigation of common issues will reduce

23   litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace,* 97 F.3d 1227, 1234 (9th

24   Cir. 1996). "[A] class action has to be unwieldy indeed before it can be pronounced an inferior

25   alternative—no matter how massive the fraud or other wrongdoing that will go unpunished if class

26   treatment is denied—to no litigation at all." *Carnegie,* 376 F.3d at 661. Without class treatment,

27   Spotify's unlawful business practices will go unchallenged and the Class will go uncompensated.

28

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

### 3.      Plaintiff's Proposed Trial Plan

Since the only relief available under the APRL and UCL is equitable, there is no right to a jury trial in this case. *Hodge v. Sup. Ct.,* 145 Cal.4th 278, 284-85 (2006); Cal. Bus. & Prof. C. § 17604. *See also Danjaq LLC v. Sony Corp.,* 263 F. 3d 942, 962 (9th Cir. 2001) (no right to jury for equitable claims); *Okura & Co. (America), Inc. v. Careau Group,* 783 F. Supp. 482, 490 (C.D. Cal. 1991) (no right to jury for UCL claim brought in federal court). Thus, Plaintiff's case will be tried to the bench.

For purposes of establishing liability, Plaintiff will present Spotify's corporate designee admissions, discovery responses, the pertinent webpages and email-receipts (that is, the disclosures themselves) and the testimony of Plaintiff and other company witnesses to demonstrate Spotify violated the APRL in omitted information required under the AROT.

Once the Court determines Spotify violated the APRL and/or UCL, it will then determine what remedies are available. Any injunction or method for calculating restitution will be susceptible to common proof. It is undisputed that the subscription fee for Spotify Premium is $9.99. With additional queries of Spotify's existing databases and other information, Plaintiff will be able to identify individual Class Members and confirm each is entitled to restitution of $9.99, and an additional $0.33 - $9.56 (based on the amount of days left in the 30-day subscription term post-cancellation).

After the Court decides the amount of restitution, notice of the verdict and the allocation of that award will be conducted administratively. This process will be efficient and streamlined, since Spotify's payment processor has access to each Class Member's billing records. To save on administration costs, Spotify where possible can simply refund the credit cards in the amount owed. Where that is not possible, settlement checks, along with the notice, would be delivered directly to Class Members by a third-party claims administrator appointed by the Court. In the alternative, Class Members' Spotify accounts could be credited. In either scenario, Class Members will not have to make a claim in order to receive their compensation. Supplemental notice of the verdict could also be sent via email to Class Members, as Spotify maintains email addresses for many Class Members.[29] *See* Section

---

[29] Where Spotify does not retain e-mail addresses, Spotify's payment processor retains billing information. Alternatively, even if publication notice is needed to reach some Class Members, Spotify is able to confirm membership of individuals who respond to the notice. Spotify retained detailed

Continued on the next page

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

III(G), *supra.* Indeed, Spotify is not contesting that Class Members can be identified using an administratively feasible method (*See* Ex. F), supporting a finding that individual remedies can be easily calculated and delivered to Class Members. Accordingly, a class-wide trial is manageable in all respects.

### E.    Alternatively, Class Certification is Appropriate Under Rule 23(b)(2)

A class may be certified pursuant to Fed. R. Civ. P. 23(b)(2) when plaintiffs "complain of a pattern or practice that is generally applicable to the class as a whole." *Rodriguez*, 591 F.3d at 1125 (quoting *Walters v. Reno,* 145 F.3d 1032, 1047 (9th Cir. 1998)); Fed. R. Civ. P. 23(b)(2). The conduct Plaintiff challenges in this litigation—Spotify's omission of required APRL disclosures—affects all Spotify Premium subscribers in California uniformly and have been occurred in a way that violated Class Members' legal rights identically and consistently. *Yahoo Mail Litig.*, 308 F. R. D. 577, 598 (N.D. Cal. 2015). (certifying a class under Rule 23(b)(2) where "[p]laintiffs contend that all emails sent from and to Yahoo Mail subscribers are subject to the same interception and scanning processes [and thus] challenge a pattern or practice that is generally applicable to the class as a whole") (internal citations, quotations omitted). Further, the relief sought—an order requiring Spotify to bring its AROT disclosures into compliance with the APRL and enjoining Spotify from resuming its unlawful practices—would benefit the Class as a whole. Accordingly, as an alternative to certification under Rule 23(b)(3), the Court should allow the Class to seek injunctive and declaratory relief under Rule 23(b)(2).

## V.    Conclusion

Based on the forgoing, Plaintiff respectfully requests an order granting this motion and: (1) certifying a California Class and Sub-Class under Fed. R. Civ. P. Rule 23(b)(3), or, in the alternative, under Rule 23(b)(2); (2) appointing Gregory Ingalls as the Class and Sub-Class Representative; and (3) appointing Plaintiff's undersigned counsel as Class Counsel under Fed. R. Civ. P. 23(g).

---

Continued from the previous page

information regarding Plaintiff Ingalls, even though he cancelled his subscription on 9/17/13. Ex. B (SPTFY-Inglls-000004).

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

1

Dated: May 25, 2017                           MILSTEIN JACKSON

2                                             FAIRCHILD & WADE, LLP

3

                                              By: */s/ Gillian L. Wade*

4                                             Gillian L. Wade
                                              Sara D. Avila
5                                             Marc A. Castaneda

6                                             Derek J. Meyer

7                                             LEONARDMEYER LLP

8                                             M. Ryan Casey

9                                             THE CASEY LAW FIRM, LLC

10                                            Attorneys for Plaintiff and the Proposed Class

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**