IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY INGALLS and TONY HONG, individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br>  v.<br><br>SPOTIFY USA, INC., a Delaware corporation, and DOES 1–10, inclusive,<br><br>   Defendants. | No. C 16-03533 WHA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

In this unfair competition suit alleging violations of California's Automatic Renewal Law ("ARL"), defendant moves for summary judgment. Plaintiff opposes.

**STATEMENT**

Spotify provides both free and paid online music streaming services. The paid services are offered on a monthly subscription basis, and automatically renew each month unless the subscriber cancels. To encourage new members to sign up for the paid service, Spotify offers a free 30-day trial. After the trial expires, customers are automatically charged the full amount, $9.99, for the next month, and every month thereafter if they do not cancel.

Plaintiff Gregory Ingalls signed up to use the free version of Spotify's music streaming service in November 2012. In June 2013, Ingalls registered for a 30-day free trial of the premium service (Ingalls Dep. 102:3–17). In order to register for this plan, Spotify's website directed him to log in to his existing Spotify account, and once he had done so, to choose a

1  method of payment. Text on the screen on which he chose his method of payment explained
2  "[i]f you don't wish to continue enjoying Spotify Premium after your trial, simply cancel before
3  the trial ends and no charges will apply" (Whitehead Decl. ¶¶ 7–8).[1]

4  After selecting a payment method, Ingalls was directed to another page on which he was
5  required to enter his payment information. Immediately above a "confirm payment" button on
6  that page, text read:

> If you do not cancel your subscription before the end of the free trial the credit card you provide will automatically be charged the Spotify Premium subscription fee of US $9.99 (plus applicable taxes) per month, until you cancel. You can cancel at any time by logging into your Spotify account and follow the cancellation instructions. No refunds or credits for partial monthly subscription period. For complete terms and conditions, please see our Terms of service.

This text was set apart from the rest of the screen in a yellow-hued box (*id.* ¶ 7). There was no separate mechanism on this page (for example, a check box) by which Ingalls could consent to the terms of the free trial (Dkt. 25–3 at 6).[2]

At deposition, Ingalls admitted that, had he read the disclosure, he would have understood it (Ingalls Dep. 114:22-116:7), but that he "must not have" read it (*id.* 116:15–20). He testified that the contrast of the larger and more brightly-colored confirm payment button drew attention away from the disclosure, and so he might have "skimmed past it" (*id* 120:3-19).

After Ingalls confirmed his Spotify free-trial sign-up, the website displayed a receipt on the screen (Whitehead Decl. ¶ 8). Spotify also sent Ingalls an email receipt, which contained a link to Spotify's 30-day free trial terms and conditions (Ingalls Dep. 128:12-18; Commerson Decl. Exh. 8).

For the first two weeks of the free trial, Ingalls used Spotify premium between three and eight hours per day, but he stopped using it after those two weeks (Ingalls Dep. 131:10–132:14). Ingalls did not, however, cancel the service, and so was charged $9.99 each month from the

---

[1] Tony Hong previously joined in this action both as a named plaintiff and a putative class member. In his opposition to Spotify's motion for summary judgment, however, he "[did] not oppose Spotify's contention that he lacks Article III standing" (Opp. at 4 n. 1). Because Hong agrees that he does not have Article III standing, his claims are **DISMISSED**.

[2] The undersigned judge would have preferred to include screen shots of the disclosures. Unfortunately, the quality of the images provided by counsel was very poor.

1    expiration of his trial until three months later when he eventually discovered the charges on his
2    credit card bill and cancelled (*id*. 77:19–21; 176:17–23).
3         Based on the foregoing, Ingalls alleges that Spotify failed to comply with California's
4    Automatic Renewal Law ("ARL") in three ways.  *First,* it allegedly failed to present automatic
5    renewal terms in a clear and conspicuous manner in visual proximity to the request for consent
6    to the offer as required by Section 17602(a)(1) of the California Business and Professions
7    Code.[3]  *Second*, it allegedly failed to obtain consumers' affirmative consent for automatic
8    renewal as required by Section 17602(a)(2).  *Third*, it allegedly failed to provide an
9    acknowledgment that included its automatic renewal terms in a manner capable of being
10   retained by the consumer as required by Section 17602(a)(3).  Ingalls brings these claims both
11   directly under the ARL and as a violation of the unlawful prong of Section 17200.  He argues
12   that he is entitled to both monetary and injunctive relief.

