**MILSTEIN JACKSON**
**FAIRCHILD & WADE, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
Sara D. Avila, State Bar No. 263213
savila@mjfwlaw.com
Marc A. Castaneda, State Bar No. 299001
mcastaneda@mjfwlaw.com
10250 Constellation Blvd., Suite 1400
Los Angeles, CA 90067
Tel: (310) 396-9600
Fax: (310) 396-9635

**LEONARDMEYER LLP**
Derek J. Meyer, State Bar No. 278346
rmeyer@leonardmeyerllp.com
5900 Wilshire Boulevard, Suite 500
Los Angeles, CA 90036
Tel: (310) 220-0331

**THE CASEY LAW FIRM, LLC**
M. Ryan Casey, *pro hac vice*
ryan@rcaseylaw.com
20 NE Thompson Street
Portland, OR 97212
Tel: (503) 928-7611

Attorneys for Plaintiff and the Class

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY INGALLS and TONY HONG, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SPOTIFY USA, INC., a Delaware corporation; and DOES 1 – 10, inclusive,<br><br>Defendants. | Case No. CV 3:16-cv-3533-WHA<br><br>**NOTICE OF MOTION AND MOTION FOR LEAVE TO SEEK CERTIFICATION OF NEWLY-DEFINED CANCELLATION CLASS**<br><br>Hearing Date:  September 7, 2017<br>Hearing Time:  8:00 a.m.<br>Courtroom:  Courtroom 8- 19th Floor |

//

//

1

<u>**NOTICE TO PARTIES AND THEIR COUNSEL OF RECORD**</u>

PLEASE TAKE NOTICE that on September 7, 2017 at 8:00 a.m., or on such date as may be specified by the Court, in the Courtroom of the Honorable William H. Alsup, United States District Court for the Northern District of California, San Francisco Courthouse, Courtroom 8 - 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff Gregory Ingalls ("Plaintiff") requests leave to seek certification of a newly-defined cancellation class, based on evidence recently provided by Defendant, guidance provided by this Court at the July 13, 2017 Class Certification and Summary Judgment Hearing, and this Court's July 17th and 27th Orders. Plaintiff's proposed class has been refined to address just one of the four alleged violations of the APRL (the cancellation policy) and includes only persons who did *not* listen to Spotify Premium during the post-cancellation remainder of their paid term. Unlike the potential class recently referenced by the Court, Mr. Ingalls is unquestionably a class member of the cancellation class.[1]

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

I.    <u>**Plaintiff's Originally Proposed Class and Sub-Class**</u>

In his original Motion for Class Certification, Plaintiff sought to certify a Class consisting of all purchasers of Spotify Premium and a Sub-Class consisting of Class members who subsequently cancelled their subscription. Plaintiff's Motion for Class Certification, D.E. 76 ("Cert. Mot."), at 11. Of Plaintiff's four alleged violations of the APRL, the Class addressed the first three violations (pre-purchase) while the Sub-Class addressed the fourth violation (post-purchase).[2] With respect to the fourth violation (failure to provide a post-purchase acknowledgment of the cancellation policy), Plaintiff noted that Spotify's cancellation policy provided that in the event a monthly subscription is

---

[1] Specifically, Plaintiff will seek to certify a class of the following: "All natural persons in California who, since June 23, 2012, signed up for Spotify Premium on spotify.com through either a '3 months for a reduced price' or '30-day free trial' offer, selected a credit or debit card payment method, and whose credit or debit card was subsequently charged $9.99 at least once after the expiration of the offer term, who subsequently cancelled their subscription and thereafter did not use Spotify Premium for the remainder of paid term and received no partial refund of the fee attributable to the remainder of the paid term."

[2] These consisted of Spotify's failure to (1) obtain affirmative consent; (2) clearly and conspicuously disclose that charges would be made automatically; (3) disclose that Spotify might change the amount of the recurring charge; and (4) provide a post-purchase acknowledgment of the cancellation policy. Cert. Mot. at 5-9.

1   canceled, users will not receive any refund for the remainder of the month and that this was not

2   disclosed. *Id.* at 9. Plaintiff's proposed classes did not limit either class to persons who did not actually

3   listen to Spotify Premium for the remainder of their paid term after either purchasing (in the case of the

4   Class) or cancelling (in the case of the Sub-Class).[3]

5   **II.   The Court's Refined View of the Class at the July 13th Hearing**

6   On July 13, 2017, the Court held a hearing on Plaintiff's Motion for Class Certification and

7   Defendant's Motion for Summary Judgment. D.E. 88. Prior to the hearing, the Court Ordered that

8   "Spotify shall be prepared to explain whether there is a way to ascertain which users signed up for a

9   free, or reduced-price trial, and were then charged full price once their trial ended even though they

10  never used the service after their trial ended." D.E. 87. At the hearing, in addition to stating it believed

11  the APRL was indeed violated, the Court suggested Plaintiff's Class Definition was too broad, and

12  should be refined to Class members who did not actually use Spotify Premium after paying for it.