### ANALYSIS

14   Summary judgment is proper when the pleadings and the evidence in the record "show
15   that there is no genuine dispute as to any material fact and that the moving party is entitled to
16   judgment as a matter of law."  FRCP 56(a).  A dispute is genuine only if there is sufficient
17   evidence for a reasonable fact-finder to find for the non-moving party, and material only if the
18   fact may affect the outcome of the case.  Once the moving party has made a threshold showing,
19   the burden shifts to the nonmoving party to prove the existence of a triable issue.  *Anderson v.*
20   *Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).   In this analysis, all reasonable inferences
21   must be drawn in the light most favorable to Ingalls.  *See Johnson v. Rancho Santiago Cmty.*
22   *Coll. Dist.*, 623 F.3d 1011, 1018 (9th Cir. 2010).
23   Spotify moves for summary judgment on three grounds:  (1) the ARL confers no private
24   right of action, so Ingalls' ARL claim fails as a matter of law; (2) Ingalls lacks both Article III
25   and statutory standing because he suffered no injury, and even if he did, the injury was not
26   *caused* by ARL violations;  and (3) Ingalls lacks standing to seek injunctive relief.  Each is
27   analyzed in turn.

---

[3] Unless otherwise specified, statutory citations herein are to the California Business and Professions Code.

3

### 1. PRIVATE RIGHT OF ACTION UNDER THE ARL.

The parties dispute whether there is a private right of action arising directly under the ARL. The section of the ARL dealing with remedies states that "a violation of this article shall not be a crime. However, all available civil remedies that apply to a violation of this article may be employed." Cal. Bus. & Prof. Code Section 17604. In other words, criminal liability (under state law) is expressly precluded under Section 17604, but parties can redress violations of the ARL by suing under one of the sections of Article 9 that provides a civil remedy.

The ARL itself does not provide a civil remedy. Nothing in its language or legislative history suggests otherwise. *See Johnson v. Pluralsight, LLC*, --- F. Supp. 3d ---, 2017 WL 661953 (E.D. Cal. Feb. 17, 2017) (Judge Morrison England, Jr.); *Roz v. Nestle Waters N. Am., Inc.*, No. 2:16-cv-04418-SVM-JEM, 2017 WL 132853 (C.D. Cal. Jan. 11, 2017) (Judge Stephen Wilson). Therefore, Ingalls' claims brought directly under the ARL must be **DISMISSED**.

Nevertheless, since plaintiffs can sue under other sections of Article 9 that provide a remedy, the lack of an action arising directly under the ARL does not foreclose relief. They have available avenues to vindicate their rights. Plaintiffs may, for example, sue for violations of the ARL under Section 17200, as Ingalls has done here.

This order now turns to Spotify's argument that Ingalls lacks standing to bring his Section 17200 claims.

### 2. STANDING.

To establish standing, Article III of the United States Constitution requires plaintiffs to show that "(1) they suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Similarly, to establish standing under Section 17200, a plaintiff must show that he or she has "suffered injury in fact and has lost money or property as a result of the unfair competition." To meet this requirement, a plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that economic injury was the result of, i.e., caused by, the unfair business practice

. . . that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011).

Accordingly, the question is first whether Ingalls suffered an injury, and next whether Spotify's allegedly unlawful conduct caused that injury.

### A. Injury in Fact.

To establish injury under Section 17200, a plaintiff needs to demonstrate that he lost money or property. *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 227 (2006). The bar for showing injury is low, and is met so long as the plaintiff shows "some specific, identifiable trifle of injury." *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1347 (2009).

It is undisputed that Ingalls paid money to Spotify for three months — $9.99 per month, amounting to a total of $29.97. Thus, he has made a prima facie showing of injury.

Spotify argues, however, that Ingalls lacks standing because he received the benefit of his bargain since he continued to have access to Spotify's paid service throughout the three-month period that he paid for it. His expenditure of money, it argues, is therefore not an injury, but a willing trade. Spotify can only reach this conclusion by ignoring Ingalls' testimony that he did not expect to be charged for the service, no longer wanted it, and did not use it after the first two weeks of his free trial (Ingalls Dep. 72:7–9; 132:15–21; 136:2–25; 149:3–12). Ingalls' expenditure constitutes a cognizable harm within the meaning of Article III and Section 17200. Therefore, Ingalls has met his burden on the first standing requirement by showing an injury in fact.[4]

### B. Causal Connection.

Spotify next argues that even if Ingalls was injured, Spotify did not cause that injury, and therefore Ingalls lacks standing on that basis.