13  Hearing Transcr. at 4:7-11, 4:22, 6:9-10. Limiting the Class in this way made Mr. Ingalls' post-

14  purchase usage determinative of Mr. Ingalls' Class membership (and hence ability to serve as Class

15  Representative).

16  The Court did not address the Sub-Class at the hearing. But, if one were to extend the Court's

17  emphasis on whether a user utilized the service after paying for it, the Sub-Class would be similarly

18  limited to users who cancelled the service, received no refund for the remainder of the service month,

19  and *did not actually utilize the service during the remainder of the service month.* This restitution

20  theory is tied directly to Defendant's fourth violation of the APRL.

21  **III.   Defendant's Supplementation of the Record**

22  At the hearing, the Court again asked Spotify whether it could ascertain which users would fall

23  into the refined view of the Class, as well as the total number. Hearing Transcr. at 4:7-11. In response,

24  ---
    [3] Mr. Ingalls—who has a lifetime habit of listening to music—testified about a brief period in time
25  occurring four years prior to his testimony. Mr. Ingalls thought his testimony was truthful and he
    provided a declaration to the Court stating this and addressing to the best of his ability whether the
26  usage history was accurate. D.E. 98 at ¶¶ 6-8. Even Spotify, who withheld his alleged usage history
    which would have refreshed his recollection, provided declarations that do not suggest that Mr. Ingalls
27  did not earnestly believe this to be the case at the time he testified. *See* D.E. 101. If the Court
    nevertheless has concerns, Plaintiff is confident that an evidentiary hearing featuring live testimony by
28  Mr. Ingalls would alleviate any such concern.

Spotify's counsel implied it could not provide that information. *Id.* at 4:12-13, 5:56, 29:11-13.  The Court was skeptical about such representations, suggesting that Spotify could indeed provide the information. *Id.* at 5:2-12, 29:8-24. Following the hearing, the Court ordered Spotify to provide "the number of people who signed up for Spotify's free or reduced-price trial, and were later charged for the paid service even though they never used it."

In a matter of days, Spotify "calculated that 116,650 California users met the criteria in the Order." Whitehead Decl., D.E. 93, at ¶ 9. Defendant further chose to supplement the record with details of Mr. Ingalls' listening history, indicating that he would not fall into the Court's refined view of the Class. *Id.* at ¶ 4. Plaintiff had in December 2016 served discovery seeking "all DOCUMENTS relating to [Mr. Ingalls'] usage of Spotify." D.E. 95. Spotify responded that it would produce all non-privileged documents in its possession, custody or control.  Yet Mr. Ingalls' usage history was never provided—until recently when the production of same *now benefitted Defendant* (given the Court's narrowing of the Class criteria). *See generally,* Plaintiff's Discovery Letter, D.E. 95.

## IV.   The New Evidence Confirms Mr. Ingalls is a Member of a Refined Cancellation Class

Though the wrongfully-withheld newly-provided evidence purported to show Mr. Ingalls may not be a member of the refined Class suggested by the Court, it *confirms* that Mr. Ingalls is a member of a similarly refined Cancellation Class. The final 30-day $9.99 paid term for Mr. Ingalls began on September 8, 2013 and ended on October 7, 2013. *See* Ex. B to Plaintiff's Motion for Class Certification (unredacted version at SPTFY-Inglls-000004). Mr. Ingalls cancelled his Premium Service on September 17, 2013. After his cancellation, he listened to *no songs* for the remainder of his paid term (which comprised 20 days). *See* Listening History, D.E. 101-2 at 401-402. Mr. Ingalls received no refund for the unused portion of his term, which would have totaled $6.66. As noted in Plaintiff's Motion for Class Certification, Spotify does not dispute that the only post-purchase acknowledgments sent to users (including Mr. Ingalls) provided neither the entire cancellation policy nor notice that a customer would receive no refund for the remainder of the month. Cert. Mot. at 8-9. *See also* D.E. 76-12 (Ingalls' email receipt from Spotify).

**NOTICE OF MOTION FOR LEAVE AND MOTION**

1    While this Court has ruled that Mr. Ingalls cannot represent the Class as refined by the Court, it

2    has not addressed the same with respect to a similarly refined view of the Cancellation Class.[4] Given

3    the newly provided evidence confirming both the ascertainability of such a class as well as Mr. Ingalls'

4    membership in same, Plaintiff respectfully seeks leave to seek certification of a newly defined class.

5    Plaintiff has already served limited discovery (within the discovery cutoff) that will enable him to more

6    fully brief the matter for the Court. Plaintiff's discovery seeks the disclosure of the other California

7    consumers who may have used Premium before cancelling but did not do so after cancelling. All such

8    persons would be entitled to $0.33 a day for the time period between cancellation and the end of their

9    paid term.

10

11   Dated: August 2, 2017                          MILSTEIN JACKSON
                                                     FAIRCHILD & WADE, LLP
12

13                                                   By:  */s/ Gillian L. Wade*_____

14                                                   Gillian L. Wade

15                                                   Derek J. Meyer
                                                     LEONARDMEYER LLP
16

17                                                   M. Ryan Casey
                                                     THE CASEY LAW FIRM, LLC
18

19                                                   *Counsel for Plaintiff and the Proposed Class*

20

21

22

23

24

25

26   [4] While the "Cancellation Class" was previously referred to as the "Sub-Class," that was because all
     Sub-Class Members were necessarily Class Members under the Plaintiff's proposed Class Definition.
27   After the Court refined the Class, this is no longer the case. One's exclusion from the refined Class no
     longer automatically excludes them from the Cancellation Class.
28