At the threshold, the parties disagree about which causation standard applies to Ingalls' claims. Ingalls argues that he must show only that Spotify failed to comply with the ARL, and as a result he was harmed (Opp. at 14–16). Spotify argues that he must meet a more stringent

---

[4] This order does not reach Ingalls' alternative argument that Section 17603 is a basis for finding that Ingalls has been injured in fact, having already found that he has shown an injury in fact under Section 17602.

"actual reliance" standard, which would require a showing that he read and relied upon alleged misrepresentations (Br. at 13–14).

In a Section 17200 suit, the causation standard that applies turns on the nature of the wrongdoing alleged. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010). A claim based on a misrepresentation requires the plaintiff to show that he actually relied upon the alleged misrepresentation. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 330 (2011); *In re Tobacco II*, 46 Cal. 4th 298, 326 (2009). To the extent that a Section 17200 claim is predicated on a non-fraud-based wrong, however, a plaintiff need only show that, but for the alleged wrongdoing, he would not have been harmed. *See Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1099 (2007).

Contrary to Spotify's contention, Ingalls' claims, which arise under the unlawful prong of Section 17200, do not sound in misrepresentation. Rather, they are predicated on a prophylactic law requiring businesses to present disclosures in a conspicuous manner. *See* Cal. Bus. & Prof. Code Section 17602(a)(1). Nowhere does Ingalls' allege that he was affirmatively misled by the content of the disclosures, but rather argues that because they were inconspicuous, he missed them altogether. Because his claim does not sound in misrepresentation, "but for" causation applies. *See Goertzen v. Great Am. Life Ins. Co.*, No. 16-cv-00240-YGR, 2017 WL 2378047 (N.D. Cal. June 1, 2017) (Judge Yvonne Gonzalez Rogers).

Having established the applicable standard, this order turns to Spotify's argument that Ingalls has not shown causation, analyzing each of his claims in turn.

### *(1)  Section 17602(a)(1).*

Spotify first argues that Ingalls' injury is not traceable to Spotify's conduct because he admits that he did not read the automatic renewal disclosure, and therefore could not have relied upon, and been harmed by any deficiencies it contained (Br. at 11–13). This argument can be quickly disposed of because Ingalls' allegations do not concern whether he actually relied upon the *content* of the disclosure, but rather whether the disclosure was presented in a manner that calls attention to the language contained within.

6

All of the decisions Spotify cites deal with claims regarding the allegedly deceptive *content* of disclosures or advertising and apply the actual reliance standard. *E.g., Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1163 (9th Cir. 2012); *Joseph v. Costco Wholesale Corp.*, 2:14-cv-06899-SVW-KK, 2016 WL 759559 (C.D. Cal. Feb. 24, 2016) (Judge Stephen Wilson). They are therefore inapplicable here. Ingalls' quibble is with the size, color, font, and placement of the disclosures, and his argument is that they were presented in such a way that they could be, and were, easily overlooked. This does not require him to have read the disclosures to establish causation.

Spotify further argues, however, that even had the disclosures been presented in a more conspicuous manner, it would have made no difference because Ingalls admits that, in most instances, he does not read disclosures for the services he subscribes to (Reply at 8; Ingalls Dep. 116–17). Further, Spotify observes that Ingalls is a sophisticated consumer who owned his own online business, and was therefore aware of how online disclosures worked. It argues that, with these facts in mind, no reasonable fact-finder would believe he failed to understand that his subscription was automatically renewing as a result of the size of the text in Spotify's disclosure. In other words, even if there were more prominent warnings, Spotify argues, Ingalls would have subscribed to Spotify and would not have cancelled before the trial period ended. Therefore, Spotify's failure to strictly comply with the ARL did not cause Ingalls' loss.

Ingalls disputes Spotify's claim, arguing that had the terms been properly presented he would have read them, and cancelled his subscription prior to the paid term (Opp. at 17). In support of this argument, Ingalls points to his testimony that whether he reads the terms of an offer before signing up depends on the manner in which the offer is presented (Ingalls Dep. 106:9-15), that it is "possibl[e]" he ignored the Spotify disclosure due to its text size (*ibid.*), and that he "may have skimmed past it" because the confirm payment button "calls a lot more attention to itself in color and in size" than the disclosure immediately above it (*id.* 120). Additionally, this order observes that Ingalls' admission that he does not read *most* disclosures, is not the same as an admission that he *never* reads online disclosures.

Viewing the evidence in the light most favorable to Ingalls, he raises a genuine dispute of material fact. It is possible a reasonable fact finder could determine that, had the terms been

7

more prominently presented, Ingalls would have read them and cancelled his subscription before the paid period began. Accordingly, Spotify's motion for summary judgment is **DENIED** as to Ingalls' Section 17602(a)(1) allegations.

### *(2) Section 17602(a)(2).*

Spotify further contends that Ingalls' failure to read its disclosures proves that he lacks standing to pursue his Section 17602(a)(2) claim. Under Section 17602(a)(2), companies are required to obtain consumers' affirmative consent to any agreement containing automatic renewal terms.

For the same reasons stated above, Ingalls need not have read the contents of the disclosures to have been harmed by a failure to present him with an opportunity to affirmatively consent to automatic renewal. Had Spotify presented him with an opportunity to affirmatively consent, he may have read whatever it was he was consenting to. Accordingly, assuming there was not affirmative consent, as Ingalls has alleged, a failure to read terms on a sign-up page does not show lack of causation. Summary judgment as to Ingalls' Section 17602(a)(2) allegations is **DENIED**.

### *(3) Section 17602(a)(3).*

Finally, Ingalls alleges that Spotify failed "to provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy and information regarding how to cancel in a manner that is capable of being retained by the consumer" as required by Section 17602(a)(3) (Amd. Compl. ¶ 64). Ingalls acknowledges that he received a confirmation email with a receipt; however, he alleges that the receipt did not contain the required terms. Instead, it contained a link to the terms (Dkt. No. 80-2 Ex. 9).

Spotify's motion does not specifically address the adequacy of the disclosures in the confirmation email, or whether Ingalls read the confirmation email. Accordingly, this cannot be the basis for summary judgment and to the extent that Spotify seeks summary judgment as to Ingalls' Section 17602(a)(3) allegations, the motion is **DENIED**.

### 3. STANDING FOR INJUNCTIVE RELIEF.

To establish standing for prospective injunctive relief, a plaintiff must generally show "a sufficient likelihood that he will again be wronged in a similar way." *Bates v. United Parcel Serv.*, 511 F.3d 974, 985 (9th Cir. 2007).

Spotify argues that Ingalls cannot show a likelihood of future injury since he now knows about the automatic renewal policies, and has indicated that he does not have current plans to sign up for Spotify Premium again (Ingalls Dep. 154:2-14).

Ingalls contends that the requirement of likelihood of future injury does not apply in circumstances like these where a plaintiff seeks to enjoin an unfair business practice under Section 17200. A rule to the contrary, he observes, would thwart the California legislature's intent because no Section 17200 plaintiff could ever enjoin the conduct that harmed him since he would be aware of the conduct and therefore able to avoid it in the future.

Our court of appeals has not issued a published decision on this issue, and there is a split among the district courts. Ingalls' position has been adopted by numerous district courts within this circuit. *See e.g. Henderson v. Gruma Corp.*, No. CV 10-04173 AHM (AJWx), 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) (Judge A. Howard Matz)*; Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) (Judge Richard Seeborg); *Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2012) (Judge Susan Illston)*; Lanovaz v. Twining N. Am., Inc.*, No C-12-02646-RMW, 2014 WL 46822, at *10 (N.D. Cal. Jan 6, 2014) (Judge Ronald Whyte); *Lilly v. Jamba Juice Co.*, No. 13-CV-02998-JST, 2015 WL 1248027, at *3 (N.D. Cal. Mar. 18, 2015) (Judge Jon Tigar). These courts have "rejected the proposition that a plaintiff's awareness of allegedly misleading advertising eliminates standing to seek prospective injunctive relief," finding that this rule is "overly narrow in the consumer protection context." *Hadley v. Kellogg Sales Co.*, No. 16-CV-04955-LHK, 2017 U.S. Dist. LEXIS 40825, at *64 (N.D. Cal. Mar. 21, 2017) (Judge Lucy Koh). Such a rule would defeat the goals of the state legislature "to protect both consumers and competitors by promoting fair competition." It would, in essence, give permission to defendants to continue their deceptive conduct "because a plaintiff who had been injured would always be deemed to

avoid the cause of the injury thereafter ('once bitten, twice shy') and would never have Article III standing." *Henderson,* 2011 WL 1362188 at *7.

Moreover, these courts have recognized that mere knowledge of a deceptive practice does not overcome the possibility of future harm. Consumers may still purchase the harmful products in the future. Even a showing of "willingness to consider a future purchase [may be] sufficient" to confer standing for injunctive relief. *Lilly*, 2015 WL 1248027, at *3.

The courts in this district that have declined to grant injunctive standing have reasoned that the likelihood-of-future-harm rule has constitutional dimensions, and that "state policy objectives cannot trump the requirements of Article III." *Racies v. Quincy Bioscience*, *LLC*, No. 15-CV-00292-HSG, 2015 WL 2398268 (N.D. Cal. May 19, 2015) (Judge Haywood Gilliam, Jr.) *see also Luman v. Theismann*, 647 F. App'x 804, 807 (9th Cir. 2016) (unpublished); *Anderson v. The Hain Celestial Grp.*, Inc., 87 F. Supp. 3d 1226, 1233 (N.D. Cal. 2015) (Judge Edward Davila); *Morgan v. Wallaby Yogurt Co., Inc.*, No. 13-CV-00296-WHO, 2014 WL 1017879, at *6 (N.D. Cal. Mar. 13, 2014) (Judge William Orrick); *Garrison v. Whole Foods Mkt. Grp., Inc.*, No. 13-CV-05222-VC, 2014 WL 2451290, at *5 (N.D. Cal. June 2, 2014) (Judge Vince Chabria); *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, No. 12-CV-04000-EMC, 2016 WL 3879028, at *4 (N.D. Cal. July 18, 2016) (Judge Edward Chen).

The Court respectfully disagrees with the latter position, finding the interpretation of Article III espoused by these decisions too narrow. This order accepts the reasoning set forth in *Henderson* and those decisions which have followed it. If this order were to construe Article III standing as narrowly as defendant advocates, federal courts could never enjoin Section 17200 claims. Such holding "would eviscerate the intent of the California Legislature." *Ries*, 287 F.R.D. at 533. "This Court is reluctant to embrace a rule of standing that would allow an alleged wrongdoer to evade the court's jurisdiction so long as he does not injure the same person twice." *Fortyune v. Am. Multi-Cinema, Inc.*, No. CV0105551NMJWJX, 2002 WL 32985838, at *7 (C.D. Cal. Oct. 22, 2002) (Judge Nora Manella).

Moreover, on the evidence presented, Ingalls may yet be subject to future harm. Many of the decisions declining to confer standing do so, at least in part, on the grounds that the plaintiff has stated he will not again purchase the harmful product. Here, Ingalls has not

definitively ruled out future subscription to Spotify. At his deposition he stated only that he does not have current plans to buy Spotify's streaming service, and won't buy it if it "continues at the same price with the same options" (Ingalls Dep. 154:2-14). This is hardly a categorical statement. Moreover at oral argument, Ingalls indicated that he would consider purchasing Spotify again if an injunction were to issue in this action. Ingalls could very well be harmed by a future iteration of Spotify's service if it is not required to conform its disclosures to the law. At this stage in the proceedings, it is premature to decide whether he is entitled to injunctive relief.[5]

Spotify's motion for summary judgment regarding Ingalls' claim for injunctive relief is **DENIED**.

## CONCLUSION

For the foregoing reasons, Spotify's motion for summary judgment is **GRANTED** as to Ingalls' claims brought directly under the ARL. With respect to Ingalls' standing to bring claims for restitution and injunctive relief under Section 17200, Spotify's motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 17, 2017.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[5] At oral argument, Spotify argued for the first time that even if Ingalls wanted to sign up for another free trial he could not do so because Spotify has a one-time free trial policy. Ingalls contested this, arguing that there are other types of free trials that remain available to him, and more may yet become available in the future. Moreover, this order observes that signing up for a paid service carries the same risks as a free trial — that service renewal terms will not be ARL compliant, and a customer will be unwittingly charged for an unwanted renewal.